United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERANOS, INC. and ELIZABETH HOLMES, | Case No.: C-11-05236-YGR |
| Plaintiffs, | **ORDER GRANTING DEFENDANT JOHN R. FUISZ'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANTS FUISZ PHARMA LLC, RICHARD C. FUISZ, AND JOSEPH M. FUISZ'S MOTION TO DISMISS** |
| vs. | |
| FUISZ PHARMA LLC, et al., | |
| Defendants. | |

Plaintiffs Theranos, Inc. ("Theranos") and Elizabeth Holmes ("Holmes") (collectively, "Plaintiffs") filed this action on October 26, 2011 against Defendants Fuisz Pharma LLC ("Fuisz Pharma"), John R. Fuisz ("Attorney John"), Richard C. Fuisz ("Richard"), and Joseph M. Fuisz ("Joseph") (collectively, "Defendants") alleging various patent and state law claims.  Specifically, Plaintiffs allege ten claims for: (1) correction of inventors pursuant to 35 U.S.C. section 256 against Fuisz Pharma, Richard, and Joseph; (2) declaratory judgment based on the invalidity and unenforceability of U.S. Patent No. 7,824,612 ("'612 Patent") against Fuisz Pharma; (3) unjust enrichment and restitution against Fuisz Pharma, Richard, and Joseph; (4) breach of fiduciary duties against Attorney John; (5) aiding and abetting breach of fiduciary duties against Attorney John, Richard, and Joseph; (6) legal malpractice against Attorney John; (7) unfair competition and unfair business practices against all Defendants; (8) breach of contract against Attorney John; (9) inducing breach of contract and tortious interference with contractual relations against Richard and Joseph; and (10) civil conspiracy against Richard, Joseph, and Attorney John.

On February 27, 2012, Attorney John filed a Motion to Dismiss Claims Against John R. Fuisz Pursuant to Fed. R. Civ. Proc. 12(b)(6).  (Dkt. No. 62 ("First Motion").)  The First Motion seeks

United States District Court
Northern District of California

1   dismissal of all claims asserted against Attorney John on the grounds that they are time-barred.

2   Plaintiffs filed an Opposition to Motion to Dismiss Claims Against John R. Fuisz on March 12, 2012.

3   (Dkt. No. 66 ("First Opp.").)  Attorney John filed his Reply in Support of his Motion to Dismiss on

4   March 19, 2012.  (Dkt. No. 70 ("First Reply").)

5          On March 9, 2012, Fuisz Pharma, Richard, and Joseph (collectively, "Fuisz Pharma

6   Defendants") filed a Motion to Dismiss Claims Against Fuisz Pharma LLC, Richard C. Fuisz, and

7   Joseph M. Fuisz Pursuant to Fed. R. Civ. Proc. 12(b)(6) and 9(b).  (Dkt. No. 65 ("Second Motion").)

8   The Second Motion seeks dismissal of all claims against the Fuisz Pharma Defendants on the grounds

9   that the federal claims are improperly pled and duplicative, and the state law claims are either

10  superseded by state statute or time-barred.  Plaintiffs filed an Opposition to Motion to Dismiss Claims

11  Against Fuisz Pharma LLC, Richard C. Fuisz, and Joseph M. Fuisz on March 23, 2012.  (Dkt. No. 72

12  ("Second Opp.").)  The Fuisz Pharma Defendants filed their Reply in Support of their Motion to

13  Dismiss on March 30, 2012.  (Dkt. No. 74 ("Second Reply").)  Hearings on the First and Second

14  Motions took place on April 3 & 24, 2012, respectively.  (Dkt. Nos. 75 & 78.)

15         Having carefully considered the papers submitted and the pleadings in this action, and for the

16  reasons set forth below, the Court hereby:

17         • **GRANTS** the First Motion to Dismiss the fourth, fifth, sixth, seventh, eighth, and tenth

18            claims against John Fuisz, **WITH LEAVE TO AMEND** only the seventh claim for unfair

19            competition/unfair business practices.

20         • **DENIES** the Second Motion to Dismiss the first, second, and third claims for correction

21            of inventors, declaratory judgment, and unjust enrichment/restitution, respectively.

22         • **GRANTS** the Second Motion to Dismiss **WITH LEAVE TO AMEND** the fifth and seventh

23            claims for aiding and abetting breach of fiduciary duties against Richard Fuisz and

24            Joseph Fuisz, and unfair competition/unfair business practices against Richard,

25            Joseph, and Fuisz Pharma, respectively.

26         • **GRANTS WITHOUT LEAVE TO AMEND** the Second Motion to Dismiss the ninth and

27            tenth claims for inducing breach of contract/tortious interference with contractual

28            relations and civil conspiracy, respectively.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

This action was originally filed on October 26, 2011.  (Dkt. No. 1.)  A first Amended Complaint ("FAC") was filed on February 9, 2012.  (Dkt. No. 53.)  The action arises from allegations that Defendants wrongful took and used Plaintiffs' confidential information relating to certain patent applications.

A.      **The Parties and the Patent Applications**

Holmes is a named inventor on several patents and current CEO of Theranos.  FAC ¶ 3. Theranos is a healthcare systems company that develops technologies used in the collection, analysis, and communication of health information.  FAC ¶ 2. John is a patent attorney residing in Washington, D.C. who previously worked at a national law firm[1] that rendered services to Plaintiffs beginning in 2003.  *Id.* ¶¶ 5 & 17–18.  Joseph is Attorney John's brother and the CEO and managing member of Defendant Fuisz Pharma LLC.  *Id.* ¶ 7.  Richard is the father of Attorney John and Joseph, and a member of Fuisz Pharma.  *Id.* ¶ 6.  While Richard and Joseph reside in California and Florida, respectively, Fuisz Pharma is an LLC formed under the laws of Delaware with its principal place of business in Florida.  *Id.* ¶¶ 4 & 6–7.  Fuisz Pharma "purports to be the owner" of the '612 Patent.  *Id.* ¶ 4.

In or around August 2003, Plaintiffs retained Law Firm "to provide legal services to Plaintiffs in prosecuting patent applications covering Plaintiffs' inventions."  *Id.* ¶ 18.  "Between 2003 and approximately early 2006, . . . Law Firm represented Plaintiffs in the preparation, filing, and prosecution of their domestic and international patent applications, and continued to represent Plaintiffs until around October 2008."  *Id.*  The legal services provided to Plaintiffs occurred "mainly out of its office located in Washington, D.C." but included reviewing information and materials sent by Plaintiffs from California and communicating with Plaintiffs in California.  *Id.* ¶ 19.  Attorneys in Law Firm's Intellectual Property Litigation and Patent Prosecution groups ("IP Group") had access to confidential information[2] contained in Plaintiffs' files.  *Id.* ¶ 20–22.

