UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERANOS, INC. and ELIZABETH HOLMES,<br><br>    Plaintiffs,<br><br>    vs.<br><br>FUISZ PHARMA LLC, RICHARD C. FUISZ, and JOSEPH M. FUISZ,<br><br>    Defendants.<br>_____<br>FUISZ PHARMA LLC, RICHARD C. FUISZ, and JOSEPH M. FUISZ,<br><br>    Plaintiffs,<br><br>    vs.<br><br>THERANOS, INC. and ELIZABETH HOLMES,<br><br>    Defendants. | Case No.: 11-cv-05236-YGR<br>Related Case No. 12-cv-03323-YGR<br><br>**ORDER GRANTING MOTION TO STRIKE INFRINGEMENT CONTENTIONS** |

The instant dispute arises from two actions currently pending before the Court. In Case No. 11-cv-05236 ("California Action"), Plaintiffs Theranos, Inc. and Elizabeth Holmes (collectively, "Theranos") allege various patent and state law claims against Defendants Fuisz Pharma LLC, Richard C. Fuisz, and Joseph M. Fuisz (collectively, "Fuisz"). Both actions concern U.S. Patent No. 7,824,612 ("'612 Patent").

In essence, Theranos claims that Fuisz wrongfully obtained and used Theranos' confidential information, upon which the '612 Patent is based, and therefore seeks correction of the inventors on

the patent itself and declaratory judgment based on theories of invalidity and unenforceability. 35 U.S.C. § 256. (*See* Dkt. No. 84 (Second Amended Complaint and Jury Demand ("SAC")) ¶¶ 1, 29, 91 & 102–103.) In the California Action, Fuisz filed a counterclaim against Theranos alleging infringement of the '612 Patent. (Dkt. No. 93 (Defendants Fuisz Pharma LLC, Richard C. Fuisz, and Joseph M. Fuisz's Answer to Second Amended Complaint and Counterclaims ("Counterclaim")).) In addition, six days after the filing of the California Action, Fuisz filed a separate action in Delaware alleging one claim of infringement of the '612 Patent, Case No. 12-cv-03323 ("Delaware Action"). (Dkt. No. 1 (Complaint for Patent Infringement ("Delaware Compl.").) Upon motion, the District Court for the District of Delaware transferred the Delaware Action to this District. This Court then related the two actions.

In both actions, Theranos has filed a Motion to Strike Infringement Contentions ("Motions to Strike" or "Mot."). (Dkt. No. 99 in California Action; Dkt. No. 46 in Delaware Action.) Theranos seeks to strike Fuisz's infringement contentions ("Contentions") and to stay infringement-related discovery because Fuisz has not satisfied their obligations under the Fed. R. Civ. P. 11 and 26(g) and Patent Local Rules ("Patent L.R.") 2-3 and 3-1. Fuisz contends that neither striking nor a stay of discovery is appropriate.

Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the Motions to Strike appropriate for decision without oral argument. Accordingly, the Court **VACATES** the hearing scheduled for December 7, 2012.[1] Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the Motions to Strike and the request to stay infringement-related discovery.

**I.   BACKGROUND**

**A.   FACTUAL AND PROCEDURAL BACKGROUND**

The gravamen of the cases at hand rests on the wrongful taking and using of confidential information, not traditional patent infringement. In the California Action, Theranos alleges that Fuisz wrongfully took and used Theranos' confidential and proprietary information to apply for the '612

---

[1] In light of the Court vacating the hearing date, the parties' stipulated request to reschedule the hearing is **DENIED AS MOOT.** (Dkt. No. 104 in California Action.)

2

Patent. Theranos alleges that the United States Patent and Trademark Office would not have issued the '612 Patent but for Fuisz's deception, and that Richard and Joseph Fuisz falsely declared that they were the original, first, and sole inventors of the subject matter claimed in the patent application. Theranos claims that Plaintiff Elizabeth Holmes and Timothy Kemp (a Theranos employee) should have been named as inventors on the '612 Patent and seeks correction of inventorship on the patent. Theranos further claims that the '612 Patent is unenforceable based on Richard and Joseph Fuisz's inequitable conduct.

