David Boies (admitted *pro hac vice*)
Email: dboies@bsfllp.com
William D. Marsillo (admitted *pro hac vice*)
Email: wmarsillo@bsfllp.com
Lisa Nousek (admitted *pro hac vice*)
Email: lnousek@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
333 Main Street, Armonk, N.Y. 10504
Telephone: (914) 749-8200; Facsimile: (914) 749-8300

David W. Shapiro (SBN 219265)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900, Oakland, CA 94612
Telephone: (510) 874-1000; Facsimile: (510) 874-1460
Email: dshapiro@bsfllp.com

*Counsel for Theranos, Inc. and Elizabeth Holmes*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| THERANOS, INC. and ELIZABETH HOLMES,<br><br>          Plaintiffs,<br><br>     v.<br><br>FUISZ PHARMA LLC, RICHARD C. FUISZ, and JOSEPH M. FUISZ,<br><br>          Defendants. | Case No. 11-CV-05236-YGR<br><br>**JANUARY 2013 JOINT CASE MANAGEMENT STATEMENT** |
| FUISZ PHARMA LLC,<br><br>          Plaintiff,<br>v.<br><br>THERANOS, INC.<br><br>          Defendant. | Case No. 12-CV-3323-YGR<br><br>. |

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

Pursuant to the Court's Order Granting Motion to Strike Infringement Contentions (Dkt. No. 106 at 12), as well as Civil Local Rule 16-9 and the Standing Order for All Judges of the Northern District of California, Plaintiffs Theranos, Inc. and Elizabeth Holmes ("Plaintiffs") and Defendants Richard C. Fuisz, Joseph M. Fuisz, and Fuisz Pharma LLC ("Defendants") submit this Joint Case Management Statement.  The parties have previously submitted Joint Case Management Statements (*see* Dkt. Nos. 52, 67, 92) as well as Supplemental Case Management Statements (Dkt. Nos. 80, 88, 89).

1. **Jurisdiction and Service**

Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.  Venue is proper under 28 U.S.C. § 1391 because, *inter alia*, a substantial part of the events giving rise to the claims asserted herein took place in this District.

All Defendants have been served.

2. **Facts**

Plaintiffs' Statement

Plaintiff Theranos, Inc. is a Silicon Valley health care systems company that develops groundbreaking technologies for collecting, analyzing, and communicating health information. Theranos believes that the technology that it conceived and invented will soon transform the health care industry.  Unlike Defendants, Theranos has continuously devoted significant financial resources and personnel to researching, developing, and commercializing bodily fluid analyzer technologies for nearly a decade.  Indeed, the Defendants' '612 patent that is at the center of this case extensively quotes and incorporates Theranos's public disclosures about its technology, and admits that Theranos's work is prior art.

Plaintiff Elizabeth Holmes is Theranos, Inc.'s chief executive officer.  She is an inventor on multiple patents, including those relating to bodily fluid analyzers and systems.  Ms. Holmes conceived the technology on which she founded Theranos, Inc. when she was a chemical and electrical engineering student at Stanford University.  She founded Theranos, Inc. in 2003, when she was nineteen years old.

Ms. Holmes and others at Theranos conceived and developed methods, systems and other technologies to analyze a patient's blood and to transmit that analysis and related data wirelessly to a secure database for further analysis and/or access, including by the patient's physician. The result is that patients can transmit medical data and receive feedback from their health care provider, all in real-time. Theranos's technologies resulted from years of research and development and are based on information that Theranos has maintained as confidential.

In 2003, Theranos retained McDermott Will & Emery LLP ("MWE" or "the Law Firm") to obtain patents for certain Theranos inventions. Washington, D.C. lawyers in MWE's Intellectual Property department prepared, filed, and prosecuted all of Theranos's domestic and international patent applications until approximately early 2006. Unbeknownst to Theranos, John Fuisz, the brother of Defendant Joseph Fuisz and the son of Defendant Richard Fuisz, was one of the Washington, DC lawyers and partners in the MWE's Intellectual Property Department during this time. As a result, John Fuisz could access Theranos's confidential information.

Among the patent applications that Washington, DC lawyers in MWE's Intellectual Property Department drafted and filed for Theranos are four provisional applications dating from 2005 that are particularly relevant to this case (collectively, the "Theranos Provisionals"). By filing provisional patent applications, Theranos was able both to obtain an early filing date and to preserve its ability to subsequently draft specific patent claims in a non-provisional patent application, for one additional year. Theranos's provisional patent applications contained highly confidential and proprietary information that was intended to demonstrate to the United States Patent and Trademark Office ("PTO") that the disclosed inventions were novel and otherwise patentable.

In or about early 2006, Theranos retained another law firm to take over the preparation, filing, and prosecution of subsequent patent applications. That new law firm filed several non-provisional patent applications for Theranos on March 24, 2006 (the "March 24, 2006 Applications") that claimed priority to the Theranos Provisionals. Neither the Theranos Provisionals nor the March 24, 2006 Applications were published—and their contents were therefore not available to the public—until November 16, 2006 at the earliest. Until then, the Theranos Provisionals, the March 24, 2006 Applications, and all the highly confidential research, technology, and materials disclosed in those

documents, were closely guarded and were not publicly available.

On or about September 23, 2005—after MWE had filed three of Theranos's four Provisionals—Richard Fuisz contacted a patent attorney at Antonelli, Terry, Stout & Kraus, LLP, and asked him to prepare a patent application.  At that time, MWE was simultaneously preparing Theranos's fourth Provisional, which it filed with the PTO on September 28, 2005.  In April 2006— one month after Theranos filed its March 24, 2006 Applications—Richard and Joseph Fuisz filed provisional patent application 60/794,117 (the "Fuisz Provisional Patent Application").  On April 24, 2007, Richard and Joseph Fuisz filed non-provisional patent application No. 11/790,131, which matured into United States Patent No. 7,824,612 (the "'612 patent").  When Richard and Joseph Fuisz filed the Fuisz Provisional Patent Application in April 2006, Theranos's confidential information, including that disclosed in the Theranos Provisionals, had not been published or otherwise made publicly available.  Thus, Richard and Joseph Fuisz should not have had access to the information, data, or materials in the Theranos Provisionals or any other Theranos confidential information that Theranos provided to MWE.

Nevertheless, as Theranos would later learn, the Fuisz Provisional Patent Application relied on concepts and disclosures from the non-public Theranos Provisionals, as well as other confidential information, documents, and data that Theranos had provided to John Fuisz's Law Firm to prosecute Theranos's patent applications.

Those same concepts and disclosures form the foundation of the '612 patent, which the PTO issued on November 2, 2010.  Although the '612 patent names Richard and Joseph Fuisz as inventors, it claims subject matter that was actually invented by Elizabeth Holmes and Timothy Kemp, another Theranos employee.

Plaintiffs filed their Complaint on October 26, 2011, alleging that they are the rightful owners and inventors of the '612 Patent and seeking an order to add Elizabeth Holmes and Timothy Kemp as inventors of the '612 Patent and to remove Richard and Joseph Fuisz as inventors, as well as damages and other equitable relief. Plaintiffs contacted MWE well before filing the Complaint concerning Defendants' improper use of Plaintiffs' confidential information.  Plaintiffs entered two tolling agreements with MWE before being forced to file suit against it in the Superior Court for the District

of Columbia, after MWE refused to further toll the statute of limitations on Theranos's claims.

