DAVID BOIES (admitted *pro hac vice*)
Email: dboies@bsfllp.com
WILLIAM MARSILLO (admitted *pro hac vice*)
Email: wmarsillo@bsfllp.com
LISA NOUSEK (admitted *pro hac vice*)
Email: lnousek@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

MICHAEL D. JAY
Email: mjay@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
225 Santa Monica Blvd., 11th Floor
Santa Monica, CA 90401
Telephone: (310) 393-9119
Facsimile: (310) 395-5877

*Attorneys for Plaintiffs*
THERANOS, INC. and ELIZABETH HOLMES

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| THERANOS, INC. and ELIZABETH HOLMES,<br><br>Plaintiffs,<br><br>v.<br><br>FUISZ PHARMA LLC, RICHARD C. FUISZ,<br>and JOSEPH M. FUISZ,<br><br>Defendants. | Case No. 11-CV-05236-PSG<br><br>**MOTION TO COMPEL PRODUCTION OF DOCUMENTS DUE TO PRIVILEGE WAIVER**<br><br>Dept.:  Courtroom 5, 4th Floor<br>Judge:  Honorable Paul Singh Grewal<br><br>Hearing:   April 23, 2013<br>Time:       10:00 a.m.<br><br>Trial:   November 18, 2013 |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Tuesday, April 23, 2013, at 10:00 a.m., or as soon thereafter as counsel may be heard at the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113 , before the Honorable U.S. Magistrate Judge Paul S. Grewal, Theranos, Inc. and Elizabeth Holmes (collectively, "Theranos") will and hereby do move the Court to compel the production of documents that Fuisz Pharma, LLC, Richard C. Fuisz, and Joseph M. Fuisz (collectively, "the Fuisz Defendants" or "Defendants") are withholding on grounds of privilege, based on the subject-matter waiver that Defendants effected when they voluntarily produced dozens of communications with patent-prosecution counsel.

This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the supporting Declaration of Meredith Dearborn, the pleadings and papers on file with the Court in this action, any matters on which the Court may take judicial notice, any evidence or argument presented at the hearing on this motion, and any other matters the Court deems proper.

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ................................................................................................................ 2

III. ARGUMENT ..................................................................................................................... 6

    a.  The Fuisz Defendants' purposeful, voluntary production of documents
       effected a subject matter waiver. ............................................................................ 6

    b.  The scope of the waiver cannot be limited to documents that support
       the Fuisz's position. ................................................................................................ 9

    c.  The waiver should not be limited to documents that predate April 24,
       2006. ...................................................................................................................... 11

    d.  The waiver should not be limited to communications with Alan
       Schiavelli. .............................................................................................................. 12

IV. CONCLUSION ................................................................................................................. 13

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

# TABLE OF AUTHORITIES

**CASES**

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
  237 F.R.D. 618 (N.D. Cal. 2006) .................................................................. 7, 8, 12

*Boydstun Metal Works, Inc. v. Cottrell, Inc.*,
  519 F. Supp. 2d 1119 (D. Or. 2007) ...................................................................... 8

*Coleman v. Sterling*,
  09-CV-1594 W BGS, 2011 WL 2005227 (S.D. Cal. May 23, 2011) ............................. 10

*Fort James Corp. v. Solo Cup Co.*,
  412 F.3d 1340 (Fed. Cir. 2005) .................................................................... 7, 9, 10

*Fox v. California Sierra Fin. Services*,
  120 F.R.D. 520 (N.D. Cal. 1988) ........................................................................... 7

*In re EchoStar Communs. Corp.*,
  448 F.3d 1294 (Fed. Cir. 2006) ..................................................................... 7, 9, 12

*McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*,
  765 F. Supp. 611 (N.D. Cal. 1991) ................................................................... 7, 11

*Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*,
  254 F.R.D. 568 (N.D. Cal. 2008) ..................................................................... 7, 12

*Starsight Telecast, Inc. v. Gemstar Dev. Corp.*,
  158 F.R.D. 650 (N.D. Cal. 1994) ........................................................................... 9

*Tenenbaum v. Deloitte & Touche*,
  77 F.3d 337 (9th Cir. 1996) ................................................................................ 10

*Weil v. Inv./Indicators, Research & Mgmt.*,
  647 F.2d 18 (9th Cir. 1981) .................................................................................. 7

