1  DAVID BOIES (admitted *pro hac vice*)
   Email: dboies@bsfllp.com
2  WILLIAM MARSILLO (admitted *pro hac vice*)
   Email: wmarsillo@bsfllp.com
3  LISA NOUSEK (admitted *pro hac vice*)
   Email: lnousek@bsfllp.com
4  BOIES, SCHILLER & FLEXNER LLP
   333 Main Street, Armonk, NY 10504
5  Telephone: (914) 749-8200
   Facsimile: (914) 749-8300

6  MICHAEL D. JAY
7  Email: mjay@bsfllp.com
   BOIES, SCHILLER & FLEXNER LLP
8  225 Santa Monica Blvd., 11th Floor
   Santa Monica, CA 90401
9  Telephone: (310) 393-9119
   Facsimile: (310) 395-5877

*Attorneys for Plaintiffs*
THERANOS, INC. and ELIZABETH HOLMES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| THERANOS, INC. and ELIZABETH HOLMES, | Case No. 11-CV-05236-PSG |
| Plaintiffs, | **REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS DUE TO PRIVILEGE WAIVER** |
| v. | |
| FUISZ PHARMA LLC, RICHARD C. FUISZ, and JOSEPH M. FUISZ, | |
| Defendants. | Dept.: Courtroom 5, 4th Floor<br>Judge: Honorable Paul Singh Grewal |
| | Hearing: May 7, 2013<br>Time: 10:00 a.m. |
| | Trial: November 18, 2013 |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A.  Whether Dr. Fuisz Allegedly Intended To Cause Subject Matter Waiver Is Irrelevant.................................................................................................................. 2

    B.  Defendants Have Used The Antonelli Documents To Support Their Litigation Positions..................................................................................................... 3

    C.  The Only Question For The Court To Decide Is The Scope Of Defendants' Waiver of the Attorney-Client Privilege..................................................... 7

        1.  Defendants waived privilege with respect to documents relating to the alleged conception and reduction to practice of the '612 patent, the prosecution of the '612 patent, or Defendants' knowledge of and access to Theranos confidential information....................... 7

        2.  A temporal limitation is improper here............................................................ 8

        3.  Theranos does not seek to disclose the Fuisz's litigation strategy. ..................................................................................................... 10

III. CONCLUSION................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Atari Corp. v. Sega of Am.*,
   161 F.R.D. 417 (N.D. Cal. 1994) .................................................................................... 6, 7

*Bd. of Trustees of Leland Stanford Jr. Univ v. Roche Molecular Sys., Inc.*,
   237 F.R.D 618 (N.D. Cal. 2006) ......................................................................................... 5

*Bittaker v. Woodford*,
   331 F.3d 715 (9th Cir. 2003) .............................................................................................. 7

*Fort James Corp. v. Solo Cup Co.*,
   412 F.3d 1340 (Fed. Cir. 2005) ............................................................................... 2, 3, 6, 9

*In re Echostar Commc'ns Corp.*,
   448 F.3d 1294 (Fed. Cir. 2006) .......................................................................................... 6

*In re Grand Jury Investigation No. 83-2-35*,
   723 F.2d 447 (6th Cir. 1983) ............................................................................................. 8

*McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*,
   765 F. Supp. 611 (N.D. Cal. 1991) ............................................................................... 9, 10

*Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*,
   254 F.R.D. 568 (N.D. Cal. 2008) ............................................................................. 3, 6, 10

*Starsight Telecast, Inc. v. Gemstar Dev. Corp.*,
   158 F.R.D. 650 (N.D. Cal. 1994) ....................................................................................... 6

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*,
   647 F.2d 18 (9th Cir. 1981) ........................................................................................... 2, 3


**STATUTES**

FED. R. EVID. 408 ................................................................................................................... 7


**OTHER AUTHORITIES**

VIII J. WIGMORE, EVIDENCE § 2291, at 554 (McNaughton rev. 1961) ................................................. 3

