UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THERANOS, INC., et al, | Case No.: C 11-5236 PSG |
| Plaintiffs, | **ORDER GRANTING MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| v. | |
| FUISZ TECHNOLOGIES, LTD., et al, | |
| Defendants. | **(Re: Docket No. 130)** |

Patent cases seem to give rise to a disproportionate number of disputes regarding the scope of waiver attaching to a disclosure of privileged documents. This case is yet another example. Plaintiffs Theranos, Inc., et al, ("Theranos") move to compel Defendants Fuisz Technologies, Ltd., et al ("Fuisz Technologies") to produce documents that Fuisz Technologies is withholding on privilege grounds. Theranos asserts that Fuisz Technologies effected a subject-matter waiver of privilege when Defendant Richard Fuisz ("Fuisz") sent Theranos' board of directors email communications between Fuisz and his attorney regarding prosecution of United States Patent No. 7,824,612 ("'612 Patent"). Fuisz Technologies opposes the motion on the grounds that the waiver is limited only to the emails Fuisz already disclosed rather than to the subject of prosecution of the

1

Case No.: 11-5236 PSG
ORDER

patent generally. The parties appeared for two hearings on the matter, and submitted original and supplemental briefing on the dispute. Having reviewed the parties' papers and considered their arguments, the court GRANTING Theranos' request.

## I. LEGAL STANDARDS

The attorney-client privilege protects from disclosure confidential communications between a client and an attorney.[1] The privilege "is intended 'to encourage clients to make full disclosure to their attorneys,' recognizing that sound advice 'depends upon the lawyer's being fully informed by the client.'"[2] The attorney-client privilege is strictly construed.[3] A party waives the attorney-client privilege by tendering voluntarily the contents of a confidential communication and such waiver may include all other communications on the same subject.[4] The party asserting the attorney-client privilege bears the burden of showing that it applies.[5] Also, it must prove that privilege has not been waived.[6]

"An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."[7] "Disclosures that effect an express waiver are typically within the full

---

[1] *See Hernandez v. Tanninen,* 604 F.3d 1095, 1100 (9th Cir. 2010).

[2] *Id.*

[3] *See Weil v. Investment/Indicators, Research & Mgmt, Inc.,* 647 F.2d 18, 24 (9th Cir. 1981).

[4] *See id.*

[5] *See id.* at 25.

[6] *See id.*

[7] *Bittaker v. Woodford, Warden, Cal. State Prison of San-Quentin,* 331 F.3d 715, 719 (9th Cir. 2003) (internal citations omitted).

2

Case No.: 11-5236 PSG
ORDER

control of the party holding the privilege; courts have no role in encouraging or forcing the disclosure - they merely recognize the waiver after it has occurred."[8]

Pursuant to Fed. R. Evid. 502(a), when a disclosure "made in a federal proceeding . . . waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."[9]  "[A] subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."[10]  In essence, "[t]he privilege which protects attorney-client communications may not be used both as a sword and a shield."[11]

---

[8] *Id.*

[9] Cases pre-dating the introduction of Fed. R. Evid. 502 distinguish between waiver of materials that arise exclusively in patent law and waiver of materials that arise outside of the patent context. *See, e.g., Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576 (N.D. Cal. 2008). But Rule 502 supplants federal common law.  *See* Fed. R. Evid. 501 ("The common law – as interpreted by United States courts in light of reason and experience – governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court."); Fed. R. Evid. 502 (providing the procedures for "disclosure of a communication or information covered by the attorney-client privilege or work-product protection").  The court therefore looks to the Ninth Circuit and the Federal Circuit for guidance, *see* Fed. R. Evid. 502 Advisory Committee Note (2011) ("[W]hile establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine generally. The rule governs only certain waivers by disclosure."), but the court notes that neither court has spoken directly about the fairness inquiry under Rule 502.

[10] Fed. R. Evid. 502(a) Advisory Committee Note (2011).

[11] *Akamai Technologies, Inc. v. Digital Island, Inc.,* Case No. 00-3508 CW (JCS), 2002 WL 1285126 at *8 (N.D. Cal. May 30, 2002) (citing *Chevron Corp. v. Penzoil,* 974 F.2d 1156, 1162 (9th Cir. 1992)).

