DAVID BOIES (admitted *pro hac vice*)
Email: dboies@bsfllp.com
WILLIAM MARSILLO (admitted *pro hac vice*)
Email: wmarsillo@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

MICHAEL D. JAY
Email: mjay@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
Telephone: (310) 752-2400
Facsimile: (310) 752-2490

*Attorneys for Plaintiffs*
THERANOS, INC. and ELIZABETH HOLMES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| THERANOS, INC. and ELIZABETH HOLMES,<br><br>Plaintiffs,<br><br>v.<br><br>FUISZ PHARMA LLC, RICHARD C. FUISZ, and JOSEPH M. FUISZ,<br><br>Defendants. | Case No. 11-CV-05236-PSG<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Dept.: Courtroom 5, 4th Floor<br>Judge: Honorable Paul Singh Grewal<br><br>Hearing: August 2, 2013<br>Time: 10:00 a.m.<br><br>Trial: November 18, 2013 |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 1

    A.    Fuisz Pharma Has Failed to Satisfy Its Burden of Showing a Basis to Deviate From Plain Meaning ....................................................................................... 1

    B.    Fuisz Pharma's Constructions Do Not Resolve Any "Dispute" .................................. 5

        1.    "setting the bodily fluid analyzer with the at least one threshold value for the at least one analyte to be sensed by the bodily fluid analyzer with the information read by the data reader from the data storage unit" ........................................................................................... 5

        2.    "selecting by a prescribing physician or a drug company at least one threshold value of at least one analyte to be sensed by the bodily fluid analyzer" ....................................................................................... 7

        3.    "the at least one threshold value of the at least one analyte being associated with a particular drug being or to be taken by the patient or course of treatment for the patient" ................................................... 9

        4.    "data storage unit separately from the bodily fluid analyzer" ........................ 10

        5.    "reading the stored information stored on the data storage unit" ................... 10

        6.    "a/the display" ................................................................................................ 11

        7.    "a/the threshold" ............................................................................................. 12

III. CONCLUSION.................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**CASES**

*Altiris Inc. v. Symantec Corp.*,
   318 F.3d 1363 (Fed. Cir. 2003) .................................................................................................. 1

*Am. Patent Dev., Corp. v. Movielink, LLC*,
   604 F. Supp. 2d 704 (D. Del. 2009) ................................................................................. 2, 4, 11

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
   388 F.3d 858 (Fed. Cir. 2004) .................................................................................................. 6, 9

*Caddy Prods., Inc. v. Am. Seating Co.*,
   No. 05-cv-800(JRT/FLN), 2008 WL 927569 (D. Minn. Apr. 4, 2008) ................................. 2, 7, 12

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010) ........................................................................................... 4, 10, 12

*In re Lockwood*,
   50 F.3d 966 (Fed. Cir.) ................................................................................................................ 4

*Lehman v. Nakshian*,
   453 U.S. 156 (1981) ................................................................................................................... 4

*Level 3 Comm'cns, LLC v. Limelight Networks, Inc.*,
   589 F. Supp. 2d 664 (E.D. Va. 2008) ........................................................................................ 7

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
   521 F.3d 1351 (Fed. Cir. 2008) ......................................................................................... 3, 4, 5

*Parker-Hannifin Corp. v. Baldwin Filters, Inc.*,
   No. 1:07-cv-1709, 2008 WL 5732941 (N.D. Ohio July 3, 2008) ........................................ passim

*Patlex Corp. v. Mossinghoff,*
   758 F.2d 594 (Fed. Cir. 1985) ................................................................................................... 4

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................................................. 2

*St. Jude Med., Inc. v. Access Closure, Inc.*,
   08-CV-4101, 2010 WL 4880806 (W.D. Ark. Nov. 23, 2010) ................................................... 4

*Stanacard, LLC v. Rebtel Networks, AB*,
   680 F. Supp. 2d 483 (S.D.N.Y. 2010) ........................................................................... 2, 5, 9, 10

*Thorner v. Sony Computer Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) ......................................................................................... 1, 10, 11, 12

*Toshiba Corp. v. Imation Corp.*,
   681 F.3d 1358 (Fed. Cir. 2012) .................................................................................... 1, 10, 13

*Trovan, Ltd. v. Sokymat SA, Irori*,
   299 F.3d 1292 (Fed. Cir. 2002) ................................................................................................ 2

