The Honorable Paul Singh Grewal
San Jose Courthouse, Courtroom 5 – 4th Floor
280 South 1st Street, San Jose, CA 95113
RE: *Theranos, Inc. et al. v. Fuisz, et al.*, Case No. 11-cv-5236 (N.D. Cal.)

August 9, 2013

Dear Judge Grewal:

As requested (Dkt. 176), the parties jointly submit this letter brief to address whether a jury should decide Theranos's correction of inventorship, invalidity, and unjust enrichment claims (the "Remaining Claims"). Unless noted, all docket cites are to Case No. 11-5236.

**<u>Theranos' Statement</u>**

Depriving Theranos of a jury trial in this case would be constitutionally wrong. "[I]n questionable cases . . . the strong federal policy governing jury trials is controlling." *Trustees ex rel. N. Cal. Gen. Teamsters Sec. Fund v. Fresno French Bread Bakery, Inc.*, 12-CV-0187 BAM, 2012 WL 5304765, at *3 (E.D. Cal. Oct. 25, 2012) (citations omitted). "The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen . . . should be jealously guarded by the courts." *Jacob v. City of New York*, 315 U.S. 752, 752–53 (1942).

Because a bench trial on the inventorship and invalidity issues could forever deprive Theranos of its right to a jury trial on other causes of action that the Court previously dismissed, and because the nature of the inventorship and invalidity claims themselves entitle Theranos to a jury trial, a jury should decide the factual issues underlying the Remaining Claims. In the alternative, the Court should empanel an advisory jury, to minimize the possibility that this case will have to be tried a second time.

**1.   Background and Procedural Posture**

On October 26, 2011, Theranos sued Richard Fuisz, Joseph Fuisz, John Fuisz, and a Fuisz corporation, seeking correction of inventors on the '612 Patent, and relief on various state law claims. (*See* Dkt. 1 ("Original Complaint").) The Original Complaint did *not* include a declaratory judgment action for invalidity. (*Id.*)

On November 1, 2011, Fuisz Pharma sued Theranos in Delaware for alleged infringement of the '612 Patent. Fuisz Pharma also included the same infringement claim as a counterclaim in Theranos' first-filed action in this Court. (Dkt. 93.) In both cases, Fuisz Pharma claimed that it was entitled to "damages sustained as a result of Theranos's infringement of the ['612 Patent]," and demanded a jury trial. (Case No. 12-03323, Dkt. 1, at 1, 4; Case No. 11-5236, Dkt. 93, at 1, 16, 17.)

Theranos filed an amended complaint in this Court on February 9, 2012, which added Fuisz Pharma as a defendant and, for the first time in this action, requested a declaratory judgment that the '612 Patent is invalid. (Dkt. 53.) In June, 2012, the Delaware court transferred Fuisz Pharma's infringement case to this Court. (*See* Case No. 12-03323, Dkt.

Joint Letter Brief re Jury Trial, August 9, 2013
Page 2

34.)  On June 26, 2012, the Court dismissed, on statute of limitations grounds, many of Theranos's originally pleaded state law claims.  (Dkt. 83.)  Theranos maintains its right to appeal the dismissal of those claims.

On November 30, 2012, the Court struck Fuisz Pharma's infringement contentions and directed that Fuisz Pharma either amend its contentions or dismiss its infringement claim.  Fuisz Pharma dismissed its infringement claim "without prejudice," but sought "the Court's guidance on a mechanism to do so that preserves [its] right to bring a future infringement claim against Theranos if it actually markets products."  (Dkt. 109 at 9; *see also* Dkt. 128 (dismissal order).)

At the May 16, 2013 court conference, Theranos stated that it would no longer pursue its Section 17200 claim (*See* Dkt. 84 (Second Amended Complaint)), and that that it would not seek damages for Theranos's losses under its Remaining Claims.  (5/16/13 Hearing Tr. 6:25–7:5.)  But Theranos confirmed that it would seek "restitution in the form of recovery from the Fuiszes for gains they may have [] received."  (*Id.*)  Theranos did not waive its right to jury trial, a topic that was not discussed at the conference.

