1   DAVID BOIES (admitted *pro hac vice*)
    Email: dboies@bsfllp.com
2   WILLIAM MARSILLO (admitted *pro hac vice*)
    Email: wmarsillo@bsfllp.com
3   BOIES, SCHILLER & FLEXNER LLP
    333 Main Street, Armonk, NY 10504
4   Telephone: (914) 749-8200
    Facsimile: (914) 749-8300
5
    MICHAEL D. JAY (SBN 223827)
6   Email: mjay@bsfllp.com
    BOIES, SCHILLER & FLEXNER LLP
7   401 Wilshire Blvd., Suite 850
    Santa Monica, CA 90401
8   Telephone: (310) 752-2400
    Facsimile: (310) 752-2490
9
10  *Attorneys for Plaintiffs*
    THERANOS, INC. and ELIZABETH HOLMES
11
12              UNITED STATES DISTRICT COURT
13            NORTHERN DISTRICT OF CALIFORNIA
14                   SAN JOSE DIVISION
15
16  THERANOS, INC. and ELIZABETH HOLMES,    Case No. 11-CV-05236-PSG
17                  Plaintiffs,             **PLAINTIFFS' OPPOSITION TO
                                            DEFENDANTS' MOTION FOR
18          v.                              PARTIAL SUMMARY JUDGMENT**
19  FUISZ PHARMA LLC, RICHARD C. FUISZ,
    and JOSEPH M. FUISZ,                    Dept.:  Courtroom 5, 4th Floor
20                                          Judge:  Honorable Paul Singh Grewal
                   Defendants.
21                                          Hearing:   September 3, 2013
22                                          Time:      10:00 a.m.
23                                          Trial:  November 18, 2013
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................. 1

II.    BACKGROUND ............................................................................................... 2

       Theranos is a healthcare company that has spent the past 10 years developing
       technology that will revolutionize point-of-care diagnostic services. ...................... 2

       Theranos retained the law firm of McDermott Will & Emery in 2003. .................. 3

       John Fuisz, who previously had provided his father with a law firm's internal
       confidential documents, had access to Theranos's confidential information. ......... 3

       Richard Fuisz applied for a patent concerning the same technology disclosed in
       Theranos's confidential information at the time that information was accessible
       in MWE's offices. ...................................................................................... 5

       Richard and Joseph Fuisz targeted Theranos. ................................................. 9

       Theranos discovered the Fuisz Provisional, tried to address the issue with
       MWE, and filed this lawsuit to correct inventorship. ........................................ 9

III.   DISCUSSION ................................................................................................ 10

       A.   Summary Judgment Is Not Appropriate on Theranos's Sole Inventorship
            Claim ................................................................................................ 10

       B.   Summary Judgment Is Not Appropriate on Theranos's Joint Inventorship
            Claim ................................................................................................ 12

            1.   Substantial Evidence Corroborates Theranos's Inventorship Claim ......... 12

                 a.   There are striking similarities between Theranos's confidential
                      information and the inventions claimed in the '612 Patent................. 13

                 b.   Defendants claim to have conceived the same subject matter
                      covered by Theranos's confidential information at the same
                      time that it was in MWE's files....................................................... 16

                 c.   The record shows that John Fuisz had access to Theranos's
                      confidential information and that Defendants were aware that
                      MWE was Theranos's counsel......................................................... 16

                 d.   Defendants have no significant expertise in the relevant field or
                      evidence showing any experimentation for or development of
                      the inventions in the '612 Patent..................................................... 18

                 e.   Richard Fuisz has demonstrated an ability to obtain confidential
                      documents, including by using John Fuisz as a conduit. ................. 19

                 f.   Defendants targeted Theranos........................................................ 20

            2.   Joint Behavior Can Include Improper Access to Confidential Materials ................. 21

i

C.      Summary Judgment Is Also Inappropriate On Theranos's Other Claims.........................24

D.      Defendants Are Not Entitled to Factual Findings Under Rule 56(g)...............................24

IV.     CONCLUSION ....................................................................................................................25

BOIES, SCHILLER & FLEXNER LLP

ii

**TABLE OF AUTHORITIES**

**CASES**

*Abarca v. Franklin Cnty. Water Dist.*,
    761 F. Supp. 2d 1007 (E.D. Cal. 2011).............................................................................. 10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................................................ 10

*Apple Computer, Inc. v. Microsoft Corp.*,
    759 F. Supp. 1444 (N.D. Cal. 1991) .................................................................................. 15

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*,
    521 F. Supp. 2d 1031 (N.D. Cal. 2007) ............................................................................. 12

*Arbitron, Inc. v. Kiefl*, No. 09-CV-04013 PAC,
    2010 WL 3239414 (S.D.N.Y. Aug. 13, 2010) ............................................................. 21, 22

*Avalos v. Univ. of San Francisco*, No. C12-5290-RS,
    2013 WL 1390406 (N.D. Cal. Apr. 4, 2013) ..................................................................... 25

*Bd. of Trustees of the Auto. Indus. Welfare Fund v. Groth Oldsmobile/Chevrolet, Inc.*,
    2011 WL 1362178 (N.D. Cal. Apr. 11, 2011) ................................................................... 24

*Berry v. Metcalfe*, No. C-09-2027-MMC,
    2011 WL 1100134 (N.D. Cal. Mar. 24, 2011) ................................................................... 10

*Boparai v. Shinseki*, No. 09-CV-1164-AWI,
    2011 WL 4738527 (E.D. Cal. Oct. 5, 2011) ...................................................................... 16

*Checkpoint Sys. v. All-Tag Sec. S.A.*,
    412 F.3d 1331 (Fed. Cir. 2005)........................................................................................... 16

*Culver v. Gorman & Co.*,
    416 F.3d 540 (7th Cir. 2005)............................................................................................... 16

*Desert Palace, Inc. v. Costa*,
    539 U.S. 90 (2003).............................................................................................................. 12

*Ethicon, Inc. v. U.S. Surgical Corp.*,
    135 F.3d 1456 (Fed. Cir. 1998)............................................................................... 12, 15, 19

*Fina Oil & Chem. Co. v. Ewen*,
    123 F.3d 1466 (Fed. Cir. 1997)........................................................................................... 15

*Finch v. Lopez*, No. ED CV 10-1440-BRO,
    2013 WL 2898055 (C.D. Cal. June 11, 2013) ................................................................... 13

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

iii

*Furnace v. Sullivan*,
    705 F.3d 1021 (9th Cir. 2013).................................................................................. 10

*Gen. Elec. Co. v. Brandon*, No. 92-CV-438,
    1992 WL 394933 (N.D.N.Y. Dec. 21, 1992)............................................................ 12

*Hopper v. City of Pasco*,
    241 F.3d 1067 (9th Cir. 2001).................................................................................. 10

*Hyatt v. Boone*,
    146 F.3d 1348 (Fed. Cir. 1998)........................................................................... 14, 15

*Ibanez v. Bettazza*, No. 11-cv-01518-SI,
    2013 WL 1295219 (D. Or. Mar. 28, 2013)............................................................... 25

*ING Bank v. John*, No. 09-CV-1467-PSG,
    2011 WL 3204704 (N.D. Cal. July 27, 2011 ........................................................... 25

*Institut Pasteur v. Simon*,
    384 F. Supp. 2d 802 (E.D. Pa. 2005) ....................................................................... 15

*IP Innovation L.L.C. v. Red Hat, Inc.*,
    705 F. Supp. 2d 692 (E.D. Tex. 2010) ..................................................................... 22

*Kimberly-Clark Corp. v. Proctor & Gamble Co.*,
    973 F.2d 911 (Fed. Cir. 1992).................................................................................. 21

