UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THERANOS, INC. and ELIZABETH HOLMES,<br><br>             Plaintiffs,<br>   v.<br><br>FUISZ PHARMA LLC, et al.,<br><br>             Defendants. | Case No.: 5:11-cv-05236-PSG<br><br>**ORDER CORRECTING SEPTEMBER 12, 2013 ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 172, 254, 257)** |

Before the court is Fuisz Pharma LLC's ("Fuisz Pharma"), Joseph Fuisz's ("Joseph"), and Richard Fuisz's ("Richard") (collectively "the Fuisz Defendants") Motion for Summary Judgment on All Claims Other Than Invalidity and in the Alternative for Partial Summary Judgment.  The Fuisz Defendants separately seek confirmation that whatever claims remain in this case will be tried to the court, rather than a jury.  Theranos, Inc. and Elizabeth Holmes ("Holmes") (collectively "Theranos") oppose.  The parties appeared for a hearing on the motion on September 3, 2013.  As set forth below, after considering the parties' arguments, the court DENIES the Fuisz Defendants motion for summary judgment and concludes that all the claims remaining in this case, invalidity-related or otherwise, must be tried to a jury.

1

Case No.: 5:11-cv-05236-PSG
ORDER

# I. BACKGROUND

Richard is father to Joseph.[1]  Together they serve as principals for Fuisz Pharma.  This case centers on a highly-charged allegation by Theranos and Holmes, its Chief Executive Officer, that Richard and Joseph plotted and executed a scheme with John Fuisz ("John," Richard's other son and Joseph's brother) to steal Theranos' intellectual property.  John is a former partner at the law firm of McDermott Will & Emery ("MWE"), Theranos' former counsel.  According to Theranos, John took advantage of his access to Theranos' four provisional patent applications reflecting Holmes' inventions to pass Theranos confidential information to his father and brother.  Richard and Joseph are then alleged to have used that information in preparing their own draft application, which ultimately issued as United States Patent No. 7,824,612 ("the '612 patent").  The '612 patent claims a method and system that enables a doctor or drug company to program a threshold value of an analyte, via a data storage unit, into a bodily fluid analyzer that is associated with the patient's drug regimen or course of medical treatment.  The '612 patent lists Richard and Joseph, but not Holmes, as co-inventors.

Theranos responded by bringing suit.  After various procedural twists and turns not relevant here, Theranos now pursues three claims: (1) correction of inventorship pursuant to 35 U.S.C. § 256, (2) invalidity and unenforceability of the '612 patent, and (3) unjust enrichment.  The Fuisz Defendants' move for summary judgment on only the first and third claims.

# II. LEGAL STANDARDS

"Summary judgment is appropriate in a patent case as it is in any other case."[2]  When the summary judgment movant demonstrates the absence of a genuine dispute over any material fact,

---

[1] The court regrets the informality of these references and those that follow, but finds them necessary for ease of reference.

[2] *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990).

2
Case No.: 5:11-cv-05236-PSG
ORDER

the burden shifts to the non-movant to show there is a genuine factual issue for trial.[3] The court must draw all reasonable inferences in favor of the nonmovant.[4]

"To establish that the named inventor derived the invention from another, a party must show: (1) prior conception of the claimed subject matter, and (2) communication of the conception to the named inventor."[5] An "inventor's testimony respecting the facts surrounding a claim of derivation or priority of invention cannot, standing alone, rise to the level of clear and convincing proof."[6] In inventorship disputes, an "alleged inventor must supply independent evidence to corroborate the essential aspects of his testimony."[7] "The burden of showing misjoinder or nonjoinder of inventors" is a heavy one.[8] "The presumption is a powerful one, because once a patent has issued there is a 'strong temptation for people who consulted with the inventor and provided him with materials and advice, to reconstruct, so as to further their own position, the extent of their contribution to the conception of the invention.'"[9]

### III. ANALYSIS

From the very beginning of this case, the Fuisz Defendants have adamantly denied any wrongdoing. To bolster this point they even waived the attorney-client privilege. The Fuisz Defendants argue that Theranos has had ample opportunity to depose all the witnesses it believes possess relevant evidence and to examine all relevant documents in the Fuisz Defendants'

---

[3] *See Celotex Corp. v. Vatrett*, 477 U.S. 317, 3232-24 (1986).