---

[1]  Because the Court does not find the identity of John Fuisz's former law firm to be relevant for the purposes of this motion, the Court will use the term "Law Firm" to refer thereto.

[2]  The Court uses the term "Confidential Information" to refer to Plaintiffs' proprietary data and intellectual property, as defined in FAC ¶ 1.

United States District Court
Northern District of California

United States District Court
Northern District of California

Law Firm's services to Plaintiffs "included preparing and filing various provisional patent applications on their behalf."  FAC ¶ 23.  Specifically, in 2005, Law Firm drafted and filed four provisional patents for Plaintiffs ("Theranos Provisionals"), each of which included information that was confidential and propriety to Plaintiffs.  *Id.* ¶¶ 24 & 26.  At that time, the information was not public.  *Id.* ¶ 36.  In or around early 2006, Plaintiffs hired another law firm to prepare, file, and prosecute subsequent patent applications.  *Id.* ¶ 27.  With that law firm, Plaintiffs filed non-provisional patent applications on March 24, 2006 that "claim priority to the Theranos Provisionals."  *Id.* ¶ 28.  The March 24, 2006 patent applications and the information contained therein were not publicly available until November 2006.  *Id.* ¶¶ 29–30.

Plaintiffs allege that Richard and Joseph "wrongfully used the valuable confidential and proprietary information that Plaintiffs had entrusted to . . . Law Firm, including both the general knowledge of Plaintiffs' work and plans and specific information set forth in the Theranos Provisionals, and in other materials submitted in confidence by Plaintiffs to . . . Law Firm."  *Id.* ¶ 31; *see id.* ¶ 35.  One month after the Theranos Provisionals were filed, in April 2006, Richard and Joseph filed their own provisional patent application ("Fuisz Provisional").  *Id.* ¶ 32.  On April 24, 2007, Richard and Joseph filed a non-provisional patent application claiming the benefit of the Fuisz Provisional.  *Id.* ¶ 34.  This application ultimately matured into the '612 Patent.  *Id.* ¶¶ 4 & 34.

Plaintiffs allege that the Fuisz Provisional included "copied concepts and disclosures from the non-public Theranos Provisionals" and Confidential Information.  *Id.* ¶ 37 ("The same concepts and disclosures are also found in the '612 Patent."); *see id.* ¶ 40.  Holmes and others at Theranos, including Timothy Kemp ("Kemp") developed the concepts contained in their Confidential Information.  *Id.* ¶¶ 38–39.  "But for" Richard and Joseph's access to Confidential Information, "they would not have been able to file the Fuisz Provisional" or obtain the '612 Patent.  *Id.* ¶¶ 62–63.

**B.**      **Plaintiffs Discover the Fuisz Provisional and the '612 Patent**

Plaintiffs "first became aware" of the Fuisz Provisional in May 2008.  FAC ¶ 64.  Prior to that time, they had "no reason . . . to believe that [their] Confidential Information had been used by Defendants to file a patent application."  *Id.*  In fact, they "could not reasonably have discovered" the

Fuisz Provisional or use of Theranos Confidential Information any sooner than January 2008, when that information was made publicly available. *Id.*

On or about August 22, 2008, Holmes was informed that a lawyer by the name of John Fuisz was a partner at Law Firm. FAC ¶ 65. She was unable to schedule a meeting with a partner at Law Firm until September 22, 2008. *Id.* ¶¶ 65–66. On September 22, she met with two partners at Law Firm and "informed them" that Richard and Joseph "had filed an application for a patent claiming priority to the Fuisz Provisional . . . which contained concepts substantially similar to those disclosed" in Confidential Information furnished to Law Firm and the Theranos Provisionals. *Id.* ¶ 66 (hereinafter, "Law Firm Meeting"). The partners responded that they would look into the matter. *Id.* ¶ 67. On or about October 28, 2008, Law Firm informed Holmes that Attorney John was Richard's son, that he (as a member of the IP Group) had access to Theranos Confidential Information that had been provided to Law Firm, and that "at that point there was 'nothing they could do.'" *Id.* ¶¶ 68–69 (hereinafter, "Law Firm Response"). Plaintiffs allege that "[u]ntil receiving the information provided on October 28, Plaintiffs had no reason to believe that John Fuisz or the Law Firm had breached any duty to Theranos or used Theranos Confidential Information." *Id.* ¶ 71.

On November 2, 2010, the U.S. Patent and Trademark Office ("PTO") issued the '612 Patent, identifying Richard and Joseph as inventors. FAC ¶ 72. According to Plaintiffs, "[t]his was the first time when Plaintiffs incurred any actual damages as a result of Defendants' improper conduct." *Id.* ¶¶ 72 & 74 (damage to Theranos's ability to enjoy exclusivity of its Confidential Information and inventions based thereon); *see id.* ¶¶ 76–77.

Plaintiffs initiated this action on October 26, 2011. *Id.* ¶ 78. One day later, Richard and Joseph "purported to assign all their right, title, and interest to the '612 Patent to Fuisz Pharma." *Id.* ¶ 79. On November 1, 2011, Fuisz Pharma sued Theranos in U.S. District Court, District of Delaware for infringement on the '612 Patent. *Id.* ¶ 80. On November 2, 2011, Theranos filed copied claims with the PTO setting forth how all claims in the '612 Patent are supported by Plaintiffs' specifications. *Id.* ¶ 81.

1    **II.    DISCUSSION**

2        **A.    Legal Standards Under Fed. R. Civ. P. 12(b)(6)**

3        Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed against a defendant for

4    failure to state a claim upon which relief may be granted.  Dismissal may be based on either the lack

5    of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

6    *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter*

7    *Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir. 1984).  For purposes of evaluating a motion to dismiss,

8    the court "must presume all factual allegations of the complaint to be true and draw all reasonable

9    inferences in favor of the nonmoving party."  *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th

10    Cir. 1987).  Any existing ambiguities must be resolved in favor of the pleading.  *Walling v. Beverly*

11    *Enters.,* 476 F.2d 393, 396 (9th Cir. 1973).

12        A statute of limitations defense may be raised by a motion to dismiss "[i]f the running of the

13    statute is apparent on the face of the complaint."  *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682

14    (9th Cir. 1980); *see Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 (9th Cir. 1995) ("[A]

15    complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of

16    facts that would establish the timeliness of the claim.").