The title of the '612 Patent reads: "Bodily Fluid Analyzer, and System Including Same and Method for Programming Same." (Counterclaim ¶ 7; Delaware Compl. ¶ 7.) As alleged in the SAC, Theranos is "a healthcare systems company that develops groundbreaking technologies used in the collection, analysis, and communication of health information." (SAC ¶ 2.) It "has created integrated systems, methods, and processes for real-time testing, decision making, and individualized therapy that deliver faster, more accurate, and less expensive health care to physicians, patients, and consumers." (*Id.*) Fuisz alleges that "Theranos Accused Devices enable healthcare professionals and pharmaceutical companies to track patients' individual responses to prescribed medicines," . . . [and] that "handheld monitors detect changes in the levels of biochemical markers directly induced by the drug, then wirelessly communicate results to medical personnel through a bioinformatics server." (Counterclaim ¶ 11; Delaware Compl. ¶ 11.) Further, "[t]he Theranos platform consists of a Reader and disposable cartridges that analyze a specific prescription medicine," with "the Reader automatically transmit[ting] analysis data to the HIPAA-complaint Theranos database" which makes available to healthcare professionals the detailed, real-time information. (Counterclaim ¶ 11; Delaware Compl. ¶ 11.)

As noted above, Fuisz has filed two infringement claims based on the '612 Patent. Fuisz admits that the claims are "nearly identical." (Opposition to Motion to Strike Infringement Contentions ("Opposition" or "Opp.") at 4 (Dkt. No. 101 in California Action; Dkt. No. 48 in Delaware Action).) Fuisz initiated the first infringement claim on November 1, 2011 with the Delaware Action—only *six days* after the California Action was filed. The four-page Delaware Complaint alleged generally that "Theranos has infringed and is infringing the Asserted Patent under

35 U.S.C. [section] 271 by making, using, offering for sale, selling, importing, and/or exporting without authority, personalized biomonitoring and informatics systems to monitor the effects of prescription medicines (the 'Theranos accused devices')." (Delaware Compl. ¶ 10.) Following amendments to the complaint and motions to dismiss, Fuisz filed the nearly-identical infringement Counterclaim in the California Action on August 7, 2012. Although filed more than nine months after the Delaware Complaint, the Counterclaim contained one sole additional allegation, namely that "Theranos has infringed and is infringing *at least claim 9* of the Asserted Patent . . . ." (Counterclaim ¶ 10 (emphasis supplied).)[2]

### B. PATENT LOCAL RULES

"The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Bender v. Maxim Integrated Prods., Inc.*, No. C 09-01152 SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) (alteration in original) (internal citation omitted). To that end, a party claiming patent infringement must serve a "Disclosure of Asserted Claims and Infringement Contentions" on all parties pursuant to Patent L.R. 3-1. In the disclosure, the party asserting infringement must, among other things: (a) identify each claim of each patent that is allegedly being infringed; (b) separately for each asserted claim and as "specific[ally] as possible," identify each accused apparatus, product, device, process, method, act or other instrumentality (or "Accused Instrumentality") for each claim of which the party is aware; and (c) provide "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1. This rule is a discovery device that "takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079-VRW, 2002 WL 32126128, at *4 (N.D. Cal. Aug. 13, 2002); *see Bender v. Maxim Integrated Prods.*, 2010 WL 1135762, at *2. The rule is also intended to require the party claiming infringement "to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v.*

---

[2] Fuisz also admits that they filed their Counterclaim "[a]s a precautionary measure." (Opp. at 4.) Because the infringement claims are "nearly identical," the Court reasonably infers that both infringement claims are, by Fuisz's own characterization, "precautionary."