On October 27, 2011, one day after Theranos sued the Fuiszes in California, Richard and Joseph Fuisz purported to assign all of their right, title, and interest to the '612 Patent to Fuisz Pharma, a Delaware entity that they control.  Just a few days later, on November 1, 2011, Fuisz Pharma sued Theranos in the United States District Court for the District of Delaware alleging infringement of the '612 Patent.   Pursuant to Patent Local Rule 3-1, on August 27, 2012, Fuisz Pharma served its "Asserted Claims and Infringement Contentions" and produced documents purportedly supporting those contentions pursuant to Patent Local Rule 3-2.  These Infringement Contentions were glaringly inadequate and demonstrated the frivolousness of Fuisz Pharma's infringement claim.  They simply recited conclusory assertions (all "upon information and belief") that either bore no logical resemblance to elements of the '612 patent claims or mimicked the claims in the '612 patent.  In addition, they accused devices used in clinical studies that, according to publicly available documents, terminated before the '612 patent even issued.

On October 5, 2012, Theranos's counsel identified these defects and requested that Fuisz Pharma's counsel withdraw the defective Infringement Contentions.  Fuisz Pharma refused, and Theranos filed a motion on October 12, 2012 to strike Defendants' Infringement Contentions and to stay infringement-related discovery.  On November 30, 2012, the Court granted Theranos's motion, finding Fuisz Pharma's infringement contentions to be insufficiently detailed under the Patent Local Rules, and staying all infringement-related discovery as a consequence.  (Dkt. No. 106.)  In so holding, the Court also vacated claim-construction deadlines.  (*Id.* at 11.)

Defendants' Statement

The Defendants in this action are Dr. Richard Fuisz, his son Joseph Fuisz, and their company Fuisz Pharma LLC.  Dr. Fuisz is a licensed M.D. who has successfully prosecuted approximately 100 patents.  These patents span a broad spectrum of subject matters.  Most recently, Dr. Fuisz received a notice of patent allowance for tablet shapes that are more easily swallowed.  Dr. Fuisz is widely regarded as one of the most innovative inventors of his time.

Joseph Fuisz is co-inventor with his father of ten patents.  He is a lawyer who handles legal matters for Fuisz Pharma LLC.  Neither Dr. Fuisz nor Joseph Fuisz has ever been accused before of

participating in the use of confidential information belonging to someone else to obtain a patent. They regard the charges made by Theranos as scandalous and libelous and desire to obtain a decision as quickly as possible on the baseless charges that Theranos has made.

Defendants have received no information from Theranos supporting their claims that Theranos conceived and invented the inventions of the '612 patent, and given the totally false assertion that the '612 is similar to a Theranos patent defendants have reason to doubt this belief. Defendants have sought discovery at length regarding these important issues, but Theranos has continually refused to produce any such information.  Further underscoring this doubt by Defendants is the fact that all known prior art, including that from Theranos, was submitted to the PTO and the '612 patent was issued over it.  Defendants have always endeavored to meet fully their responsibilities to cite prior art in all patent applications, and did so with respect to the '612 patent.

Defendants own a family company, have had success in having patents approved by the patent office, have a family board of directors, and have never had on their board George P. Shultz (former U.S. Secretary of State and former Secretary of the Treasury), Robert B. Shapiro (former President of Monsanto and former CEO of The NutraSweet Company), and Donald L. Lucas (a venture capital pioneer).  Defendants have filed a wide range of patent applications covering a number of different subjects and have a track record of being inventive and creative with respect to a number of product areas including in areas being simultaneously pursued by established industry leaders.

Defendants contend that the central issue in this case is whether or not the Defendants, through John Fuisz, gained access to Theranos' confidential information prior to or during the prosecution of the '612 patent.  Put simply, all of the evidence supports the Defendants.  Dr. Richard Fuisz, Joseph Fuisz and John Fuisz have all sworn that they had no access to the Theranos confidential information when they sought and obtained the '612 patent.  Representatives of MWE have similarly sworn that John Fuisz had no access to the Theranos confidential information.  And, in a showing of total good faith and transparency, the defendants have waived attorney client privilege and provided Theranos with the full set of communications between them and patent counsel who prepared the application for the  '612 patent up to the filing of the '612 patent.  This attorney has also sworn that he had no access to Theranos confidential information.

1    Defendants do not dispute that the Theranos Provisionals were not publicly available, and

2    agree that Richard and Joseph should not have had access to the information, data, or materials in the

3    Theranos Provisionals or any other Theranos confidential information that Theranos provided to

4    MWE.  Defendants assert that they had no such access, and further assert there is no one with

5    knowledge that who would claim that they did.  This point is supported by the declarations referred to

6    above that were provided by various members of MWE who analyzed computer records and reported

7    that John Fuisz did not have access to Theranos' confidential information and never sought access to

8    it.

9    Thus, Defendants deny that their Provisional Patent Application relied upon any concept or

10   disclosure from the Theranos Provisionals.  Defendants assert that the Theranos' art and the '612 are

11   quite distinct.  Specifically, the difference is that Theranos aims at the method of analysis, which the

12   prior art in the analyzer field is heavily weighted towards already, whereas the '612 patent is a

13   method of communication of an alert level for the physician.

14   The prior art in the analyzer field is massively weighted toward the METHOD of analysis.

15   Theranos chose to go down this road.  Theranos's mainstay is the micro array system:

16   In its basic configuration, a microarray is only a collection of systematically arranged
     molecules, tethered to a surface. The surface being either porous (as nitrocellulose
17   membranes or gelpads) or solid (as planar glass, silicon or most hard polymers).
     Numerous biochemical interactions are possible between the functional groups
18   protruding from a microarray surface and the molecules to be immobilised.

19   This was not a new approach. Dr. Fuisz used a somewhat analogous system 20 years earlier called

20   "lab in a sac".  However, he was unable to patent it because of prior art.

21   It is obvious that Theranos had a business model that foresaw the Pharmaceutical company as

22   its main customer. Therefore their prime focus was first on the method of analysis and secondly on

23   the data from the analysis being fed to a Theranos center.  It was here that they saw the data being

24   examined (very similar to Oracle in the Commerce business).  Furthermore, they had a major

25   emphasis on the TI or Therapeutic Index. Again this is seen with new drugs wherein the pharma

26   company is trying to establish a balance between dosage size, beneficial effect and side effects.

27   Theranos obviously sees their business future in this Oracle style company. The research in

28   developing a system such as this is massive. The still unanswered question is whether or not the

6

BOIES, SCHILLER & FLEXNER LLP

1    metric generated is of any real use. (In most cases when your physician does blood work--he is

2    looking for an abnormal range of analyte.  No one knows for certain what it would mean if a person

3    were <u>constantly</u> monitored. The practicality is yet to be proven.)