**RULES**

Fed. R. Civ. P. 26(b)(5)(A)(ii) ............................................................................... 6

**OTHER AUTHORITIES**

8 Charles Alan Wright, et al., Federal Practice and Procedure § 2016.2 (3d ed., 2010 update) .......... 10

Plaintiffs Theranos, Inc. and Elizabeth Holmes (collectively, "Theranos") hereby move to compel the production of documents that Fuisz Pharma, LLC, Richard C. Fuisz, and Joseph M. Fuisz (collectively, "the Fuisz Defendants" or "Defendants") are withholding on grounds of privilege, based on the subject-matter waiver that Defendants admittedly effected when they voluntarily produced dozens of communications with patent-prosecution counsel.

## I.   INTRODUCTION

Defendants voluntarily waived the attorney-client privilege when, in an effort to gain an advantage in this litigation, they disclosed to Theranos more than fifty communications between the Fuisz Defendants and their patent-prosecution counsel. Those communications, which Defendants have now disclosed to Theranos **twice**, concern a broad array of topics, including the conception, reduction to practice, and prosecution of the patent applications that later matured into U.S. Patent No. 7,824,612 ("the '612 Patent" or "the patent-in-suit"). Dr. Fuisz provided those documents to Theranos's Board of Directors, in Dr. Fuisz's own words, in order to "demonstrate[]" that "the '612 patent arose from our work (and with no access to the confidential provisional patents of Theranos)." By his own admission, these prosecution documents concern both his own, and Theranos's, claims to inventorship over the ideas in the '612 Patent. Defendants have since referenced these documents to support their theories in this case, claiming, most notably, that the documents prove a negative: Defendants claim that these documents show that Dr. Fuisz did not access Theranos's confidential information.

Defendants have not disputed the fact that privilege has been waived; they merely disagree with Theranos on the scope of that waiver. Yet only now, many months after Dr. Fuisz's conscious and voluntary disclosure, has the full extent of Defendants' inappropriate exercise of privilege become apparent. Defendants recently produced privilege logs showing that they are asserting privilege over nearly **three hundred** additional communications between Dr. Fuisz and his counsel, all of which appear to concern exactly the same subject matter, and in many cases the same parties, as the documents he previously disclosed.

Defendants' selective production of otherwise privileged documents is untenable. Their overly narrow view of the scope of their subject-matter privilege waiver contravenes long-settled

principles of law.  Having intentionally waived privilege over certain documents concerning the prosecution of the '612 patent, their alleged inventorship of the concepts contained in the '612 Patent, and their access to Theranos's confidential material, Dr. Fuisz and Joseph Fuisz can no longer withhold from production other communications with counsel on the same subject matter.  This is particularly true given Defendants' stated purpose for disclosure.  Nor can they withhold those documents by arbitrarily selecting a date after which they claim the waiver is no longer effective, particularly when Dr. Fuisz himself already disclosed documents dated after that cutoff in his initial provision of documents to the Theranos Board.   This is a straightforward application of the subject-matter waiver doctrine under binding precedent.  Those documents must be produced.

The parties met and conferred on March 7, 2013, but were unable to come to a resolution.

## II.   BACKGROUND

On or about June 7, 2012, Richard Fuisz, without prompting and without any pending discovery request, sent a binder of materials to the Theranos Board of Directors.[1]  All 54 tabs of the binder contain correspondence between Dr. Fuisz and his attorney, Alan Schiavelli, of Antonelli, Terry, Stout & Kraus ("ATSK"), an IP and patent-prosecution law firm in Arlington, Virginia.  Most of the email printouts bear Mr. Schiavelli's name in the document header, indicating that Mr. Schiavelli himself likely printed them.  None of the documents bear Bates numbers, are labeled "privileged," or are branded "Confidential" or "Highly Confidential-Attorneys Eyes Only" pursuant to the protective order entered in this case, although the protective order was entered by the Court nearly a month prior to Dr. Fuisz's disclosure.  (*See* Dkt. No. 79.)   In a cover letter provided with the documents, Dr. Fuisz wrote, "I am providing documentation to you from 2005 and 2006 which demonstrates to you that the [']612 parent arose from our work (and with no access to the confidential provisional patents of Theranos). . . . I would ask the courtesy of each of you that you

---

[1] Dr. Fuisz has been sending messages to current and former members of Theranos's Board of Directors almost continuously since this case began, without copying any litigation counsel.  In one particularly disturbing example, Dr. Fuisz emailed members of Theranos's Board of Directors a picture of Elizabeth Holmes's mother and the inside of her childhood living room.  (Dearborn Decl. Ex. N.)  The only conceivable purpose of these emails is harassment, which—as demonstrated by the Directors' unequivocal responses to Defendants' third party document subpoenas—the recipients have no role in this lawsuit other than to suffer.