## I. INTRODUCTION

In their Opposition, Defendants make multiple admissions that, taken together, firmly establish that they cannot continue to claim privilege over documents relating to the alleged conception and reduction to practice of the '612 patent, the prosecution of the '612 patent, or Defendants' knowledge of and access to Theranos confidential information:

- Defendants admit that they waived privilege when Dr. Fuisz voluntarily, and without prompting, disclosed to Theranos's Board of Directors more than fifty communications between himself, Joseph Fuisz and their patent-prosecution counsel: "To be certain, defendants acknowledge that a waiver took place." (Opposition to Plaintiffs' Motion to Compel Production Due to Privilege Waiver (Dkt. No. 136) at 1)) (hereinafter "Opp.").

- Defendants admit that they voluntarily produced those very same documents to Theranos in the ordinary course of discovery in this litigation: "The Antonelli Documents were then produced in this litigation because Fuisz Pharma concedes that Dr. Fuisz's disclosure waived the attorney-client privilege as to those documents." (*Id.* at 5.)

- Defendants admit that Dr. Fuisz produced privileged documents dated both before and after the filing date of the provisional patent application that matured into the '612 Patent: "Fuisz Pharma concedes that it produced privileged documents that are dated after the filing of the provisional patent application." (*Id.* at 10.)

- Defendants admit that the scope of the waiver extends to attorneys at Antonelli, Terry, Stout and Kraus, LLP ("ATSK") other than Alan Schiavelli: "Fuisz Pharma agrees that the waiver extends to attorneys at ATSK other than Alan Schiavelli." (*Id.* at 11.)

- Defendants repeatedly admit that Dr. Fuisz's purpose in effecting this wholesale disclosure to Theranos's Board of Directors was to prove who allegedly conceived of and reduced to practice the invention in the '612 patent and to prove that he and Joseph Fuisz allegedly did not access Theranos's confidential information to do so: "Dr. Fuisz reached out to Theranos's Board of Directors to show them that neither Ms. Holmes nor anyone else at Theranos contributed to the invention described in the [']612 Patent" (*id.* at 1); "Its purpose was to put Theranos on notice that there was no theft concerning Theranos Confidential Information at the time the provisional application that matured into the '612 Patent was first filed" (*id.* at 5); "Dr. Fuisz also felt that if he showed them proof that neither Ms. Holmes nor anyone else at Theranos made any contribution to the [']612 Patent at the time the related provisional patent application was first filed, Theranos would reconsider pursuing this action." (*Id.* at 2.)

Despite these explicit admissions, Defendants continue to try to shield from view ***nearly three hundred*** additional documents that pertain (according to Defendants' privilege log) to the same subjects as those communications that were previously disclosed.   This selective disclosure is improper in light of the well-established rule that a waiver of the attorney-client privilege applies to *all* communications relating to the same subject matter.  *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005); *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

Defendants attempt to excuse their failure to produce these documents on the grounds that Dr. Fuisz allegedly never intended to cause a subject-matter waiver, and that the disclosures were not calculated to gain a litigation advantage.  Even if true, the former is irrelevant; the latter is nonsense. The Fuisz defendants do not contest that Dr. Fuisz mailed his communications to the Board in order to persuade them to drop this lawsuit.  Nor do they disavow that Dr. Fuisz's stated purpose in doing so was to "demonstrate[]" that "the '612 patent arose from our work (and with no access to the confidential provisional patents of Theranos)." (Dearborn Decl. Ex. A (Dkt. No. 131-1).)   Theranos must be permitted to access the rest of the documents on the same subject, to prevent Defendants from using the privilege both as a sword and a shield.  Defendants' production of the privileged documents twice, made in an admitted effort to persuade Theranos to dismiss this lawsuit and as support for its positions in this lawsuit, unambiguously waived the privilege as to all documents on the same subject matter.