Case No.: 11-5236 PSG
ORDER

## III.   DISCUSSION

Neither Fuisz nor Fuisz Technologies dispute that when Fuisz sent his email communications with the attorney to the Theranos board a waiver occurred; the only issue is the scope of the waiver.  Fuisz Technologies believes the waiver is limited to the emails themselves and at the most other communications produced before the provisional application giving rise to the '612 Patent was filed.  Theranos asserts that the waiver extends to all communications between Fuisz Technologies' agents and their attorneys regarding the prosecution of the '612 Patent – whether before or after the patent was filed.  That determination requires the court to assess the fairness of allowing Fuisz Technologies to withhold the remaining communications on privilege grounds.

To make that determination, the court briefly recounts the actions involving the disclosure of the documents.  This litigation began in October 2011 after Theranos accused Fuisz Technologies of using its intellectual property to improperly secure the '612 Patent.  In June 2012, Fuisz sent to Theranos' board of directors a binder of 54 documents revealing correspondence between Fuisz and Alan Schiavelli ("Schiavelli"), the attorney who aided Fuisz in the prosecution of the '612 Patent.  Fuisz included a cover letter stating that he was "providing documentation to [the board] from 2005 and 2006 which demonstrates . . . that the '612 patent arose from [his and his co-inventor's] work (and with no access to the confidential provisional patents of Theranos)."[12]  The cover letter reflects that Fuisz apparently was responding to a letter from Theranos' counsel and that Fuisz felt "that it is patently unfair to ask [him] to provide confidential information in order to disprove unfounded allegations of criminal behavior (that [he] conspired with two of my sons to steal Theranos' patents from its law firm, etc.)."[13]

---

[12] Docket No. 131 Ex. A.

[13] *Id.*

4

Case No.: 11-5236 PSG
ORDER

Fuisz included a log of the emails in the binder with descriptions of the dates, the sender, the recipient, the type of document, and a summary of the content.[14] Fuisz disclosed emails referencing various prior art, Theranos' own patent applications and how to distinguish the '612 Patent invention, discussions of the draft application and edits, and other prosecution comments.[15] The emails further reveal communications between Fuisz and Schiavelli regarding the scope of the invention,[16] how it could comport with Theranos' products,[17] and how the '612 Patent addresses an issue that Theranos and other similar inventors had missed.[18] The creation of the documents ranged from September 2005 to September 2006.[19]

Despite Fuisz's submission to the board, the litigation continued. Antonelli, Terry, Stout & Kraus, LLP ("ATSK"), Schiavelli's firm, provided to Theranos a privilege log identifying nearly 300 documents being withheld on privilege grounds.[20] The log identifies emails "regarding status of prosecution," "regarding scope of issued patent," "regarding legal advice about claim scope and possible infringement," "giving advice about possible reissue," and "regarding patent prosecution," among others.[21] The identified documents were created between 2006 and 2011.[22] Fuisz Technologies also provided a privilege log listing numerous additional documents it is withholding

---

[14] *See* Docket No. 131 Ex. B.

[15] *See id.*

[16] *See* Docket No. 131 Exs. C, D.

[17] *See id.* Exs. E – I.

[18] *See id.* Ex. O.

[19] *See id.* Ex. B.

[20] *See id.* Ex. L.

[21] *Id.*

[22] *See id.*

Case No.: 11-5236 PSG
ORDER

on privilege grounds.  It has produced all of the previously disclosed emails in response to Theranos' first set of document requests, although it designated them "Attorneys' Eyes Only."

Based on Fuisz's actions, Theranos believes it is entitled to "documents concerning Joseph Fuisz and Richard Fuisz's alleged conception and reduction to practice of the '612 Patent, documents relating to the prosecution of the '612 Patent, and all documents relating to Fuisz's knowledge of and access to Theranos confidential information."[23]  Theranos further asserts that it is entitled to documents after the provisional patent filing date in April 2006.  It believes that Fuisz's use of a subset of attorney communications to support his and Fuisz Technologies' litigation positions should prevent Fuisz Technologies from shielding the remaining emails on the same subject matter.  Fuisz Technologies responds that Fuisz's disclosure was "outside of the litigation process," and sought only to inform Theranos' board about the claims in the litigation.  According to Fuisz Technologies, Fuisz never intended to disclose all documents relating to the inventorship of the '612 Patent.