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997) ............................................................................................... 7

Verizon Services Corp. v. Cox Fibernet Virginia, Inc.,
   602 F.3d 1325 (Fed. Cir. 2010) ............................................................................................... 4

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ................................................................................................. 2

*WIMCO, LLC v. Lange Indus., Inc.*,
   No. 06-cv-3565(PJS/RLE), 2007 WL 4461629 (D. Minn. Dec. 14, 2007) ........................... 2, 11, 12

**OTHER AUTHORITIES**

Peter S. Menell et. al., *Patent Claim Construction: A Modern Synthesis and Structured Framework*,
   25 BERKELEY TECH. L.J. 711 (2010) .......................................................................................... 6

## I. INTRODUCTION

Fuisz Pharma's proposed constructions only further demonstrate the need to apply plain and ordinary meaning to the claim terms at issue here. The issued claims are Richard and Joseph Fuisz's own words. As the side proposing constructions that differ from their own issued claims, it was incumbent on Fuisz Pharma to justify: (1) that the Court should deviate from the plain and ordinary meaning of the terms at issue, and (2) that the intrinsic evidence supports Fuisz Pharma's proposed deviations for these terms. Fuisz Pharma has done neither, instead proffering lengthy constructions that fail to clarify any claim terms or to resolve any disagreement over the meaning or scope thereof.

Put simply, Fuisz Pharma advocates for constructions that alter the meaning of the '612 Patent. For numerous terms, Fuisz Pharma simply replaces claim terms with multi-word synonyms that introduce unnecessary confusion, draw no support from the intrinsic record, and are immaterial to the outcome of this case. For at least one phrase, Fuisz Pharma imports material from one claim element into another, in what can only be described as an exercise in redundancy. In other instances, Fuisz Pharma injects limitations that have no basis in the intrinsic record. The Court should reject these efforts in favor of plain and ordinary meaning.

## II. ARGUMENT

### A. Fuisz Pharma Has Failed to Satisfy Its Burden of Showing a Basis to Deviate From Plain Meaning

The purpose of claim construction is to define the meaning and scope of the patent claims. Without a clear indication in the intrinsic record that the words of a claim carry a meaning that varies from the language in the claims themselves, the "heavy presumption" in favor of ordinary meaning must control. *Altiris Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003); *see also Toshiba Corp. v. Imation Corp*., 681 F.3d 1358, 1369 (Fed. Cir. 2012) ("Absent disclaimer or lexicography, the plain meaning of the claim controls."); *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history."). This presumption in favor of plain meaning has a purpose: patents must mean what they say. "[C]ompetitors are entitled to review the public record, apply the

established rules of claim construction, ascertain the scope of the patentee's claimed invention and, thus, design around the claimed invention." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). It is therefore "unjust to the public, as well as an evasion of the law, to construe [a patent] in a manner different from the plain import of its terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). For this reason, courts routinely decline to find that any construction is needed where, as here, it is unnecessary to explain what the patent covers. *See, e.g., Am. Patent Dev., Corp. v. Movielink, LLC*, 604 F. Supp. 2d 704, 716 (D. Del. 2009) (rejecting proposed construction as a "paraphrasing of the claim language that otherwise offers little to assist one of skill in the art in understanding the claims"); *id.* at 718 (giving plain meaning to claim term where there "does not appear to be a meaningful dispute over the meaning of the claim term"); *WIMCO, LLC v. Lange Indus., Inc.*, No. 06-cv-3565(PJS/RLE), 2007 WL 4461629, at *12 (D. Minn. Dec. 14, 2007) (declining to construe ordinary words where "further definition or paraphrasing would serve no useful purpose").[1]

Fuisz Pharma frames its arguments as if Theranos has the burden to explain why Fuisz Pharma's proposed constructions are incorrect. But that is not the law. In arguing that the terms of a patent mean something other than what they plainly say, it is Fuisz Pharma that must convince the Court that a person of ordinary skill in the art would understand the claims in the way it urges. *See Stanacard, LLC v. Rebtel Networks, AB*, 680 F. Supp. 2d 483, 495–96 (S.D.N.Y. 2010) (giving a term plain meaning where the party offering the alternative definition gave "no compelling reason for the adoption of its much lengthier definition"); *Caddy Prods., Inc. v. Am. Seating Co.*, No. 05-cv-800(JRT/FLN), 2008 WL 927569, at *2 (D. Minn. Apr. 4, 2008) (declining to construe a claim where defendant failed to explain how the term without construction was fatally vague). In other words, it is incumbent on Fuisz Pharma to explain why plain and ordinary meaning is insufficient. It has failed