### 2.  Theranos has a Right to a Jury Trial

#### a.  A Bench Trial Could Estop Theranos on its Common Law Claims.

Courts should empanel a jury where, as here, there is a risk that the collateral estoppel effect of findings made after a bench trial will forever deny a party's right to a jury trial.  Specifically, certain of Theranos's state law claims in its Original Complaint, dismissed on limitations grounds, were triable to a jury.  *See, e.g.*, *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 568 (1990) (attorney malpractice was historically an action at law); *Infor Global Sol'ns (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co.*, C 08-02621 JW, 2009 WL 5909257, at *1 (N.D. Cal. Apr. 2, 2009) (jury right attaches to breach of contract); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1462 (9th Cir. 1983) (inducing breach of contract is an action at law); *DePinto v. Provident Sec. Life Ins. Co.*, 323 F.2d 826, 837 (9th Cir. 1963) (fiduciary duty claim can be a jury question).  Theranos intends to appeal the Court's dismissal order.  If Theranos prevails, its state law claims would be reinstated, and Theranos should be able to try those claims to a jury.

But because the issues underlying the Remaining Claims and the dismissed state law claims substantially overlap—*e.g.,* the extent to which the Fuiszes accessed and used Theranos's confidential information, and the similarities between Theranos's materials and the '612 Patent—hypothetical adverse findings in a bench trial on the Remaining Claims could collaterally estop Theranos from ever trying the dismissed state claims.  This risk mandates that a jury decide the Remaining Claims.

Indeed, the Supreme Court has recognized that "only under the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims."  *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11 (1959).  As a result, the Federal Circuit issues writs of mandamus directing a trial court to

2

Joint Letter Brief re Jury Trial, August 9, 2013
Page 3

hold a jury trial where "(a) the legal and equitable claims to be tried rest on a common factual foundation, and (b) a prior judgment on the equitable claim(s) *might* foreclose the legal claim by issue or claim preclusion." *In re Lockwood*, 50 F.3d 966, 971 (Fed. Cir. 1995) *vacated sub nom. Am. Airlines, Inc. v. Lockwood*, 515 U.S. 1182 (1995) (citations omitted; emphasis in original).[1]  Only where there is "*no possibility* of issue or claim preclusion" is mandamus inappropriate.  *Id.* (emphasis in original); *see also id.* ("issue-preclusive effects from a bench trial" "are injuries 'not easily repaired on appeal.'") (citations omitted).[2]

While Theranos's right to a jury trial is grounded in the Constitution, it is a "quite settled" fact that the Defendants have "no constitutional right to a nonjury trial." Charles A. Wright & Arthur R. Miller, et al., 9 Fed. Prac. & Proc. Civ. § 2302.2 (3d ed.); *see also Beacon Theatres*, 359 U.S. at 510 ("no similar requirement protects trials by the court"); *In re Glaxo, Inc.*, 69 F.3d 553 (Fed. Cir. 1995) (denying mandamus).

Moreover, if the Court erroneously deprives Theranos of its constitutional right to a jury, the matter will have to be retried.  But if a court hypothetically were to err in empaneling a jury, the jury's verdict would be rendered advisory, and the court could simply issue findings of fact and conclusions of law, without the need for a retrial.  *See Hyde Properties v. McCoy*, 507 F.2d 301, 306 (6th Cir. 1974) ("Because no right to jury trial existed, the jury empanelled by the district court was, in effect, an advisory one."); *see also DePinto*, 323 F.2d at 833 (district court stated that the "verdict would be deemed advisory if the motion for a non-jury trial were ultimately granted").

In an attempt to avoid having to present its case to a jury, Defendants' counsel suggested at oral argument that they "might waive" a collateral estoppel argument.  (8/2/13 Hearing Tr. 63:17–22.)  This does not alter the analysis.  Among other things, Theranos asserted (and would continue to assert) the state law claims against John Fuisz, who is no longer a defendant.  The Defendants' hypothetical waiver could not affect his estoppel rights.

### b. Theranos Has a Right to a Jury Trial on its Claims.

Theranos also has an independent right to a jury trial on the Remaining Claims.  Contrary to Defendants' assertion at oral argument, (*see* 8/2/13 Hearing Tr. at 59:6–25), the reference in Theranos's complaint to "equitable relief" is in no way dispositive.  *Dairy Queen v. Wood*, 369 U.S. 469, 477–78 (1962) ("the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings.").  Instead, the Court must examine *both* "the nature of the issues involved" *and* "the remedy sought."  *Terry*, 494 U.S. at 565 (citations omitted).  These factors require a jury trial here.