*Leslie v. Grupo ICA*,
    198 F.3d 1152 (9th Cir. 1999).................................................................................. 10

*Marketel Int'l, Inc. v. Priceline.com*,
    138 F. Supp. 2d 1210 (N.D. Cal. 2001) ................................................................... 13

*Maxwell v. Stanley Works*, No. 3:06-0201,
    2006 WL 1967012 (M.D. Tenn. July 11, 2006) ...................................................... 12

*Memry Corp. v. Kentucky Oil Tech.*, N.V., C-04-03843 RMW,
    2007 WL 2746737 (N.D. Cal. Sept. 20, 2007) ................................................... 21, 22

*Mother's Rest., Inc. v. Mama's Pizza, Inc.*,
    723 F.2d 1566 (Fed. Cir. 1983)................................................................................ 23

*Mullen v. First Student Inc.*,
    236 F. App'x 906 (5th Cir. 2007) ............................................................................ 13

*Price v. Symsek*,
    988 F.2d 1187 (Fed. Cir. 1993)........................................................................... 13, 23

*Rawlplug Co., Inc. v. Hilti Aktiengesellschaft*,
    777 F.Supp. 240 (S.D.N.Y. 1991)............................................................................ 12

iv

BOIES, SCHILLER & FLEXNER LLP

*Riverbank Holding Co., LLC v. N.H. Ins. Co.*, No. 11-cv-2681-WBS,
  2012 WL 2119046 (E.D. Cal. June 6, 2012) ................................................................ 25

*Rubin v. Gen. Hosp. Corp.*, No. 09-10040-DJC,
  2011 WL 1625024 (D. Mass. Apr. 28, 2011) ............................................................... 23

*Rubin v. Gen. Hosp. Corp.*, No. 2011-1439,
  2013 WL 1240745 (Fed. Cir. Mar. 28, 2013) .............................................................. 23

*S.E.C. v. Retail Pro, Inc.*, No. 08-cv-1620-WQH,
  2011 WL 589828 (S.D. Cal. Feb. 10, 2011) ................................................................ 25

*St. Paul Fire & Marine Ins. Co. v. F.H.*,
  55 F.3d 1420 (9th Cir. 1995) ........................................................................................ 24

*Stark v. Advanced Magnetics, Inc.*,
  119 F.3d 1551 (Fed. Cir. 1997) .................................................................................... 11

*Synopsys, Inc. v. Magma Design Automation, Inc.*, No. C04-3923 MMC,
  2007 WL 322353 (N.D. Cal. Jan. 31, 2007) ............................................................... 21

*Teleconnect Co. v. Ensrud*,
  55 F.3d 357 (8th Cir. 1995) .................................................................................. 10, 13

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ........................................................................................ 15

*Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*,
  105 F. Supp. 2d 1164 (D. Colo. 2000) ................................................................... 11, 22

*Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*,
  196 F.3d 1366 (Fed. Cir. 1999) .................................................................................... 11

*Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften EV*,
  881 F. Supp. 2d 151 (D. Mass. 2012) .......................................................................... 11

*Veteran Med. Prods., Inc. v. Bionix Dev. Corp.*, No. 05-CV-655,
  2008 WL 1745586 (W.D. Mich. Apr. 11, 2008) ......................................................... 19

*Virginia Elec. & Lighting Corp. v. Nat'l Serv. Indus., Inc.*,
  230 F.3d 1377, 2000 WL 12729 (Fed. Cir. 2000) ....................................................... 19

*Weber v. Travelers Home & Marine Ins. Co.*,
  801 F. Supp. 2d 819 (D. Minn. 2011) .......................................................................... 19

*Yeda Research & Dev. Co. Ltd. v. Imclone Sys. Inc.*,
  443 F. Supp. 2d 570 (S.D.N.Y. 2006) .......................................................................... 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATUTES**

35 U.S.C. § 116 ................................................................................................................ 21

35 U.S.C. § 256 ........................................................................................................... 11, 22

**OTHER AUTHORITIES**

H.R. Rep. No. 97-542, at 10 (1982), reprinted in 1982 U.S.C.C.A.N. 765 ........................ 11

**RULES**

Civil L.R. 56-2 ................................................................................................................... 25

Fed. Rule Civ. Pro. 56 ........................................................................................................ 25

Fed. Rule Civ. Pro. 56(a) .................................................................................................... 24

Fed. Rule Civ. Pro. 56(d) .................................................................................................... 25

Fed. Rule Civ. Pro. 56(g) .............................................................................................. 24, 25

BOIES, SCHILLER & FLEXNER LLP

PLAINTIFFS' OPPOSITION TO DEFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. CV 11-cv-05236-PSG

Plaintiffs Theranos, Inc. and Elizabeth Holmes (collectively, "Theranos") hereby oppose Fuisz Pharma LLC's, Joseph Fuisz's, and Richard Fuisz's Motion for Summary Judgment on All Claims Other Than Invalidity and in the Alternative for Partial Summary Judgment.

## I.    INTRODUCTION

Defendants' motion for summary judgment should be denied because there are numerous material fact issues that must be resolved at trial.  Defendants also rehash the same arguments that this Court rejected when it denied their motion to dismiss.  Specifically, Defendants' summary judgment motion rests on their incorrect claim that Theranos allegedly cannot show "joint behavior" with Defendants.  Defendants are wrong, both legally and factually.

*First*, Defendants identify no binding or even persuasive authority to support their assertion that joint behavior is required for *sole* inventorship.  Their motion should be denied on that basis alone.  (*See below,* Section III.A.)  *Second*, there is substantial evidence of joint behavior, requiring a trial to resolve the factual issues.  Defendants are simply wrong that they automatically win because no witness confessed that Defendants accessed and used Theranos's confidential material.  Contrary to Defendants' argument, the Court cannot credit their self-serving testimony and disregard overwhelming record evidence and expert testimony that they used Theranos materials to prepare and prosecute the '612 Patent.  Indeed, Defendants' request that this Court assess credibility and weigh the evidence demonstrates that a trial is necessary.

As shown below, there is substantial evidence that Defendants used Theranos's confidential information when preparing and prosecuting the '612 Patent.  Perhaps the most damning evidence is the eerie  overlap—which Defendants make no attempt to explain—between the '612 Patent and Theranos's highly confidential documents, including its provisional patent applications.  These serial "coincidences" are particularly significant in light of Defendants' remarkable testimony—without any corroborative evidence such as lab notebooks or prototypes—that their alleged ideas sprang to life fully formed at precisely the same time that John Fuisz's former law firm, McDermott Will & Emery LLP ("MWE"), received and reviewed Theranos's confidential information.  The evidence also shows that neither Richard nor Joseph Fuisz has any significant expertise in the field of these inventions.  Consistent with the accompanying declarations submitted herewith, Theranos's experts

1

will testify at trial that it is improbable, if not impossible, that Defendants could have prepared the '612 Patent when they did without Theranos's confidential material.  Further, discovery established that Defendants knew that MWE had Theranos's confidential material, and that Theranos's confidential materials were accessible by John Fuisz in multiple now-undetectable ways.  Finally, notwithstanding Defendants' feigned umbrage at Theranos's claims, they admit that, in connection with a prior lawsuit involving Richard Fuisz, John Fuisz passed confidential information from his adversary's law firm to his father, and Richard Fuisz has bragged about obtaining confidential documents to which he does not have legitimate access.  (*See below*, Section III.B(1)–(6).)