[4] *See BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007).

[5] *Marketel Intern, Inc. v. Priceline.com*, 138 F. Supp. 2d 1210, 1213 (N.D. Cal. 2001) (emphasis added) (citing *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993)).

[6] *Id.*

[7] *Id.* (citing *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998).

[8] *Bd. of Ed. ex rel. Florida State Univ. v. Am. Biosecience, Inc.*, 333 F.3d 1330, 1337 (Fed. Cir. 2003)

[9] *Marketel Intern*, 138 F. Supp. 2d at 1212 (quoting *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997)).

possession, custody, or control.  Following this extensive discovery and the close of fact discovery, the Fuisz Defendants contend that Theranos can point to no evidence provided by any party or witness to support Theranos' theft allegations.  Absent any evidence of theft, the Fuisz Defendants conclude, no reasonable jury could find for Theranos on either its inventorship or unjust enrichment claims.

The court respectfully disagrees.

As an initial matter, Theranos does not appear to dispute that Theranos' inventorship or unjust enrichment claims stand or fall on its allegation that John abused his access to provide confidential information to Richard and Joseph.

As for whether the record could support a finding on this issue in Theranos' favor, the court tends to agree with the Fuisz Defendants that the direct evidence of theft is essentially non-existent. No witness, no document, no interrogatory response offers direct evidence of the misappropriation. As the court suggested at the hearing, there is no security camera footage of any break-in.  If such direct evidence were required, summary judgment would hardly be in question.

But the case law surrounding both correction of inventorship and unjust enrichment claims is clear: circumstantial evidence can be enough to support a verdict.  Circumstantial "evidence may in some [inventorship] cases be sufficient to surmount the clear and convincing evidence burden of proof."[10]  Although neither side cites any precedent directly on point, there appears no reason why such circumstantial evidence cannot take the form of access together with substantial similarity of

---

[10] *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1364 (Fed. Cir. 2004); s*ee also Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1327 (Fed. Cir. 2004) ("Circumstantial evidence of an independent nature may also corroborate.") (citing *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1303 (Fed. Cir. 2002)); *Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.,* 521 F. Supp. 2d 1031, 1041 (N.D. Cal. 2007) ("Corroborating evidence [of inventorship] may take many forms, including contemporaneous documents prepared by a putative inventor [and] circumstantial evidence about the inventive process." ) (citing *Ethicon, Inc. v. U.S. Surgical Corp.,* 135 F.3d 1456, 1461 (Fed. Cir. 1998)); *Howard v. Green*, 55 F.2d 178, 183 n.3 (8th Cir. 1977) (affirming reliance on circumstantial evidence of unjust enrichment).

the disclosures. The same is certainly true in analogous copyright and trade secret misappropriation contexts.[11]

Here, there is little dispute that as a partner in MWE's intellectual property department, John was not subject to the variety of control measures that might bar others both inside and outside the firm from access Theranos confidential information. It is also undisputed that John could access information without detection. This makes some sense, considering that John had Theranos' power of attorney to prosecute Theranos patent applications.[12]

As for substantial similarity, Theranos offers the analysis of Dr. Robertson that without access to the Theranos' confidential materials, it is unlikely that Defendants conceived of the ideas in the '612 patent.[13] Another of Theranos' experts, Dr. Clarke, performed a similar analysis and reached the same conclusion.[14] The overlap between the contents of Defendants' prefiling emails and the contents of the Theranos provisional applications establishes that a trial is required to weigh the expert testimony and the credibility of the parties.[15]

The Fuisz Defendants contend that Theranos cannot show joint behavior. But Theranos has offered sufficient evidence to raise a triable issue of fact regarding the existence of "joint behavior." There is no requirement that individuals physically work together at the same time,

---

[11] *See, e.g., Apple Computer, Inc. v. Microsoft Corp.*, 759 F. Supp. 1444, 1453 (N.D. Cal. 1991) ("Because direct evidence of copying is rare, copying may be established by circumstantial evidence of access and substantial similarity of ideas and the expression."); *see also Ethicon*, 135 F.3d at 1464-65 (inventor's testimony corroborated based in part on "the similarity" between omitted sketches and figures).