17        Mere conclusions couched in factual allegations are not sufficient to state a cause of action.

18    *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *see also McGlinchy v. Shell Chem. Co.,* 845 F.2d 802,

19    810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim [for] relief that is

20    plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A claim is plausible

21    on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable

22    inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662,

23    129 S. Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-

24    conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

25    suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969

26    (9th Cir. 2009).  Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the

27    defect by amendment.  *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir. 2000).

28

*United States District Court*
*Northern District of California*



United States District Court
Northern District of California

**B.      John R. Fuisz's Motion to Dismiss (First Motion)**

Attorney John moves to dismiss all claims against him on the ground that they are time-barred under the relevant statute of limitations.[3]  The First Motion raises three issues to be resolved.  First, the Court must decide which statute of limitations applies: the one-year California statute (California Code of Civil Procedure section 340.6 ["Section 340.6"]) or the three-year District of Columbia statute (D.C. Code section 12-301(8) ["Section 12-301(8)"]).  Next, the Court must decide when the statute began to run.  Third, the Court must determine whether the statute was tolled.

### 1.      California versus District of Columbia Statute of Limitations

Attorney John contends that California's one-year statute for legal malpractice applies to the claims against him.[4]  Plaintiffs counter that a conflict analysis is not necessary because Plaintiffs' "claims are timely under both California and District of Columbia law."  First Opp. at 10.  Alternatively, Plaintiffs contend that the three-year Washington, D.C. statute of limitations[5] should apply because, as a practicing Washington, D.C. lawyer, that jurisdiction has a greater interest than

---

[3]  Plaintiffs allege claims for breach of fiduciary duties (fourth claim), aiding and abetting breach of fiduciary duties (fifth claim), legal malpractice (sixth claim), unfair competition and unfair business practices (seventh claim), breach of contract (eighth claim), and civil conspiracy (tenth claim) against Attorney John.  Attorney John contends that each of the claims against him is "a variation on the same theme" of legal malpractice—*i.e.*, that he breached a duty owed to Plaintiffs by virtue of Law Firm's legal work in 2003–2006—and thus, every claim is barred by the legal malpractice statute of limitations.  First Motion at 4.

[4]  Section 340.6(a) provides that: "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first."  Section 340.6 further provides that "in no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: (1) [t]he plaintiff has not sustained actual injury [and] (2) [t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred."  Cal. Code Civ. Proc. § 340.6(a)(1)–(2).

[5]  Section 12-301(8) states that: "[e]xcept as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues: . . . (8) for which a limitation is not otherwise specially prescribed -- 3 years.").

1    California in determining the limitations period for malpractice claims brought against Attorney John.

2    *Id.* at 10 n.6.[6]

3         The Ninth Circuit instructs that a California district court should apply the statute of

4    limitations that would be applied in California state court. *Deutsch v. Turner Corp.*, 324 F.3d 692,

5    716 (9th Cir. 2003). Here, "California applies the 'governmental interest' approach to conflict of law

6    issues."[7] *Id.* at 716–17. In *Deutsch*, the Ninth Circuit specifically addressed choice-of-law issues in

7    applying the statute of limitations for state common law claims. *Id.* The court found that

8    "California's interest in applying its own law is strongest when its statute of limitations is shorter than

9    that of the foreign state, because [California] has a substantial interest in preventing the prosecution in

10   its courts of claims which it deems to be 'stale.' Hence, subject to rare exceptions, the forum will

11   dismiss a claim that is barred by its statute of limitations." *Id.* at 717 (internal citations and quotations

12   omitted).

13        Federal courts sitting in California and applying a *Deutsch* analysis consistently conclude that

14   California's statute of limitations applies when faced with a choice-of-law concerns, absent a rare

15   exception or extraordinary interest by a foreign state to keep alive the claims. For example, in

16   *Gonzales v. Texaco, Inc.*, the court granted summary judgment in an action alleging that defendants'

17   oil-drilling operations in the Amazon rainforest caused plaintiffs' cancer. No. C 06-02820 WHA,

18   2007 WL 4044319, at *7–8 (N.D. Cal. Nov. 15, 2007). *Gonzales* examined whether California's two-

19   year statute or Ecuador's four-year statute governed. *Id.* at *3. The court held that "[u]nder *Deustch*,

---

21   [6] Plaintiffs do concede, however, that if California law applies, Section 340.6 would apply to all claims other

22   than the seventh claim, governed by California Business & Professions Code section 17200, *et seq.* First Opp.
     at 11. There, Plaintiffs apply a four-year statute of limitations under Cal. Bus. & Prof. Code section 17208.

23   [7] The California Supreme Court has succinctly summarized its choice-of-law process post-*Deutsch*: the first

24   step of the governmental interest test is to "determine[] whether the relevant law of each of the potentially
     affected jurisdictions with regard to the particular issue in question is the same or different." *McCann v. Foster
     Wheeler LLC*, 48 Cal. 4th 68, 87 (2010) (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08

25   (2006). If there is a difference, the second step requires that "the court examine[] each jurisdiction's interest in

26   the application of its own law under the circumstances of the particular case to determine whether a true
     conflict exists." *McCann*, 48 Cal. 4th at 87 (citing *Kearney*, 39 Cal. 4th at 107–08). The third step is to

27   evaluate and compare "the nature and strength of the interest of each jurisdiction in the application of its own

28   law 'to determine which state's interest would be more impaired if its policy were subordinated to the policy of
     the other state' [] and then ultimately appl[y] 'the law of the state whose interest would be more impaired if its
     law were not applied.'" *McCann*, 48 Cal. 4th at 88 (citing *Kearney*, 39 Cal. 4th at 107–08).

United States District Court
Northern District of California

1   this order must use the statute of limitations under California law" because "California's statute of

2   limitations is shorter than that of Ecuador's" and no exception to the general rule applied.  *Id.* at *4.

3   The Court noted that *Deutsch* was no less applicable in cases where "plaintiffs had only fallen outside

4   the limitations period by one or two years," rather than the delay of decades in other cases.  *Id.* at *6.

5   Similarly, in *Hunter v. Citibank, N.A.*, which involved various claims against a group of lawyer-

6   defendants, the court applied *Deutsch* and enforced California's one-year statute (Section 340.6) over

7   the two-year statute in Florida and Nebraska.  No. C 09-02079 JW, 2010 WL  2509933, at *1 & 9

8   (N.D. Cal. Feb. 3, 2010) (ultimately denying motion to dismiss on separate grounds relating to when

9   plaintiffs discovered, or should have discovered, the facts constituting the wrongful act).  *See Koken v.*

10   *W.C.A. Service Corp., Inc.*, No. CIV. S-05-01487 FCD DAD, 2006 WL 3087098, at *3–5 (E.D. Cal.