4

*Advanced Micro Devices, Inc.,* No. C-09-1149 MMC (EMC), 2010 WL 363341, at *1 (N.D. Cal. Feb. 1, 2010). That party is required to include in its infringement contentions all facts known to it, *including* those discovered in its pre-filing inquiry. *Renesas Tech. Corp. v. Nanya Tech. Corp.,* No. C03-05709 JF HRL, 2004 WL 2600466, at *2 (N.D. Cal. Nov. 10, 2004).

"[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v. Robotic Vision Systems, Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000)). While the patent rules do not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case, . . . a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." *DCG Sys. v. Checkpoint Techs., LLC*, No. C 11-03792 PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012); *Shared Memory Graphics*, 812 F. Supp. 2d at 1025 (patent holder "must map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction").

### C.   PENDING MOTIONS

Theranos asks the Court to strike Fuisz's Contentions because they are facially inadequate and provide insufficient detail under Patent L.R. 3-1. In particular, Theranos identifies three deficiencies.

First, as set forth above, pursuant to Patent L.R. 3-1(c), a party must serve a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality."[3] In addition, the party must identify how each "accused apparatus, product, device, process, method, act or other instrumentality . . . of each opposing party" is infringing each separate claim. Patent L.R. 3-1(b). Here, Fuisz has identified "at least" seven claims in the '612 Patent which they argue Theranos infringes: claims 1, 7, 8, 9, 10, 18 and 19. As an initial matter, Theranos emphasizes that while claim 10 is an asserted claim, Fuisz's chart fails to include that claim. (Mot. at

---

[3] A "limitation" is a required part of an invention set forth in a patent claim. Robert A. Matthews, Jr., Patent Jury Instruction Handbook § 1:8 (2011–2012 ed.) (noting that the word "limitation" is often used interchangeably with the word "requirement").

12; *see* Declaration of Lisa Nousek in Support of Motion to Strike Infringement Contentions ("Nousek Decl."), Ex. A (Disclosure of Asserted Claims and Infringement Contentions and Identification of Accompanying Document Production Pursuant to Local Rule 3-1 and 3-2 (Dkt. Nos. 99-2 & 99-3) at 3 & 6.)

Next, Theranos contends that certain limitations that Fuisz has identified have no logical relationship to the claim element cited or that Fuisz has responded to the limitations with an identical non-sensical assertion. (Mot. at 12.) Theranos argues that rather than identifying where each limitation of each asserted claim is found in the accused devices, Fuisz merely repeats references to prior art that were explicitly stated in the '612 Patent and summarily concludes that Theranos devices practice each limitation of the asserted claims.[4] (*Id.* at 13.)

Third, Theranos argues that Fuisz's contentions "parrot" language of the claims themselves and that every single response is made on information and belief, which is insufficient to show the identification of "specific limitations" showing direct infringement under Patent L.R. 3-1. (*Id.* at 14.) Theranos concludes that Fuisz's inability to provide detail shows that they did not conduct a reasonable inquiry prior to filing suit—as is required by Rule 11—and that they have failed to act with any diligence in fulfilling their duties. (*Id.* at 15.)

Fuisz's Opposition suggests that the basis for their infringement claims is presumptive in nature. Fuisz assumes that Theranos is using infringing products based upon allegations in its own SAC. (*See* Opp. at 6–7.) Because Fuisz denies that they have taken Theranos' confidential information, they contend that Theranos' use of its own products must infringe on the '612 Patent. (*Id.* (quoting SAC and arguing that Theranos' "statement[s] impl[y] that Theranos' inventions practice the '612 Patent" and thus Fuisz is entitled to discovery).) Further, Fuisz contends that they would be "willing to supplement its infringement contentions after obtaining at least some discovery from Theranos." (Opp. at 14.) Currently, it cannot because "public information regarding Theranos'

---

[4] Theranos also argues that Fuisz's complaint (presumably, both the Counterclaim and Delaware Complaint) and Contentions are "fatally defective" because the only accused devices described pre-existed the '612 Patent *and* were disclosed *as prior art* in the patent. (Mot. at 1.) To the extent that Theranos seeks a dispositive ruling on the infringement claims based, at least in part, on the consideration of documents produced thus far in discovery, such determination is inappropriate on this Motion. (*See* Mot. at 8–11.)