4         Fuisz Pharma is a small family company. Dr. Fuisz would never invest time and money into a

5    <u>method</u> of analysis, as even if patented, there is always room for a newer or improved method of a

6    competitor. The Fuisz Pharma approach was different and shares no similarities with the Theranos

7    approach. The Fuiszes concerned with a world in which home analyzers were prolific and in which a

8    problem was created by the sheer volume of home analyzers, namely, how was the caregiver was

9    going to set the limits of an analyte each time he/she wrote a script for a drug.  For example, when

10   Dr. Fuisz writes a script for let us say Inspra (an aldosterone antagonist) he must be concerned with

11   potassium levels. This concern and the limits which would make him as a physician concerned for the

12   patients welfare will vary substantially by age, general health, renal health etc. This was our concern.

13   When the physician writes the script, the question is---how do I set the analyzer limits for <u>my</u> patient?

14   The Fuiszes worked out a system in which we would use a contemporary method such as a bar code

15   affixed to the medication container by the pharmacist and on a direction given on the physician's

16   script. This in turn would be read by the analyzer and the limits automatically set.  The physician

17   would be alerted by the analyzer if the limits were exceeded in either direction.  This is interesting

18   because one non limiting example used in the '612 patent was a bar code. The bar code <u>contains the</u>

19   <u>limits</u>. Theranos, in this case loosely uses the term bar code and analysis to denote similarity. In fact,

20   the opposite is true. The use of the barcode would identify the cartridge they would use in their

21   analyzer and the date of expiration of same. Put simply, Theranos uses the bar code as a method of

22   analysis and the '612 patent uses it as a method of communication of an alert level for the

23   physician.  The intellectual property is different, much as they, Theranos would prefer otherwise with

24   the issuance of the '612 patent.

25        Because the '612 patent is different from the Theranos patent and relied on no confidential

26   Theranos information, defendants assert that is impossible that the patent was invented by anyone but

27   them and that Holmes, Kemp, and any other Theranos employee who claim to be the inventor have

28   no basis in fact for their claim.

Defendants are persuaded that their infringement claim was premature.  Defendants have chosen to dismiss their infringement claims without prejudice and seek the Court's guidance on a mechanism to do so that preserves their right to bring a future infringement claim against Theranos if it actually markets products.

Defendants contend that this lawsuit was commenced without adequate investigation by Plaintiffs, with no supporting facts, and with reckless disregard of the allegations made in the complaint.  Defendants further assert that the action appears to be an attempt by a plaintiff with resources to blackmail defendants with lesser resources into giving up a patent that they invented and have a right to own.

Defendants also note that on December 29, 2012, Plaintiffs filed suit against McDermott, Will, & Emery LLP in the District of Columbia Superior Court for legal malpractice based on the identical allegations of this case, together with a claim of negligent supervision by McDermott, Will & Emery LLP (the "Plaintiffs' DC Action").  The Plaintiffs' also have indicated that they plan to appeal the dismissal of John Fuisz as a defendant from this action "as soon as they are able to do so."

### 3.  Legal Issues

Plaintiffs' Statement

Plaintiffs believe that the major legal issues include:

(1)     Whether Theranos is the rightful owner of the '612 patent;

(2)     Whether, pursuant to 35 U.S.C. § 256, Ms. Holmes and Timothy Kemp, rather than Richard and Joseph Fuisz, are the actual inventors of the '612 patent;

(3)     Whether Ms. Holmes and/or Mr. Kemp conceived certain subject matter claimed in the '612 patent;

(4)     Whether Richard and Joseph Fuisz wrongfully acquired confidential information from Theranos;

(5)     Whether the '612 patent is invalid and unenforceable;

(6)     Whether Fuisz Pharma has been unjustly enriched by improperly obtaining the '612 patent and any license or other payments or benefits it has received as the purported assignee of the '612 patent; and

(7)     Whether Theranos is entitled to damages or any form of other relief, including a constructive trust.

By identifying the foregoing issues, Plaintiffs do not waive the right to proceed on any claim or defense set forth in their respective pleadings or to seek to amend such pleadings based on, among other things, additional facts that it learns during discovery or a change in the applicable law.

Defendants' Statement

Defendants agree in part and disagree in part as to the major issues:

(1)     Defendants agree that the bottom line issue is whether the Fuiszes or Theranos is the rightful owner of the '612 patent and, logically related, whether Richard and Joseph Fuisz, are the actual inventors of the '612 patent;

(2)     Defendants do not believe that the question is whether Ms. Holmes and/or Mr. Kemp conceived certain subject matter claimed in the '612 patent; rather, the question is whether Richard and Joseph Fuisz were aware that Theranos conceived certain subject matter claimed in the '612 patent when they filed their Provisional and Non-Provisional Applications.

(3)     Defendants agree that the major factual dispute driving this case is whether Richard and Joseph Fuisz wrongfully acquired confidential information from Theranos in the manner set forth in the complaint;

(4)     Defendants disagree that a separate issue is whether the '612 patent is invalid and unenforceable; rather, the question is whether Richard and Joseph Fuisz participated in wrongfully acquiring Theranos confidential information as alleged in the complaint.

(5)     Defendants disagree that a separate issue is whether Fuisz Pharma has been unjustly enriched by improperly obtaining the '612 patent and any license or other payments or benefits it has received as the purported assignee of the '612 patent; rather, the answer to this will be clear once the factual question of whether the defendants wrongfully acquitted confidential information is decided.

(6)     Defendants disagree that there is an issue that needs to be decided now as to whether Theranos is entitled to damages or any form of other relief, including a constructive

trust; rather the issue of remedy should await a decision as to whether Theranos can prove any impropriety on the part of the defendants.

### 4.  **Motions**

On October 26, 2011, Plaintiffs filed their original Complaint, naming Fuisz Technologies Ltd., Richard C. Fuisz, Joseph M. Fuisz, and John R. Fuisz as Defendants. (Dkt. No. 1.)

On November 16, 2011, the Parties stipulated to extend the time for Defendants to respond to the original Complaint from November 18, 2011 to December 19, 2011. (Dkt. No. 14.)

On November 18, 2011, Plaintiffs filed a motion to substitute Fuisz Pharma LLC for Fuisz Technologies, Ltd. pursuant to Federal Rule of Civil Procedure 25(c). (Dkt. No. 24.)

On December 2, 2011, Defendants filed a motion for an extension of time to respond to the original Complaint from December 19, 2011 to January 13, 2012. (Dkt. No. 33.) The Court granted Defendants' motion. (Dkt. No. 41, 44.)

On December 29, 2011, Defendants filed a motion for leave to file a supplemental opposition to Plaintiffs' motion to substitute Fuisz Pharma LLC for Fuisz Technologies, Ltd as a defendant. (Dkt. No. 46.)

On January 9, 2012, Defendants filed a motion for a further extension of time to respond to the original Complaint. (Dkt. No. 48.)

On January 10, 2012, the Court denied Plaintiffs' motion to substitute Fuisz Pharma LLC for Fuisz Technologies, Ltd., but joined Fuisz Pharma LLC as a defendant and ordered that Plaintiffs file an Amended Complaint within thirty (30) days of the Order. (Dkt. No. 49.) The Court also granted Defendants an extension of time to respond to the Complaint, ordering that Defendants respond to the Amended Complaint within 21 days after the date upon which Amended Complaint is filed. *Id.*

On February 9, 2012, Plaintiffs filed their Amended Complaint, stating claims against Defendants Fuisz Pharma LLC, John R. Fuisz, Richard C. Fuisz, and Joseph M. Fuisz. (Dkt. No. 53.)