2

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
S A N T A   M O N I C A ,   C A L I F O R N I A

review the enclosed materials."  (Declaration of Meredith Dearborn ("Dearborn Decl.") Ex. A.)   He

requested that the Board of Directors meet with him "without attorneys," in part to permit him to ask

"questions of my own" including "how you propose to restore my reputation."  (*Id.*)  Dr. Fuisz also

provided an index, which summarized the content of the communications, with entries like

"Distinguishing Theranos," "Providing draft claims," "Comments on draft application," and "Noting

Theranos art not yet examined."  (Dearborn Decl. Ex. B.)  Several months later, Dr. Fuisz, Richard

Fuisz, and Fuisz Pharma again produced those documents in response to Theranos's first set of

document requests, this time bearing Bates numbers FUISZ000415–512, and inexplicably branded

"Attorneys Eyes Only," although they had been previously disclosed to Theranos without

restrictions.[2]

The emails Dr. Fuisz sent to the Theranos Board of Directors relate to various aspects of the

prosecution of, alleged inventorship of, subject matter of, and prior art pertaining to the '612 patent.

These documents cover a wide range of topics, including:

- characterizing the invention and discussing its scope and potential claims (Tabs A, FF, RR, SS, TT);

- analyzing, and attempting to distinguish, prior art (Tab P);

- examples of bar codes to be included as diagrams (Tabs XX, YY, ZZ, AAA, BBB);

- identifying who should be named as inventors on the patent (Tabs H, II);

- providing and revising drafts of the application and its claims (Tabs CC, DD, EE, GG, JJ, KK);

- strategizing on how to get the best examiner at the PTO (Tab HH); and

- discussing PTO filing fees (Tab NN).

(*See, e.g.*, Dearborn Decl. Exs. B (index), C (Tab A), Ex. D (Tab II).)

The documents reference Theranos and its inventions multiple times.  For example, in an

email disclosed to the Theranos Board of Directors, dated February 21, 2006 (Tab F), Mr. Schiavelli

---

[2] Theranos promptly challenged that designation pursuant to Paragraph 6.1 of the Protective Order. The Fuisz Defendants never responded to that letter or proposed a time for a meet-and-confer.

MOTION TO COMPEL PRODUCTION OF DOCUMENTS DUE TO PRIVILEGE WAIVER
11-CV-05236-PSG

B O I E S ,  S C H I L L E R  &  F L E X N E R  L L P
S A N T A  M O N I C A ,  C A L I F O R N I A

1   brought Theranos's website to Dr. Fuisz's attention, and asked for his comments on whether

2   Theranos's ideas were similar to the concept he had proposed.  (Dearborn Decl. Ex. E.)   Similarly, in

3   an email from April 17, 2006, disclosed to the Theranos Board of Directors at Tab O (and in part at

4   Tab X), Dr. Fuisz wrote Mr. Schiavelli that "A company called Theranos (inventor is Elizabeth

5   Holmes) claims to have a patent on a device that has modules for each drug.  It is precisely this type

6   of module that our claims are aimed at."  Mr. Schiavelli responded that he could not "find any issued

7   patent" but provided the application numbers for two Theranos published applications, which he

8   promised to review.  (Dearborn Decl. Ex. F.)  And in the communication provided in Tab UU, dated

9   July 3, 2006—months *after* the date that they filed the application—Dr. Fuisz sent Mr. Schiavelli

10  another email linking to a Theranos patent application, writing "This is the application we want to sit

11  on top of."  (Dearborn Decl. Ex. G.)  He again referenced Theranos art in the emails contained at

12  Tabs VV and WW, dated July 3 and July 4, 2006.  (Dearborn Decl. Ex. H, I.)  Together, these

13  documents span the time period from September 2005 to the September 2006, several months after

14  the filing of the '117 Provisional Application.