## II.     ARGUMENT

### A.     Whether Dr. Fuisz Allegedly Intended To Cause Subject Matter Waiver Is Irrelevant.

Defendants freely admit that they waived privilege when Dr. Fuisz voluntarily, and without prompting, disclosed more than fifty communications between himself, Joseph Fuisz, and their patent-prosecution counsel, Alan Schiavelli of ATSK: "To be certain, defendants acknowledge that a waiver took place."  (Opp. at 1.)  Thus, the only question for the Court to decide is the scope of this waiver.

Despite this admission, Defendants devote much of their opposition to arguing that Dr. Fuisz

1  allegedly did not intend to enact a subject-matter waiver when he voluntarily disclosed the fifty-four

2  communications, in a tabbed binder and with a cover letter stating his belief as to what those

3  documents showed, to Theranos's Board of Directors. (*See* Opp. at 1, 2, 3, 5, 7, 10.) The law is

4  clear, however, that subjective intent is irrelevant to the scope of the privilege waiver. *Weil*, 647 F.2d

5  at 24 (citing VIII J. WIGMORE, EVIDENCE § 2291, at 554 (McNaughton rev. 1961) ("[W]hen (the

6  privilege holder's) conduct touches a certain point of disclosure, fairness requires that his privilege

7  shall cease *whether he intended that result or not*. He cannot be allowed, after disclosing as much as

8  he pleases, to withhold the remainder. He may elect to withhold or disclose, but after a certain point

9  his election must remain final.") (emphasis added)); *see also Phoenix Solutions, Inc. v. Wells Fargo

10 Bank, N.A.*, 254 F.R.D. 568, 577 (N.D. Cal. 2008) ("Phoenix's attorney argument that it did not

11 subjectively intend to waive the privilege as to any documents beyond those which have been already

12 disclosed is unpersuasive to make out the necessary element of nonwaiver. It is well settled that a

13 party's failure to protect its privilege can result in a loss or conscription of that privilege.") (citations

14 omitted). Instead, the only relevant inquiry is the subject matter of the communications for which

15 privileged was waived. *Fort James*, 412 F.3d at 1349; *Weil*, 647 F.2d at 24.

16  **B.  Defendants Have Used The Antonelli Documents To Support Their Litigation
17       Positions.**

18  Defendants argue that the scope of the waiver here should be narrowly construed because Dr.

19 Fuisz made no attempt to gain an advantage in this litigation with the disclosure. (Opp. at 4–6.)

20 Defendants own admissions, however, show that to be untrue.

21  Defendants expressly admit that Dr. Fuisz sent the fifty-four communications to Theranos's

22 Board of Directors purportedly to prove to them that Dr. Fuisz and Joseph Fuisz conceived of and

23 reduced to practice the '612 patent, and that they therefore did not access Theranos confidential

24 information to do so:

25  • "Dr. Fuisz reached out to Theranos's Board of Directors to show them that
26    neither Ms. Holmes nor anyone else at Theranos contributed to the invention
      described in the [']612 Patent." (*Id.* at 1.)

27  • "Its purpose was to put Theranos on notice that there was no theft concerning
28    Theranos Confidential Information at the time the provisional application that

matured into the '612 Patent was first filed." (*Id.* at 5.)

- "Dr. Fuisz also felt that if he showed them proof that neither Ms. Holmes nor anyone else at Theranos made any contribution to the [']612 Patent at the time the related provisional patent application was first filed, Theranos would reconsider pursuing this action." (*Id.* at 2.)

The factual positions that Dr. Fuisz claims these documents support (Theranos disagrees) are the very same factual positions that Defendants have asserted in this litigation.[1]

Tellingly, neither Defendants nor their counsel have ever requested the return of these documents. Indeed, following Dr. Fuisz's production of these documents to the Board of Directors, Defendants formally produced them in discovery in this litigation, with Bates numbers. And Defendants then proceeded to cite the documents to support their factual arguments in this case. For instance, Defendants have, on multiple occasions, repeated that Dr. Fuisz disclosed the Antonelli documents in order to provide alleged support for their factual assertions disputing Theranos's inventorship of the '612 patent and the Fuiszes' "theft" of Theranos confidential information, including the very same assertions quoted in the preceding paragraph.[2] (*See* Motion to Compel Production of Documents Due to Privilege Waiver. (Dkt. No. 130) at 4–5, 8, 12 (hereinafter "Mot."); *see also* Dearborn Decl. Ex. J at 2 (Dkt. No. 131-10).)