The court first addresses Fuisz Technologies argument that these disclosures were not part of the litigation.  Fuisz offered the communications in response to communications with Theranos' counsel, in an explicit effort to refute Theranos' claims in this litigation.  His disclosures thus appear to fall well within the boundaries of this litigation.  But even if they did not, Fuisz Technologies undeniably disclosed the emails to Theranos a second time in response to document requests, and those disclosures are part of an ongoing federal proceeding.

In previous incarnations of privilege waiver, courts have found that once a particular communication is intentionally disclosed, the only issue is the scope of the subject matter that also should be disclosed.[24]  Rule 502(a), however, provides a different procedure for determining the

---

[23] *See* Docket No. 130.

Case No.: 11-5236 PSG
ORDER

6

scope of waiver, namely by deciding whether the undisclosed documents "concern the same subject matter" and "ought in fairness" be considered with the disclosed documents. If so, the waiver extends to those documents; if not, the privilege remains. The rule in essence creates a two-step inquiry out of a one-step determination. Before the enactment of Rule 502, some courts permitted waiver for all documents on the same subject matter *because* it was fair, although the scope of the subject matter often involved a fairness inquiry.[25] Rule 502 makes that fairness inquiry separate and explicit. Notably, the standard for fairness under Rule 502 is the same as for Fed. R. Evid. 106,[26] and the court finds nothing in Rule 502 that shifts the burden away from the party asserting the privilege to show that the privilege remains intact and has not been waived.[27] It therefore is Fuisz's burden to show that fairness does not require waiver of the privilege over documents relating to the same subject matter as the documents disclosed.

      The parties do not really dispute that at least some of the documents for which Fuisz Technologies asserts a privilege concern the same subject matter as the documents Fuisz disclosed. Documents concerning patent prosecution or the scope of the '612 Patent, for example, involve the same subject matter as the emails that Fuisz disclosed to the Theranos board. The question is

---

[24] *See Phoenix Solutions Inc.*, 254 F.R.D. at 576 ("The disclosure of confidential information resulting in the waiver of the attorney-client privilege constitutes waiver of privilege as to communications relating to the subject matter that has been put at issue."); *but see Wi-LAN v. Kilpatrick Townsend & Stockton LLP*, 684 F.3d 1364, 1372 (Fed. Cir. 2012) (holding that "[a]s between the two directions put forward by the parties – one requiring fairness balancing for extrajudicial discloses [sic], the other barring it – [the court] conclude[s] that the Ninth Circuit's cases support the former far better than the latter").

[25] *See Weil*, 647 F.2d at 25 (holding waiver extended only to disclosed documents because other side was not prejudiced); *Phoenix Solutions Inc.*, 254 F.R.D. at 576 (noting that had the waiving party attempted to use the disclosed materials for an advantage while withholding damaging materials, waiver as to the entire subject matter would be appropriate).

[26] *See* Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2016.2 (3d ed.); *see also* Fed. R. Evid. 106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any otherpart or any other writing or recorded statement which ought in fairness be considered contemporaneously with it.").

[27] *See Weil*, 647 F.2d at 25.

7

Case No.: 11-5236 PSG
ORDER

whether, based on Fuisz's use of the disclosed documents, Fuisz Technologies may maintain the privilege over the documents sharing the same subject matter.

Fuisz Technologies has not met its burden that the remaining documents may be withheld. Fuisz offered the documents to the Theranos board in part to show when he invented the '612 Patent and that he did not use Theranos' confidential information. Fuisz Technologies notably has provided the documents again in response to Theranos' requests, which plainly suggests that it plans to rely on the documents in the litigation. Theranos also points to Fuisz Technologies' assertion that Fuisz and his son invented the patent in September 2005, not April 2006 when they filed the provisional application, and the emails provide the only evidence so far of that earlier inventorship date. Fuisz Technologies disagrees, asserting that the only reason it provided the documents in response to Theranos' request was to acknowledge that the waiver for those documents already had occurred.[28] Fuisz Technologies, however, has not expressly disavowed the use of the disclosed documents in support of its defenses in any of the multiple filings or appearances before the court, and it never contested the production of the documents.[29] Its position essentially boils down to allowing Theranos access to the disclosed documents because they also happen to serve Fuisz Technologies' purposes.