---

[1] Fuisz Pharma insinuates that Theranos has somehow taken inconsistent positions by proposing plain meaning while also explaining to the Court that claim construction was a necessary step in an inventorship analysis. (Opp. (Dkt. 169) at 1.) There is nothing at all inconsistent about this position, however, as the Federal Circuit has noted that it is error to conduct an inventorship analysis without first embarking on the "first step" of claim construction. *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302, 1304–05 (Fed. Cir. 2002).

to meet that burden.

    Fuisz Pharma repeatedly argues, relying on the Federal Circuit's decision in *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.* ("*O2 Micro*"), that, because the parties purportedly have a "dispute as to scope [sic] of the claim terms," the Court must adopt a construction that varies from the language that the Fuiszes included in their own patent. (Opp. (Dkt. 169) at 1, 4, 7, 8, 9, 11–12, 13.) Simply because Theranos opposes Fuisz Pharma's tortured constructions of long claim phrases that have a plain and ordinary meaning, however, does not mean that the parties have a "dispute" requiring the Court to adopt Fuisz Pharma's construction. And to the extent that there are disputes between the parties regarding the scope of the claims, Fuisz Pharma's constructions do nothing whatsoever to resolve those disputes.[2]

    Moreover, *O2 Micro* does not stand for the proposition that, where one party has proposed plain meaning and the other has proposed a construction, the construction must be effectuated to resolve the parties' dispute. Such a proposition would turn the presumption in favor of plain meaning on its head, foreclosing plain meaning from ever being the correct construction of a claim. The *O2 Micro* court disavowed such an absurd result:

> [D]istrict courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claim. . . . Rather, claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims[.]

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (emphasis in original; internal punctuation marks omitted; citations omitted).[3] Cases after *O2 Micro*

---

[2] Fuisz Pharma raises various substantive disputes between the parties, such as whether Theranos's provisional patent applications disclose certain limitations of the '612 Patent. (*See, e.g.*, Opp. (Dkt. 169) at 12.) Although Theranos disagrees entirely with Fuisz Pharma's characterization of Theranos's provisional applications, Theranos does not here discuss these disputes, as they are immaterial to whether and how the Court should construe the terms at issue here. Simply because there are aspects of the case that the parties dispute, does not mean the parties have a "dispute" requiring the Court to construe the terms at issue.

[3] Moreover, the genuine dispute in *O2 Micro* does not remotely resemble the parties' positions here. In *O2 Micro*, the parties presented mutually exclusive interpretations of a claim's scope. The plaintiff argued that the term "only if" allowed for exceptions, while the defendant maintained that it did not. *Id.* at 1360. Both interpretations could not be correct simultaneously, and the difference was a "key issue disputed by the parties" at trial. *Id.* at 1358. By declining to construe the term, the court
[Footnote continued on next page]

have affirmed that it is appropriate to give a term its plain and ordinary meaning when rejecting a tortured or incorrect construction proffered by one party. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (finding no error in giving the term "addressed to a client" its plain and ordinary meaning, because "Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction, which required an IP address."); *Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1334 (Fed. Cir. 2010) (not error to construe term as having its plain and ordinary meaning when the parties did not "invite the jury to choose between alternative meanings of technical terms or words of art or to decide the meaning of a particular claim term."). Where, as here, Fuisz Pharma's constructions simply layer synonyms and unnecessary verbiage in place of readily understood words, no construction is necessary.[4] *Am. Patent*, 604 F. Supp. 2d at 716 (refusing to adopt a construction of "storing a result

---

[Footnote continued from previous page]
left a crucial and binary legal issue not of the "*meaning* of the words themselves, but the *scope* that should be encompassed by this claim language" to the jury. *Id.* at 1361 (emphasis in original). In the absence of such a black-and-white choice, there is no need to impose a construction. *See Verizon*, 602 F.3d at 1334.