---

[1] *Lockwood's* analysis has "been neither supplanted nor questioned," and the Federal Circuit has "continued to rely on [its] relevant and detailed analysis. . . ." *In re Tech. Licensing Corp.*, 423 F.3d 1286, 1288 n.1 (Fed. Cir. 2005) (internal quotation marks and citations omitted).

[2] The Supreme Court's decision in *Parklane Hoisery Co., Inc. v. Shore*, 439 U.S. 322 (1979), is not to the contrary.  Although *Parklane* holds that application of collateral estoppel to deny a jury trial will not necessarily violate the Seventh Amendment, that result should nevertheless be avoided as a prudential matter.  *See Lockwood*, 50 F.3d at 971.  Moreover, *neither party* in *Parklane* ever had a right to a jury trial on the SEC's request for an injunction; in contrast, both parties here initially demanded a jury.

Joint Letter Brief re Jury Trial, August 9, 2013
Page 4

    ***First***, Theranos has a right to a jury on its claim seeking a declaratory judgment of invalidity.  Declaratory judgment actions are neither legal nor equitable in themselves; instead, they take on "the nature of the underlying controversy."  *Lockwood*, 50 F.3d at 974.  When the declaratory judgment action reacts to or anticipates an infringement action for damages, the declaratory judgment action "resembles nothing so much as a suit for patent infringement in which the affirmative defense of invalidity has been pled," and the right to a jury trial "*is* protected by the Seventh Amendment." *Lockwood*, 50 F.3d at 970–71, 974 (emphasis in original); *see also Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985) ("The right to a jury trial on issues of patent validity that may arise in a suit for patent infringement is protected by the Seventh Amendment.").  Here, Theranos sued for a declaratory judgment of invalidity in response to Fuisz Pharma suing for infringement, demanding a jury trial, and seeking damages. The jury right is preserved in this "paradigmatic" suit.  *Lockwood* 50 F.3d at 970–71.

    It does not matter that Fuisz Pharma's patent-infringement claim was dismissed.  The *Lockwood* court required a jury trial even though the infringement claim for damages, which had been dismissed on summary judgment, "exist[ed] no more."  *Lockwood*, 50 F.3d at 969.  Similarly, the court in *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 399 F. Supp. 2d 1064, 1087–88 (N.D. Cal. 2005), previously granted the alleged infringer's motion for summary adjudication on the damages issue.

    In *O2 Micro*, the court considered a case on which Defendants apparently rely, *In re Tech. Licensing Corp.*, and held that the right to jury survived, notwithstanding that the patentee's damages claim had been dismissed, because the patentee had taken no *voluntary* steps to file its case in equity.[3]  399 F. Supp. 2d at 1087–88. The same reasoning applies with equal force here: Fuisz Pharma was forced to dismiss its claim for damages when the Court struck its infringement contentions.  In fact, the facts in our case weigh even more heavily in favor of a jury trial than those in *Lockwood* and *O2 Micro*.  In both of those cases, the court's rulings had already negated the risk of infringement damages.  In contrast, Defendants in our case purport to have preserved their right to recover infringement damages.

    ***Second***, with respect to Plaintiffs' claim to correct inventors, Theranos is not aware of any case holding that claims under Section 256 must be tried to a judge rather than a jury.  In *Shum v. Intel Corp.*, 499 F.3d 1272, 1277 (Fed. Cir. 2007), the parties *agreed* at oral argument that the section 256 claim would be tried to the bench.  The court's language must therefore be regarded as dictum. *Cf. Lehman v. Nakshian*, 453 U.S. 156, 165 n.13 (1981).  In any event, when a section 256 claim for correction of inventors requires determination of facts that also underlie other claims to which a right to jury attaches (such as Theranos's

---

[3] Defendants are dead wrong that the actions of the *party seeking a jury trial* are determinative.  (*See* 8/2/13 Hearing Tr. at 65:10–20, discussing *Lockwood* and *In re Tech. Licensing Corp.*, 423 F.3d 1286 (Fed. Cir. 2005).)  Rather, the right to jury turns on the *patentee's* conduct, without regard for whether it is the party seeking or opposing a jury trial.  For example, in *O2 Micro*, the *patentee* argued that there was no right to a jury trial because *it* had no claim for damages left in the suit.  It lost.  *O2 Micro*, 399 F. Supp. 2d at 1087; *see also Lockwood*, 50 F.3d at 975.  Like the patentees in *Lockwood* and *O2 Micro*, but unlike the patentees in *Technology Licensing Corp.*, Fuisz Pharma has never *voluntarily* given up its right to seek damages, and indeed has argued that it maintains a right to revive its damages suit whenever it wants.