Implicitly recognizing that they are not entitled to summary judgment, Defendants alternatively ask this Court to make "findings of fact" under Rule 56(g) on the exact issues to be decided at trial.  Defendants' request is illogical.  If summary judgment is precluded by genuine issues of material fact, those same issues preclude factual "findings."  It appears that Defendants' request is simply part of their vendetta against Theranos.  As John Fuisz bluntly admitted in his deposition:

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████  (*See below*, Section III.D.)

## II.   BACKGROUND

*Theranos is a healthcare company that has spent the past 10 years developing technology that will revolutionize point-of-care diagnostic services.*

Theranos, Inc. is a healthcare company that develops groundbreaking technologies for collecting, analyzing, and communicating health information.  (Declaration of William D. Marsillo in Support of Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment ("Marsillo Decl.") Ex. 37 (website); Ex. 29 (TH00025772) at 5730.)  Elizabeth Holmes is Theranos, Inc.'s CEO and a named inventor of several patents on bodily fluid analyzers and systems.  (*Id*. Ex. 13 (E. Holmes tr.) at 178:23–179:20; Ex. 29 (TH00025772) at 5745; *see also* U.S. Patent No. 7,635,594, "Point of Care Fluidic Systems and Uses Thereof," to Holmes, et al; U.S. Patent No. 7,291,497, "Medical Device for Analyte Monitoring and Drug Delivery," to Holmes, et al.).)  At the age of nineteen, Ms. Holmes founded Theranos, Inc. in 2003, based on revolutionary technology that she

BOIES, SCHILLER & FLEXNER LLP

1    conceived while a chemical and electrical engineering student at Stanford University.  (*See id.* Ex. 13

2    (E. Holmes tr.) at 112:17–20; *see also* Ex. 29 (TH00025772) at 5730, 5745.)

3         Over nearly a decade, Theranos has devoted enormous resources to researching, developing,

4    patenting, and commercializing technology relating to bodily fluid analyzers.  (*See id.* Ex. 13 (E.

5    Holmes tr.) at 44:1–18; 265:20–266:11.)  Theranos's accomplishments have resulted from the

6    inventive efforts by Ms. Holmes and others, as well as its diligence in protecting its intellectual

7    property.  (*Id.*)  Theranos has attracted a standout board of directors, including such luminaries as

8    Henry Kissinger, George Schultz, William Perry, and Sam Nunn.  (*Id.* Ex. 37 (website).)

9    ***Theranos retained the law firm of McDermott Will & Emery in 2003.***



10

11

12

13                                                                                                In

14   2005, MWE filed four provisional patent applications for Theranos (the "Theranos Provisionals"):

15   No. 60/678,801 filed on May 9, 2005 (the "'801 Provisional"); No. 60/705,489 filed on August 5,

16   2005 (the "'489 Provisional"); No. 60/717,192 filed on September 16, 2005 (the "'192 Provisional");

17   and No. 60/721,097 filed on September 28, 2005 (the "'097 Provisional").  (*Id.* Exs. 1–4.)  On March

18   24, 2006, Theranos filed non-provisional patent applications based on the Theranos Provisionals.  (*Id.*

19   Exs. 16–21.)  These patent applications published in November 2006, which was the first time that

20   the Theranos Provisionals and non-provisional applications became publicly accessible.

21   ***John Fuisz, who previously had provided his father with a law firm's internal confidential***
22   ***documents, had access to Theranos's confidential information.***

23        When Theranos retained MWE and for years thereafter, Theranos was unaware that John

24   Fuisz was a partner in MWE's Intellectual Property Department in the same Washington D.C. office

25   that was prosecuting patents for Theranos.  (*See id.* Ex. 13 (E. Holmes tr.) at 116:22–117:11.)

26

27

28

BOIES, SCHILLER & FLEXNER LLP



Before working at MWE, John Fuisz improperly acquired confidential information from a law firm representing a party, Terex, Inc., in litigation against his father, Richard Fuisz.

In sworn testimony, the paralegal confirmed that he delivered documents to John Fuisz. (*Id*. Ex. 24 (Ghavami affidavit);

1    ████████████████████████████████████████████████████

2    ***Richard Fuisz applied for a patent concerning the same technology disclosed in Theranos's***

3    ***confidential information at the time that information was accessible in MWE's offices.***

4    ████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████

6    ██████████████████████████████████████████

7    ████████████████████████████████████████████

8    On April 24, 2006—months before Theranos's Provisionals became publicly available upon

9    publication of their related non-provisionals, and only one month after Theranos filed those related

10   non-provisional applications—Richard Fuisz and a son, Joseph Fuisz, filed Provisional Patent

11   Application No. 60/794,117 (the "Fuisz Provisional"), which matured into U.S. Patent No. 7,824,612

12   (the "'612 Patent").  (Marsillo Decl. Ex. 5 ('117 Provisional), Ex. 6 ('612 Patent).)  Defendants'

13   motion for summary judgment conspicuously ignores the striking similarities between the Theranos

14   Provisionals, on the one hand, and the Fuisz Provisional, the '612 Patent, and Defendants' emails, on

15   the other hand.  But these similarities are, effectively, functional fingerprints that reveal that the

16   genesis of the '612 Patent was Theranos's confidential information.

17           As Theranos's experts attest here and will testify in greater detail at trial, every alleged novel

18   element of the claims of the '612 Patent is present in Theranos's confidential information and,

19   without access to Theranos's confidential information, it is improbable that Richard or Joseph Fuisz

20   could have independently derived the fully formed ideas described in the '612 Patent when they

21   claim to have done so.  (Declaration of Channing Robertson ("Robertson Decl."), ¶¶ 22, 195;

22   Declaration of William Clarke ("Clarke Decl.") ¶ 8.)  Theranos made significant investments in

23   research, time, and money to stay at the forefront of bodily fluid analyzer technology.  (Robertson

24   Decl. ¶ 47; *see also* Marsillo Decl. Ex. 13 (E. Holmes tr.) at 44:1–18; 265:20–266:11.)  In contrast,

25   ████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████

27   ██████████████████████████████████████████████

28   ████████████████████████████████████████████████████

BOIES, SCHILLER & FLEXNER LLP

BOIES, SCHILLER & FLEXNER LLP



8    Those materials did, however, reveal

9    that MWE—the same firm where John Fuisz was a partner—was Theranos's patent prosecution

10   counsel.

13   Moreover, Theranos's experts' testimony demonstrates

14   that Richard and Joseph Fuisz eschewed the publicly available Theranos art in favor of Theranos's

15   confidential materials provided to MWE.  (Robertson Decl. ¶ 198.)

20          That inference is further confirmed by the unusual commonality between the words, phrases,

21   and sentence structures set forth in Theranos's confidential information and the communications from

22   Richard Fuisz to his patent prosecution counsel.  As Dr. Robert Leonard, Professor of Linguistics and

23   the Head of the Graduate Program in Forensic Linguistics at Hofstra University, states in his

24   declaration, the similarities in semantic structures and word usage between Defendants' emails and

25   Theranos's confidential information support the conclusion that Defendants had access to Theranos's

26   confidential information at the time that they submitted the Fuisz Provisional. (Declaration of Robert

27   Leonard ("Leonard Decl.") ¶¶ 48–50.)  In particular, in comparing emails Richard Fuisz sent to his

28   patent prosecution counsel to the '192 Provisional, Dr. Leonard identified markers he attributes to

common authorship.  Those tell-tale markers included the use of similar terms, and overlapping

semantic concepts.  In short, Richard Fuisz used similar language to describe similar concepts

disclosed in a confidential document that became accessible at his son's law firm just days prior.