[12] *See* Docket No. 212-6, Ex. 27 (TH028168), 169.

[13] *See* Docket No. 206-1, ¶¶ 195–198.

[14] *See* Docket No. 206-3, ¶ 8.

[15] *Cf.*, *Institut Pasteur v. Simon*, 384 F. Supp. 2d 802, 804-05 (E.D. Pa. 2005) ("[R]esolving summary judgment motions concerning claims of inventorship tends to be a more complex process than many other such motions, as the inquiry is necessarily very fact-intensive. . . . Dueling experts and competing characterizations of alleged inventive contributions often tend to present situations inappropriate for resolution by summary judgment.") (*citing Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) (determination of joint inventor "is fact specific, and no bright-line standard will suffice in every case.").

5
Case No.: 5:11-cv-05236-PSG
ORDER

make the same amount or type of contribution, or contribute to the subject matter of every claim in the patent to be a joint inventor.[16] "The test for establishing a quantum of collaboration between a party and named inventors is not demanding and requires only an element of joint behavior. The test has been satisfied by such tenuous collaborations as one inventor seeing the report of another and building upon it, or merely hearing an inventive suggestion at a meeting."[17] Even where one inventor is wholly unaware that his or her materials are being used by another inventor, the "element of joint behavior" can be satisfied.[18]

By necessity, given the standards of Rule 56, the court has focused above on evidence that a trier could rely on to rule in Theranos' favor. This should not suggest in any way that the Fuisz Defendants lack support for their position, as their papers make clear. But whatever the trier might decide, it is a decision that requires a trial, not summary adjudication.

That leaves just one further issue: who should the trier be? The Fuisz Defendants point to Theranos' decision to drop its claim for damages and apparent exclusive focus on equitable relief. In a May 16, 2013, conference call with the court, Theranos' counsel made clear that because Theranos was abandoning all claims for damages, no damages discovery from the Fuisz Defendants was required.[19] The Fuisz Defendants say that they relied on this representation throughout all discovery that followed, and that their entire discovery strategy assumed a bench

---

[16] *See* 35 U.S.C. § 116.

[17] *Arbitron, Inc. v. Kiefl*, No. 09-CV-04013 PAC, 2010 WL 3239414, at *5-6 (S.D.N.Y. Aug. 13, 2010) (citing *Kimberly-Clark Corp. v. Proctor & Gamble Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992)); *see also Synopsys, Inc. v. Magma Design Automation, Inc.*, Case No. C-04-3923 MMC, 2007 WL 322353, at *28 (N.D. Cal. Jan. 31, 2007) ("The requisite contribution may be the identification of other work, for example, 'one inventor seeing a relevant report and building upon it.'") (quoting *Kimberly-Clark* 973 F.2d at 917).

[18] *See Memry Corp. v. Kentucky Oil Tech., N.V.*, Case No. C-04-03843 RMW, 2007 WL 2746737, at *10 (N.D. Cal. Sept. 20, 2007) (holding that there can be joint inventorship "when collaboration or concerted effort occurs—that is, when the inventors have some open line of communication during or in temporal proximity to their inventive efforts") (internal quotation and citation omitted).

[19] *See* Docket No. 161 at 6.