11   Oct. 30, 2006) (following *Deutsch* and articulating that enforcement of California's shorter statute

12   "would advance its underlying policies of protecting the state's residents and courts from the burdens

13   associated with the prosecution of stale cases").

14        Plaintiffs' argument that Washington, D.C. has a strong interest in determining the length of

15   time one has to file suit against attorneys practicing in the District of Columbia lacks persuasion.  The

16   District of Columbia has *not* enacted a specific provision setting a limitation period for legal

17   malpractice claims.  Rather, the operative statute of limitations under District of Columbia law comes

18   from Section 12-301(8)—which imposes a generic, catch-all three-year period for any action where a

19   limitation period "is not otherwise specially prescribed."  While the District of Columbia certainly has

20   a general interest in setting a statute of limitations that it deems fit, the lack of a specific prescription

21   for malpractice cases stands in stark contrast to California's thoughtful and deliberate decision to

22   impose a one-year period.  Such a generic statute does not compel a finding that Washington, D.C.

23   has expressed such an extraordinarily-strong interest to overcome California's explicit limitation on

24   legal malpractice claims.

25        By contrast, the California Supreme Court held that "[i]n section 340.6, the Legislature

26   established a detailed, explicit, and exclusive scheme for commencing and tolling the legal

27   malpractice limitations periods."  *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 18 Cal.

28   4th 739, 764 (1998).  This scheme was intended to "reflect[] the balance . . . struck between a

United States District Court
Northern District of California

1    plaintiff's interest in pursuing a meritorious claim and the public policy interests in the prompt

2    assertion of known claims" and provided for tolling in specified situations in order to "help protect

3    legal malpractice plaintiffs from unknowing or inadvertent forfeiture of meritorious claims." *Id.* at

4    756 ("Legislature expressly disallowed tolling under any circumstances not stated in the statute").

5    Because California specifically concluded that a one-year statute reflected an appropriate balance of

6    the interests raised in legal malpractice cases, the Court finds that California's interest in applying its

7    statute of limitations would be more significantly impaired if thwarted by the more generic District of

8    Columbia statute. *Koken*, 2006 WL 3087098, at *5 ("California's strong interest in applying its own

9    law when its statute of limitations is shorter [than] that of the foreign state outweighs such an

10   interest.") (citing *Deutsch*).

11       Under a *Deutsch* analysis, the Court therefore finds that the one-year California statute applies

12   to the claims against Attorney John and that this case does not constitute a "rare exception"

13   warranting application of the District of Columbia statute of limitations.[8]

### 2.    Commencement of the One-Year Statute of Limitations

15       The Court must next determine when the statute began to run.  The parties offer

16   varying dates.  Plaintiffs contend that the statute did not begin to run until November 2, 2010, when

17   the '612 Patent issued and, they argue, actual damages accrued.  Attorney John makes a number of

18   alternative arguments, specifically that Section 340.6 began to run: (1) in early 2006, when Attorney

19   John allegedly shared the Confidential Information; (2) in January 2008, when the Fuisz Provisional

20   was published; (3) on September 22, 2008, the date of the Law Firm Meeting, asserting Plaintiffs

21   were on inquiry notice of Attorney John's alleged wrongdoing; or (4) on October 22, 2008, the date of

22   the Law Firm Response, arguing Plaintiffs admit they had actual notice of his wrongdoing.

23       A statute of limitations begins to run once the claim accrues.  Cal. Civ. Code § 312.  Each of

24   the claims at issue requires both actual or constructive knowledge and damages.  The notion that

25   Plaintiffs had actual or constructive knowledge of Attorney John's allegedly covert actions in 2006 or

26

---

27   [8]  The result would be the same under a traditional "governmental interest" analysis, as opposed to *Deutsch*.
     The Court would have been required to evaluate the strength of each state's interest in the application of its

28   own law to determine whose policy would be more impaired if the other state's law was applied.  *McCann*, 48
     Cal. 4th at 88 (citing *Kearney*, 39 Cal. 4th at 107–08).

United States District Court
Northern District of California

the publication in January 2008 strains credulity and the Court eliminates those arguments without further discussion.  The real issue is whether damages accrued such that the statute began to run in September 2008, October 2008, or November 2010.  *City of Vista v. Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 886 (Cal. Ct. App. 2000) ("When damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained.").

The legal framework for this analysis is set forth in *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, in which the California Supreme Court stated:

> Actual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions. . . . [Section 340.6(a)(1)] will not toll the limitations period once the client can plead damages that could establish a cause of action for legal malpractice.

18 Cal. 4th at 743.  A client can establish the claim once it suffered "any appreciable and actual harm" as a consequence of the attorney's negligence and sustained "compensable" damages.  *Id.* at 750 & 51 (internal citation and emphasis omitted).  The court further clarified that "the existence of appreciable actual injury does not depend on the plaintiff's ability to attribute a quantifiable sum of money to consequential damages," rather that "actual injury may consist of impairment or diminution, as well as the total loss or extinction, of a right or remedy."  *Id.* at 750.  In cases where the malpractice "results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually recovered."  *Id.* (internal citations omitted).  "[O]nce the plaintiff suffers actual harm, neither difficulty in proving damages nor uncertainty as to their amount tolls the limitations period" nor "renders that injury speculative or inchoate."  *Id.* at 752 & 744.  The "particular facts of each case must be examined in light of the wrongful act or omission the plaintiff alleges against the attorney."  *Id.* at 764.[9]

---

[9]  Plaintiffs argue that the mere discovery of an attorney's misconduct is insufficient to constitute actual injury. First Opp. at 12.  It is true that California courts have held that actual injury does not necessarily occur in all situations at the time of the alleged malpractice.  *Jordache*, 18 Cal. 4th at 764–65 (where law firm failed to advise client that it had insurance coverage for defense of lawsuit, court determined that impairment of the right to insurance benefits occurred after discovery of the neglect but before settlement of the insurance coverage litigation); *Callahan v. Gibson, Dunn & Crutcher LLP*, 194 Cal. App. 4th 557, 574 (Cal. Ct. App. 2011) (defective provisions in limited partnership agreement caused actual injury when general partner became incapacitated, and the compromised future rights constituted only contingent harm until such time as those rights had "some meaningful effect"); *Fritz v. Ehrmann*, 136 Cal. App. 4th 1374, 1383–84 (Cal. Ct. App. 2006)