6

products is extremely limited" and "the information necessary to provide more substantive infringement contentions is in the hands of Theranos." (*Id.* at 2.)[5] Fuisz further opposes the Motion on the ground that discovery should not be stayed because "Theranos technical information goes to the heart of its inventorship, damages and unfair competition claims it has affirmatively asserted against Fuisz Pharma." (Opp. at 1.) They also argue that because Theranos initiated litigation in the first instance, Fuisz is thereby "entitled to technical information about the conception and reduction to practice of the any [*sic*] Theranos technology that allegedly uses the '612 Patent." (*Id.*)

## II. DISCUSSION

The Court is called upon to determine whether Fuisz's disclosures are adequate, and, if not, what is the appropriate consequence.

In patent litigation, vague and conclusory contentions are inadequate. *Network Caching*, 2002 WL 32126128, at *5–6 (requiring further detail where infringement contentions were "replete with vague discussions of claim terms" and merely "mimic[ked] the language of the claim"); *Shared Memory*, 812 F. Supp. 2d at 1026 ("vague contentions and conclusory statements" which invite defendants and the court to assume that a limitation exists fall short of providing a "meaningful description of its theories" under Patent L.R. 3-1); *see Bender v. Maxim Integrated*, 2010 WL 1135762, at *2 (court granted motion to compel further infringement contentions and denied motion to strike, but refused to order defendant to produce proprietary schematics based on plaintiff's assumptions). Accordingly, when appropriate, courts in the Northern District have "agreed to stay a patent defendant's otherwise applicable discovery obligations in light of deficient infringement contentions." *Implicit Networks Inc. v. Hewlett-Packard Co.*, No. C 10-03746 SI, 2011 WL 3954809, at *4 (N.D. Cal. Sept. 7, 2011); *Network Caching*, 2002 WL 32126128, at * 7; *InterTrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 WL 23120174, at *4 (N.D. Cal. Dec. 1, 2003) (staying defendant's invalidity contentions and document production until plaintiff served amended infringement contentions). Fuisz's silence as to the persuasiveness of these authorities is telling.

---

[5] The Court notes that Fuisz also complains repeatedly that Theranos filed the California Action without a "shred" of evidence and now seeks to shield itself from producing its own documents that are relevant to its invalidity claim. (Opp. at 1 & 8.) Without taking a position on these complaints, the Court notes that the issue is not relevant to the instant Motion.

7

Here, Fuisz asserts that as "presently understood," Theranos infringes "at least claims 1, 7, 8, 9, 10, 18 and 19" of the '612 Patent ("Asserted Claims"). (Nousek Decl., Ex. A (Contentions) at 1–2.) Fuisz also "presently understands" that the "Accused Instrumentality" for each Asserted Claim is the use of:

    (i)       the Theranos Biomarking Monitoring System in a clinical trial sponsored by Stanford University;

    (ii)      the Theranos In-Home Graphical User Interface Module used in a clinical trial sponsored by GlaxoSmithKline; and

    (iii)     the Theranos System used in a clinical trial sponsored by the Mayo Clinic

(collectively, "Clinical Trials"). (Contentions at 2–4.) While this information provides some detail on the Accused Instrumentalities, the information is minimal, at best.