On February 16, 2012, Defendants Fuisz Pharma, Richard Fuisz, and Joseph Fuisz filed a motion for an order permitting withdrawal and substitution of counsel, which the Court granted. (Dkt. No. 56, 61.)

On February 22, 2012, Plaintiffs and Defendants Fuisz Pharma, Richard Fuisz, and Joseph Fuisz stipulated and agreed to extend Fuisz Pharma's, Richard Fuisz's, and Joseph Fuisz's time to respond to the Amended Complaint to March 9, 2012. (Dkt. No. 59.) The Court entered an Order granting the extension on February 23, 2012. (Dkt. No. 60.)

On February 27, 2012, Defendant John Fuisz filed a Motion to Dismiss Claims against John R. Fuisz Pursuant to Fed. R. Civ. Proc. 12(b)(6). (Dkt. No. 62.)

On March 3, 2012, the Parties stipulated and requested the Court to reschedule the Case Management Conference, currently scheduled for March 26, 2012, and the hearings on Defendants' Motions to Dismiss to April 9, 2012.

On March 5, 2012, the parties stipulated to consolidate the hearings on the two then-pending motions to dismiss, and consolidate those hearings with the case-management conference.  (Dkt. No. 63.)

On March 9, 2012, Defendants Fuisz Pharma, Richard Fuisz, and Joseph Fuisz filed a motion to dismiss the Amended Complaint.

On March 14, 2012, Joseph Fuisz, Richard Fuisz, and Fuisz Pharma filed a motion for administrative relief to adjust hearing dates, consolidate the hearings on the then-pending motions to dismiss, and move the case management conference.  (Dkt. No. 69.)

On March 20, 2012, the Court denied the parties' administrative requests and set dates for the Case Management Conference, and the hearings on the two motions to dismiss.

On April 3, 2012, the Court heard argument on John Fuisz's motion to dismiss.  (*See* Dkt. No. 75.)

On April 24, 2012, the Court heard argument on Richard Fuisz, Joseph Fuisz, and Fuisz Pharma's motion to dismiss.  (*See* Dkt. No. 78.)

On June 26, 2012, the Court largely granted John Fuisz's motion to dismiss on statute-of-limitations grounds, and largely denied Richard Fuisz, Joseph Fuisz, and Fuisz Pharma's motion to dismiss except where suit against those parties was governed by the one-year statute-of-limitations period that the Court found applied to malpractice actions against John Fuisz filed in California court. (Dkt. No. 83.)

On July 17, 2012, Plaintiffs filed their Second Amended Complaint.  (Dkt. No. 84.)
Defendants answered on August 7, 2012.  (Dkt. No. 93.)

On July 20, 2012, Plaintiffs filed a motion to relate the first-filed California inventorship action to the second-filed Delaware infringement action, which had recently been transferred to the Northern District of California.  (Dkt. No. 85.)   On July 25, 2012, the Court related the two actions.  (Dkt. No. 87.)

On July 30, 2012, the Court held a Case Management Conference.  (Dkt. No. 90.)  The parties then jointly proposed a case schedule.  (Dkt. No. 91.)

On October 12, 2012, Plaintiffs filed a Motion to Strike Fuisz Pharma's infringement contentions.  (Dkt. No. 99.)  The parties also stipulated to move the hearing date on that motion (Dkt. No. 104), and Defendants also moved to stay or continue claim-construction proceedings pending the Court's ruling on Plaintiffs' motion to strike.  (Dkt. No. 105.)  The Court granted that motion after full briefing but without oral argument, finding Fuisz Pharma's infringement contentions to be insufficiently detailed under the Patent Local Rules, and staying all infringement-related discovery as a consequence.  (Dkt. No. 106.)   In so holding, the Court also vacated claim-construction deadlines.  (*Id.* at 11.)

Plaintiffs anticipate moving for summary judgment on, among other things, Fuisz Pharma's infringement counterclaim/claim and certain of Defendants' affirmative defenses.   To the extent that Fuisz Pharma moves to dismiss its infringement counterclaim/claim *without* prejudice, as it indicates herein, Plaintiffs may oppose that motion on the grounds that the claim should only be dismissed *with* prejudice.  Defendants intend to ask the Court to make clear that its dismissal is based on the fact that the defendants have identified no specific products of Theranos that infringe their patent, and that the dismissal is not a ruling on the merits of whether any specific product that Theranos might produce violates the defendants' patent.

Defendants will oppose any motion for summary judgment with respect to the counterclaim, given that they are not filing an amended complaint.

Defendants anticipate moving for summary judgment on the questions:

(1) Whether the Fuiszes or Theranos is the rightful owner of the '612 patent and, logically related, whether Richard and Joseph Fuisz, are the actual inventors of the '612 patent;

(2) Whether Richard and Joseph Fuisz were aware that Theranos conceived certain subject matter claimed in the '612 patent when they filed their Provisional and Non-Provisional Applications.

(3) Whether Richard and Joseph Fuisz wrongfully acquired confidential information from Theranos in the manner set forth in the complaint.

Defendants believe that summary judgment on these issues will moot all other issues.

Defendants also anticipate filing motions to compel relating to various categories of documents that Plaintiffs refuse to produce, including (1) Theranos' alleged conception and reduction to practice documents and (2) documents supporting Theranos' unfair competition claim and its allegation that the '612 patent has competitively harmed Theranos.  The parties have reached an impasse regarding various categories and are currently working on joint letter required by this Court. The scope of motions to compel – indeed, even the need to file such motions – may turn on whether the court is willing to bifurcate issues in the manner that defendants suggest below and set an early trial date on what the defendants have identified as the core issues in dispute.

Plaintiffs intend to oppose any such motion to compel on a number of grounds, including that Plaintiffs have always indicated that they will produce many of the requested documents identified above, but have thus far withheld production pending the resolution of issues regarding Defendants' protection of the confidential information contained in these documents.  Defendants maintain that they have always intended to comply with the protective order in effect in this case.

By identifying the foregoing potential motions and issues, the Parties do not waive the right to move on any other ground based on, inter alia, facts that become available during discovery or a change in the applicable law.

**5.  <u>Amendment of Pleadings</u>**

Plaintiffs filed amended complaints on February 9, 2012, and July 17, 2012, in compliance with the Court's orders.  At this time, Plaintiffs do not anticipate further amendments.

**6.  Evidence Preservation**

The Parties are aware of their obligation to preserve relevant evidence, including electronically stored information, and each has taken steps to comply with its obligations by maintaining any relevant documents, electronic or otherwise, until this dispute is resolved.

**7.  Disclosures**

By agreement, the parties timely exchanged initial disclosures on March 21, 2012.

**8.  Discovery**

Discovery Taken to Date and Scope of Anticipated Additional Discovery:

The parties are currently engaged in fact discovery.  The fact-discovery cutoff is set for March 13, 2013.  Pursuant to the Court's Order Granting Motion to Strike Infringement Contentions, infringement-related discovery is stayed until further order of the Court and claim construction deadlines have been vacated.  (Dkt. No. 106.)