15       Defendants have repeatedly cited these emails in support of at least three distinct contentions

16  directly related to litigation claims and defenses.  *First*, as Dr. Fuisz expressly stated in his cover

17  letter to the Theranos Board, Defendants rely on these emails to support their contention that they

18  invented the concepts in the '612 Patent.  (*See* Dearborn Decl. Ex. A.)   Indeed, in at least one meet-

19  and-confer session, the Fuiszes' counsel again asserted that those documents show inventorship of

20  the concepts in the '612 Patent.  *Second*, Defendants argue that the documents prove a negative: they

21  claim that because Theranos confidential information arguably does not appear in these particular,

22  selected emails with counsel, that they therefore conceived of and prosecuted the '612 Patent without

23  accessing Theranos confidential materials.   (*See* Dearborn Decl. Ex. A (arguing that the documents

24  show that the '612 Patent was invented "with no access to the confidential provisional patents of

25  Theranos").)   Indeed, Defendants' counsel, in attempting to *deny* that these disclosures were used to

26  gain a litigation advantage, recently reiterated that Dr. Fuisz disclosed the documents for the

27  "purpose of showing Theranos that neither Ms. Holmes nor anyone else from Theranos made any

28  contribution to the invention described in what would mature into the [']612 patent at the time of the

4

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

filing of the [']117 Provisional Patent Application," and were disclosed in an "attempt to convince Theranos's Board of Directors that their suspicions regarding Fuisz Pharma's access to confidential Theranos information were unfounded." (Dearborn Decl. Ex. J at 2.) ***Third***, Defendants appear to be using these disclosed documents to claim an earlier invention date than the priority date on the '612 patent. Although the '612 Patent claims a priority date of April 24, 2006—the date that the '117 provisional application was filed—Defendants have represented that they conceived of the ideas in the '612 Patent as of September 2005, which corresponds with the date of the first email in the set Dr. Fuisz provided to the Board. (*See* Dearborn Decl. Ex. C; Dearborn Decl. Ex. K at 3–4 (Defendants' response to Theranos's Interrogatory No. 1, stating "The subject of the [']612 Patent was conceived by Richard and Joseph Fuisz at least as early September 2005.").)

Theranos first brought the waiver to Defendants' attention several months ago and requested a privilege log. Defendants provided their privilege log on January 14 of this year, and ATSK served its privilege log on February 25. (*See* Dearborn Decl. Exs. L (ATSK privilege log), M (Defendants' privilege log).) A review of those logs, and of the productions themselves, reveals that Defendants are attempting to exercise privilege over the vast majority of the communications with counsel, most or all of which apparently concern the prosecution of the patent-in-suit: the very subject matter over which the Fuiszes unequivocally waived privilege. Defendants appear to be impermissibly exercising privilege over two categories of documents.

First, Defendants assert privilege over documents in the possession, custody, or control of ATSK. On November 7, 2012, in response to its third-party subpoena, Theranos received 24 documents from ATSK, some of which were heavily redacted, including on documents they seem to have submitted to the PTO.[3] The 54 documents that Richard Fuisz provided to the Board of Directors are inexplicably absent from ATSK's production. ATSK's February 25, 2013, privilege log lists 291 entries, nearly all of which apparently relate to the prosecution, scope, and interpretation

---

[3] On February 25, ATSK's counsel indicated that ATSK would be producing a few more documents by the end of that week, but to date no additional documents have been produced .

1    of the '612 Patent.[4]  (Dearborn Decl. Ex. L.)  The 54 already disclosed documents do not appear on

2    the privilege log, either.  Accordingly, at a minimum, Defendants appear to be asserting privilege

3    over 92% of their relevant communications with ATSK.

4         Second, the Fuiszes also assert privilege over communications about the '612 Patent in their

5    own possession, custody, or control.  In Defendants' privilege log, they list numerous

6    communications with Alan Schiavelli of ATSK, as well as allegedly privileged communications with

7    John Fuisz and Joseph Fuisz themselves regarding licensing.  (Dearborn Decl. Ex. M.)

8         Neither privilege log lists any document from 2005, and the ATSK privilege log lists only one

9    document from April 2006 (a "note to docketing" in entry 276).  (Dearborn Decl. Exs. L, M.)  Thus,

10   assuming that all relevant documents were either produced or logged, it appears as if the Fuiszes

11   disclosed **all** communications with counsel that pertained to the '612 Patent, over a broad range of

12   subject areas—including conception, reduction to practice, inventorship, the scope of the claims,

13   draft applications, strategy before the PTO, and prior art—dated prior to some arbitrarily chosen time

14   around the end of 2006—many months after the filing of the '117 Provisional.