In addition to these efforts to disprove Theranos's inventorship of the '612 patent, and/or Defendants' receipt of Theranos confidential information, Defendants also appear to be trying to use the Antonelli documents to establish a conception date that predates the priority date of the '612 patent and, presumably, any related Theranos inventions. Although the '612 Patent lists a priority date of April 24, 2006, Defendants have represented that they conceived of the ideas in the '612

---

[1] Defendants argue that Theranos "confirms" that Defendants gained no litigation advantage because Theranos disagrees that the Antonelli communications are sufficient to prove what Dr. Fuisz says they prove. That is absurd, and Defendants have cited no case in support of their remarkable argument. The relevant inquiry here is where Defendants have used the documents to try to gain an advantage in the litigation, not whether Theranos agrees that the documents actually support Defendants' positions. To hold otherwise would be to force Theranos, and every other party litigating this issue, into a no-win situation: either admit that there was no waiver, or admit that the documents should be interpreted the way that Defendants want.

[2] As noted above in fn. 1 and in Theranos's Motion to Compel, Theranos strongly disagrees with these factual assertions. (*See* Mot. at 8.)

patent as of September 2005, which corresponds with the date of the earliest produced email between Richard Fuisz and Mr. Antonelli.  (*See* Dearborn Decl. Ex. C (Dkt. No. 131-3); Dearborn Decl. Ex. K at 3–4 (Dkt. No. 131-11) (Defendants' response to Theranos's Interrogatory No. 1, stating "The subject of the [']612 Patent was conceived by Richard and Joseph Fuisz at least as early as September 2005.").)  The September 2005 email is in the set of privileged documents that Dr. Fuisz produced to the Theranos Board of Directors (and again in this litigation).  Defendants have produced no other documents that would support a September 2005 conception date.[3]  (Mot. at 8.)  Thus, Defendants appear to intend to rely on the Antonelli documents to prove that they conceived of and/or reduced to practice the ideas in the '612 patent in late 2005 and early 2006, which would constitute an advantage gained in litigation through their disclosure.

Defendants do not even respond to the argument that they appear intent on using the Antonelli documents to swear behind an otherwise binding priority date.  Nor do they otherwise disclaim their intention to rely on the Antonelli documents in this litigation.  Instead, they claim only that the documents were "not meant to be a definitive statement on all issues involving the inventorship of the '612 Patent."  (*See* Opp. at 5, 6.)  It cannot be the case, however, that a party can preserve privilege simply by relying on other documents or testimony in addition to the disclosed communications.  Defendants do not cite any cases that support such an illogical position.

Rather, the cases demonstrate the opposite—as Defendants' weak attempt to distinguish them shows.  The law is clear that when a party affirmatively uses an otherwise privileged document to support its factual position in litigation, then the party is using a privileged document as a "sword."  In *Stanford*, for example, the disclosing party relied on attorney declarations to disprove deceptive intent.  *Bd. of Trustees of Leland Stanford Jr. Univ v. Roche Molecular Sys., Inc.*, 237 F.R.D 618, 623–25 (N.D. Cal. 2006).  It does not matter that the body to which the disclosures were made had adjudicative authority; the point is that the disclosing party affirmatively relied on the otherwise privileged material to support its factual position. The Fuisz defendants (who bear the burden of

---

[3] Theranos has cited this email only to evidence Defendants' apparent intention to rely on it as proof of an earlier conception date.  Theranos disputes that this or any email actually does support an earlier conception date, or any conception by Defendants at all.