The court finds that the disclosure to Theranos' board combined with the production in this case and Fuisz Technologies' failure to disavow any reliance on the emails are sufficient to require disclosure of all of the remaining documents on the entire '612 Patent prosecution (including the earlier provisional and nonprovisional patents), the invention and reduction to practice, and Fuisz Technologies' awareness of Theranos' confidential information. Fuisz Technologies appears

---

[28] *See* Docket No. 136.

[29] *Cf. Wi-LAN, Inc. v. LG Electronics, Inc.*, Case No. 10-80254 JF (PSG), 2013 WL 685339, at *4 (N.D. Cal. Feb. 25, 2013) (finding waiver as to other documents on same subject matter unnecessary where party disavowed any claim to using the documents in the litigation).

8
Case No.: 11-5236 PSG
ORDER

primed to employ the favorable communications as a sword while guarding possibly damaging emails with the shield of the privilege, and that position undoubtedly creates an unfair prejudice to Theranos.

Because the documents have been produced within the litigation and Bates-stamped, Fuisz Technologies can use them as proof of inventorship or for the defense against Theranos' claim regarding the use of confidential information.  Absent an opportunity to review other documents on the same subject matter to ascertain the context of the disclosed communications, Theranos cannot rebut the inferences Fuisz Technologies may draw from the contents of the emails it has disclosed.  This type of imbalance is the kind of prejudice against which Rule 502(a), and the waiver doctrine generally, protects.   Theranos thus is entitled to disclosure of other emails and communications on those subjects, up to and including all of the communications, because Fuisz has offered the absence of references to confidential information in the disclosed documents to show that he never used Theranos' intellectual property to develop the '612 Patent.  Fuisz Technologies cannot rely on the waiver as a means to shield other relevant communications from the same subject matter that Fuisz willfully disclosed.  Fuisz may have chosen a representative sample of communications or he may have cherry-picked selective communications that are favorable to him.  The court cannot tell which was Fuisz's motivation, and that is why disclosure is necessary.

The court also rejects Fuisz Technologies' argument that the waiver should be limited to the time period prior to the filing of the nonprovisional application.  Through its disclosure of the documents in this litigation, Fuisz Technologies has put at issue that communications between Fuisz and ATSK provide evidence that he and the company did not engage in the conduct of which Theranos accuses them.  Those communications continued long past the filing of the provisional patent, and so Theranos should have the opportunity to consider the rest of the communications to test whether they provide the evidence Fuisz Technologies asserts.

9
Case No.: 11-5236 PSG
ORDER

This case is different than *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, where the court determined that a temporal limitation on waiver was appropriate.[30] There, the court determined that the "voluntarily produced communications refer to the prior art and the relevance of the prior art to specific portions of the specification of the patents-in-suit" but found that the waiver should not extend from patent drafting to patent prosecution.[31] Here, in contrast, Fuisz offered the documents to show that he had not engaged in using Theranos' confidential information when he invented the '612 Patent. The prosecution of the '612 Patent, especially given Fuisz's admissions of the closeness of that invention to the Theranos patents, would give further context to the disclosed emails and therefore fall within the subject matter that in fairness ought to be disclosed to Theranos.

Except as noted below, Fuisz Technologies shall produce all communications involving patent prosecution of the '612 Patent, inventorship and reduction to practice of the '612 Patent, and any documents that may involve Theranos' confidential information as it relates to the prosecution of the '612 Patent, and it shall make its production no later than Friday, May 24, 2013. Fuisz Technologies need not produce communications with or work product created by its counsel in this litigation.

**IT IS SO ORDERED.**

Dated: May 16, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[30] *See* 254 F.R.D. at 578.

[31] *Id.*

10

Case No.: 11-5236 PSG
ORDER