[4] Fuisz Pharma takes the position now, for the first time, that Theranos has no right to a jury trial. (Opp. (Dkt. 169) at 8.) Fuisz Pharma is wrong. "The right to a jury trial on issues of patent validity that may arise in a suit for patent infringement is protected by the Seventh Amendment." *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 603 (Fed. Cir. 1985). Fuisz Pharma demanded a jury trial and damages when it sued Theranos for infringement of the '612 Patent. Where a declaratory-judgment action for invalidity is in reaction to a claim for damages for infringement, there is a right to a jury on invalidity; that the infringement claim has been dismissed is not dispositive. *See In re Lockwood*, 50 F.3d 966, 973 (Fed. Cir.), *vacated*, 515 U.S. 1182 (1995). The reasoning of *Lockwood* has been adopted in subsequent cases. Moreover, inventorship has often been decided by a jury, particularly where it overlaps with another issue—such as invalidity—to which a jury right attaches. *See, e.g.*, *St. Jude Med., Inc. v. Access Closure, Inc.*, 08-CV-4101, 2010 WL 4880806, at *3 (W.D. Ark. Nov. 23, 2010). The quotation from the lone case that Defendants cite for the opposite proposition, *Shum*, must be treated as dictum, as the parties there *agreed* that the Section 256 claim would be tried to the court. *Cf. Lehman v. Nakshian*, 453 U.S. 156, 165 n.13 (1981) (noting that language in a previous case is dictum where "the parties in that case agreed to trial by the court sitting without a jury . . . and the jury trial issue was therefore not directly before the Court."). Finally, forcing Theranos into a bench trial may deprive Theranos of its constitutional right to a jury trial on its previously pleaded state-law claims, should it successfully appeal their dismissal. *See Lockwood*, 50 F.3d at 971 (mandamus appropriate where "a prior judgment on the equitable claim(s) *might* foreclose the legal claim by issue or claim preclusion") (emphasis in original, citations omitted).

In any event, even if the Court were the ultimate factfinder in the present case (and it is not), then Fuisz Pharma's arguments under *O2 Micro* would only be further undermined. The Court could not possibly abdicate its duty to construe claims to the jury by adopting plain and ordinary meaning if the Court is the ultimate arbiter of fact.

1  of said decoding step" that was "merely a verbose paraphrasing of the claim language that otherwise
2  offers little to assist one of skill in the art in understanding the claims").

     **B.**    **Fuisz Pharma's Constructions Do Not Resolve Any "Dispute"**

          **1.**  **"setting the bodily fluid analyzer with the at least one threshold value for the at least one analyte to be sensed by the bodily fluid analyzer with the information read by the data reader from the data storage unit"**

Despite spending five full pages of briefing on this claim phrase, Fuisz Pharma offers no substantive justification for its attempt to rewrite an entire claim element, which includes multiple terms in abrogation of this Court's express limits in the Patent Local Rules. It insists that the parties have a "dispute" over the phrase's meaning simply because Theranos does not agree that Fuisz Pharma's construction is warranted, and asserts that, without construction, a generic parade of horribles will occur. (Opp. (Dkt. 169) at 9.) But Fuisz Pharma fails to identify even a single reason why plain meaning does not adequately capture the meaning of this phrase to one of ordinary skill, or to identify a single actual dispute over the scope of the claim element. *O2 Micro*, 521 F.3d at 1361. Oddly, Fuisz Pharma claims that its wholesale rewriting <u>is</u> the plain and ordinary meaning of the claim element. (Opp. (Dkt. 169) at 7 ("Fuisz Pharma's proposed construction of this term provides the <u>ordinary meaning</u> of what one of skill in the art would understand the disputed term to mean based on the specification and prosecution history of the '612 Patent.") (emphasis added).) Thus, the Court should apply the presumption of plain meaning as readily understood in the case law, not Fuisz Pharma's misguided view that "ordinary meaning" means whatever string of synonyms, redundancies, and unsupported word substitutions it proffers. *See Stanacard*, 680 F. Supp. 2d at 495–96 (giving a term its plain meaning where "Rebtel offers no compelling reason for the adoption of its much lengthier definition.").