Joint Letter Brief re Jury Trial, August 9, 2013
Page 5

invalidity claim and any state law claims subject to reinstatement upon appeal), a jury must decide the case. *Shum*, 499 F.3d at 1277 (reversing district court that tried inventorship issues before legal issues); *see also Beacon Theatres*, 359 U.S. at 510–11.

 ***Third***, Theranos's unjust enrichment claim itself sounds in law and includes a right to a jury trial.  As Defendants acknowledge, Theranos seeks restitution of any gains or profits that Defendants have received as a result of their misuse of Theranos's confidential information.  (5/16/12 Hearing Tr. at 4:21–5:2; 5:18–7:5.)  Courts have found this remedy to be analogous to a case at law, to which a right to jury trial attaches. *Dastgheib v. Genentech*, 457 F. Supp. 2d 536, 538–45 (E.D. Pa. 2006) (unjust enrichment was a legal claim requiring trial by jury, where plaintiff sought "disgorgement of [defendant's] profits" that were "derived from its use of [plaintiff's] research materials"); *see also Great-West Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002) ("imposition of personal liability for the benefits that they conferred upon respondents" is a legal remedy); *Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 501 (S.D.N.Y. 2005) (court "need not rely on the labels attached" to relief to determine that remedy sought in the form of money had and received was legal and required a jury trial); *see also Ideal World Mktg., Inc. v. Duracell, Inc.*, 997 F.Supp. 334, 339 (E.D.N.Y. 1998) (declining to strike jury demand where unjust enrichment was sought based on defendants' profits, because a "right as fundamental as the Seventh Amendment right to a jury trial" should not depend on such "subtle distinctions").

### 3. In the Alternative, the Court Should Empanel an Advisory jury

 Even assuming for the sake of argument that Theranos is not *entitled* to a jury trial, the Court should nevertheless empanel an *advisory* jury.  Fed. R. Civ. P. 39(c)(1).  "[T]he case law is abundantly clear:  it is completely discretionary with the trial judge whether or not to use an advisory jury under Rule 39(c), and the district court's exercise of this discretion is not reviewable." Charles A. Wright & Arthur R. Miller, et al., 9 Fed. Prac. & Proc. Civ. § 2335 (3d ed.).  Here, a jury would, at the very least, aid the Court in making credibility determinations about hotly contested issues. *See Hynix Semiconductor Inc. v. Rambus Inc.*, CV-00-20905-RMW, 2008 WL 350638, at *3 (N.D. Cal. Feb. 2, 2008) (empaneling advisory jury because "evaluation of a fraud claim involves judgments of credibility for which a jury is particularly suited.").

 Further, as discussed above, an advisory jury will reduce the possibility of prejudice if the Federal Circuit were to find error regarding Theranos's entitlement to a jury trial. *See Hynix*, 2008 WL 250638, at *3 ("With an advisory jury, Nanya will be able to point to the jury's verdict if it is more favorable than the court's and perhaps be able to receive the benefit of it should the court's decision that Nanya is not entitled to a jury turn out later to have been wrong."); *Alexander v. Gerhardt Enters., Inc.*, 40 F.3d 187, 192 (7th Cir. 1994) (approving use of an advisory jury to minimize the cost of litigation in cases where entitlement to jury is uncertain); *Winchester Indus., Inc. v. Sentry Ins.*, 630 F. Supp. 2d 237, 242 (D. Conn. 2009) ("Should the Second Circuit hold that Plaintiffs were not entitled to a jury trial, the jury would be considered an advisory jury for purposes of Rule 39(c), and 'the case would not need to be re-tried.'") (citations omitted).

Joint Letter Brief re Jury Trial, August 9, 2013
Page 6

## Defendants' Statement

### PLAINTIFF'S EXPLICIT CHOICE OF EQUITABLE CLAIMS AND DEFENDANTS' RELIANCE

The record in this case is much clearer than in most. In ¶ 1 of the Second Amended Complaint, Dkt. 84, Plaintiffs assert that their entire case is about damages and equitable relief. During a May 16, 2013 telephone conference call with the Court regarding future discovery during which Defendants asked explicitly which claims Plaintiffs were dropping, Plaintiffs' counsel unequivocally stated that Plaintiffs were abandoning all claims for damages and were pursuing only equitable claims. Dkt. No. 161, at 6. Plaintiffs thereafter never sought to amend their complaint or to seek relief from the explicit representations made to the Court and to Defendants that only equitable claims remained in the case.