A comparison of the '612 Patent (and Fuisz Provisional) to Theranos's confidential

information similarly reveals common usage and concepts. For example, the '612 Patent states:

> Alternatively, the data stored on the data storage unit may store **parameters** that are set
> by the **prescribing physician** specifically **for that particular patient** or by the
> prescribing physician or drug company **for a class of patients** (e.g., elderly)."
> (Marsillo Decl. Ex. 6 ('612 Patent) at 4:11–15; *see also* 4:31–35 (same))

And the '192 Provisional, which was confidential when the Fuisz Provisional was filed, states:

> "The appropriate threshold levels of TI, or the optimum TI is termed as TIref (or 'action
> **threshold** value'.)   **Expert review** would then determine the optimum therapeutic
> index **for that particular patient** or **patient class**."  (*Id.* Ex. 3, at [0037])

Both sentences use similar structure to convey the same concept with remarkably similar language,

including the phrase "for that particular patient," in conjunction with "patient class" or "class of

patients," and thresholds or parameters subject to input from a "physician" or "expert."  A search of

all U.S. patents and applications, European Union patents and applications, and PCT applications

demonstrates the evidentiary significance of this "coincidence".  Only 23 references out of

approximately 20 million contain both the phrase "for that particular patient" and the phrase "class of

patients" or "patient class" anywhere in the specification.  (Declaration of Nimra Taqi, at 7–8.)

Twenty-one out of these 23 references identify as named inventors/assignees either: (1) Theranos,

Inc. or Elizabeth A. Holmes (and claim priority to the '192 provisional); or (2) Richard Fuisz, Joseph

Fuisz, or Fuisz Pharma LLC (and claim priority to the '117 provisional).  (*Id.*)  In addition, only the

references associated with Theranos / Elizabeth Holmes or a Fuisz entity contain both of these

phrases in the same sentence.

Other overlap between Theranos's confidential information and the '612 Patent include:

| The '612 Patent<br><br>(Marsillo Decl. Ex. 6) | Theranos's Art<br><br>(Marsilo Decl. Exs. 1–4) |
|---|---|
| selecting by a prescribing physician or a drug company at | The appropriate threshold levels of TI, or the optimum TI is termed as TIref (or 'action **threshold value'**.) . . . As can be understood, the appropriate TIref for a patient would be decided |

7

BOIES, SCHILLER & FLEXNER LLP

| | |
|---|---|
| least one **threshold value** of at least one analyte (Claim 1; *similar concept in Claim 9*) | based on the healthcare provider's judgment for that individual patient.  ('192 Provisional, at [0037]) |
| providing a **data storage unit separately from the bodily fluid analyzer** and **containing stored information** including the at least one threshold value (Claim 1; *similar concept in Claim 9*) | The handheld also has capabilities of wireless communicating with the **external world**. The handheld could transmit the results of the analysis to an **external database** and is also capable of **receiving data from such databases**.  ('801 Provisional, at [0031]) [The RDx metabolic profiler] is wirelessly linked, either through a transmitter or other commonly known means, to a **computer network**.  The computer network hosts a variety of **databases**, which **contain information relating the individual patient**, pharmacogenomic data and the like.  ('801 Provisional, at [0034]) |
| a **display** for displaying processed information concerning the sensed analyte  (Claim 9) | [I]f a patient needs feedback, such feedback is **displayed** on the handheld[.]  ('489 Provisional, at [0020]) The error messages could be **displayed** on an LCD screen in the handheld.  ('489 Provisional, at [0066]) |
| the at least one threshold value is a value such that a sensed analyte level beyond the value will cause the display to display an **alert**" (Claim 1, Claim 9) | If the analysis done in Step 2 suggests that there are no significant difference between the patient's data and the stored data, as determined by using appropriate algorithms, then we arrive at Step 3 – "No Action" is taken.  However, the outcome of the analysis in Step 2 is that there is a significant difference, then Step 4 determines how large the difference is.  If it is a large difference, immediate action is taken.  One kind of immediate action could be to provide an emergency **alert** to the patient's healthcare provider. ('801 Provisional, at  [0035]) If the computed TI exceeds the preset TIref, appropriate action can be taken.  An appropriate action could be **alerting** the physician, stopping the medication or the like.  ('192 Provisional, at [0037]) |
| wherein the at least one threshold value . . . is selected . . . by a prescribing physician for the **patient or for a class of patients** (Claim 7, Claim 18) | The appropriate threshold levels of TI, or the optimum TI is termed as TIref (or 'action threshold value'.)   Expert review would then determine the optimum therapeutic index for that particular **patient or patient class**. ('192 Provisional, at [0037]) |

Moreover, ideas that Theranos communicated to MWE in documents other than the Theranos Provisionals also were incorporated in the '612 Patent.

8

*Richard and Joseph Fuisz targeted Theranos.*

The evidence is clear that Richard and Joseph Fuisz intended to target Ms. Holmes and Theranos during the time they claim to have been "inventing" the ideas in the '612 Patent. ███

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████

*Theranos discovered the Fuisz Provisional, tried to address the issue with MWE, and filed this lawsuit to correct inventorship.*

Theranos learned of the Fuisz Provisional in May 2008.  (*Id.* Ex. 13 (E. Holmes tr.) at 75:8–13.)  Ms. Holmes raised concerns regarding the similarities between it and Theranos's work with senior MWE partners.  (*Id.* Ex. 13 (E. Holmes tr.) at 86:2–15.)  They confirmed that as a partner in MWE's Intellectual Property Department, John Fuisz had access to Theranos's confidential material. (*Id.* Ex. 13 (E. Holmes tr.) at 119:12–24), but stated that there was "nothing [they] could do." (*Id.* Ex. 13 (E. Holmes tr.) at 124:25–126:8.)[1]   On October 26, 2011, Theranos filed this lawsuit against Richard and Joseph Fuisz, and a related corporation.[2]  A few days later, Fuisz Pharma LLC, another related corporation, sued Theranos for patent infringement in Delaware.  The Delaware court transferred the case to this Court, which consolidated it with Theranos's lawsuit.  Defendants later



[1] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Mr. Work's and John Fuisz's "alternative" theory for how Theranos's confidential information ended up in the '612 Patent shows, at the very least, a material issue of fact.

[2] Theranos also sued John Fuisz for malpractice. The Court dismissed those claims under California's one-year statute of limitations.

9

BOIES, SCHILLER & FLEXNER LLP

moved to dismiss, including because Section 256 allegedly "is limited to correction errors involving true joint ownership." (Dkt. 83 at 14–15.)   The Court denied the motion, holding that "a Section 256 claim includes both [joint and sole inventorship] scenarios." (*Id.*)

## III.   DISCUSSION

"Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).  An issue is genuine when there is sufficient evidence for a reasonable jury to find in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  The nonmoving party "need not establish a material issue of fact conclusively in its favor.  It is sufficient that 'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Abarca v. Franklin Cnty. Water Dist.*, 761 F. Supp. 2d 1007, 1039 (E.D. Cal. 2011) (quoting *Hopper v. City of Pasco*, 241 F.3d 1067, 1087 (9th Cir. 2001)).  The court's function on a summary judgment motion is not to make credibility determinations or to weigh conflicting evidence; "if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party." *Berry v. Metcalfe*, No. C-09-2027-MMC, 2011 WL 1100134, at *2 (N.D. Cal. Mar. 24, 2011) (citing *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999)); *see also Teleconnect Co. v. Ensrud*, 55 F.3d 357, 360 (8th Cir. 1995) (defendant's denial that he received confidential information was irrelevant on summary judgment because the "analysis begins and ends with the evidence propounded by" plaintiff and the inferences therefrom).