6

Case No.: 5:11-cv-05236-PSG
ORDER

trial. They note that Rule 39 of the Federal Rules of Civil Procedure recognizes the importance of a party's reliance on whether a case will be tried to a judge or jury. For example, Rule 39 (a)(1) recognizes that where a party that has a right to a jury trial has demanded one and later changes its mind, it cannot withdraw its demand without consent of the opposing party, recognizing that parties' strategies often differ in preparing for bench and jury trials.[20] To now put to the case to the jury, say the Fuisz Defendants, would unfairly prejudice them. The Fuisz Defendants rely heavily on the Federal Circuit opinion in *In re Technology Licensing Corp.* ("*TLC*") which held that "the patentee's decision to seek only equitable relief resulted in the entire case, including the invalidity claims, being tried to the court, without a jury."[21]

Here, of course, it is not the patentee that has decided to seek only equitable relief – that would be the Fuisz Defendants, not Theranos. That distinction, however, does not appear to be material. The Federal Circuit in *TLC* cites an earlier case, *Tegal Corp. v. Tokyo Electron America, Inc.*, in which the Circuit held that "there is no right to a jury trial when the only remedy sought by the plaintiff-patentee is an injunction and the defendant has asserted patent invalidity as an affirmative defense."[22] The Circuit in *TLC* added: "This case differs from *Tegal* in two respects. First, the accused infringer has raised invalidity as a separate claim, not as an affirmative defense. Second, the accused infringer is aligned as the third-party plaintiff, while the patentee is aligned as a third-party defendant and counterclaimant. *The second distinction is unimportant.*"[23] It therefore

---

[20] *See also Onyx Pharms. v. Bayer Corp.*, C-09-2145 EMC, 2011 WL 4527402, at *2 (N.D. Cal. Sept. 21, 2011) (rejecting bifurcation motion after parties prepared for what they assumed was a jury trial and pointing out that "here Onyx makes a valid argument that it has suffered prejudice by relying on Bayer's apparent consent to a jury trial and investing substantial time and money on preparing witnesses, examination outlines, exhibits, opening and closing arguments, voir dire, and other pretrial filings with the expectation of a single jury trial") (internal quotations and citations omitted).

[21] 423 F.3d 1286, 1289 (Fed. Cir. 2005).

[22] *Id.* at 1287 (citing *Tegal Corp. v. Tokyo Electron America, Inc.*, 257 F.3d 1331 (Fed. Cir. 2001)).

[23] *Id.* at 1288 (emphasis added).

7
Case No.: 5:11-cv-05236-PSG
ORDER

appears that whatever jury rights Theranos once had are now properly deemed waived.

The court is nevertheless persuaded that an advisory jury is warranted. The "case law is abundantly clear: it is completely discretionary with the trial judge whether or not to use an advisory jury under Rule 39(c), and the district court's exercise of this discretion is not reviewable."[24] Here, a jury would, at the very least, aid the undersigned in making credibility determinations about hotly contested issues.[25] An advisory jury also will reduce the possibility of prejudice if the Federal Circuit were to find error regarding Theranos' entitlement to a jury trial.[26]

**IT IS SO ORDERED.**

Dated: September 20, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[24] 9 Charles Alan Wright, Arthur R. Miller, Mary K. Kane, Richard L. Marcus, & Adam N. Steinman, Federal Practice & Procedure § 2335 (3d ed. 2002).

[25] See Hynix Semiconductor Inc. v. Rambus Inc., Case No. CV-00-20905-RMW, 2008 WL 350638, at *3 (N.D. Cal. Feb. 2, 2008) (empaneling advisory jury because "evaluation of a fraud claim involves judgments of credibility for which a jury is particularly suited.").

[26] See Hynix, 2008 WL 250638, at *3 ("With an advisory jury, Nanya will be able to point to the jury's verdict if it is more favorable than the court's and perhaps be able to receive the benefit of it should the court's decision that Nanya is not entitled to a jury turn out later to have been wrong."); Alexander v. Gerhardt Enters., Inc., 40 F.3d 187, 192 (7th Cir. 1994) (approving use of an advisory jury to minimize the cost of litigation in cases where entitlement to jury is uncertain); Winchester Indus., Inc. v. Sentry Ins., 630 F. Supp. 2d 237, 242 (D. Conn. 2009) ("Should the Second Circuit hold that Plaintiffs were not entitled to a jury trial, the jury would be considered an advisory jury for purposes of Rule 39(c), and 'the case would not need to be re-tried.'") (citations omitted).

Case No.: 5:11-cv-05236-PSG
ORDER