United States District Court
Northern District of California

Through the allegations of the complaint, Plaintiffs concede that in May 2008, they were already "aware of the Fuisz Provisional Patent Application."  FAC ¶ 64.  By September 28, 2008, Plaintiff Holmes had become "concerned about the similarities between the Theranos Confidential Information, including the Theranos Provisionals, and the Fuisz Provisional."  First Opp. at 20 n.13; FAC ¶ 66.  On or about October 28, 2008, Law Firm informed Plaintiffs that Attorney John was the son of Fuisz Provisional applicant Richard, had access to Theranos Confidential Information, and that Law Firm could not further assist her.  *Id.* ¶ 69.  Plaintiffs concede that up until this time, they "had no reason to believe that [John or Law Firm] had breached any duty to Theranos or used Theranos Confidential Information."  FAC ¶ 71.   By the same token, as of October 28, 2008, Plaintiffs *did* have reason to believe that Attorney John had taken Theranos Confidential Information and provided it to his father and brother, who had used the information in filing the Fuisz Provisional.[10]

The question is: had damages accrued?  Could Plaintiffs have recovered damages for Attorney John's disclosure and use of the Confidential Information which resulted in the Fuisz Provisional *or* were Plaintiffs required to wait until a patent issued?  The Court finds that Plaintiffs could have articulated a basis for damages by October 28, 2008.  Not only is it reasonable to expect that Plaintiffs, at a minimum, paid the Law Firm for the patent work, including for keeping said information confidential, but the act of filing the Fuisz Provisional itself impaired Plaintiffs' ownership rights and ability to claim priority to inventions based on Theranos's Confidential Information.  *See* First Reply at 7.  While arguably true that Plaintiffs did not lose the "ability to

---

(alleged malpractice in negotiating and drafting promissory note did not result in actual injury at time of drafting, but would occur when the note was challenged or plaintiffs were forced to pay legal fees to defend on the note).  Plaintiffs' cases do not address a factual situation even remotely similar to the case at hand but, rather, address malpractice in the context of negligence.  Importantly, the cases do not support the proposition that Plaintiffs' injury could have occurred only when "Theranos lost the ability to make, use, sell, or offer to sell any products based on its own Confidential Information."  First Opp. at 14.

[10]  Plaintiffs' comparison of claims and concepts between the parties' provisional applications and the '612 Patent, as described in the FAC, further indicate that it was apparent from the Fuisz Provisional that Plaintiffs' Confidential Information had been taken and used.  *See* FAC ¶ 37 ("Fuisz Provisional Patent Application copied concepts and disclosures from the non-public Theranos Provisionals, as well as from other confidential information, documents, and data Plaintiffs provided to John Fuisz's Law Firm in connection with the prosecution of Plaintiffs' patent applications."); *id.* ¶ 40 ("The concepts and disclosures in the Fuisz Provisional Patent Application and in the '612 Patent closely track those in the Theranos Confidential Information, including the Theranos Provisionals."); *see id.* ¶¶ 41–61 & 84 (detailing how the same concepts are contained within the parties' provisional applications and the '612 Patent).

United States District Court
Northern District of California

make, use, sell, or offer to sell any products based on its own Confidential Information" until the '612 Patent issued, the damages which flowed from Attorney John's breaches are not dependent on such an ability.

Based on the foregoing, the Court finds that Plaintiffs had reason to know by no later than October 28, 2008 that Attorney John may have breached his fiduciary duties and committed malpractice by taking and sharing Confidential Information with his family; and that actual "appreciable" injury to their patent rights had already occurred as of that date. Thus, the one-year statute of limitations commenced, and ran, effective October 28, 2009.[11] Plaintiffs did not initiate this action until October 26, 2011, almost two years later. On this basis, the Court **GRANTS** the First Motion to Dismiss the fourth, fifth, sixth, eighth, and tenth claims against Attorney John as time-barred under Section 340.6.

### 3. Extension of Section 340.6 to the Seventh Claim for Unfair Competition and Unfair Business Practices

As part of the First Motion, Attorney John moves to dismiss the seventh claim based on Section 340.6 because the claim arises out of the same alleged acts as the claim for legal malpractice. First Motion at 9. Plaintiffs, on the other hand, assert that the applicable statute of limitations is four years, based on Cal. Bus. & Prof. Code section 17200, *et seq.* ("UCL"). First Opp. at 11. While Plaintiffs may have intended to make this a UCL claim (First Opp. at 15–17), it is not pled as such. The FAC fails to reference the Bus. & Prof. Code in its allegations and, based on its plain language, the seventh claim appears to be a common law claim. FAC ¶¶ 131–136. A UCL claim is distinct and separate from the common law claims underlying legal malpractice. *See* First Reply at 12. Attorney John provides no compelling authority to the contrary.

Despite the language in the FAC, Plaintiffs made clear at the hearing on the First Motion that the seventh claim is intended to be a UCL claim, which the Court takes into consideration for the purposes of amending the claim. The Court hereby **GRANTS** the First Motion to Dismiss the seventh

---

[11] Plaintiffs allege that Law Firm "continued to represent Plaintiffs until around October 2008." FAC ¶ 18; *see* First Opp. at 22 ("When Ms. Holmes was informed on October 28, 2008, that the Firm would not assist her in remedying any issues or mitigating any misconduct relating to the Theranos Provisionals, the representation terminated."). In light of the Court's finding that actual injury occurred on that same date, tolling under Section 340.6(a)(2) would not save the claims against Attorney John.

United States District Court
Northern District of California

1    claim **WITH LEAVE TO AMEND** for Plaintiffs to properly plead this claim as a UCL claim (to the

2    extent a viable claim exists), to which a four-year statute would be applicable, if that was or is

3    Plaintiffs' intent.

4        **C.    Fuisz Pharma LLC, Richard C. Fuisz, and Joseph M. Fuisz's Motion to Dismiss
             (Second Motion)**

5

6        The Second Motion seeks dismissal of all claims filed against Fuisz Pharma Defendants.[12]

7    Specifically, they seek dismissal of: the first claim for correction of inventors against all Fuisz Pharma

8    Defendants; the second claim for declaratory judgment based on the invalidity and unenforceability of

9    the '612 Patent against Fuisz Pharma; the third claim for unjust enrichment and restitution against all

10   Fuisz Pharma Defendants; the fifth claim for aiding and abetting breach of fiduciary duties against

11   Richard and Joseph; the seventh claim for unfair competition and unfair business practices against all

12   Fuisz Pharma Defendants; the ninth claim for inducing breach of contract and tortious interference

13   with contractual relations against Richard and Joseph; and the tenth claim for civil conspiracy against

14   Richard and Joseph.

15            **1.    Claim for Correction of Inventors under 35 U.S.C. Section 256**

16       The Court first addresses whether Plaintiffs have properly stated a claim under 35

17   U.S.C. section 256 ("Section 256") where the allegations require substitution of an inventor's name

18   due to alleged fraud as opposed to a clerical correction of a mistake.