A number of deficiencies are apparent from review of Fuisz's Contentions. For example, it does not appear that each limitation in claim 1 has been separately addressed by Fuisz. (*Compare* '612 Patent, attached as Ex. A to Counterclaim (Dkt. No. 93-1) *with* Contentions at 4–5.) Moreover, the substance of Fuisz's identification of where *each* limitation of *each* asserted claim is found within *each* Accused Instrumentality is generic. Not only does Fuisz repeat that the Clinical Trials are "examples" of infringing uses (Contentions at 4 (claim 1) & 5 (claim 9)), but a number of responses consist of nothing more than a conclusion based "on information and belief" that something exists or occurs. Specifically:

- On information and belief, access to configuring the handheld unit is controlled through security software that limits access. On information and belief, the Theranos System, configures the handheld unit is set with alert information in the handheld device. (Contentions at 4:19–22, 5:1–4.)

- On information and belief, the Theranos System, also known as the central database, contains a data reader. (*Id.* at 4:26–27, 6:4–5.)

- On information and belief, Theranos Graphical User Interface as part of the Theranos System contains a display. (*Id.* at 5:6–7, 6:3–4.)

- On information and belief, the Theranos [*sic*] and/or the Investigator working in conjunction with Theranos set the threshold value as part of the configuration process.

8

(*Id.* at 5:7–10, 5:10–13, 6:12–15, 6:15–18.)

- On information and belief, the element is found in the Theranos handheld unit, the n-Home Graphical User Interface Module and the Theranos System, also known as the central database that is remotely connected to the handheld unit. (*Id.* at 5:21–27.)

- On information and belief, the element is contained in the handheld unit which contains a biochip for sensing an analyte. (*Id.* at 5:27–6:2.)

Fuisz copies and pastes these responses throughout its Contentions, further evidencing the presumptive nature of their claims. On balance, Fuisz's chart contains vague, conclusory, and confusing statements that do not satisfy the requirement that their identifications be "as specific as possible." Patent L.R. 3-1(b).

In general, Rule 11's "pre[-]filing inquiry establishes a minimum level of detail that Patent [L.R.] 3-1 [also] requires." *Network Caching Tech. LLC*, 2002 WL 32126128, at *4. While Rule 11 generally requires that a party make a reasonable inquiry into applicable facts and law before filing a document, the Federal Circuit has held that "[b]efore filing counterclaims for patent infringement, Rule 11 . . . must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

*View Eng'g* is instructive. There, defendant Robotic Vision Systems, Inc. ("Robotic") had no *factual* basis for its infringement counterclaims. Instead, its belief that infringement had occurred was based on a senior vice-president and board member, who, in turn, had based his belief on his knowledge of Robotic's patents, plaintiff View Engineering, Inc.'s ("View") advertising, and statements that View made to its customers. *Id.* at 983–85. In other words, the infringement counterclaims were based on what Robotic could learn about View's machines from publicly-available information, but Robotic had "no way . . . to determine if View was *actually* infringing the eight patents until [Robotic] had an opportunity to complete at least preliminary discovery." *Id.* at 985 (second alteration in original). Robotic's counsel "continually told View that once discovery was allowed, it would re-evaluate the infringement issue and withdraw any claim of infringement where the discovery evidence proved non-infringement." *Id.* at 985 (counsel also acknowledged that it could

9

not do an element-by-element analysis of infringement because it "could not do so in that sort of detail until [it] learned what View actually did") (internal citation omitted). Thus, Robotic did not conduct any independent claim construction analysis nor any formal written infringement analysis before filing the counterclaims. *Id.* The Federal Circuit stated that during the four months between the filing of the underlying declaratory judgment action and the infringement counterclaims, Robotic was "afforded ample opportunity . . . to conduct some form of reasonable inquiry." *Id.* at 986.