Plaintiffs and Defendants have both served and responded to Requests for Production and Interrogatories.

In response to Defendants' Requests for Production, Plaintiffs have produced documents on a rolling basis, including, thus far, all identified prior art to the '612 Patent and other documents related to the inventorship of the '612 Patent.  Plaintiffs are continuing to produce additional documents, other than those that relate solely to Defendants' infringement claim, as indicated in their responses to Defendants' Requests for Production.  For some time now, Plaintiffs have been prepared to produce a number of highly confidential documents as indicated in their responses to Defendants' Requests for Production.  Prior to doing so, however, Plaintiffs sought assurances from Defendants regarding Defendants' treatment of Theranos's confidential information under the Protective Order. For example, in September, Plaintiffs sent to Defendants a letter asking that they confirm that "no documents that Plaintiffs designate as 'Confidential' or 'Highly Confidential' will be shared with John Fuisz."  When the Protective Order was originally entered, John Fuisz was a party to this suit, so his access to Theranos confidential materials was clearly prohibited under the Protective Order.  Now that he is no longer a party, Plaintiffs are concerned that John Fuisz will be shown Theranos confidential material under the guise of him being outside counsel for Defendants.  To date,

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

Defendants have been unwilling to commit to not showing Theranos's confidential material to John Fuisz.

In part because of Defendants' unwillingness to provide timely assurances that John Fuisz will not have access to confidential information,[1] Plaintiffs have approached Defendants about instituting additional protections to ensure the security of Plaintiff's confidential information. Although Defendants rejected Plaintiff's initial proposal, Plaintiffs intend to continue to confer with Defendants to determine if the parties can reach a mutually-agreeable solution.

Defendants assert that Plaintiffs have failed to produce important documents, have stonewalled discovery claiming that the protective order drafted by Plaintiffs' counsel is inadequate, and have sought to force defendants to rely on motions to compel that are costly and should be unnecessary.   There is no dispute that Plaintiffs refuse to produce certain responsive and non-privileged documents that they have identified as relevant to their claims under the terms of the protective order that is currently in place.[2]   Whether Plaintiffs are justified in withholding such production, however, is an issue that will require Court intervention.  To date, Plaintiffs have insisted that the protective order drafted by their own counsel is inadequate.  Rather than seek a modification of the protective order to address their new concerns, Plaintiffs essentially shifted the burden on defendants to bring costly and unnecessary motions to compel to overcome Plaintiff's objection. Defendants believe that Plaintiffs' position is unnecessary, unjustified and unduly burdensome for several reasons.

First, Plaintiffs' demand that certain confidential information only be made available for inspection at their office is unduly burdensome and inappropriate.  These procedures are not only costly, but also unnecessarily inconvenient.

---

[1] After nearly four months without a response on this issue, Defendants confirm here for the first time that they regard John Fuisz's dismissal as prohibiting his access to AEO documents under the existing Protective Order, at least until such time as they may choose to appoint him counsel.

[2] Ironically, Plaintiffs freely disseminated to the public some of the documents they continue to refuse to produce to Defendants as exhibits to the Plaintiffs' DC Action against McDermott, Will & Emery.

Second, such procedures are highly unusual in cases not involving the exchange of source code, and there is no indication that there is any source code at issue in this litigation. In this regard, Plaintiffs failed to justify why such procedures are necessary in the instant action, which involves the types of sensitive business and research and development information that are routinely and adequately protected under a two-tiered protective order.

Third, Plaintiffs have yet to explain why these issues were not first raised when Plaintiffs' counsel initially proposed the protective order.

Finally, Plaintiff's insistence that Defendants represent in writing that Defendants will not provide John Fuisz with access to any documents or information designated "Highly Confidential – Attorneys' Eyes Only" ("AEO") as a condition of Plaintiffs' production of the documents at issue is unjustified. Under the protective order, John was not allowed to view such information when he was a party to this action, and Defendants believe that the fact that he is no longer a party to this action does not change this result. Defendants even assured Plaintiffs that they have no intention of sharing any such information with John. But Defendants believe that in the unlikely event that Defendants wish to retain John as their counsel in the future should the circumstances of this case change – for example, in the situation where the only claims that remain are strictly traditional invalidity claims or where the patent infringement claims are reinstated – Defendants should not be precluded from hiring John because they represented that John would not have access to AEO information. Even if Defendants opted to retain John sometime in the future, Plaintiffs would have an opportunity to object to his ability to gain access to AEO documents immediately upon the filing of John's Notice of Appearance with the Court.

Defendants have produced documents in response to Plaintiffs' Requests for Production. Defendants will have produced all known documents by the time of the CMC.

Plaintiffs have served third-party subpoenas on Antonelli, Terry, Stout & Kraus, LLP and McDermott, Will, & Emery LLP, and may serve additional third-party subpoenas. Plaintiffs have received documents from Antonelli, Terry, Stout & Kraus, LLP, but have not yet received any privilege log. Defendants have served third-party subpoenas on Elizabeth Holmes's parents, who have responded and objected. Defendants have also served deposition subpoenas on Elizabeth

1   Holmes's parents.

2        Plaintiffs anticipate taking depositions of Richard Fuisz and Joseph Fuisz, as well as other

3   party and third-party witnesses, including John Fuisz.  The depositions of the Fuiszes are, in

4   particular, central to Plaintiffs' affirmative claims—correction of inventorship, invalidity and

5   unenforceability, and unfair competition—as well as many affirmative defenses.  Plaintiffs disagree

6   with Defendants' contention that this case should proceed to trial without Plaintiffs' taking these core

7   depositions.

8        Defendants believe that this case can move forward without depositions and to a prompt trial.

9   Given the serious and detailed allegations of the complaint, Theranos should be ready and able to go

10  to trial without additional discovery from defendants and without the need for depositions.

11  Defendants are ready.

12       **9.   Proposed Limitations or Modifications of the Discovery Rules**

13            a.   Plaintiffs' Statement

14        Plaintiffs oppose Defendants' request to limit discovery, bifurcate the proceedings, and set an

15  early trial date on Plaintiffs' inventorship claim.

16        As an initial matter, the Federal Circuit has made clear that claim construction is a required

17  step in an inventorship analysis.  *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir.

18  2002) ("[A]n inventorship analysis, like an infringement or invalidity analysis, begins as a first step

19  with a construction of each asserted claim to determine the subject matter encompassed thereby.")

20  (citations omitted).  Thus, even if the case were bifurcated as Defendants request, which it should not

21  be, any case schedule should still include claim construction proceedings.