15   **III.   ARGUMENT**

16        **a.   The Fuisz Defendants' purposeful, voluntary production of documents effected a**
             **subject-matter waiver.**
17

18        It is black-letter law that voluntary disclosure of privileged documents, such as drafts of

19   patent applications and communications between patent prosecution attorneys and inventors,

20

21   _____

22   [4] In the ATSK privilege log, none of the description fields for any of the 291 entries identifies the
     patent that was discussed in the document or communication; instead the descriptions merely
23   reference "issued patent" or "prosecution" generally.  This defect pervades Defendants' log as well.
     Although this deficiency would have otherwise prevented Theranos from assessing the claim of
24   privilege, _see_ FED. R. CIV. P. 26(b)(5)(A)(ii), Defendants have represented that they view documents
     pertaining to other patents to be outside the scope of relevance, and Theranos's subpoena to ATSK
25   specifically requested various categories of documents relating to the '612 Patent, the '117
     Provisional Application, and the '131 Non-Provisional Application.  During the course of the parties
26   meet-and-confer sessions regarding this issue, Theranos requested that Defendants inform Theranos
     if entries on the privilege log concerned a patent family other than the one at issue in this case.
27   Defendants have never stated that the documents pertain to patents other than the '612 Patent, or the
     corresponding '117 or '131 applications.  Therefore, Theranos assumes for purposes of this motion
28   that every one of the 291 entries on the ATSK privilege log, and all 54 entries in the Fuisz privilege
     log, pertain to the '612 Patent family.

constitutes a waiver of the privilege as to all other such communications on the same subject matter.

*See Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576 (N.D. Cal. 2008); *see also McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 765 F. Supp. 611, 614 (N.D. Cal. 1991) ("Parties and their counsel are responsible for knowing what to waive and how to waive it.").  Both the Ninth Circuit and the Federal Circuit apply the "widely applied standard for determining the scope of a waiver of attorney-client privilege," namely "that the waiver applies to all other communications relating to the same subject matter."  *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005); *Weil v. Inv./Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981) ("It has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.").[5]  The waiver extends beyond the document or documents initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not.  *Fort James*, 412 F.3d at 1349 (citations omitted); *see also Fox v. California Sierra Fin. Services*, 120 F.R.D. 520, 527 (N.D. Cal. 1988) ("[S]elective disclosure of confidential communications for the sake of obtaining a tactical advantage in litigation constitutes a waiver of the attorney-client privilege.").

---

[5] Although Defendants' unequivocal disclosure would result in a subject-matter waiver under both Ninth Circuit and Federal Circuit law, most recent decisions apply Federal Circuit law to determine the scope of waiver in cases that implicate discovery issues that arise in the unique context of patent litigation—even if the existence of waiver may be determined by the law of the regional circuit.  *See, e.g.*, *In re EchoStar Communs. Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006) (applying Federal Circuit law to resolve whether and to what extent a client waived attorney-client privilege when it relied on an advice-of-counsel defense from in-house counsel as a defense for patent infringement, because it implicated willful infringement and "questions of privilege and discoverability that arise from assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law."); *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 623 (N.D. Cal. 2006) (Patel, J.) (applying Federal Circuit law where communications took place during communication with the PTO regarding inventorship, which is a patent-law-specific context); *Phoenix*, 254 F.R.D. at 576 (Federal Circuit law applied to determine the scope of waiver after a plaintiff voluntarily disclosed drafts of patent applications and communications relating to the preparation of filing patent applications because the disclosed communications "concern discovery issues that occur in the unique context of patent litigation," while regional law applied to determine the existence of a waiver).  Because the Fuiszes do not contest that a waiver has occurred, and the scope of the waiver is the only remaining dispute, the Court need only apply the law of the Federal Circuit to determine its scope.  *Cf. Stanford*, 237 F.R.D. at 622.