1  proof) cite no case to the contrary.  (*See* Opp. at 6.)  Both *Echostar* and *Starsight* are in accord.  *In re*
2  *Echostar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) ("The client can waive the
3  attorney-client privilege when, for instance, it uses the advice [of counsel] to establish a defense");
4  *Fort James*, 412 F.3d at 1350 ("knowing disclosure of privileged documents to a third party" is
5  "conduct which acts as a surrender of the privilege protection"); *Starsight Telecast, Inc. v. Gemstar*
6  *Dev. Corp.*, 158 F.R.D. 650, 654 (N.D. Cal. 1994) (waiver effected when attorneys submitted
7  declarations supporting defense against inequitable-conduct claim).  That is exactly what Defendants
8  have done here.  Dr. Fuisz and the other Defendants are ***affirmatively relying on these documents to***
9  ***support their litigation position***, both asserting that the documents prove that there was no improper
10 access of Theranos's materials in a calculated bid to force a dismissal of the lawsuit (as in Dr. Fuisz's
11 disclosure to the Board), and by implicitly relying on those documents to prove an earlier date of
12 conception than the '612 would otherwise provide (as in their interrogatory responses).  *Compare*
13 *Phoenix*, 254 F.R.D. at 578–79 (no strategic use when documents were simply identified in initial
14 disclosures, though subject-matter waiver effected in any event as to certain documents).  Once again,
15 Defendants' silence on this issue is deafening: nowhere in their opposition do they disclaim that they
16 will rely on these documents to support their claims and defenses.

17        Defendants also note that Dr. Fuisz disclosed the Antonelli documents to Theranos's Board of
18 Directors in the first instance, rather than in this litigation.  But Defendants admit that Dr. Fuisz
19 disclosed the documents to the Theranos Board of Directors to convince them to "reconsider pursuing
20 this action." (Opp. at 2.)  In other words, Dr. Fuisz was trying to convince Theranos to drop this
21 lawsuit.  To claim that "[t]he disclosure occurred outside the context of this litigation," when its
22 stated aim was to cause Theranos to abandon this litigation, is nonsense.  (*See id.* at 5, 6.)  Moreover,
23 even accepting as true Dr. Fuisz's stated intention to force a settlement, it is not material that the
24 disclosure, in the first instance, occurred outside of formal litigation discovery.  *Atari Corp. v. Sega*
25 *of Am.*, 161 F.R.D. 417, 420 (N.D. Cal. 1994) (finding waiver of the attorney-client privilege where

the voluntary disclosure of privileged communications took place during settlement negotiations).[4]

### C. The Only Question For The Court To Decide Is The Scope Of Defendants' Waiver of the Attorney-Client Privilege.

#### 1. Defendants waived privilege with respect to documents relating to the alleged conception and reduction to practice of the '612 patent, the prosecution of the '612 patent, or Defendants' knowledge of and access to Theranos confidential information.

The Court should order Defendants to turn over all communications between the Fuisz defendants and any attorney at Antonelli, Terry, Stout, & Kraus, LLP—the same firm to which every communication in the Antonelli documents is addressed—relating to conception, reduction to practice, and prosecution of the '612 patent, as well as Defendants' knowledge of and access to Theranos confidential information. As explained in detailed in Theranos's opening brief, *every one of the fifty-four tabs* in the binder that Dr. Fuisz sent to the Board of Directors relates to these topics. (*See* Mot. at 3 (describing the specific topics addressed by these documents, including characterizing the invention and discussing its scope and potential claims, analyzing, and attempting to distinguish, prior art, identifying who should be named as inventors on the patent, providing and revising drafts of the application and its claims, and strategizing regarding the PTO).) It is unreasonable for Defendants to attempt to preserve privilege over hundreds of communications between themselves and the Antonelli firm when they have supplied Theranos—their litigation adversary—with privileged documents on the same topics. *Bittaker v. Woodford*, 331 F.3d 715, 719–20 (9th Cir. 2003) (citations omitted). This is particularly true where, as here, Defendants have repeatedly relied on these documents to support key factual assertions in this case such as inventorship—both to "prove" that they are the proper inventors and to "disprove" Theranos's claim that they had access to confidential Theranos materials. (Dearborn Decl. Ex. A (Dkt. No. 131-1) (letter from Dr. Fuisz to the