Leaving aside Fuisz Pharma's lack of justification for rejecting the plain meaning of the claim terms, adopting its construction would be erroneous for three reasons:

*First*, Fuisz Pharma's construction is unhelpful and redundant. The words in the claim are simple and nontechnical, and Fuisz Pharma does not explain why a person of ordinary skill in the art would substitute the words it has chosen for those in the patent. *Stanacard*, 680 F. Supp. 2d at 493 (plain meaning appropriate where there is "no indication that the inventors intended to use the term

differently from its commonly understood meaning among persons of skill in the art"). It has not explained why "bodily fluid analyzer" is any different from "device that measures bodily fluid," or why "data storage unit" is any different from "object that contains data." In other words, Fuisz Pharma fails to explain why its construction is *better* than the claim terms themselves. "Where 'construing' a claim term would involve simply substituting a synonym for the claim term, it may be appropriate to allow the claim language to speak for itself." Peter S. Menell et. al., *Patent Claim Construction: A Modern Synthesis and Structured Framework*, 25 BERKELEY TECH. L.J. 711, 731–32 (2010); *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004) ("merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction"); *Parker-Hannifin Corp. v. Baldwin Filters, Inc.*, No. 1:07-cv-1709, 2008 WL 5732941, at *12 (N.D. Ohio July 3, 2008) ("The Court agrees with plaintiffs that these words need no construction. . . . Defendants' proposed construction merely offers synonyms for the claim terms"); *see also id.* at 15 n. 30 ("The Court declines to substitute one synonymous term for the other").[5]

Fuisz Pharma illustrates the problem with providing synonyms with its arbitrary substitution of the phrase "the object that stores data" for "data storage unit." As Theranos pointed out in its opening brief, it is not clear to what "object" Fuisz Pharma is referring in each of the two instances that term is used in Fuisz Pharma's construction. (Opening Br. (Dkt. 168) at 8.) Fuisz Pharma responded that it was simply "making clear that the limitation language in the earlier parts of the claim element apply to 'data storage unit.'" (Opp. (Dkt. 169) at 8.) But if "object" merely means "data storage unit," then the substitution is pointless.

*Second*, Fuisz Pharma's construction is not only redundant as to the terms; it is structurally redundant as well. Fuisz Pharma concedes that the second element of Claim 1 requires the data

---

[5] Fuisz Pharma attempts to distinguish *Parker-Hannifin* by pointing out that the court in fact construed the claim term "annular." That is beside the point. Courts construe claims when construction is justified. They do not when it is not. The *Parker-Hannifin* court decided that construction of the technical term "annular" made sense, but that there was no reason to substitute the terms "encircles and fixes" for "surrounding and defining" because the words were easy to understand and merely synonyms for each other. *Parker-Hannifin Corp*, 2008 WL 5732941, at *12.

storage unit to be separate from the bodily fluid analyzer. (*Id.* at 5; *see also* '612 Patent, at 6:20–21, 6:63–64.) Yet, Fuisz Pharma still reads the language "the object is not part of the device that analyzes bodily fluids" into this <u>different</u> claim element, effectively writing the limitation into the claim twice. Courts have rejected such redundancies. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("*Markman* decisions do not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court. . . . It is not an obligatory exercise in redundancy"); *Caddy Prods.*, 2008 WL 927569, at *8 (agreeing that no definition of term was needed where proposed construction "unnecessarily incorporates language that is already found in the term itself"); *Level 3 Comm'cns, LLC v. Limelight Networks, Inc.*, 589 F. Supp. 2d 664, 687 (E.D. Va. 2008) (declining to construe claim where using the defendants' proposed definition would render the next step in the claim "redundant.").[6]

*Third*, Fuisz Pharma's construction is confusing. By first changing "analyte" to "chemical compound" and then changing it again to "chemical substance," Fuisz Pharma has introduced ambiguity into the claim. (Opp. (Dkt. 169) at 8–9.) Indeed, Fuisz Pharma has failed to explain why the simple term "analyte" is not readily apparent to one skilled in the art, whereas "chemical substance" would be.

### 2. "selecting by a prescribing physician or a drug company at least one threshold value of at least one analyte to be sensed by the bodily fluid analyzer"

Fuisz Pharma's construction of this entire claim limitation is flawed for the same reasons as discussed with respect to the previous term. Fuisz Pharma's demand that the court construe an entire claim limitation is procedurally unsound, and for the most part, Fuisz Pharma has simply substituted synonyms for common words and phrases. For example, substituting "medical doctor" for "physician" is particularly unnecessary; this is simply two ways of saying the exact same thing. *See Parker-Hannifin*, 2008 WL 5732941, at *15 n.30.