Defendants relied upon these representations throughout all discovery that post-dated May 16, 2013 (including all depositions of Defendants). Indeed, the depositions of crucial fact witnesses had not yet begun on May 16. When Defendants took and defended depositions, they relied on the fact that only equitable issues remained in the case, which meant that the case would be tied to the Court not to a jury. Defendants concluded that certain witnesses did not need to be deposed, even though they might be unavailable at trial, because the court would understand why their testimony was not really necessary whereas a jury might have expected to hear from them. Defendants' counsel permitted depositions of individual Defendants to be conducted at length without breaks that they would have insisted upon if they believed that deposition excerpts might be shown to a jury. Defendants did not seek to clarify certain deposition testimony that might confuse a jury because they believed the Court would have no difficulty following this testimony. In short, Defendants' strategy during the taking and defending of depositions was premised on the clear statements by Plaintiffs that only equitable issues were in the case and the Defendants' proper understanding that a case with only equitable issues is tried to the Court rather than to a jury.[4]

Defendants believe no case supports a claim for a jury trial when the party seeking a jury trial has explicitly and unequivocally declared to the Court on the record that it is seeking only equitable relief and its opponent has relied upon such statement.[5] As the court

---

[4] The proper reliance by Defendants on the Plaintiffs' representations that after May 16, 2013 the parties were only dealing with equitable issues explains why even the use of an advisory jury would be prejudicial to Defendants given the fact that no suggestion of an advisory jury was ever made in this case.

[5] The F.R.C.P. recognizes the importance of a party's reliance on whether a case will be tried to a judge or jury. For example, Rule 39 (a)(1) recognizes that where a party that has a right to a jury trial has demanded one and later changes its mind, it cannot withdraw its demand without consent of the opposing party, recognizing that parties' strategies often differ in preparing for bench and jury trials. In the instant case, Theranos opted to try only equitable issues and Defendants relied upon the clearly established law that there is no jury trial when a party restricts itself to equitable claims. The importance of reliance is emphasized in Onyx Pharms. v. *Bayer Corp.*, 2011 U.S. Dist. LEXIS 107114, at 8 (N.D. Cal. 2011)(rejecting bifurcation motion after parties prepared for what they assumed was a jury trial) ("here Onyx makes a valid argument that it has suffered prejudice by relying on Bayer's apparent consent to a jury trial and investing substantial 'time and money on preparing witnesses, examination outlines, exhibits, opening and closing arguments, voir dire, and other pretrial filings' with the expectation of a single jury trial"). The prejudice is as severe in the instant case where Defendants made decisions during deposition work premised on the clear understanding that only equitable issues would be

Joint Letter Brief re Jury Trial, August 9, 2013
Page 7

in *Matthews v. North Slope Borough*, 646 F. Supp. 943 (D. Alaska 1986) recognized, when
the court is faced with claims for equitable relief alone, pursuant to Fed. R. Civ. P. 39 (a)(2),
the case must be tried to the court without a jury.[6]   In *U.S. v. Missouri River Breaks Hunt
Club*, 641 F.2d 689, 693 (9th Cir. 1981), the court of appeals held that where a trial judge
stated on the record that "the parties have agreed to submit the case of the United States
versus Missouri River Breaks on the record made, and so the case is withdrawn from
consideration by a jury" and neither party objected, the judge's statement was sufficient to
demonstrate that a jury trial had been waived under Fed. R. Civ. P. 39 (a).  The instant case is
one in which Plaintiffs made the explicit and unequivocal commitment to seek only equitable
relief, and that is a commitment to a trial without a jury.  This Court accepted the Plaintiffs'
representation and Defendants relied upon it.

### FEDERAL CIRCUIT CASES HOLD THAT PLAINTIFFS ARE NOT ENTITLED TO A JURY

Two Federal  Circuit cases are most relevant.  The first and more recent is *In re
Technology Licensing Corp.*, 423 F.3d 1286 (Fed. Cir. 2005), *cert. denied*,  547 U.S. 1178
(2006) ("*TLC*").  There, TLC filed an infringement action against Vidotek, Vidotek filed an
indemnification claim against Gennum, Gennum filed a declaratory judgment action seeking
to establish that TLC's patents were invalid and TLC filed a counterclaim for infringement,
TLC and Vidotek settled their case, TLC withdrew its damages claim against Gennum (and
still pursued its infringement claim for equitable relief), but argued that it was entitled to trial
by jury even though it was seeking only equitable relief.