### A.   Summary Judgment Is Not Appropriate on Theranos's Sole Inventorship Claim

Defendants' only basis for requesting summary judgment on Theranos's inventorship claim is their contention that it is allegedly "undisputed" that Richard and Joseph Fuisz did not access Theranos's confidential information and, therefore, that Theranos allegedly cannot show "collaboration."  But Defendants ignore that Theranos advances two independent inventorship claims: sole and joint.  Defendants incorrectly assume that collaboration is required for both. Because this is not the law, their motion for summary judgment fails on that basis alone.

10

1    Specifically, Defendants are unable to cite any authority holding that collaboration is required

2    for sole inventorship.  To the contrary, 35 U.S.C. § 256 allows not only the addition of an inventor,

3    but "complete substitution of inventors as long as the true inventors are without deceptive intent."

4    *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1556 (Fed. Cir. 1997).  A legal requirement that

5    the putative inventors collaborated with the named inventors would be logically inconsistent with the

6    idea of complete substitution, based on a finding that the putative inventors invented all the inventive

7    subject matter on their own, without others' contributions: "§ 256 does not require collaboration as a

8    prerequisite for complete substitution.  *Stark* is not so stark."  *Univ. of Utah v. Max-Planck-*

9    *Gesellschaft zur Forderung der Wissenschaften EV*, 881 F. Supp. 2d 151, 158 (D. Mass. 2012).

10    *Yeda Research & Dev. Co. Ltd. v. Imclone Sys. Inc*., 443 F. Supp. 2d 570, 623 (S.D.N.Y.

11    2006), reached the same conclusion. The court found that the omitted inventors were the only

12    inventors and removed the named inventors.  *Id.* at 619–21.  The court rejected the named inventors'

13    joint inventorship claim: there was "no creditable evidence suggesting that the named inventors ever

14    made any suggestions to the [omitted inventors] during their research or in any other way influenced

15    the course of their experiments."  *Id.* at 623.  In short, the court ordered substitution *because* there

16    was an "absence of any evidence of collaboration."  *Id.*; *see also Univ. of Utah*, 881 F. Supp. 2d at

17    158.

18    Defendants' motion to dismiss unsuccessfully argued that collaboration is an "essential

19    element" under Section 256's inventorship standard, and that the Court could therefore only add

20    inventors, not substitute inventors.  But as Theranos previously explained, Defendants egregiously

21    relied on the pre-amended version of Section 256 passed in 1952 which permitted only correction of

22    mistakes involving joint inventorship.  (*See* Dkt. 72 at 5–9.)  Defendants ignore that, in 1982,

23    Congress deleted the references to "joint inventors" in Section 256, to "enlarge the possibilities for

24    correction of misnamed inventors in issued patents."  H.R. Rep. No. 97-542, at 10 (1982), reprinted

25    in 1982 U.S.C.C.A.N. 765, 774.  Courts construing the amended statute acknowledge that courts can

26    substitute inventors.  *See Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1374–

27    75 (Fed. Cir. 1999) ("the district court's premise—that the actual inventors could not be substituted

28    for a fraudulently named inventor in a patent without thereby invalidating the patent—was

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

11

incorrect"); *see also Univ. of Colorado Found., Inc. v. Am. Cyanamid Co*., 105 F. Supp. 2d 1164 (D. Colo. 2000) (on remand, ordering complete substitution of inventors).  Indeed, when the Court denied Defendants' motion to dismiss, it found "no meaningful distinction between the facts in *Cyanamid* as set forth in the compendium of cases regarding that action." This Court therefore rejected "Fuisz Pharma Defendants' contention that Section 256 'is limited to the correction of errors involving true joint ownership' lacks merit.  A Section 256 claim includes both scenarios."  (Dkt. 83 at 15.)[3]

Undaunted, Defendants repeat their same mistake here, relying on cases that interpreted the pre-1982 version of the statute as prohibiting a court from substituting inventors. *See Rawlplug Co., Inc. v. Hilti Aktiengesellschaft*, 777 F.Supp. 240, 243 (S.D.N.Y. 1991)(relying on pre-1982 Section 256 cases); *Maxwell v. Stanley Works*, No. 3:06-0201, 2006 WL 1967012 (M.D. Tenn. July 11, 2006) (adopting *Rawlplug's* reasoning).  Defendants' cases are not persuasive; the legislative history of language of Section 256 "belies the conclusion reached by *Rawlplug*." *Gen. Elec. Co. v. Brandon*, No. 92-CV-438, 1992 WL 394933, at *1 n.3 (N.D.N.Y. Dec. 21, 1992).[4]

Accordingly, Defendants' motion for summary judgment must be denied.

**B.    Summary Judgment Is Not Appropriate on Theranos's Joint Inventorship Claim**

Defendants improperly ask this Court to credit their denial of any wrongdoing as undisputed fact, and to reject Theranos's contrary evidence of "collaboration." Defendants request fails.

**1.   Substantial Evidence Corroborates Theranos's Inventorship Claim**

"Corroborating evidence [of inventorship] may take many forms, including contemporaneous documents prepared by a putative inventor [and] circumstantial evidence about the inventive process." *Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 521 F. Supp. 2d 1031, 1041 (N.D. Cal. 2007) (citing *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998)).

---

[3] The *Cyanamid* plaintiffs alleged that "Cyanamid wrongfully copied the article into a patent application and filed the application in its own name without informing Plaintiffs, without naming the doctors as the inventors and naming instead Cyanamid's employee . . . as sole inventor." *Cyanamid Co*., 974 F. Supp. at 1342.

[4] Although the *Brandon* court's assessment of *Rawlplug* was correct, its understanding of the intent required by the named inventor was not, and was effectively overruled by Federal Circuit's decision in *Stark*, 119 F.3d at 1556.

For summary judgment, circumstantial evidence is entitled to the same weight and value as direct evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'"); s*ee also Mullen v. First Student Inc*., 236 F. App'x 906, 907–08 (5th Cir. 2007) (holding that nonmoving party's circumstantial evidence can defeat summary judgment and stating that "when a case turns on circumstantial evidence it should rarely be taken from the jury"). Direct evidence is not necessary to show a genuine issue of fact, particularly when the disputed fact is of the type that is rarely admitted. *See Teleconnect*, 55 F.3d at 360 (rejecting "the notion that only a 'smoking gun' will suffice to defeat a motion for summary judgment in suits predicated upon asserted disclosures of confidential information"); *Finch v. Lopez*, No. ED CV 10-1440-BRO, 2013 WL 2898055, at *3 (C.D. Cal. June 11, 2013) (holding circumstantial evidence "is enough to defeat summary judgment", particularly because "it is the rare case where [an admission to conspiring to harm the plaintiff] could be found").[5] As discussed below, there is a plethora of evidence that Defendants used Theranos's confidential information to obtain the '612 Patent.

> a. *There are striking similarities between Theranos's confidential information and the inventions claimed in the '612 Patent.*

Dr. Channing Robertson, former Chair of Stanford University's Department of Chemical Engineering, performed a detailed analysis of the '612 Patent in comparison to the Theranos materials sent to MWE. ███████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

---

[5] Defendants' citations are not to the contrary. *Price v. Symsek*, 988 F.2d 1187, 1196 (Fed. Cir. 1993) actually undermines Defendants' arguments. The court rejected the idea that a single type of evidence was required, emphasizing that "all of the evidence put forth by [the non-moving party] . . . must be considered as a whole, not individually." Similarly, in *Marketel Int'l, Inc. v. Priceline.com*, 138 F. Supp. 2d 1210, 1216 (N.D. Cal. 2001), the non-moving party failed to identify specific facts and instead merely asserted that relevant evidence could be found in voluminous declarations. In addition, the primary issue before the court was conception, for which the court wanted specific types of evidence, such as notebooks. *See id.* at 1216. But there is no dispute here as to when Theranos conceived the ideas in the Theranos Provisionals. Rather, it is the Defendants who have no corroborative evidence that they conceived the ideas in the '612 Patent.