19       Section 256 provides that "[w]henever through error a person is named in an issued patent as

20   the inventor, or through error an inventor is not named in an issued patent and such error arose

21   without any deceptive intention on his part, the Director may, on application of all the parties and

22   assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate

23   correcting such error."  The Federal Circuit in *Stark v. Advanced Magnetics, Inc.* analyzed *at length*

24   the statutory language of Section 256 and "construe[d] the term 'error' to extend to mistakes, whether

25   deceptive and 'dishonest' or merely uninformed and 'honest.'"  *Stark*, 119 F.3d 1551, 1555 (Fed. Cir.

26   1997).  The Federal Circuit held that:

27

28   _____

[12]  In its discussion of the various grounds for dismissal asserted in the Second Motion, the Court uses the term "Fuisz Pharma Defendants" to apply to the Defendants against whom a particular claim has been asserted in the FAC.

United States District Court
Northern District of California

> [S]ection 256 allows deletion of a misjoined inventor whether that error occurred by deception or by innocent mistake.  As well, the section allows addition of an unnamed actual inventor, but this error of nonjoinder cannot betray any deceptive intent by that inventor.  In other words, the statute allows correction in all misjoinder cases featuring an error and in those nonjoinder cases where the unnamed inventor is free of deceptive intent.

*Id.* at 1555.[13]  In *University of Colorado Foundation, Inc. v. American Cyanamid Co.*, 196 F.3d 1366, 1374–75 (Fed. Cir. 1999) ("*Cyanamid*"), the Federal Circuit confirmed that Section 256 may be used to correct inventors where deception existed.  Relying on *Stark*, the Federal Circuit held in *Cyanamid* that "the district court's premise-that the actual inventors could not be substituted for a fraudulently-named inventor in a patent without thereby invalidating the patent-was incorrect."  *Cyanamid*, 196 F.3d at 1375.  In the underlying case, plaintiffs had alleged that "Cyanamid wrongfully copied the article into a patent application and filed the application in its own name without informing Plaintiffs, without naming the doctors as the inventors and naming instead Cyanamid's employee . . . as sole inventor."  *University of Colorado Foundation, Inc. v. American Cyanamid Co.*, 974 F. Supp. 1339, 1342 (D. Colo. 1997).  Thereafter, on February 14, 1984, a patent was issued to Cyanamid.  *Id.*  Plaintiffs did not discover the existence of the patent until June 1993.  *Id.*  Such a factual circumstance falls squarely within Section 256.

Based upon Federal Circuit precedent, Fuisz Pharma Defendants' contention that Section 256 "is limited to the correction of errors involving true joint ownership" lacks merit.  A Section 256 claims includes both scenarios.  The Court finds no meaningful distinction between the facts in *Cyanamid* as set forth in the compendium of cases regarding that action.

Accordingly, the Court finds that there are sufficient facts stated to allege a claim for correction under Section 256.  The Court **DENIES** the Second Motion to Dismiss the first claim for correction of inventors.

---

[13]  In *Stark*, plaintiff alleged he was "sole or a joint inventor of the subject matter claimed in the patents and requested correction of inventorship in accordance with 35 U.S.C. [section] 256."  *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1572 & 1576–77 (Fed. Cir. 1994) (vacating and remanding grant of summary judgment on correction claims to determine the merits of asserted inventorship claims).

### 2.   Claim for Declaratory Judgment Based on Invalidity and Unenforceability of the '612 Patent

Fuisz Pharma Defendants next raise the issue of whether sufficient allegations are pled to state a claim for invalidity or unenforceability of Plaintiffs' claim of declaratory judgment.  In determining whether sufficient facts are stated such that the claim is plausible, the court must presume all factual allegations are true and draw all reasonable inferences in favor of Plaintiffs.  *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S.Ct. at 1949; *Usher*, 828 F.2d at 561.  The parties agree that to survive the motion to dismiss on this declaratory relief claim, Plaintiffs must have pled sufficient facts as to invalidity and unenforceability.  Second Motion at 7; Second Opp. at 9.  Under 35 U.S.C. section 102(f), a person is not entitled to a patent if "he did not himself invent the subject matter sought to be patented," or, in other words, if he is not the true inventor.  Section 102(f) applies where: someone other than the claimed inventor conceived of the invention prior to the claimed inventor; and the prior conception was communicated to the alleged inventor.  *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003).  "To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO," and that the misrepresented or omitted information was material.  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) ("Intent and materiality are separate requirements.").  The general materiality standard required to establish inequitable conduct is "but-for materiality."  *Id.* at 1291.  However, misconduct will be deemed material if a patentee "engage[s] in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit."  *Id.* at 1292.

Fuisz Pharma Defendants argue the complaint contains conclusory allegations and "nothing more than a recitation of statutory language of the Patent Laws."  Second Motion at 8.  Fuisz Pharma Defendants also contend that the basis for unenforceability—inequitable conduct—has not been pled with required specificity under Fed. R. Civ. P. 9(b).  *Id.* at 8–10 (Plaintiffs fail to identify the specific who, what, when, where, and how of the material misrepresentations or omissions to the PTO, and do not allege sufficient facts regarding the requisite intent to deceive).  Plaintiffs disagree.

The Court agrees that Plaintiffs have sufficiently pled that the '612 Patent is invalid and unenforceable based on Fuisz Pharma Defendants' inequitable conduct.  Plaintiffs allege:  Richard and Joseph intended to deceive the PTO into believing they were sole inventors of the '612 Patent, but

United States District Court
Northern District of California

1   they were not; Holmes and/or Kemp should have been named inventors of the patent and Richard and

2   Joseph knew that Holmes and/or Kemp should have been so named; their deception was material

3   because in the Declaration and Power of Attorney for Patent Application, submitted to the PTO in or

4   about September 2009, they falsely declared that they were the original, first, and sole inventors in the

5   patent's application; the PTO would not have issued the patent if it had known that Holmes and/or

6   Kemp should have been listed as inventors, that Richard and Joseph should not have been named

7   inventors, or that claimed limitations from the '612 Patent were inaccurately represented as their

8   work. FAC ¶¶ 98–104; Second Opp. at 11. These allegations, along with the entire FAC, sufficiently

9   allege a plausible claim for invalidity that permit the court to draw a reasonable inference that the

10  defendant is liable for the misconduct alleged. *See* Second Motion at 7 (citing *Iqbal*, 129 S. Ct. at

11  1940 and *Twombly*, 550 U.S. at 566). These allegations sufficiently satisfy the "who, what, when,

12  where, and how" of the alleged misrepresentations made by Richard and Joseph to the PTO.[14]

13       For these reasons, Fuisz Pharma Defendants' Motion to Dismiss the second claim for

14  declaratory judgment based on invalidity and unenforceability of the '612 Patent is **DENIED**.