Again, tellingly, Fuisz does not respond to *View Eng'g* in their Opposition. Instead, they essentially concede they have no additional information in their possession to provide more detailed responses in accordance with Patent L.R. 3-1. Even if little publicly-known information about Theranos' technologies is available, Fuisz's obligations under the Local Rules, Fed. R. Civ. P. 11, or other Federal Circuit authority are not obviated.[6] By arguing that Theranos' information is not publicly-available and by offering to amend the Contentions only after discovery has occurred, Fuisz is attempting to ignore their obligations and shift the burden to Theranos.[7] Such tactic is improper. *See Bender v. Maxim Integrated Prods. Inc.*, No. C 09-01152 SI, 2010 WL 2991257, at *3 (N.D. Cal. July 29, 2010) (plaintiff cannot assert conclusions and effectively shift the burden of identifying his claims to defendant). It is not enough that Fuisz has provided some "relevant" information, as they claim to have done. (*See* Opp. at 2 & 15.) Their obligation is to pinpoint their contentions "as specific[ally] as possible." Patent L.R. 3-1(b). Moreover, "[i]n bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged

---

[6] Fuisz notes that Theranos did not comply with the 21-day safe harbor provision of Fed. R. Civ. P. 11 and has not filed a Rule 11 motion. (Opp. at 13 n.1.) This is true, but irrelevant. Whether Theranos moved for sanctions under Rule 11 does not relieve Fuisz or counsel's independent obligations thereunder.

[7] To the extent that Fuisz relies on *DCG Sys. v. Checkpoint Techs.* for the proposition that a patentee is only required to provide information that is publicly-known and that amendment is permitted to include the non-public information learned through discovery (Opp. at 13), Fuisz is mistaken. In *DCG Systems*, the court held that a patentee had shown good cause to amend its infringement contentions to add new claims based on previously-undisclosed product manuals of defendant's. 2012 WL 1309161, at *2–3. The patentee in that case did not seek to amend its otherwise deficient contentions to substantiate existing infringement claims based entirely on information obtained through discovery. In addition, the Court notes that authority provided by Fuisz regarding courts' "recognition" that there are situations where a plaintiff is constrained by defendants' sole possession of information relates to cases involving allegedly-infringing source code. (Opp. at 13.) *See DCG Sys.*, 2012 WL 1309161, at *2 n.13.

10

infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *View Eng'g*, 208 F.3d at 986; *cf. Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2009 WL 2972374, at *4 (N.D. Cal. Sept. 14, 2009) (holding on a motion to dismiss that it is insufficient to generally allege that "there may or may not be infringement, we need further discovery to find out" or that a party "believes there *is* infringement and is making that factual contention, but needs discovery to gather evidentiary support for the contention").

Accordingly, the Court finds that Fuisz's Contentions do not provide the level of detail required by Patent L.R. 3-1 nor fair notice of the nature of the infringement claims alleged.

## III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motions to Strike.  Fuisz must file a motion for leave to amend its infringement contentions if it seeks to proceed with their infringement claims in either action.  Alternatively, Fuisz may dismiss their infringement claims without prejudice, and may file a motion for leave to amend to re-add those claims when and if discovery reveals a factual basis for those claims.  As such, the Court **STAYS** infringement-related discovery until further order of the Court.  This Order terminates Dkt. No. 99 in the California Action (No. 11-cv-05236) and Dkt. No. 46 in the Delaware Action (No. 12-cv-3323).

As stated, *supra* in n.1, the stipulated request to reschedule the hearing on the Motions is **DENIED AS MOOT**.  This Order terminates Dkt. No. 104 in the California Action.

In light of this Order, Fuisz's Request to Stay or Continue the Claim Construction Proceedings Pending the Court's Ruling on Theranos' Motion to Strike Infringement Contentions is **DENIED AS MOOT**.  However, the claim construction hearing scheduled for March 6, 2013 and all accompanying deadlines for claim construction are **VACATED**.  This Order terminates Dkt. No. 105 in the California Action.

Further, a Case Management Conference is scheduled for January 28, 2013 at 2:00 p.m. for trial setting.  The parties shall comply with the Local Rules and this Court's Standing Order in Civil Cases regarding a joint case management statement.

11

**IT IS SO ORDERED.**

Dated: November 30, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**