22        More importantly, it would be highly prejudicial and inefficient for the case to be bifurcated

23  as Defendants suggest.  Defendants' proposal, and their supporting arguments, rest upon the assertion

24  that the defining issue in this case is Richard and Joseph Fuisz's access to Theranos confidential

25  materials.  Though admittedly relevant to Plaintiff's correction of inventorship claim, Defendants'

26  focus on this issue improperly minimizes Plaintiffs' independent and equally viable claim for

27

28

BOIES,  SCHILLER  &  FLEXNER  LLP

invalidity and unenforceability of the '612 patent.[3]  (*See* Second Amended Complaint, Dkt. No. 84 at 19–21.)  Defendants give no justification for their conclusion that invalidity/unenforceability is not a distinct issue in this case: "Defendants disagree that a separate issue is whether the '612 patent is invalid and unenforceable; rather, the question is whether Richard and Joseph Fuisz participated in wrongfully acquiring Theranos confidential information as alleged in the complaint."  (*See* Section 3, ("Legal Issues"), *supra*.)  Defendants are simply wrong.[4]  (*See* Second Amended Complaint, Dkt. No. 84 at 19-21.)  Plaintiffs have properly pled their invalidity and unenforceability claim, and Defendants fail to justify why inventorship should take precedence.

Furthermore, trying these claims separately makes little sense given the substantial overlap between the two.  A key issue underlying both claims is whether Elizabeth Holmes and others at Theranos conceived of certain subject matter claimed in the '612 patent.  The inventorship analysis necessarily involves comparing Theranos's provisional and non-provisional patent applications to the '612 patent to establish that it was in fact Ms. Holmes and others at Theranos, not Richard or Joseph Fuisz, who invented the subject matter claimed in the '612 patent.  The analysis for Plaintiffs' invalidity claims is quite similar, as the bulk of the prior art on which Plaintiffs rely to invalidate the '612 patent are the very same Theranos provisional and non-provisional patent applications that establish Plaintiffs' claim of inventorship.  With the overlap in core issues underlying each of these claims, separate trials on inventorship and invalidity would undoubtedly involve a significant duplication of efforts.  Both will require claim construction proceedings, as well.

Defendants argue that the analysis described in the preceding paragraph is not a necessary component of the first trial, in the event they are granted the bifurcation they seek.  That is not true.  The threshold issue that Defendants identify for the first trial is: "(1) Whether the Fuiszes or Theranos is the rightful owner of the '612 patent and, logically related, *whether Richard and Joseph Fuisz, are the actual inventors of the '612 patent*."  This question of inventorship necessarily involves

---

[3] Plaintiffs also assert claims for unjust enrichment and unfair business practices, which are based on the same conduct that underlies their inventorship claim.

[4] Defendants' statement is equally incorrect to the extent that it implies that Plaintiffs have asserted a claim for trade-secret misappropriation against Defendants.  (*See* Order re Motion to Dismiss, Dkt. No. 83 at 18–19.)

1   comparing Theranos's provisional and non-provisional patent applications to the '612 patent.

2   Furthermore, the issue of Defendants' access to Theranos's confidential information is not an issue

3   that can be neatly extracted from the rest of the inventorship analysis.  Among other factors, evidence

4   of the extreme similarity between Theranos's patent applications and the '612 patent is also highly

5   probative on the issue of unauthorized access.

6          Defendants are asking the Court to halt discovery, set an early trial (without the benefit of

7   claim construction) for an arbitrarily selected claim, and then repeat the same exercise—with a new

8   discovery period, claim construction, and second trial—on claims that substantially overlap with the

9   claim that would be tried first.  Proceeding in this manner would be highly inefficient and costly for

10  the Court and for the parties.  And it would force Plaintiffs into presenting its affirmative claims in

11  piecemeal fashion, which could significantly prejudice Plaintiffs' ability to effectively prosecute its

12  case.  Accordingly, Plaintiffs oppose any bifurcation at this time.

13              b.    Defendants' Statement

14         Defendants believe that the court should impose limits on further discovery, bifurcate the

15  proceedings, and set an early trial date on these questions:

16              (1) Whether the Fuiszes or Theranos is the rightful owner of the '612 patent and, logically

17              related, whether Richard and Joseph Fuisz, are the actual inventors of the '612 patent;

18              (2) Whether Richard and Joseph Fuisz were aware that Theranos conceived certain subject

19              matter claimed in the '612 patent when they filed their Provisional and Non-Provisional

20              Applications.

21              (3) Whether Richard and Joseph Fuisz wrongfully acquired confidential information from

22              Theranos in the manner set forth in the complaint.

23         Defendants believe that a bifurcated trial on these issues would almost certainly make further

24  proceedings unnecessary or would result in an extremely short remainder of proceedings.  Although

25  defendants have always contemplated moving for summary judgment on these issues (as outlined

26  above), they believe that bifurcating the issues and proceeding to trial on only these issues would be

27  the most efficient way for the parties and the court.  This would avoid burdening the court with

28  summary judgment motions, oppositions, and replies and move a case that could easily be resolved

by a fact finder to a judgment on the issues that drive the litigation.

In its objection to bifurcation, plaintiff states that it will be necessary to compare the Theranos' applications with that of the '612 patent, should plaintiff not be able to prove that Theranos' confidential information was accessed or seen by the defendants, no such analysis should be necessary – as Theranos' claims for inventorship would necessarily fail.

Defendants and John Fuisz have essentially been charged with theft.  The allegations, baseless though they may be, make it difficult for them to conduct their business.  Such charges, as Theranos is well aware, are repeated in Internet reports and do daily damage to the defendants' reputational interests.  Theranos made a conscious decision to make personal attacks on the defendants despite the absence of a single witness to support those attacks.

Defendants submit that, if the court bifurcates the case in the manner suggested by defendants, the single bifurcated trial is the only one that the Court is likely to find it must conduct. If the Plaintiffs are unable, as defendants insist they will be, to demonstrate that there is any validity to their theft of confidential information theory, the defendants will vindicate their reputational interest, which is of paramount importance to them.  Thus, this case could then proceed without defendants being confronted with the pejorative and prejudicial theft allegations that permeate the Complaint in this case.

Defendants also note that Plaintiffs submitted a patent application with identical claims as the '612 patent to the PTO.  Defendants have always believed that this application was an attempt by Plaintiffs to trigger an interference proceeding.  However, Plaintiffs have now abandoned that application, likely out of fear of an adverse ruling.  Defendants would be willing to let the PTO decide the issue of inventorship.

If the Plaintiffs can prove that the '612 patent was obtained through the use of Theranos' confidential information, it would be extremely easy to determine what remedy or remedies should flow from that fact.

One other advantage of bifurcation is that if defendants prevail on the bifurcated issues, they would immediately be able to seek redress against the abusive and unsupported allegations of the Complaint independent of any proceeding that might take place before the USPTO.

**10. <u>Stipulated E-Discovery Order</u>**

The parties have not agreed to enter into a stipulated e-discovery order.