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
S A N T A   M O N I C A ,   C A L I F O R N I A

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

S A N T A   M O N I C A ,   C A L I F O R N I A

1     It is clear that neither of the Fuisz's two productions of the ATSK communications was

2   inadvertent, and that both were calculated to gain an advantage in this litigation.  In the letter that Dr.

3   Fuisz provided with the binder of emails he sent to Theranos's Board, he asserted that the documents

4   supported his own claim to inventorship.   (Dearborn Decl. Ex. A.)  This position has been echoed

5   more than once by Defendants' counsel.  (*See, e.g.*, Dearborn Decl. Ex. J).)  In addition, the Fuiszes

6   appear to be relying on the ATSK documents to establish that Dr. Fuisz invented the concepts in the

7   '612 at least as of September 2005, not April 2006 (as the priority date of their patent application

8   would otherwise provide).   Oral testimony on this subject would not be sufficient to uphold their

9   burden of providing clear and convincing evidence of prior invention, and Theranos has seen no other

10   evidence that would support an earlier priority date.  (*See* Dearborn Decl. Ex. C (September 2005

11   email); Ex. K at 3–4 (Fuisz response to Theranos Interrogatory #1, stating that date of conception was

12   September 2005)); *cf. Boydstun Metal Works, Inc. v. Cottrell, Inc.*, 519 F. Supp. 2d 1119, 1137 (D.

13   Or. 2007) (a patentee is entitled to a constructive conception date as of the filing of its patent

14   application; to rely on an earlier conception date, a patentee must show that it had conceived of its

15   invention prior to the filing date by clear-and-convincing evidence; oral testimony must be

16   corroborated) (citations omitted).

17     Theranos disagrees that the disclosed communications are sufficient to show inventorship of

18   any claim on any particular date, but this disagreement is not material to Dr. Fuisz's voluntary

19   waiver.  Instead, it is only material that Dr. Fuisz disclosed the documents to provide what he

20   perceived as evidence supporting his position in this lawsuit, and in order to gain advantage either in

21   settlement negotiations or in litigation.

22     When a party discloses materials in order to support any claim or defense, that disclosure is

23   calculated to gain a litigation advantage.  In *Board of Trustees of Leland Stanford Junior University*

24   *v. Roche Molecular Systems, Inc.*, for example, Stanford submitted declarations from two patent-

25   prosecution attorneys to the Patent and Trademark Office in support of its application to correct

26   inventors, in order to establish that the omission of two inventors from the patent was made without

27   deceptive intent.  237 F.R.D. 618, 620, 627 (N.D. Cal. 2006).  The court held that this effected a

28   subject-matter waiver, noting that Stanford "actively sought to gain a legal advantage by obtaining an

8

enforceable patent" and "relied on its declarations to the PTO to obtain a certificate of correction and is now attempting to use that certificate to enforce the '730 and '705 Patents in the context of its infringement dispute with the Roche defendants."  *Id.* at 624–25; *see also Starsight Telecast, Inc. v. Gemstar Dev. Corp.*, 158 F.R.D. 650, 654 (N.D. Cal. 1994) (waiver effected when attorneys submitted declarations supporting defense against inequitable-conduct claim); *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) ("The client can waive the attorney-client privilege when, for instance, it uses the advice [of counsel] to establish a defense"); *Fort James*, 412 F.3d at1350 ("knowing disclosure of privileged documents to a third party" is "conduct which acts as a surrender of the privilege protection").

Defendants cannot dispute, and indeed have not disputed, that Dr. Fuisz waived privilege by intentionally disclosing selected communications between himself and Joseph Fuisz and their patent counsel in order to advance his positions in this litigation.  The only remaining question is the scope of that waiver.

### b. The scope of the waiver cannot be limited to documents that support the Fuisz's position.

Dr. Fuisz and Joseph Fuisz, by their voluntary disclosure of what appear to be ***all*** communications with patent counsel over a broad range of topics during prosecution and up through the end of 2006, waived privilege at least as to documents concerning Joseph Fuisz and Richard Fuisz's alleged conception and reduction to practice of the '612 Patent, documents relating to the prosecution of the '612 Patent, and all documents relating to Fuisz's knowledge of and access to Theranos confidential information.  The documents that Defendants already disclosed to Theranos encompass those subjects (and more).  Indeed, as noted above, Dr. Fuisz's admitted purpose in disclosing the documents was to show that the Fuisz Defendants allegedly conceived of the inventions claimed in the '612 Patent without access to Theranos's confidential information.