---

[4] Although Defendants obliquely reference the "settlement privilege" in their brief, (Opp. at 2), it is telling that they do not argue that Rule 408 protects these documents from disclosure. As the 2006 Advisory Committee Note states, "the Rule cannot be read to protect pre-existing information simply because it was presented to the adversary in compromise negotiations." FED. R. EVID. 408 adv. comm. note; *see also Atari Corp. v. Sega of Am.*, 161 F.R.D. 417, 419 (N.D. Cal. 1994) (rejecting argument that disclosure of privileged material in settlement negotiations prevented subsequent use of the documents under Rule 408).

Theranos board, stating that the documents show "the [']612 patent arose from our work (and with no access to the confidential provisional patents of Theranos"); Dearborn Decl. Exs. C, K (Dkt. No. 131-3, 131-11) (apparently using the earliest disclosed document to try to prove conception as of September 2005); Dearborn Decl. Ex. J (Dkt No. 131-10) (acknowledging that Dr. Fuisz disclosed the materials in order to "prove" his own inventorship).)

Obvious unfairness will result if Defendants are permitted to rely on their communications with their counsel to support their inventorship case while simultaneously shielding documents on the same subject matter from Theranos's scrutiny. The Court should order the production of all such documents.

### 2.   A temporal limitation is improper here.

Defendants have now backpedaled from their original argument that the provisional patent application provided the limiting date.  They now concede—as they must—that Dr. Fuisz apparently did not consider that date to be relevant when he disclosed documents dated after that filing. (Opp. at 10 ("Fuisz Pharma concedes that it produced privileged documents that are dated after the filing of the provisional patent application[.]").  But remarkably, the Defendants have not abandoned their argument that the date of the disclosures matters; instead, they now assert that a later, arbitrary date— the date of the filing of a non-provisional application—should limit the scope of their waiver.  (*Id.*) But they advance no principled reason as to why a date in the *middle* of patent prosecution should limit their waiver.  As the party asserting the privilege, Defendants have the burden of convincing the court that the privilege still attaches to the remaining documents on the same subject matter as those already disclosed. *See In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983) (collecting citations).  Defendants have failed to carry that burden.  Neither of the two arguments that they advance has merit.

First, the Defendants claim that they had a "reasonable belief that the post-filing materials would remain in confidence." (Opp. at 10.)  First, as discussed elsewhere, Dr. Fuisz's intentions to maintain certain documents in confidence, when he admits that he intended to disclose the balance, is simply immaterial.  Even if Dr. Fuisz were to actually hold that belief, it is simply not reasonable in light of Dr. Fuisz's concerted, intentional disclosure of dozens of communications with patent

counsel, both before and after the filing date of the provisional application, to his litigation adversary. *Cf. McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 765 F. Supp. 611, 614 (N.D. Cal. 1991) (declining to impose temporal limitation on waiver) ("Parties and their counsel are responsible for knowing what to waive and how to waive it.").

Second, Defendants claim that this time period is the "only relevant one" because Theranos claims that "Defendants could not have drafted the [']612 application without" Theranos's confidential information. (Opp. at 13.) This argument too fails. It is not Theranos's theory of the case, but rather the subject matter and purpose of the Fuisz defendants' intentional disclosure, that determines the scope of waiver. *Fort James*, 412 F.3d at 1349; *Weil*, 647 F.2d at 24. And Defendants have alleged that their selectively disclosed documents prove the *absence* of Theranos's confidential information during the prosecution of the '612 Patent. But what if (and Theranos has no way to know if any of these hypotheticals is true—that is precisely the point) a later-dated email between Dr. Fuisz and his attorney notes the similarity between the patent application for the '612 patent and a Theranos provisional, which became public in November 2006, and the comparison provided circumstantial evidence that the two were too similar for independent creation? What if Dr. Fuisz wrote a celebratory email after the patent's issuance in which he notes that the PTO had not noticed the inclusion of material not his own? No doubt Defendants will vehemently deny that such communications exist. But because of Dr. Fuisz's intentional and unequivocal waiver, Theranos need not take these representations on faith. Dr. Fuisz produced a hand-picked, curated set of prosecution documents dated both before and after the first filing date of the '612 patent's application, in an effort to support Defendants' factual position and convince Theranos to dismiss this lawsuit. His conduct resulted in waiver, without temporal limitation.