---

[6] Fuisz Pharma also discusses at length in this claim term the "doctor selected threshold value." (Opp. (Dkt. 169) at 5–6.) This is another example of a redundant construction, as "selecting by a prescribing physician or drug company at least one threshold value" is also a separate element of Claim 1. Nonetheless, the identity of the selector is not included in either the term at issue or in Fuisz Pharma's proposed construction, so Theranos does not address it here.

7

   In addition to unnecessary substitutions, however, Fuisz Pharma has also injected a phrase into this claim element—"based on a patient's medical condition"—that is not found in the patent and that impermissibly narrows the scope of the claims.  In effect, Fuisz Pharma would impose a requirement not only that the doctor exercise judgment, but also that the patient have a "medical condition," a limitation that the specification disclaims.  Fuisz Pharma asserts that this additional phrase, which appears nowhere in the '612 Patent, is justified by the intrinsic record.  But the examples Fuisz Pharma cites contain no such justification; one of them in large measure merely restates the language of the claim itself.  (Opp. (Dkt. 169) at 11 (citing 2/20/09 Response to Office Action, at 8).)   Fuisz Pharma also points to the phrase in the specification that "the data stored on the data storage units may store parameters that are set by the prescribing physician specifically for that particular patient or drug company for a class of patients (e.g., elderly)." ('612 Patent, at 4:11–15.)  But this example does not require that the patient—or class of patients—have any "medical condition."  Age is not commonly understood to be a medical condition.  Although Fuisz Pharma tries to explain that this phrase concerns "a patient's medical condition that accounts for a patient's age," (Opp. (Dkt. 169) at 11), that is not what the patent says.  Indeed, the cited example just three lines later indicates that the physician "may want a wider creatinine tolerance in an 80 year old than in a 20 year old," with no identification of any "medical condition" other than the simple age of the patient.  ('612 Patent, at 4:20–23.)

   Furthermore, the specification also provides that the patients could have no medical condition at all: they could be receiving a placebo during a clinical trial.  ('612 Patent, at 5:51–61.)  A threshold value of the analyte to be measured in a patient taking a placebo during a clinical trial need not have been selected "based on a patient's medical condition."  Thus, the Court should decline to read a limitation into the claim that the claim language does not support and that conflicts with the intrinsic record.

   To support its construction, Fuisz Pharma points to a portion of the specification that refers to a physician "adopt[ing] the preset parameters in the data storage unit."  (Opp. (Dkt. 169) at 10 (discussing '612 Patent, at 4:15–24; 25–65).)  But if everything a doctor does—including making <u>no alteration to a preset parameter at all</u>—is based on a patient's medical condition, then the additional

language in Fuisz Pharma's construction is, at best, meaningless and unnecessary.

Fuisz Pharma also claims that omitting its extraneous phrase would permit "random choices or computer generated choices." (Opp. (Dkt. 169) at 11.)  This argument is a red herring, as the plain language of the patent itself still requires "selecting by a prescribing physician or a drug company." ('612 Patent, at 6:14–16.)  Fuisz Pharma's position is also inconsistent with its insistence that a doctor simply accepting preset parameters <u>with no modification</u> is "selection by a doctor based on a patient's medical condition." (Opp. (Dkt. 169) at 10.)   In any event, Fuisz Pharma's proposed construction does not foreclose Theranos's claims of inventorship and invalidity, and does not help resolve these disagreements either.   Accordingly, the Court should decline to impose unnecessary and synonymous constructions on a readily understandable claim term.

### 3. "the at least one threshold value of the at least one analyte being associated with a particular drug being or to be taken by the patient or course of treatment for the patient"

Fuisz Pharma's argument for its construction of this phrase is particularly unsupported.  Every word in this phrase is simple and commonly understood.  Fuisz Pharma admits that it agrees with Theranos as to "what these words mean." (Opp. (Dkt. 169) at 13.)  Nonetheless, Fuisz Pharma demands that the court impose its construction because it claims that the meaning of the "entire claim term" is disputed, without ever identifying: (1) what the dispute over the claim scope is; (2) how Fuisz Pharma's construction differs in any respect from the words used in the patent itself; or (3) how Fuisz Pharma's exercise in word substitution reflects the understanding of this phrase to one skilled in the art.  This is not a "dispute."  It is rote substitution of one synonym for another, without justification or reason, and is therefore "not genuine claim construction." *C.R. Bard*, 388 F.3d at 863; *see also Parker-Hannifin*, 2008 WL 5732941, at *12 & *15 n.30; *Stanacard*, 680 F. Supp. 2d at 493.