The Federal Circuit rejected TLC's jury trial claim.  The Federal Circuit summarized
TLC's argument as follows: "TLC contends that either party has a right to a jury trial in such
a declaratory judgment action, regardless of whether damages are sought in a separate cause
of action, such as a related action for infringement."  *Id.* at 1289.  The argument was rejected
as the court made clear that a party is held to its choice of whether to seek legal or equitable
relief.

The court explained that "[b]ecause a party such as TLC will ordinarily be able to
dictate whether it will have a jury trial by choosing whether to limit itself to equitable relief,
the problem faced by TLC is not likely to recur with frequency in conventional infringement
actions."  The court observed that the fact that a plaintiff may choose for itself whether to
seek equitable or legal relief explained why few cases had arisen in which a court had to
decide whether a jury was appropriate.  The court did cite one case, however: "Nonetheless,
there is at least one prior appellate decision dealing with a similar fact setting, and in that
case the appellate court reached the same conclusion that we reach here-that the patentee's

---

tried and that such issues are tried to the court.  Other cases recognize the importance of reliance *See*, *e.g.*,
*Tavoulareas v. Piro*, 93 F.R.D. 11 (D.D.C. 1981) ("[t]his case has not yet proceeded to the point where there
would be any apparent differences in counsel's preparation were it to be tried to a jury rather than the Court.")
The most crucial discovery in the instant case, by contrast, occurred when all parties proceeded on the basis that
only equitable claims would be tried.
[6] *See also Pereira v. Cogan*, 2002 U.S. Dist. Lexis 8513, *14 (S.D.N.Y. 2002) (where a party foregoes legal
claims and seeks only equitable relief, no right to a jury trial).

Joint Letter Brief re Jury Trial, August 9, 2013
Page 8

decision to seek only equitable relief resulted in the entire case, including the invalidity claims, being triable to the court, without a jury. *See Shubin v. United States Dist. Court,* 313 F.2d 250 (9th Cir.1963)." *Id.*

      The only distinction between *TLC* and the instant case is that the Plaintiffs are not the patentee of the '612 patent and thus, are not bringing an infringement action, but *TLC* establishes that this is a distinction without a difference: The court first cited a prior decision: "[I]n *Tegal Corp. v. Tokyo Electron America, Inc.,* 257 F.3d 1331 (Fed.Cir.2001), this court held that there is no right to a jury trial when the only remedy sought by the plaintiff-patentee is an injunction and the defendant has asserted patent invalidity as an affirmative defense." *Id.* at 1287.  The court then added:  "This case differs from *Tegal* in two respects. First, the accused infringer has raised invalidity as a separate claim, not as an affirmative defense. Second, the accused infringer is aligned as the third-party plaintiff, while the patentee is aligned as a third-party defendant and counterclaimant. The second distinction is unimportant." *Id.* at 1288.

      *TLC* distinguished a case decided a decade earlier, *In re Lockwood*, 50 F.3d 966 (Fed. Cir. 1995).  There, the patentee claimed an airline infringed his patents relating to self-service terminals that were part of automatic ticket dispensing systems.  The airline counterclaimed and alleged that the patents were invalid or unenforceable.  The district court granted summary judgment against the patentee on its infringement claim.  Ultimately, the Federal Circuit held that the patentee had a Seventh Amendment right to trial by jury on the issue of patent validity.

      In *TLC*, the Federal Circuit pointed out the critical fact in *Lockwood* that explains why *Lockwood* supports Defendants' argument that there is no right to a jury trial in the instant case: "In *Lockwood,* the patentee had not elected to limit himself to an equitable remedy." 423 F.3d at 1289 (emphasis added).[7]  The clear guidance of *TLC* for the instant case is found in this paragraph: "Applying the analysis of *Lockwood* and *Tegal* to the facts of this case leads to the conclusion that if TLC had filed a standard infringement action as plaintiff and had requested only an injunction, neither TLC nor Gennum would have been entitled to a jury trial, regardless of whether Gennum raised invalidity as a defense or in a counterclaim. By choosing the equity route for its infringement action, TLC would have ensured that neither claim would be triable to a jury." *Id.* at 1291.  In the instant case, Plaintiff has explicitly and unequivocally chosen to seek only equitable remedies, and it may not demand a jury.