BOIES, SCHILLER & FLEXNER LLP

1

2

3   ●

4

5

6

7   ●

8

9

10

11   ●

12

13

14

15   These are but three examples of Dr. Robertson's analysis that lead to his ultimate opinion that

16   without access to the Theranos's confidential materials, it is unlikely that Defendants conceived of

17   the ideas in the '612 Patent.[6]  (Robertson Decl. ¶¶ 195–198.)  Another of Theranos's experts, Dr.

18   William Clarke, performed a similar analysis and reached the same conclusion.  (Clarke Decl. ¶ 8.)

19          Tellingly, Defendants make no effort in their brief to try to explain why the '612 Patent so

20   closely mirrors the Theranos Provisionals.  (*See supra* at 5–8.)  This omission is particularly telling in

21   light of John Fuisz's almost-admission that the '612 Patent is derived from Theranos's confidential

22   materials, when he told the press earlier this year that Ms. Holmes's

23

24

25   [6] Theranos's Provisionals conclusively establish that Theranos conceived and reduced to practice
     before the '612 Patent was filed.  *See Hyatt v. Boone*, 146 F.3d 1348 (Fed. Cir. 1998).  Contrary to
26   Defendants' argument in a footnote (*see* Mot. at 19 n. 13), no additional "corroboration" of
     Theranos's inventorship of these concepts is necessary.  *Id.* at 1352  ("There is no need for proof or
27   corroboration of the subject matter that is included in the application unless a date earlier than the
     filing date is sought to be established.").
28

BOIES,  SCHILLER  &  FLEXNER  LLP

These striking similarities ███████████████ and many others are, alone, substantial evidence that Theranos conceived the inventions claimed in the '612 Patent, and that Defendants accessed and used Theranos's confidential materials. (Robertson Decl. ¶¶ 194–195; Clarke Decl. ¶¶ 6–8; Leonard Decl. ¶¶ 48–50.) "Because direct evidence of copying is rare, copying may be established by circumstantial evidence of access and substantial similarity of ideas and the expression . . ." *Apple Computer, Inc. v. Microsoft Corp.*, 759 F. Supp. 1444, 1453 (N.D. Cal. 1991). Courts have frequently noted that "substantial similarity is inextricably linked to the issue of access." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000); *see also Ethicon*, 135 F.3d at 1464–65 (inventor's testimony corroborated based in part on "the similarity" between omitted sketches and figures").

As Theranos's experts explain in their declarations, and as they will more fully elaborate at trial, Theranos's employees are the true inventors of the '612 Patent, and it is improbable that Defendants could have conceived the ideas in the '612 Patent without access to Theranos' confidential materials.[7] Among other things, the overlap between the contents of Defendants' pre-filing emails and the contents of the Theranos Provisionals indicates that Defendants had access to Theranos's confidential information before they filed their Provisional. (*See supra* at 6–7.) At a minimum, a trial is necessary for the factfinder to assess the expert testimony and the credibility of the parties, and determine the nature, scope, and significance—as well as any belated Defendant explanation for—the striking similarities between the Fuisz Provisional, '612 Patent, Defendants' emails, and Theranos confidential information. *See, e.g.*, *Institut Pasteur v. Simon*, 384 F. Supp. 2d 802, 804–05 (E.D. Pa. 2005) ("[R]esolving summary judgment motions concerning claims of inventorship tends to be a more complex process than many other such motions, as the inquiry is necessarily very fact-intensive. . . . Dueling experts and competing characterizations of alleged

---

[7] (Robertson Decl. at ¶¶ 194–195; Clarke Decl. at 8.) Theranos's Provisionals conclusively establish that Theranos conceived and reduced to practice before the '612 Patent was filed. Contrary to Defendants' argument in a footnote (*see* Mot. at 19 n. 13), no additional "corroboration" of Theranos's inventorship of these concepts is necessary. *Hyatt*, 146 F.3d at 1352 (no need for corroboration unless a date earlier than filing date is sought).

15

BOIES, SCHILLER & FLEXNER LLP

1    inventive contributions often tend to present situations inappropriate for resolution by summary

2    judgment.") (citing *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997)

3    (determination of joint inventor "is fact specific, and no bright-line standard will suffice in every

4    case.") and *Checkpoint Sys. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1337–39 (Fed. Cir. 2005)).

   b.   *Defendants claim to have conceived the same subject matter covered by*
        *Theranos's confidential information at the same time that it was in MWE's*
        *files.*

7         In addition to the striking similarities discussed above, it is revealing that Defendants decided

8    to prepare the Fuisz Provisional at the precise time that Theranos had provided MWE with its

9    confidential information regarding precisely the same subject matter. "Suspicious timing may permit

10   a plaintiff to survive summary judgment if there is other evidence that supports the inference of a

11   causal link." *Boparai v. Shinseki*, No. 09-CV-1164-AWI, 2011 WL 4738527 at *13 (E.D. Cal. Oct. 5,

12   2011) (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005)).  As explained above,

13   ████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████ It

15   was sent just seven days after Theranos's '192 Provisional was filed, and five days before the last of

16   the Theranos Provisionals—the '097 Application—was filed.  (*Id.* Ex. 3 ('192 Provisional); *id.* Ex. 4

17   ('097 Provisional).) ████████████████████████████████

18   ████████████████████████████████████████████████████

19   ███████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████

21   █████████████████████████████████████████████████████

22   ███

   c.   *The record shows that John Fuisz had access to Theranos's confidential*
        *information and that Defendants were aware that MWE was Theranos's*
        *counsel.*

25        Discovery has shown that John Fuisz not only had the opportunity to access Theranos's

26   confidential information, but that he could have done so without detection ████████████

27   █████████████████████████████████████████████████████████

28   ██████████████████████████████████████████████████

   16

BOIES, SCHILLER & FLEXNER LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19    Trying to distract the Court from the fact that John Fuisz had access, Defendants accuse Ms.

20 Holmes of attempting to deceive the Court about MWE's precise role in drafting the Theranos

21 Provisionals.  (Mot. at 15.)  But the precise size of MWE's role in the drafting process is irrelevant;

22 what matters is that MWE had the Provisionals.

23

24 8

25

26

27

28

BOIES, SCHILLER & FLEXNER LLP

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

1

2

3

4

5

6

7

8        The evidence further demonstrates that Richard Fuisz and Joseph Fuisz were well aware that

9    MWE was Theranos's patent prosecution counsel.

10

11                                                                One Theranos application that

12    Richard and Joseph Fuisz cited on the face of the '612 Patent, and that listed MWE as patent counsel,

13    was published on May 12, 2005.  (*Id*. Ex. 15 ('937 Application).)

14

15

16

17                              John Fuisz's name was included in a MWE letter to Ms. Holmes requesting

18    that she give Mr. Fuisz and other MWE attorneys power of attorney to act on Theranos' behalf in

19    relation to a PCT application—a request that she unwittingly granted.  (*Id*. Ex. 27 (TH028168) at

20    169.)

21

22                                                  These facts demonstrate that

23    Richard, Joseph, and John Fuisz knew that Theranos was an MWE client, and contradict their self-

24    serving statements to the contrary.  (Mot. at 12.)  At a minimum, Theranos is entitled to the inference

25    that Defendants were well aware that they had a potential means for accessing Theranos information.