15              **3.    Whether Plaintiffs' Federal Claims Are Duplicative of an Interference
                       Proceeding**

16

17       Fuisz Pharma Defendants further argue that the Court should refuse jurisdiction of the

    federal claims because these claims involve a "dispute[] over inventorship" that is more appropriately

18  heard by the PTO. Second Motion at 10. These defendants argue that the "issues are currently before

19  the PTO" because Plaintiffs filed "copied claims" of the '612 Patent with the PTO (seven days after

20  this action began) "with the goal of provoking an interference proceeding and establishing priority of

21  inventorship." *Id.*; *see also* Second Reply at 6. At the hearing, Fuisz Pharma Defendants conceded

22  that an interference proceeding was not pending. The Court finds the lack of an actual interference

23  proceeding determinative. As such, Fuisz Pharma Defendants' Motion to Dismiss the first and second

24  claims as duplicative is **DENIED**.

25

26  _____

27  [14] Fuisz Pharma Defendants also make a cursory request that the Court strike allegations in the FAC relating to
    a claim for invalidity based on prior art. Second Reply at 7. Fed. R. Civ. P. 12(f) permits a court to "strike
    from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fuisz
28  Pharma Defendants do not make any attempt to argue that Rule 12(f) actually applies. According, the request
    to strike is **DENIED**.

### 4. Whether the California Uniform Trade Secrets Act Supersedes the State Law Claims

Lastly, Fuisz Pharma Defendants request that the Court dismiss all the common law claims on the ground that they are preempted by the California Uniform Trade Secrets Act ("CUTSA"). Fuisz Pharma Defendants argue that Plaintiffs' allegations for misappropriation of confidential or proprietary information necessarily states a claim under CUTSA which would then supersede all of Plaintiffs' common law claims. Second Motion at 11–13 (citing *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210 (Cal. Ct. App. 2010)). Because Plaintiffs do not affirmatively assert any claims under CUTSA, the Court must decide therefore whether to infer such a claim.

Fuisz Pharma Defendants' proffered authorities are not on point. In each case offered, the plaintiffs had asserted claims for trade secret misappropriation. Here, no such allegations exist. Rather, the claims are either based on the wrongful issuance of or retention of benefits derived from the '612 Patent or breaches of fiduciary duties or contract—not the actual misappropriation of a trade secret. Second Opp. at 16–18. Fuisz Pharma Defendants' suggestion that *Silvaco* and *Heller v. Cepia, LLC*, No. C 11-01146 JSW, 2012 WL 13572, at *7 (N.D. Cal. Jan 4, 2012), should be extended to infer a CUTSA claim is misplaced. Second Reply at 9. Their argument wrongly assumes that Plaintiffs must allege a property right in the Confidential Information in order to support the state law claims.[15] While it is true that Attorney John's alleged taking of information is central to the FAC and serves as an underlying factual basis for all claims, Plaintiffs do not bring a conversion claim requiring the identification of property rights. *See Gabriel Tech. Corp. v. Qualcomm Inc.*, No. 08cv1992-MMA(POR), 2009 WL 3326631, at *11 (S.D. Cal. Sep. 3, 2009) (CUTSA does not supersede claims "where the facts in an independent claim are similar to, but distinct from, those underlying the misappropriation claim"). These claims seek to address Plaintiffs' rights and remedies separate and aside from Attorney John's alleged misappropriation.

---

[15] The *Silvaco* court stated that a plaintiff making a *conversion* claim "must identify some *property* in which he had *property rights* with which the defendant could, and did, interfere." 184 Cal. App. 4th at 238. Here, Plaintiffs do not assert a conversion claim.

United States District Court
Northern District of California

For the reasons set forth above, Fuisz Pharma Defendants have failed to provide any authority that the Court should infer the existence of a CUTSA claim.  Accordingly, the Second Motion to Dismiss is **DENIED** as to the third, fifth, seventh, ninth, and tenth claims on these grounds.

### 5.   Statute of Limitations

#### a.   Application of Section 340.6 to Third, Fifth, Seventh, Ninth, and Tenth Claims Against Fuisz Pharma Defendants

With respect to the statute of limitations, the Fuisz Pharma Defendants request that the Court dismiss all claims stemming from the claim of legal malpractice against Defendant Attorney John on the ground that if said claim is time-barred against Attorney John, it should also be time-barred against them.  The question raised is whether the one-year statute of limitations for legal malpractice or the more general three-year statute applies to Fuisz Pharma Defendants.

The one-year statute in Section 340.6 explicitly applies to "action[s] against an attorney for a wrongful act or omission . . . arising in the performance of professional services."  Fuisz Pharma Defendants have provided the Court with no compelling authority extending Section 340.6 to claims against non-lawyers.[16]  Instead, they argue that the gravamen of all the claims are for legal malpractice because the injury suffered is by reason of Attorney John's alleged malpractice or breach of fiduciary duties as a lawyer.  Second Motion at 17.

The Court finds the fifth claim for aiding and abetting breach of fiduciary duties is based upon the same operative set of facts as the claim for breach of fiduciary duties claim itself.[17]  Accordingly, the Second Motion to Dismiss the fifth claim for aiding and abetting breach of fiduciary duties is

---

[16]  The court in *Quintilliani v. Mannerino*, cited by Fuisz Pharma Defendants, involved a different situation where an attorney agreed to provide both legal and non-legal (consulting) services under an independent contractor agreement.  62 Cal. App. 4th 54, 63 (Cal. Ct. App. 1998).  While the court held that a claim for negligence as to the non-legal services was not subject to Section 340.6, the claims for breach of contract, breach of fiduciary duties, and negligent misrepresentation *were* barred by Section 340.6 because the contract for legal and non-legal services was "inextricably intertwine[d]" and fiduciary obligations "arose solely from the[] attorney-client relationship[]."  *Id.* at 67–68.  Further, the "intermingling of alleged legal and non[-]legal misrepresentations in [the negligent misrepresentation claim] should lead to the application of section 340.6."  *Id.* at 69.  This case is distinguishable from the case at hand, where non-attorneys Fuisz Pharma Defendants seek to have Section 340.6 applied to them.

[17]  The parties agree that the statute of limitations for breach of fiduciary duties, as alleged against Attorney John, is also one year.