**11. <u>Proposed Discovery Plan</u>**

a.    <u>Plaintiffs' Position</u>

The current fact-discovery cutoff is March 13, 2013.  Prior to the Court vacating the claim construction deadlines in its Order Granting Motion to Strike Infringement Contentions, the claim construction process was set to conclude prior to the fact-discovery cutoff.  As discussed elsewhere herein, although the Court vacated the claim construction deadlines, Plaintiffs request that the Court at this time set a new claim construction schedule, as claim construction remains necessary for purposes of invalidity and inventorship.  *See Trovan*, 299 F.3d at 1302.  Plaintiffs believe that it would be most efficient for the fact-discovery cutoff to continue to follow claim construction.  Thus, in light of Plaintiffs' proposed claim construction schedule below, Plaintiffs request that the Court continue the fact-discovery cutoff to June 21, 2013.

b.    <u>Defendants' Position</u>

Defendants have set forth above their position that the court should bifurcate the case and set forth three issues for trial.  Defendants see no reason for claim construction, as this is not the typical patent dispute that requires such a procedure.  Here, the claim is that there was a theft of confidential information and a use of that information in the Fuisz patent filings.  The Fuiszes believe that that claim can be tried expeditiously and should be tried expeditiously.  Should the Court adopt Defendants' proposal for a trial on limited issues, it believes that the current discovery cut-off date of March 13, 2013 is sufficient to address these issues.

**12. <u>Identified Discovery Disputes</u>**

The parties have engaged in some meet and confer efforts regarding certain discovery responses and the production of documents.

Plaintiffs believe that the Court's assistance may ultimately be necessary with respect to documents that Defendants and third parties have improperly withheld on privilege grounds.

Furthermore, as indicated above, Plaintiffs oppose Defendants' request to limit discovery, bifurcate the case, or set a schedule that includes no claim construction proceedings and an early trial

date.

In addition, Plaintiffs intend to oppose any discovery motion that Defendants may bring. As described above, Plaintiffs have always indicated that they will produce many of the documents Defendants are seeking, but have thus far withheld production pending the resolution of issues regarding Defendants' protection of the confidential information contained in these documents.

Defendants believe that the Court's assistance is necessary to assure that they receive the relevant discovery they have sought, as outlined above. More importantly, Defendants believe, as indicated above, that the court should drastically limit discovery, bifurcate the case and set an early trial date on the issues Defendants have identified.

**13. Class Actions**

This is not a class action. (*See* Dkt. No. 67 at 13.)

**14. Related Cases**

Case No. 11-CV-05236-YGR and Case No. 12-CV-3323-YGR have been related. (Dkt. No. 87.)

**15. Relief**

Plaintiffs seek judgment against Defendants as follows:

(1)     An order to the PTO to correct the '612 Patent to add Elizabeth Holmes and Timothy Kemp as inventors;

(2)     An order to the PTO to correct the '612 Patent to remove Richard Fuisz and Joseph Fuisz as inventors;

(3)     A declaration that the '612 Patent is invalid and is unenforceable;

(4)     General damages in an amount according to proof at trial;

(5)     Special damages in an amount according to proof at trial;

(6)     Appropriate injunctive relief;

(7)     Costs;

(8)     Reasonable attorney's fees;

(9)     Pre-judgment and post-judgment interest;

(10)     A constructive trust to be preliminarily and permanently imposed upon the '612 patent

and any benefits derived therefrom, and for Fuisz Pharma to be declared constructive or involuntary trustee holding the '612 Patent and any ill-gotten gains forth benefit of Plaintiffs; and

(11)   Such other relief as the Court may deem appropriate.

Defendants maintain that if the court bifurcates the issues, limits discovery, and sets an early trial date, the determination of the claim of theft of intellectual property will provide an answer that will make further proceedings obvious or relatively simple.  For the reasons discussed above, Plaintiffs disagree that bifurcating the case will in any way simplify this case.

**16. <u>Settlement and ADR</u>**

On August 6, 2012, the parties agreed to conduct mediation before Magistrate Judge Grewal, which the court then ordered.  (Dkt. Nos. 92, 95, 97.)  The parties conducted mediation before Judge Grewal on November 9, 2012, and have had ongoing, periodic discussions with Judge Grewal in follow up.  (Dkt. No. 103.)

**17. <u>Consent to Magistrate Judge for All Purposes</u>**

On November 17, 2011, Plaintiffs filed a Declination To Proceed Before A Magistrate Judge And Request For Reassignment To A United States District Judge. (Dkt. No. 19.)  On November 18, 2011, this matter was reassigned to Judge Edward M. Chen, and all matters scheduled before Magistrate Judge Laporte were vacated. (Dkt. No. 21.)  On January 18, 2012, this case was reassigned to Judge Yvonne Gonzalez Rogers. (Dkt. No. 50.)  Plaintiffs wish to proceed before Judge Gonzalez Rogers for all purposes related to this matter.  Defendants would consent to all proceedings being handled by Magistrate Judge Grewal or to any other Magistrate Judge in the interest of bringing this case to trial as quickly as possible.

**18. <u>Other References</u>**

Plaintiffs do not believe the case is suitable for reference to binding arbitration, a special master, or to the Judicial Panel on Multidistrict Litigation.  Defendants would be willing to consider a bench trial (which would be the same as having a single arbitrator decide) in lieu of a jury trial.

**19. <u>Narrowing of Issues</u>**

<u>Plaintiffs' Statement</u>

As set forth in detail in Theranos's Motion to Strike Infringement Contentions, Fuisz Pharma does not have, and indeed has never had, any factual or legal basis on which to assert its infringement claim.  To the extent that Fuisz Pharma seeks to dismiss its infringement claim *without* prejudice, however, Plaintiffs may oppose.  Without any basis to assert its infringement claim, Fuisz Pharma has forced Plaintiffs to invest substantial time and money in defending against this baseless claim.  Thus, any attempt to dismiss the claim without prejudice, where Fuisz Pharma is free to harass Theranos by refilling its claim at any later point, is highly prejudicial to Theranos.  To the extent that Fuisz Pharma's infringement claim remains in the case, Plaintiffs intend to move for summary judgment on that claim.

With respect to Defendants' request to bifurcate the case and proceed to trial without a prior claim construction proceeding, Plaintiffs, for the reasons discussed above, oppose this request, as it is entirely inefficient for both the Court and the parties.

<u>Defendants' Statement</u>

As stated above, Defendants have elected to dismiss its infringement the claims without prejudice.  Defendants are not filing an amended complaint on infringement.  Given the Court's decision, Defendants will not pursue that claim in this proceeding and instead will reserve the right to bring such a claim at a later time when Theranos has more widely produced or marketed products.  Defendants have suggested how the case can be bifurcated and can move forward to a prompt resolution, saving the parties from unnecessary expenditures on discovery, and preserving scarce judicial resources.

**20. <u>Expedited Trial Procedure</u>**

Plaintiffs do not believe that this case is appropriate for an expedited schedule or streamlined proceedings.  Defendants believe that an expedited schedule would  be fair to both sides and that the bifurcation suggested could result in a prompt trial, and with the questions answered in that trial, additional issues (if any) would be easily resolved.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

**21. Scheduling**

Plaintiffs' Statement

In its Order granting Theranos's motion to strike Fuisz Pharma's infringement contentions (Dkt. No. 106), the Court vacated all claim-construction deadlines. Plaintiffs request that the Court at this time set a new claim construction schedule, as claim construction remains necessary for purposes of invalidity and inventorship. *See, e.g., Trovan*, 299 F.3d at 1302. Defendants' position that claim construction is unnecessary is directly contrary to this Federal Circuit precedent.