Dr. Fuisz and Joseph Fuisz cannot voluntarily waive privilege over certain documents related to the prosecution of the '612 Patent that they contend support their positions, while simultaneously asserting privilege over others that may not.  Subject-matter waiver "protect[s] against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Tenenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996); *see also Fort James*, 412 F.3d at 1349 ("The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not.").   It is not for Defendants to judge whether a document is helpful or harmful; once Dr. Fuisz voluntarily waived privilege over communications with counsel about the patent-in-suit, he has relinquished his ability to determine whether to withhold a document on the same subject. Moreover, the withheld materials need not be directly on point or obviously damaging to be subject to waiver.  Instead, they must be disclosed even if they merely provide "context" for understanding the disclosed documents.  *See Coleman v. Sterling*, 09-CV-1594 W BGS, 2011 WL 2005227, at *3 (S.D. Cal. May 23, 2011); *see also* 8 Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 2016.2 (3d ed., 2010 update) ("The idea is to limit subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials.").

Defendants argue that their waiver "is in no way tantamount to a general waiver of attorney-client privilege on the issues of conception and reduction to practice of the invention described in the '612 patent."  (Dearborn Decl. Ex. J.)   That is nonsense.  Dr. Fuisz disclosed emails that specifically identify himself and his son as inventors.  (Dearborn Decl. Ex. C ("Joe and I would like to patent the following application"); Ex. D ("Inventors r joe and I"); Ex. O ("Joe and I should be the inventors").)  Dr. Fuisz specifically told Theranos's Board of Directors that the communications he disclosed demonstrate "that the '612 patent arose from our work (and with no access to the confidential provisional patents of Theranos)."  (Dearborn Decl. Ex. C.)   In fact, Defendants appear to be relying on the earliest date of their earliest disclosed email in order to swear behind the priority date of their provisional application.  (*See* Dearborn Decl. Exs. C, K.)  And the Fuisz Defendants' counsel also acknowledge that Dr. Fuisz disclosed the materials in order to prove his own inventorship.  (Dearborn Decl. Ex. J.)  In effect, Defendants are claiming, and have always claimed, that these documents

10

prove a negative: they claim that Theranos confidential material does not appear in the selected, disclosed communications, and therefore Theranos is mistaken in believing that Dr. Fuisz and Joseph Fuisz accessed Theranos's confidential information.  Defendants' position thus is that Theranos should take on faith that the more than 90% of otherwise responsive documents that the defendants chose **not** to turn over support this hypothesis as well.   Fundamental fairness requires that Theranos should be permitted to test the Fuisz's assertions by viewing the remainder.

### c.   The waiver should not be limited to documents that predate April 24, 2006.

Defendants attempt to arbitrarily limit the scope of their waiver by the withheld documents' date.  The privilege logs overwhelmingly list documents dated after 2007.  Indeed, in meet-and-confer sessions, Defendants' counsel have maintained that the waiver should extend only to documents dated before the Fuiszes filed the '117 application, and in their March 7 letter expressly claim the waiver should not extend to "post-filing communications."   (Dearborn Decl. Ex. J.)   This temporal limitation is improper.

First, Defendants' position makes no sense in light of the fact that Dr. Fuisz **has already disclosed** documents that post-date the filing date of the '117 application—every bit as intentionally. **Sixteen** of the documents in the binder of materials that he provided to Theranos's Board of Directors are dated on or after April 24, 2006.  (*See* Dearborn Decl. Ex. B (index to binder, at pp. 3–4).)  Dr. Fuisz was still emailing his patent counsel after the filing date to discuss the scope of the claims.  He continued to reference Theranos material after that date and asked his counsel to include Theranos's art in the provisional application during prosecution.  (*See, e.g.*, Dearborn Decl. Exs. G, H, I.) Defendants cannot now limit the scope of waiver by invoking a cutoff date that Dr. Fuisz did not consider material when effecting the waiver in the first place.