Courts in this district refuse to impose arbitrary time limitations. *See McCormick-Morgan*, 765 F. Supp. at 613 ("under the law this court finds persuasive, and in light of policy considerations, it is not appropriate thereafter for the waiving parties or judge to limit the waiver on a temporal basis."). This is particularly true where the disclosure was selective and calculated to gain a litigation advantage, and the documents sought concern the same material as the disclosed documents. *Phoenix* illustrates this point. Even where the court found that disclosure was not calculated to gain a

litigation advantage, temporally limited disclosure was not warranted as to documents that concerned exactly the same subject matter as the ones that had already been disclosed: drafts of the specification of the patent-in-suit, and communications between the named inventor and the prosecuting attorney regarding certain prior-art references. *Phoenix*, 254 F.R.D. at 578–79 (ordering disclosure of "pre- and post-filing" communications on those topics). And the court specifically noted that, if the disclosing party had sought to gain a tactical advantage in litigation with the disclosure, then it "would have broadly waived the privilege as to all other communications relating to the same subject." *Id.* at 576 (citing cases). Other cases are in accord. *McCormick-Morgan*, 765 F. Supp. at 613; *Stanford*, 237 F.R.D. at 623.

An arbitrary date limitation is particularly improper under the circumstances of this case, where: (1) Dr. Fuisz showed no regard for any rational temporal limitation when he intentionally disclosed both pre- and post-filing documents; (2) there is no principled reason to settle on an arbitrarily-chosen date in the middle of patent prosecution to set a time limit; (3) the documents sought concern exactly the same subject matter (alleged inventorship) as the documents already disclosed; (4) the stated purpose of the disclosures was to prove a negative; and (5) the selective disclosure was calculated to gain a litigation advantage.

### 3. Theranos does not seek to disclose the Fuisz's litigation strategy.

Instead of addressing the merits of Theranos's motion, Defendants attack a straw man. They claim that Theranos intends to leverage Dr. Fuisz's unequivocal waiver of privilege over prosecution documents into a waiver that would cover "communications between Fuisz Pharma and its outside counsel" concerning "its defense of Plaintiffs' theft theory" and "their defense of this entire action." (Opp. at 1, 11.) That, of course, is untrue. Theranos seeks communications only with ATSK—the patent-prosecution law firm to whom every single one of the fifty-four intentionally disclosed emails is addressed. (*Cf.* Mot. at 12–13.) Theranos does not seek an order forcing Defendants to disclose communications with litigation counsel.

## III. CONCLUSION

Dr. Fuisz produced a hand-picked set of prosecution documents dated both before and after the first filing date of the application for the '612 patent. This was done in an effort to support

Defendants' factual position and to convince Theranos to dismiss this lawsuit.  Dr. Fuisz did so admitting that he was aiming to show that these documents contained no Theranos confidential information.   Defendants now rely on these same documents to attempt to establish that they invented the ideas in the '612 patent as of an earlier priority date than that to which they would otherwise be entitled, and that they did so without accessing Theranos's confidential information.  The law regarding privilege waiver, and fundamental fairness, requires that Theranos be able to test and challenge these hypotheses.  Thus, Defendants should be required to produce the remainder of the documents on the same subject matter as those already, intentionally disclosed.

Dated:  April 5, 2012                                BOIES, SCHILLER & FLEXNER LLP

                                                     By:   */s/ Michael D. Jay*
                                                             Michael D. Jay

                                                     *Attorneys for Plaintiffs*
                                                     THERANOS, INC. and ELIZABETH HOLMES