Moreover, Fuisz Pharma's construction misplaces a modifier in a way that impermissibly narrows the claim.   In the claim phrase, the <u>threshold value</u> is associated with a drug: "the at least one threshold value of the at least one analyte being associated with a particular drug."  In Fuisz Pharma's modification, the <u>analyte</u> appears to be related to a drug: "the lower limit and/or upper limit of a chemical compound that is analyzed and is related to a drug taken by a patient."  But if, for example, the bodily fluid analyzer measures the potassium level in a patient taking Captopril, as the

specification identifies ('612 Patent, at 4:25–37), it is unclear whether Fuisz Pharma's construction would capture such an analyte that is not itself a drug. At best, this modification does nothing to clarify the term. At worst, it adds an additional layer of confusion to the factfinder's task.

### 4. "data storage unit separately from the bodily fluid analyzer"

Again, this phrase is entirely clear and understandable. There is nothing complicated or technical about this phrase, and Fuisz Pharma identifies no material way in which its construction would affect the claim's scope. Fuisz Pharma's proposed construction should not be accepted for the simple reason that, in the absence of a compelling justification, the language used in the patent itself must control. *Toshiba*, 681 F.3d at 1369; *Thorner*, 669 F.3d at 1365.

Fuisz Pharma makes the mistake, as it makes throughout its brief, of assuming that simply because Theranos does not agree with Fuisz Pharma's unnecessary substitution of lengthy synonyms for simple words, the court is required to impose a construction. (Opp. (Dkt. 169) at 14.) For the reasons detailed above, this is simply not the law. Plain meaning is a perfectly acceptable construction where one party's proposed construction is wrong or unnecessary. *See Finjan*, 626 F.3d at 1207; *Thorner*, 669 F.3d at 1365. Fuisz Pharma's construction merely adds unnecessary verbiage, which is not a proper use of claim construction. *Stanacard*, 680 F. Supp. 2d at 495 ("Rebtel's definition would introduce unnecessary verbiage to claim language that a jury would understand"; giving "associated with" its plain and ordinary meaning); *Parker-Hannifin*, 2008 WL 5732941, at *12. The Court should thus reject Fuisz Pharma's unnecessary construction.

### 5. "reading the stored information stored on the data storage unit"

As with all of the preceding phrases, this phrase is readily understandable to a person of ordinary skill, and needs no construction at all. Yet Fuisz Pharma has introduced verbosity and confusion by substituting forty-five words where ten will do. Its construction should not be adopted. *See Stanacard*, 680 F. Supp. 2d at 494–95. Moreover, Fuisz Pharma attempts to expand the simple word "reading" into three entirely new limitations—"mak[ing] a request to access information," "looking up that information," and "obtaining a copy of that information"—that in fact do not appear anywhere in the claims or the intrinsic record. (Opp. (Dkt. 169) at 14–15.) The court should reject Fuisz Pharma's improper attempt to narrow the scope of the claims.

10

1  In attempting to justify its construction, Fuisz Pharma points to two quotes from the patent's
2  specification. Neither supports its construction.

3  In the first example, Fuisz Pharma points to an example of "reading" in the specification—
4  "mov[ing] the radio frequency identification tag near the reader or swipe the magnetic strip". (Opp.
5  (Dkt. 169) at 15, quoting '612 Patent, at 3:38–42.) But importing limitations from the specification
6  into the claims is prohibited. *Thorner*, 669 F.3d at 1366 ("We do not read limitations from the
7  specification into claims; we do not redefine words."); *Am. Patent*, 604 F. Supp. 2d at 718 ("The
8  Court sees no reason to import such descriptions of preferred embodiments into the claims, especially
9  where, as here, there does not appear to be a meaningful dispute over the meaning of the claim
10 term."); *WIMCO*, 2007 WL 4461629, at *12 (declining to limit claim term to single embodiment
11 because this would "be wrongly importing a limitation from the specification into the claims").
12 Moreover, nothing in this citation even supports Fuisz Pharma's construction. Moving an RFID tag
13 near a reader and swiping a magnetic strip do not require that "reading" means "mak[ing] a request,"
14 nor does it state that any part of the device "look[s] up that information," nor is there anything in this
15 example about "obtaining a copy of that information." The Court should reject this effort to add to
16 the patent claim material that appears nowhere in the intrinsic record. *See Parker-Hannifin*, 2008
17 WL 5732941, at *15 ("The public notice function of patents cannot be served if others cannot
18 reasonably rely on the intrinsic evidence in discerning what a patent actually claims.").