      *TLC* and the cases cited therein make clear that whether a party has a right to a jury trial is a legal question subject to *de novo* review.  Plaintiffs are not entitled to a jury.  This is true even if Defendants had not relied on the Plaintiffs' explicit and unequivocal declaration that only equitable issues would be tried.  But, Defendants did rely and their reliance makes it

---

[7] As noted in *TLC*, in *In re Lockwood*, the patentee, not the accused infringer, was the one asserting the right to a jury trial.  *TLC*, 423 F.3d at 1290-1291. Thus, here, (1) any right to a jury trial remains with the patentee – Fuisz Pharma and (2) because Fuisz Pharma's infringement claim was dismissed by stipulation without prejudice (like in *TLC*), there are no grounds for a jury trial.

Joint Letter Brief re Jury Trial, August 9, 2013
Page 9

imperative that this Court properly apply Seventh Amendment jurisprudence and conduct a bench trial.

## CASE LAW HAS LONG ESTABLISHED WHAT TLC DOES

Nothing in *TLC* is new as far as the Seventh Amendment is concerned.

In *Shubin v. United States Dist. Court*, 313 F.2d 250 (9th Cir.) *cert. denied*, 373 U.S. 936 (1963), the court of appeals denied a petition for a writ of mandamus to require the district court to grant a jury trial of an action in which plaintiff sought seeking a declaratory judgment whether the defendants' patent was valid and denied infringement, while defendants counterclaimed for an injunction and an accounting.  The court reasoned that only equitable relief was sought, so that there was no right to a jury trial even though the validity of the patent was a disputed fact.

The same result is found in *Robine v Abco, Inc.*, 227 F. Supp. 512 (S.D.N.Y. 1964), *aff'd*, 386 F.2d 267 (2d Cir. 1967).  Where only equitable relief remained as the demand in a case, the courts held that there was no right to a jury trial.

In *Leary v. Daeschner*, 349 F.3d 888, 910-911 (6th Cir. 2003), the court of appeals decided that, after its decision, only equitable issues were available to a plaintiff and held that there was no right to a jury trial.  Here, Plaintiffs voluntarily and unequivocally announced their intention to pursue only equitable claims.  They just as clearly have no right to a jury trial.

## INVENTORSHIP UNDER 35 U.S.C. § 256 IS NOT ENTITLED TO A JURY TRIAL

A claim for correction of inventorship under Section 256 is not a claim for legal damages, and thus a party is not entitled to a jury trial.  The Federal Circuit has stated that the issue of patent inventorship is a question of law, to be decided by the court. *See, e.g., Trovan, Ltd. v. Sokymat SA, Irori,* 299 F.3d 1292, 1301 (Fed. Cir. 2002); *C.R. Bard, Inc. v. M3 Sys., Inc.,* 157 F.3d 1340, 1352 (Fed. Cir. 1998); *Ethicon, Inc. v. U.S. Surgical, Inc.,* 135 F.3d 1456, 1461 (Fed. Cir. 1998); *see also Marketel Int'l, Inc. v. Priceline.com,* 138 F. Supp. 2d 1210, 1213 (N.D. Cal. 2001), aff'd, 36 Fed Appx. 423 (Fed. Cir. 2002). The Federal Circuit has repeatedly approved the bench trial procedure to determine inventorship.  *See, e.g., Trovan,* 299 F.3d at 1300-01, 1310; *Ethicon,* 135 F.3d 1456, 1462; *Univ. of Colorado Found. v. American Cyanamid, Inc.,* 196 F.3d 1366 (Fed. Cir. 1999).  Further, in *Shum v. Intel Corp., et al.*, 499 F.3d 1272, 1277 (Fed. Cir. 2007) the Federal Circuit stated that "the parties agreed that an action for correction of inventorship under § 256, standing alone, is an equitable claim to which no right to a jury attaches."  *Id.*  Plaintiffs conceded that correction of inventorship is solely an equitable claim when they explicitly and unequivocally stated that they were pursuing only equitable relief.