26                    *d.   Defendants have no significant expertise in the relevant field or evidence
                         showing any experimentation for or development of the inventions in the '612*
27                       *Patent.*

28

18

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████  The absence of such evidence of

experimentation or related work in this field during the relevant time period strongly demonstrates

that Defendants did not independently come up with the inventions claimed in the '612 Patent.  *Cf.*

*Virginia Elec. & Lighting Corp. v. Nat'l Serv. Indus., Inc.*, 230 F.3d 1377, 2000 WL 12729, at *5–6

(Fed. Cir. 2000) (prototypes and other independent evidence have "corroborative value" at summary

judgment) (unpublished) (citing *Ethicon*, 135 F.3d at 1464). The absence of any documentary or

other evidence is particularly telling here, where Defendants have no expertise in the relevant art,

especially as compared to Theranos's extensive research and development.  A lack of experience or

expertise, particularly in the field of manufacturing medical devices, is strong circumstantial evidence

of misappropriation.  *Veteran Med. Prods., Inc. v. Bionix Dev. Corp.*, No. 05-CV-655, 2008 WL

1745586 at *1 (W.D. Mich. Apr. 11, 2008).  Further, the parties' relative expertise and background

corroborates Theranos's claim of inventorship.  (*See* Robertson Decl. ¶ 196); *Ethicon*, 135 F.3d at

1463–64 (corroborating evidence included the named inventor's "need for a person with expertise in

electronics" and omitted inventors' "background").  At trial, Theranos will introduce evidence

showing that neither Richard nor Joseph Fuisz has particular expertise that would permit them to

derive the inventions disclosed in the '612 Patent when they claim that they did.  *See, e.g.*, *Weber v.*

*Travelers Home & Marine Ins. Co.*, 801 F. Supp. 2d 819, 830 (D. Minn. 2011) (evidence of

opportunity sufficient to defeat summary judgment).

> e.   *Richard Fuisz has demonstrated an ability to obtain confidential documents,*
> *including by using John Fuisz as a conduit.*

Richard and John Fuisz admit that they previously have obtained confidential documents

without permission of the owners. At trial, Theranos will introduce evidence showing that John Fuisz

previously acted as a conduit to Richard Fuisz, and that Richard Fuisz has a history of receiving

confidential information under mysterious circumstances.  For example, for a different lawsuit, John

Fuisz provided his father with a litigation adversary's confidential documents, which John obtained

from his former college roommate who was a paralegal at the litigation adversary's law firm.

19

BOIES, SCHILLER & FLEXNER LLP

(Marsillo Decl. Ex. 24 (Ghavami Affidavit); Ex. 22 (John Fuisz Terex tr.).)  Richard Fuisz conceded that his receipt of the purloined documents was not anomalous: "during my lifetime a lot of things are provided to me, you know, that I don't ask for."  (*Id*. Ex. 23 (R. Fuisz Terex tr.) at 548:13–19).)



       *f.*   *Defendants targeted Theranos.*

      The evidence also unmistakably shows that Defendants expressly targeted Theranos when they prepared and filed the '612 Patent.

BOIES, SCHILLER & FLEXNER LLP

1

2

3

4

5   In summary, the record evidence, reinforced by expert testimony, shows that Defendants used

6   Theranos's confidential information when preparing the '612 Patent.  Self-serving denials of any

7   wrongdoing are irrelevant, and simply confirm the need for a trial.  *See Anderson*, 477 U.S. at 255.

8   **2.   Joint Behavior Can Include Improper Access to Confidential Materials**

9   Defendants contend that Theranos cannot show joint behavior and that Theranos's

10  Section 256 claim therefore is really one of priority, not inventorship.  Defendants are wrong.

11  Theranos has alleged sufficient facts to raise a triable issue of fact regarding the existence of "joint

12  behavior."  Inventors need not physically work together at the same time, make the same amount or

13  type of contribution, or contribute to the subject matter of every claim in the patent to be a joint

14  inventor.  35 U.S.C. § 116.  "The test for establishing a quantum of collaboration between a party and

15  named inventors is not demanding and requires only an element of joint behavior.  The test has been

16  satisfied by such tenuous collaborations as one inventor seeing the report of another and building

17  upon it, or merely hearing an inventive suggestion at a meeting."  *Arbitron, Inc. v. Kiefl*, No. 09-CV-

18  04013 PAC, 2010 WL 3239414, at *5–6 (S.D.N.Y. Aug. 13, 2010) (citing *Kimberly-Clark Corp. v.*

19  *Proctor & Gamble Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992)); *see also Synopsys, Inc. v. Magma*

20  *Design Automation, Inc*., No. C04-3923 MMC, 2007 WL 322353, at *28 (N.D. Cal. Jan. 31, 2007)

21  ("The requisite contribution may be the identification of other work, for example, 'one inventor

22  seeing a relevant report and building upon it.'") (quoting *Kimberly-Clark*).

23  Even where one inventor is wholly unaware that his or her materials are being used by

24  another inventor, the "element of joint behavior" can be satisfied.   Specifically, courts have found

25  that there can be joint inventorship "when collaboration or concerted effort occurs—that is, when the

26  inventors have some open line of communication during or in temporal proximity to their inventive

27  efforts."  *Memry Corp. v. Kentucky Oil Tech.*, N.V., C-04-03843 RMW, 2007 WL 2746737, at *10

28  (N.D. Cal. Sept. 20, 2007) (quotation and citation omitted).  In *Memry*, STC's argument—similar to

21

Defendants' argument here—was that the alleged coinventor, Besselink, who sought correction of inventorship under § 256, could not be a coinventor because he did not "collaborate" with anyone at STC. *Id.* at *11. The court denied STC's motion for summary judgment, in part because "the evidence in the record could reasonably suggest that Besselink collaborated with [plaintiff's principal] Schetky [*sic*] who then collaborated with STC[.]" *Id.* In other words, they collaborated through an intermediary. Because Schetsky had discussed the project with Besselink and others before the patent applications were drafted, and the same person participated in design meetings with STC, there was an "open line of communication" between the inventors, and "the evidence suggests it is possible that Besselink collaborated" with STC. *Id.*

Similarly, in *Arbitron, Inc. v. Kiefl*, the alleged coinventor, Kiefl alleged "that an open line of communication existed" between himself and the inventors' employer, Arbitron. Kiefl had disclosed the relevant technology to Arbitron's patent counsel; patent counsel "prepared a report for Arbitron on February, 1993, regarding Kiefl's disclosures and Arbitron's determination not to proceed with Kiefl"; and six months later, the patent counsel filed the patent application that matured into the patent-in-suit. The district court held this link sufficient to establish the collaboration element of joint inventorship. *Arbitron*, 2010 WL 3239414, at *5–6.

And in *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 692, 693–95 (E.D. Tex. 2010), the defendants alleged that the patents at issue were invalid for misjoinder of inventors under Section 116, even though there was no evidence that the putative inventor had worked with the named inventors on the patented technology. Instead, the disputed issues were whether the named inventors knew about the putative inventor's prior work before they reduced their invention to practice and, if so, whether their invention improved on it. Although the named inventors denied knowledge of the prior technology, Judge Rader, sitting by designation, denied their motion for summary judgment. He held that an article by the named inventors "suggest[ed]" that they knew about the putative inventor's prior work and "might have" designed their technology to be an improvement. Judge Rader therefore concluded that the parties' "competing theories with some credible evidence supporting both positions" was sufficient to create a "factual dispute" requiring trial. *See also Cyanamid*, 105 F. Supp. 2d at 1166 (complete substitution ordered where omitted inventors (1) performed studies for

B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

1   named inventor's company, and (2) sent named inventor an article that they intended to publish).