United States District Court
Northern District of California

1  **GRANTED.**  Because the parties have not briefed the issue of whether an aiding and abetting claim

2  may survive when the underlying claim upon which the aiding and abetting claim is based has been

3  dismissed on statute of limitations grounds, this dismissal is **WITH LEAVE TO AMEND** if Plaintiffs

4  have legal authority to re-plead aiding and abetting as an independent claim.

5       As to the third, seventh, ninth, and tenth claims, the Second Motion to Dismiss is **DENIED.**

6  Those claims are separate and distinct from a claim of legal malpractice or breach of fiduciary duties.

7  As such, the Court will not extend the one-year statute to the Fuisz Pharma Defendants.[18]

8
         **b.**     **Application of the Three-Year Statute of Limitations for CUTSA**

9           **Claims**

10       Fuisz Pharma Defendants contend that the Court should dismiss the third, fifth,

11  seventh, ninth, and tenth claims against them because they are barred by CUTSA's three-year statute

12  of limitations under Cal. Civ. Code section 3426.6.  Second Motion at 18.  For the reasons set forth

13  above, CUTSA does not supersede any of the state law claims asserted against Fuisz Pharma

14  Defendants.  Accordingly, the Second Motion is **DENIED** on this ground.

15           **c.**     **Remaining Statute of Limitations Issues**

16       While most of the parties' arguments applied globally, a few remain.

17           **i.**     **Unjust Enrichment (Third Claim)**

18       As alleged, the FAC focuses this claim on the benefits and gains received

19  for the '612 Patent itself.  FAC ¶¶ 105–10.  Plaintiffs argue that with respect to this claim in

20  particular, the two-year statute of limitation pursuant to Cal. Code of Civil Procedure section 339(1)

21  applies and runs from November 2010—when the '612 Patent issued.  Second Opp. at 23.  Fuisz

22  Pharma Defendants' cursory argument that the statute should run from the date the Fuisz Provisional

23

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

25  [18]  The Court notes, however, that a claim for "civil conspiracy" does not exist.  *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994) ("Conspiracy is not a cause of action, but a legal

26  doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.  By participation in a civil conspiracy, a

27  coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy.  In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." )  Here,

28  Plaintiffs already seek direct liability from Richard and Joseph as direct tortfeasors, and the fiduciary duty, malpractice, and contract claims against Attorney John are time-barred.

which was published in January 2008 lacks merit because the date is arbitrary in that it does not bear any reasonable relation to the actual claim being brought.  Second Reply at 14 n.4.

For these reasons, the Court **DENIES** the Second Motion to the extent that Fuisz Pharma Defendants assert that the third claim is time-barred.

### ii.  Unfair Competition and Unfair Business Practices (Seventh Claim)

As discussed with respect to Attorney John, the seventh claim is pled as a common law claim for unfair competition and unfair business practices.  Plaintiffs contend that this claim is subject to a four-year statute of limitations because it is brought under the UCL and further confirmed their position at the hearing.  Second Opp. at 21–22 & n. 11.

The Court hereby **DISMISSES** the seventh claim **WITH LEAVE TO AMEND** for Plaintiffs to properly plead the basis of this claim against Fuisz Pharma Defendants, to the extent one exists.

### iii.  Inducing Breach of Contract and Tortious Interference with Contractual Relations (Ninth Claim)

As an alternative to the one- and three- year statutes of limitations, Fuisz Pharma Defendants contend this claim should be barred by the two-year statute of limitations under Section 339(1).  Second Motion at 17–18.  The issue here is when the statute was triggered.

The Fuisz Pharma Defendants assert the statute was triggered in January 2008, when the Fuisz Provisional was published because, at that time, a specific monetary value was conveyed to Richard and Joseph, causing injury to Plaintiffs.  Second Reply at 14.  Plaintiffs argue that claim did not arise until November 2010 when the '612 Patent was issued.  Second Opp. at 24.

For the reasons set forth above, the Court finds that the statute began to run no later than October 28, 2008 when Plaintiffs, by their own allegations, had reason to know that Fuisz Pharma Defendants had induced a breach of contract or knew that they had tortiously interfered with the contract.  *See* Section II.B.2.  Because of the Law Firm Response, Plaintiffs had reason to believe that Attorney John had taken the Theranos Confidential Information and provided it to his father and brother, and that they had used the information in filing the Fuisz Provisional.  FAC ¶ 71.  As such, Plaintiffs necessarily knew of the basis of the ninth claim by that date as well.

United States District Court
Northern District of California

1   Accordingly, because the lawsuit was filed more than two years after October 28, 2008, the

2   Second Motion to Dismiss as to the ninth claim is **GRANTED** as time-barred.

3   **III.    CONCLUSION**

4   For the foregoing reasons, the Court **GRANTS** the First Motion to Dismiss and **GRANTS IN**

5   **PART AND DENIES IN PART** the Second Motion to Dismiss.  More specifically, the Court rules as

6   follows:

- The fourth claim for breach of fiduciary duties, fifth claim for aiding and abetting breach of fiduciary duties, sixth claim for legal malpractice, eighth claim for breach of contract, and tenth claim for civil conspiracy against John Fuisz are **DISMISSED WITHOUT LEAVE TO AMEND**.  The seventh claim for unfair competition/unfair business practices against John Fuisz is **DISMISSED WITH LEAVE TO AMEND**.

- The Second Motion to Dismiss as to the first claim for correction of inventors (against Fuisz Pharma, Richard Fuisz, and Joseph Fuisz), second claim for declaratory judgment based on invalidity and unenforceability of the '612 Patent (against Fuisz Pharma), and third claim for unjust enrichment (against Fuisz Pharma, Richard Fuisz, and Joseph Fuisz) is **DENIED**.

- The fifth claim for aiding and abetting breach of fiduciary duties (against Richard Fuisz and Joseph Fuisz) and seventh claim for unfair competition/unfair business practices (against Fuisz Pharma, Richard Fuisz, and Joseph Fuisz) are **DISMISSED WITH LEAVE TO AMEND**.

- The ninth claim for inducing breach of contract/tortious interference with contractual relations (against Richard Fuisz and Joseph Fuisz) and tenth claim for civil conspiracy (against Richard Fuisz and Joseph Fuisz) are **DISMISSED WITHOUT LEAVE TO AMEND**.

Plaintiffs have **twenty-one (21) days** from the date of this Order to file a Second Amended Complaint. Thereafter, Defendants have **twenty-one (21) days** from the date of service to respond. This Order terminates Dkt. Nos. 62 & 65.

**IT IS SO ORDERED.**

Dated: June 26, 2012

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**