Plaintiffs propose the following claim-construction schedule:

| EVENT | PROPOSED DATE |
|---|---|
| Exchange Proposed Terms for Construction | *Completed on November 12, 2012* |
| Exchange Preliminary Claim Constructions and Extrinsic Evidence | February 11, 2013 |
| Joint Claim Construction and Prehearing Statement | March 11, 2013 |
| Completion of Claim Construction Discovery | April 12, 2013 |
| Opening Claim Construction Brief | April 26, 2013 |
| Claim Construction Response Brief | May 17, 2013 |
| Claim Construction Reply Brief and Amended Joint Claim Construction Statement | May 27, 2013 |
| Technology Tutorial | May 22, 2013 |
| Claim Construction Hearing | May 29, 2013 (or at some later date as convenient for the Court) |

Plaintiffs also propose that the deadlines that are dependent on the timing of the Court's Claim Construction Ruling remain so. And for the reasons expressed above in the section concerning the Discovery Plan, Plaintiffs also request that the Court extend the deadline for completion of fact discovery to June 21, 2013, from its current date of March 13, 2013.

Furthermore, for the reasons discussed elsewhere herein, Plaintiffs oppose Defendants' bifurcation plan and proposed trial schedule set forth below on the grounds that the proposal is highly inefficient and prejudicial.

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

Defendants' Statement

Defendants oppose any claim construction schedule.  While recognizing that in ordinary inventorship fights, claim construction is a first step, this is not an ordinary patent dispute.  The allegations made by Theranos are far from typical patent claims.  They sound in theft and fraud, and Defendants strongly urge that claim construction would be wasteful, slow down what could be an efficient procedure, and result in a waste of time and resources.  Defendants' proposed bifurcated trial can be held without the necessity of prior claim construction.  Given the limited facts that would need to be contested on the issues Defendants suggest should be tried first, Defendants suggest that there is no need for a schedule for designating expert testimony or filing expert reports and subsequent *Daubert* motions since expert testimony should not be necessary to a decision on these issues.  The issues -- (1) whether the Fuiszes or Theranos is the rightful owner of the '612 patent and, logically related, whether Richard and Joseph Fuisz, are the actual inventors of the '612 patent; (2) whether Richard and Joseph Fuisz were aware that Theranos conceived certain subject matter claimed in the '612 patent when they filed their Provisional and Non-Provisional Applications; and (3) whether Richard and Joseph Fuisz wrongfully acquired confidential information from Theranos in the manner set forth in the complaint – all boil down to a single factual contention by Theranos.  Theranos contends that John Fuisz obtained Theranos' confidential information while working at MWE and conveyed that information to Richard and Joseph Fuisz who used it in obtaining the '612 patent; and Richard and Joseph Fuisz deny that this is true. Defendants oppose extension of the deadline for fact discovery in accordance with their request for bifurcation and expedited proceedings.  Defendants contend that the bifurcated issues could be set for trial on May 20, 2013, slightly more than 60 days after the close of fact discovery.

Consistent with their position that claim construction is unnecessary and in this case a waste of party resources and an unjustified imposition on the court, Defendants urge the plan they set forth above: bifurcation of issues and an early trial date on the bifurcated issues.  Defendants suggest that the court could set the date for filing summary judgment motions on the bifurcated issues as April 15, 2013, approximately 30 days after the close of fact discovery, with the parties having until April 29, 2013 days to file oppositions, and no reply briefs permitted.  The court could keep the trial date of

JANUARY 2013 JOINT CASE MANAGEMENT STATEMENT

May 20, 2013.

**22. <u>Trial</u>**

The length of trial will depend upon whether any issues are resolved at the dispositive motion stage and whether Defendants continue to pursue their infringement claim. At this time, Plaintiffs believe the trial would require approximately 7 to 10 days, and request trial by jury.  Defendants believe that if the court bifurcates the trial, it should last no more than 3 (three) days and might take even less time.  Although Defendants believe that it is difficult to predict the number of trial days that would be required if the court does not bifurcate issues because of the uncertainty as to the number of expert witnesses that would be designated by the parties and the scope of their testimony, an estimate of 7 to 10 days is reasonable based on information currently available.

**23. <u>Disclosure of Non-Party Interested Entities or Persons</u>**

Plaintiffs filed their Certification of Interested Entities or Persons required by Civil Local Rule 3-16 on November 16, 2011.  (Dkt. No. 4.)  Plaintiffs' Certification identified the members of the Board of Directors of Theranos, Inc., including George P. Shultz, Donald L. Lucas, Robert Shapiro, Channing Robertson, and Sunny Balwani. No publicly held corporation owns 10% or more of the stock in Theranos.  Nor does Theranos have any corporate parent.

Defendants Richard Fuisz and Joseph Fuisz filed their Certification of Interested Entities or Persons on November 16, 2011.  (Dkt. No. 15.)  Defendants' Certifications identified McDermott Will & Emery LLP (defined as "John Fuisz's Law Firm" in the Amended Complaint).  Defendants also identified Fuisz Pharma, which is now a party to this action, and Valeant Pharmaceuticals International, Inc. as successor-in-interest to Defendant Fuisz Technologies, Ltd.  Fuisz Technologies, however, is no longer a party to this action.

**24. <u>Other issues</u>**

The Parties do not believe there are other issues requiring the Court's attention at this time.

Dated: January 22, 2013          BOIES, SCHILLER & FLEXNER LLP

By: */s/ Michael D. Jay*
David Boies (admitted *pro hac vice*)
dboies@bsfllp.com
William D. Marsillo (admitted *pro hac vice*)
wmarsillo@bsfllp.com
Lisa Nousek (admitted *pro hac vice*)
lnousek@bsfllp.com
333 Main Street
Armonk, New York 10504
(914) 749-8200

David W. Shapiro
dshapiro@bsfllp.com
1999 Harrison Street, Suite 900
Oakland, CA 94612
(510) 874-1000

Michael D. Jay
mjay@bsfllp.com
225 Santa Monica Blvd., 11th Floor
Santa Monica, CA 90401
(310) 393-9119

*Attorneys for Plaintiffs*

Dated: January 22, 2013          BANIE & ISHIMOTO LLP

By     /s/ Jennifer Ishimoto
Jennifer Ishimoto (211845)
ishimoto@banishlaw.com
David Banie (217924)
banie@banishlaw.com
1999 South Bascom Ave., Suite 700
Campbell, California 95008
Telephone: (650) 549-5652
Facsimile: (415) 665-2520

*Attorneys for Defendants Richard C. Fuisz, Joseph M. Fuisz, and Fuisz Pharma LLC*

JANUARY 2013 JOINT CASE MANAGEMENT STATEMENT

1

**ATTESTATION OF FILER**

2

3        Pursuant to Civil L.R. 5-1(i)(3), I, Michael D. Jay, attest that I obtained Jennifer Ishimoto's

4   concurrence to file this document on her behalf.

5

6   Dated: January 22, 2013                    By:  /s/  Michael D. Jay__
                                                     Michael D. Jay
7

8                                              BOIES, SCHILLER & FLEXNER LLP

9                                              *Attorneys for Plaintiffs and Cross-Defendants*
                                               THERANOS INC. AND ELIZABETH HOLMES
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BOIES, SCHILLER & FLEXNER LLP
OAKLAND, CALIFORNIA