In addition, given the admittedly purposeful disclosures at issue in this case, a temporal limitation on subject-matter waiver is particularly improper.  Courts consistently have found that, where the waiver was voluntary and calculated to gain a litigation advantage and where the documents sought concern the same subject matter as the disclosed documents or could provide context, arbitrary temporal limitations are not warranted.  *See McCormick-Morgan*, 765 F. Supp. at 613 ("under the law this court finds persuasive, and in light of policy considerations, it is not

11

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
S A N T A   M O N I C A ,   C A L I F O R N I A

1    appropriate thereafter for the waiving parties or judge to limit the waiver on a temporal basis."); 

2    *Phoenix*, 254 F.R.D. at 578 (N.D. Cal. 2008) (subject matter waiver "reasonably extends to all further 

3    documents or communications between the named inventor and the prosecuting attorney pre- and 

4    post-filing, i.e. throughout the prosecution of the patent applications, concerning any of the prior art 

5    documents specifically identified by name in the previously disclosed documents"); *Stanford*, 237 

6    F.R.D. at 627  ("to the extent that the declarations submitted in support of corrected inventorship 

7    concerning the inadvertent omission of the two co-inventors are placed 'at issue' by Stanford in 

8    subsequent applications derived from the '327 Application, the Roche defendants are entitled to 

9    discovery to later documents and communications that directly cover the issue of inventorship, even 

10   though they might post-date the issuance of the '730 and '705."). Here, the disclosed documents 

11   were turned over to Theranos voluntarily, and in order to gain a litigation advantage. They concern 

12   all aspects of patent prosecution. The undisclosed documents apparently concern exactly the same 

13   subject matter. (*See* Dearborn Decl. Ex. L, M (privilege logs, listing communications "re patent 

14   prosecution" and "regarding status of prosecution").) Under these facts, a temporal limitation on 

15   waiver is not warranted.

16        Indeed, Defendants have claimed that the disclosed documents demonstrate that Dr. Fuisz and 

17   Joseph Fuisz did not access Theranos material. But the Fuiszes could have referenced the source of 

18   their ideas in documents post-dating the application's filing date. In fact, Defendants characterized 

19   and attempted to distinguish Theranos's published prior art after that date and during prosecution. 

20   Other documents that Defendants continue to withhold are likely to be similarly relevant in the 

21   context of the scope and prosecution of the claims at issue here. In order to contextualize and 

22   evaluate the Fuisz Defendants' defenses, in light of the selective disclosure of documents to date, the 

23   remainder of the communications must be produced.

24        **d.  The waiver should not be limited to communications with Alan Schiavelli.**

25        Likewise, it is also improper to maintain that privilege has not been waived with respect to 

26   communications with attorneys at ATSK other than Alan Schiavelli that relate to the conception, 

27   reduction to practice, or prosecution of the '612 patent or the Fuiszes' knowledge of and access to 

28   Theranos confidential information. *See, e.g.*, *EchoStar*, 448 F.3d at 1299 ("[w]hen EchoStar chose to 

12

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P
S A N T A   M O N I C A ,   C A L I F O R N I A

1    rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any

2    attorney-client communications relating to the same subject matter, including communications with

3    counsel other than in-house counsel[.]")

4    **IV.   CONCLUSION**

5           Defendants cannot use attorney-privilege both as a sword and a shield.  They cannot

6    voluntarily produce a large number of otherwise privileged communications in an effort to establish

7    that an event did ***not*** occur, and then hide the vast majority of such communications—and the ability

8    to test the non-occurrence of that event—from Theranos's view.  Dr. Fuisz's waiver was unequivocal,

9    intentional, and broad.  In light of the clear renunciation of attorney-client privilege, the Court should

10   compel the production of documents concerning Joseph Fuisz and Richard Fuisz's alleged conception

11   and reduction to practice of the '612 Patent, documents relating to the prosecution of the '612 Patent,

12   and all documents relating to Fuisz's knowledge of and access to Theranos confidential information.

13

14   Dated: March 15, 2012                    BOIES, SCHILLER & FLEXNER LLP

15                                            By:  _Michael D. Jay_
                                                  Michael D. Jay

16                                            *Attorneys for Plaintiffs*
17                                            THERANOS, INC. and ELIZABETH HOLMES

18

19

20

21

22

23

24

25

26

27

28

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BOIES, SCHILLER & FLEXNER LLP
SANTA MONICA, CALIFORNIA