19 Similarly, Fuisz Pharma's second citation from the specification says nothing at all about
20 "reading" except to use the exact same word—"reads." (Opp. (Dkt. 169) at 15 (citing '612 Patent at
21 4:5–9 and every single figure in the patent).) Nothing in this cited section justifies Fuisz Pharma's
22 tripartite substitution for the term "reading": it does not include anything about "mak[ing] a request
23 to access information," "looking up that information," or "obtaining a copy of that information." *Id*.

24 **6. "a/the display"**

25 Once again, Fuisz Pharma has taken a readily understood term and given it a wordy and
26 confusing construction with no support in the intrinsic record. Significantly, Fuisz Pharma ignores
27 entirely Theranos's observation that the proposed construction introduces redundancies into the claim
28 language, transforming an element of claim 9, for example, into the redundant phrase "an output

11
PLAINTIFFS' CLAIM CONSTRUCTION REPLY BRIEF
CASE NO. CV 11-cv-05236-PSG

surface for visual presentation of information for displaying processed information concerning the sensed analyte." (Opening Br. (Dkt. 168) at 14.) For this reason alone, the construction should be rejected. *Caddy Prods.*, 2008 WL 927569, at *8. In addition, Fuisz Pharma has failed to explain what it means by "output surface," a phrase that is not commonly used and would only serve to confuse the factfinder. (Opening Br. (Dkt. 168) at 14.)

Without any compelling reason to substitute such redundancies into the claim, Fuisz Pharma simply bleats that its own construction should govern because Theranos has not given "concrete examples" as to how Fuisz Pharma's alternative construction changes the meaning of the term. Putting aside that this is untrue (Theranos explained that "output surface" is a confusing and unclear term), Fuisz Pharma is incorrect on the law. It is not the case that, where Theranos disagrees that any construction is necessary, the Court must "resolve the parties' dispute" by imposing Fuisz Pharma's construction. On the contrary, the Court may simply reject Fuisz Pharma's construction because it is wrong. *Finjan*, 626 F.3d at 1207.

### 7. "a/the threshold"

With this last term, Fuisz Pharma takes the word "threshold," with an obvious plain meaning, and construes it in a way that is at best, unhelpful and unnecessary, and at worst, overly limiting. Fuisz Pharma does not dispute that the term is nontechnical and has a commonly understood meaning. Nor does Fuisz Pharma advance a coherent argument as to why its construction is truer to the '612 Patent's meaning to one skilled in the art than the word "threshold" otherwise would be. Instead, Fuisz Pharma points to an example from the specification that it claims illustrates that a threshold is an "lower limit and/or upper limit." (Opp. (Dkt. 169) at 17.) There is nothing in this example, however, that evidences the Fuiszes' clear intention to specifically define "threshold" in this manner. It is impermissible to read limitations or examples from the specification into the claims. *Thorner*, 669 F.3d at 1366; *WIMCO*, 2007 WL 4461629, at *12.

Furthermore, Fuisz Pharma's proposed construction is confusing. While "threshold" is clear, "the lower limit and/or upper limit" is not, as it could lead a jury to believe that the "the lower limit and/or upper limit" must be in relation to some factor, such as a patient's tolerance for the analyte.

1  This limitation, however, does not exist in the claim.  Thus, Fuisz Pharma's construction should be

2  rejected and plain meaning must control.  *Toshiba*, 681 F.3d at 1369.

## III.     CONCLUSION

   For the reasons discussed above, the Court should give each of the claim terms and phrases at issue its plain and ordinary meaning.  The plain meaning of the issued claims is preferable to Fuisz Pharma's proposed lengthy and unclear claim constructions, which neither resolve any disputes in the case nor clarify any claims.

Dated: July 22, 2013

                           BOIES, SCHILLER & FLEXNER LLP


                           By:  */s/ Michael D. Jay*
                                  Michael D. Jay

                           *Attorneys for Plaintiffs*
                           THERANOS, INC. and ELIZABETH HOLMES