## THERANOS IS RESPONSIBLE FOR AND HELD TO ITS CHOICE TO PROCEED ONLY IN EQUITY

Joint Letter Brief re Jury Trial, August 9, 2013
Page 10

Theranos initiated this litigation by bringing a claim for damages, which entitled it to demand a jury, along with equitable claims.  Document and interrogatory requests were made while damages were still at issue.  But, before most depositions, including the depositions of Plaintiff Holmes and the Defendants, were taken, Theranos announced that it was abandoning all claims for damages and proceeding only on equitable claims.  This decision was unilateral and did not occur at the insistence or request of Defendants.  Having chosen to proceed this way, Theranos is in no position to complain that there could be collateral estoppel effect arising from decisions made in a bench trial, since that is precisely what Theranos chose.

The Federal Circuit has dealt with a similar issue in *In re Andrx Pharms, Inc.*, 399 Fed. Appx 582 (Fed. Cir. 2010).  There, Astra brought a Hatch-Waxman suit to prevent Andrx from bringing to market a generic drug, a bench trial was held and the court found infringement, and after judgment was entered Astra obtained leave to file an amended complaint seeking damages for infringement discovered shortly before the bench trial began.  The Federal Circuit denied Andrx mandamus relief and held that it had no right to jury trial on the equitable claims as to which judgment was entered.  The court expressed no concern about collateral estoppel effects of the judgment on the damages claim and relied upon *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979) (Seventh Amendment does not preclude collateral estoppel flowing from equitable proceedings).  *Parklane* involved offensive use of collateral estoppel by a party not involved in the equitable proceedings and collateral estoppel applied.  Theranos brought the case before the Court, made the decision to drop its legal claim and proceed solely in equity.  It has no complaint that somehow its Seventh Amendment rights might be affected by its decision.

Moreover, to the extent that Theranos suggests that the Court's dismissal of the state law claims against the Defendants and John Fuisz could be reversed on appeal, that will not happen.  On August 2, 2013 the Superior Court for the District of Columbia granted a motion to dismiss with prejudice all claims brought against McDermott, Will & Emery in a complaint based upon the same baseless theft allegations made in the instant case.  The D.C. court held, *inter alia*, that any claim against McDermott was barred by both the D.C. and the California statutes of limitation.  That ruling affects John Fuisz as much as McDermott and demonstrates that there is no likelihood that there will be further proceedings in this Court against John Fuisz.[8]

Finally, any claim by Plaintiffs that denial of a jury will impair a Seventh Amendment right to jury trial is both erroneous and premature.  It is erroneous because

---

[8] The D.C. Court also found the following: "Although Plaintiffs pleaded that 'John Fuisz, while a partner at MWE, provided his father and brother with Theranos Confidential Information, which he accessed as a direct consequence of the access that MWE facilitated (and failed to prevent) to Theranos Confidential Information', the pleading is still insufficient. . . . While it is true that John Fuisz had access, there are no allegations of how he accessed the information, how he transferred it, when he transferred it, or any similar facts.  Put simply, there is simply no factual support that shows John Fuisz did stole [sic] the information and provided it to his family beyond the similarities between the patents and access."  August 2, 2013 Order at 29.  Defendants will supply a complete copy of the D.C. Court's Order to this Court upon request, but do not do so now because of the five-page limit on this brief.

Joint Letter Brief re Jury Trial, August 9, 2013
Page 11

Plaintiffs chose to abandon legal relief and seek only equitable relief.  Further, whether or not to apply the doctrine of collateral estoppel is itself a discretionary doctrine as the Supreme Court's *Parklane Hosiery* decision clearly demonstrates.  Should Defendants prevail in this case and should there be subsequent litigation, the court(s) hearing any subsequent case will have the opportunity to decide whether the Seventh Amendment, waiver principles, and fairness concerns should or should not permit Defendants to rely upon collateral estoppel.

Respectfully submitted,

*/s/ D. Michael Underhill*
D. Michael Underhill
BOIES SCHILLER & FLEXNER, LLP
Counsel for Plaintiffs


*/s/ Stephen Saltzbug*
Stephen Saltzburg
GEORGE WASHINGTON LAW CENTER
Counsel for Defendants

**ATTESTATION OF FILER**

I, Meredith R. Dearborn, attest that I have obtained permission from Counsel for Defendants and D. Michael Underhill to file this brief on their behalf.

Dated: August 9, 2013

By:   */s/ Meredith R. Dearborn*
Meredith R. Dearborn (SBN 268312)
BOIES, SCHILLER & FLEXNER LLP
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
Email: mdearborn@bsfllp.com

*Attorneys for Plaintiffs Theranos, Inc. and Elizabeth Holmes*