2          As they did in their unsuccessful motion to dismiss, Defendants continue to cite *Rubin*.  As an

3   initial matter, both the district court and Federal Circuit panel opinion are nonprecedential and do not

4   analyze prior law.  In any event, the panel cannot overrule *Kimberly-Clark's* statement that the

5   element of joint behavior required for joint inventorship could be as simple as one inventor seeing

6   another's report and building upon it, or hearing another's suggestion at a meeting.  *See Mother's*

7   *Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1573 (Fed. Cir. 1983) ("The court may overrule a

8   prior holding having precedential status only by an in banc decision.").

9          Moreover, the quantum of "joint behavior" here is far greater than it was in *Rubin*.  While

10  there was no evidence there of "even the most minimal relationship of interaction with the named

11  inventors," *Rubin v. Gen. Hosp. Corp.*, No. 09-10040-DJC, 2011 WL 1625024, at *12 (D. Mass. Apr.

12  28, 2011), there is substantial evidence in our case, among other things, (1) that Theranos was the

13  intended target of the '612 Patent, (2) that the '612 Patent is substantially similar to Theranos's

14  confidential information, and (3) that Richard and Joseph Fuisz, through John Fuisz, had access to the

15  Theranos Provisionals.  Moreover, while the Defendants in *Rubin* likely accessed only an "abstract"

16  of an article, *see Rubin v. Gen. Hosp. Corp.*, No. 2011-1439, 2013 WL 1240745, at *1 (Fed. Cir.

17  Mar. 28, 2013), the Theranos Provisionals described Theranos's inventions in much greater detail.

18  Third, there was no allegation in *Rubin* that the named inventors themselves had engaged in improper

19  conduct. And while the allegation in *Rubin* was simply that the named inventors "used" the abstract

20  in filing their application, Theranos will show that the '612 Patent reproduces detailed subject matter

21  from the Theranos Provisionals.

22         Finally, Defendants are flat wrong that this is lawsuit is really a "priority contest."  No such

23  question exists.  Theranos's materials unambiguously predate any conception date that Defendants

24  could possibly corroborate.  Three out of four of the Provisionals were filed before (and suspiciously

25  close in time to) the earliest document that Defendants produced in support of their claim of

26  conception.  Even Theranos's *non-provisional* applications, which claim priority to the Provisionals,

27  predate the filing date of the '612 Patent.  ██████████████████████████

28  ████████████████████████████████████████████  *See Price*, 988 F.2d at 1192–94

BOIES, SCHILLER & FLEXNER LLP

1  (inventor's oral testimony must be corroborated).

2    **C.    Summary Judgment Is Also Inappropriate On Theranos's Other Claims**

3        Defendants contend that the Court should grant summary judgment on Theranos's claims of

4  inequitable conduct and unjust enrichment because there allegedly is no basis to find that Defendants

5  withheld information from the PTO or were improperly enriched.  Defendants do not suggest,

6  however, that Theranos could not prevail on these claims if Theranos proves at trial that Defendants

7  improperly used Theranos material to prepare the '612 Patent.  As demonstrated above, there is a

8  genuine issue of material fact on this issue. Summary judgment is inappropriate.[10]

9    **D.    Defendants Are Not Entitled to Factual Findings Under Rule 56(g)**

10       Defendants contend they are entitled to partial summary judgment on several alleged "facts,"

11  even if the Court finds that summary judgment is inappropriate.  Defendants are wrong.

12       *First*, Rule 56(g) "does not authorize parties to move for 'partial summary judgment' as to a

13  particular fact."  *Bd. of Trustees of the Auto. Indus. Welfare Fund v. Groth Oldsmobile/Chevrolet,*

14  *Inc.*, No. C09-0465 PJH, 2011 WL 1362178, at *12 (N.D. Cal. Apr. 11, 2011).  In other words, Rule

15  56(g) does not authorize a judgment that can have preclusive effect.  *See St. Paul Fire & Marine Ins.*

16  *Co. v. F.H.*, 55 F.3d 1420, 1425 (9th Cir. 1995).  But that is what Defendants request here, apparently

17  in the hope that it will help facilitate a separate lawsuit against Theranos.  This is particularly true of

18  Defendants' request that the Court find that, when the complaints were filed, Theranos lacked

19  sufficient evidence of Defendants' wrongdoing.  In addition to being both untrue and irrelevant to the

20  pending motion, the request apparently is intended to advance ████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████

24       *Second*, Defendants' motion is procedurally backwards insofar as it asks the Court to treat a

25

26  [10] Richard and Joseph Fuisz's failure to disclose Theranos's non-provisional applications to the PTO
27  when they became publicly available is further evidence of a lack of candor. Theranos non-provisional applications—based on the Theranos Provisionals—published in November 2006. As
28  demonstrated above, Defendants clearly monitored Theranos' prosecution efforts closely.

24

BOIES, SCHILLER & FLEXNER LLP

fact as established under Rule 56(g) before considering the motion under Rule 56(a).   But if

summary judgment is denied because there are genuine issues of material fact, the disputed issue

cannot be an established fact under Rule 56(g).  *See Avalos v. Univ. of San Francisco*, No. C12-5290-

RS, 2013 WL 1390406, at *1 n.1 (N.D. Cal. Apr. 4, 2013).

*Third*, courts always have "considerable discretion" not to treat a fact as established, even if it

hypothetically were to find that that the fact is not genuinely disputed.   *Riverbank Holding Co., LLC

v. N.H. Ins. Co*., No. 11-cv-2681-WBS, 2012 WL 2119046 at *12 (E.D. Cal. June 6, 2012).  Both the

local rules and current Fed. Rule Civ. Pro. 56 discourage unnecessary factual findings on material

issues.  *See* Civil L.R. 56-2 (prohibiting parties from filing separate or joint statements of undisputed

facts without a court order); *see ING Bank v. John*, No. 09-CV-1467-PSG, 2011 WL 3204704 at *5

(N.D. Cal. July 27, 2011) (noting Rule 56(d) no longer  encourages courts to determine what material

facts are not genuinely in dispute ).  Here, of the six purported "facts" that Defendants ask the Court

to recognize as established under Rule 56(g), four (*i.e.,* all but Nos. 5 and 6) are directed to whether

Defendants received confidential Theranos information and used it to prepare the '612 Patent.  As

demonstrated above, there are triable issues of fact on those issues.  (*See supra* at § II.A.)  Those

issues are "better illuminated by the trial of related facts that must be tried in any event."  FED. R.

CIV. P. 56 advisory committee's note (2010); *see also S.E.C. v. Retail Pro, Inc*., No. 08-cv-1620-

WQH, 2011 WL 589828 at *8 (S.D. Cal. Feb. 10, 2011) (declining to order facts established under

56(g) because such an order would not materially expedite the trial).

Defendants' remaining two purported "facts"—███████████████████████

███████████████████████, and that Theranos lacked any evidence of theft or use of

confidential Theranos information at the time the complaints were filed—are not only false (*see

supra* at 17–18), but also immaterial.  Defendants' request therefore must fail.  *See* FED. R. CIV. P.

56(g); *Ibanez v. Bettazza*, No. 11-cv-01518-SI, 2013 WL 1295219 at *10 (D. Or. Mar. 28, 2013)

(declining to order an issue established when the issue has no legal relevance).

## IV.   CONCLUSION

For the reasons stated above and in the accompanying declarations and exhibits, the Court

should deny Defendants' motion for summary judgment in its entirety.

BOIES, SCHILLER & FLEXNER LLP

1

2    Dated: August 12, 2013                    BOIES, SCHILLER & FLEXNER LLP

3                                              By:   */s/ William Marsillo*
                                                     William Marsillo
4

5                                              *Attorneys for Plaintiffs*

6                                              THERANOS, INC. and ELIZABETH HOLMES

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26