1

2          IN THE UNITED STATES DISTRICT COURT

3          FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                   SAN JOSE DIVISION

5

6

   THERANOS, INC., ET AL              )   CV-11-5236-PSG
7                                      )
                                       )   SAN JOSE, CALIFORNIA
8                   PLAINTIFF,         )
                                       )   MARCH 5, 2014
9          VS.                         )
                                       )   PAGES 1-84
10   RUISZ TECHNOLOGIES, LTD, ET AL,   )
                                       )
11                  DEFENDANT.         )

12

13              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE PAUL S. GREWAL
14              UNITED STATES DISTRICT JUDGE

15

16   A P P E A R A N C E S:

17   FOR THE PLAINTIFF:     BOIES SCHILLER FLEXNER, LLP
                            BY:  MICHAEL UNDERHILL
18                          5301 WISCONSIN AVENUE, NW
                            WASHINGTON, DC 20015

19

20   FOR THE DEFENDANT:     PRO SE
                            BY:  JOSEPH MATUS FUISZ
21                          10350 W. BAY HARBOR DRIVE, 8C
                            BAY HARBOR ISLAND, FL 33154
22   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
     PRODUCED WITH COMPUTER.

23

24            APPEARANCES CONTINUED ON THE NEXT PAGE

25   OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                  CERTIFICATE NUMBER 13185

```
1      FOR THE PLAINTIFF:          BOIES SCHILLER FLEXNER, LLP
                                   BY:  DAVID BOIES
2                                        WILLIAM MARSILLO
                                   333 MAIN STREET
3                                  ARMONK, NY 10504

4

5      FOR THE PLAINTIFF:          BOIES SCHILLER FLEXNER, LLP
                                   BY:  MEREDITH DEARBORN
6                                  1999 HARRISON STREET, STE 900
                                   OAKLAND, CA 94612

7

8      FOR THE PLAINTIFF:          BOIES SCHILLER FLEXNER, LLP
                                   BY:  MICHAEL DARRON JAY
9                                  401 WILSHIRE BLVD., STE 850
                                   SANTA MONICA, CA 90401

10

11     FOR THE DEFENDANT:          PRO SE
                                   BY:  RICHARD CARL FUISZ
12                                 1238 COLDWATER CANYON DRIVE
                                   BEVERLY HILLS, CA 90210

13

14     FOR THE DEFENDANT:          ATTORNEY AT LAW
                                   BY:  RHONDA ANNE ANDERSON
15                                 2655 LEJEUNE ROAD, STE 540
                                   CORAL GABLES, FL 33134

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    MARCH 5, 2014
 2                    P R O C E E D I N G S
 3         (WHEREUPON, COURT CONVENED AND THE FOLLOWING PROCEEDINGS
 4    WERE HELD:)
 5              THE CLERK:  CALLING THERANOS, INC., ET AL. VERSUS
 6    FUISZ PHARMA LLC, ET AL.  CASE CV -11-5236-PSG.
 7             MATTER ON FOR PRETRIAL CONFERENCE AND HEARING ON MOTIONS.
 8             COUNSEL, PLEASE STATE YOUR APPEARANCES.
 9              MR. BOIES:  YOUR HONOR, THIS IS DAVID BOIES, BOIES,
10    SCHILLER & FLEXNER.  I REPRESENT THERANOS.
11         I WOULD LIKE TO THANK THE COURT FOR PERMITTING ME TO
12    PARTICIPATE BY TELEPHONE.  I DON'T ORDINARILY REQUEST THIS, BUT
13    I HAD A PREVIOUSLY SCHEDULED ARGUMENT IN THE UNITED STATES
14    SUPREME COURT THIS MORNING.
15              THE COURT:  GOOD AFTERNOON, MR. BOIES.
16              MR. UNDERHILL:  MIKE UNDERHILL WITH THE SAME LAW
17    FIRM.
18         WITH ME ARE MY COLLEAGUES MICHAEL JAY, WILLIAM MARSILLO AND
19    MEREDITH DEARBORN.
20              THE COURT:  GOOD AFTERNOON TO EACH OF YOU AS WELL.
21              MR. JOE FUISZ:  JOE FUISZ, PRO SE.
22              MR. RICHARD FUISZ:  AND RICHARD FUISZ, PRO SE.
23              THE COURT:  MR. FUISZ, DOCTOR FUISZ, GOOD AFTERNOON.
24    WELCOME TO EACH OF YOU AS WELL.
25         IS ANYONE ELSE ON THE PHONE?  I THOUGHT MS. ANDERSON WAS
```

1        ALSO GOING TO JOIN US.  MS. ANDERSON, ARE YOU ON?

2                THE OPERATOR:  PARDON THE INTERRUPTION, YOUR HONOR.

3        THIS IS THE OPERATOR.

4            MS. ANDERSON IS CONNECTED WITH AN OPEN MICROPHONE.

5                MS. ANDERSON:  I'M SORRY, YOUR HONOR.  I SET THE MUTE

6        BUTTON.  MY APOLOGIES.

7            I AM PRESENT AND THANK YOU FOR ALLOWING ME TO APPEAR BY

8        TELEPHONE.

9                THE COURT:  NO APOLOGY NECESSARY, MS. ANDERSON.  GOOD

10       AFTERNOON AND WELCOME TO YOU AS WELL.

11           I WANT TO BEGIN BY LAYING OUT MY THOUGHTS ABOUT HOW WE

12       CAN MAKE THE BEST USE OF OUR TIME THIS AFTERNOON.  OBVIOUSLY WE

13       HAVE A NUMBER OF ISSUES TO COVER.

14           I WOULD LIKE TO FIRST OF ALL SAY THAT I'M GOING TO

15       RESERVE RESOLVING ANY DISPUTES REGARDING THE PROPOSED FINDINGS

16       AND CONCLUSIONS OF LAW AND JURY INSTRUCTIONS FOR A LATER DATE

17       AND TIME.  ORDINARILY THOSE TYPES OF DISPUTES ARE THINGS I

18       ADDRESS AND DEAL WITH DURING THE TRIAL AT A CHARGING CONFERENCE

19       OR AT SOME POINT EARLIER THAN THAT.

20           BECAUSE WE HAVE SO LITTLE TIME TODAY AND A NUMBER OF

21       MOTIONS TO COVER, I WOULD REALLY LIKE TO FOCUS ON THE MOTION IN

22       LIMINE AS WELL AS THE MOTION FOR ADVERSE INFERENCE.

23           I FULLY APPRECIATE THAT WE ALSO HAVE A MOTION TO DISMISS

24       THAT'S BEEN PENDING AS WELL AS A MOTION REGARDING THE AEO RE

25       DESIGNATION.

1          SO DAUBERT, MIL, MOTION FOR ADVERSE INFERENCE, AS WELL AS

2     THE AEO RE DESIGNATION MOTION, THOSE ARE THE ITEMS I WOULD LIKE

3     TO MOST CONCENTRATE ON THIS AFTERNOON.

4          SO WITH THAT, IF I MIGHT PROPOSE AN ORDER, I WOULD LIKE

5     TO START WITH THE FUISZ DEFENDANTS MOTION IN LIMINE NUMBER ONE

6     WHICH HAS TO DO WITH SECTION 282 COMPLIANCE.

7          I WILL JUST SAY BEFORE I TURN THINGS OVER TO MR. FUISZ,

8     THAT I HAVE READ THE PAPERS SO THERE'S NO NEED TO REHASH THE

9     ENTIRETY OF YOUR ARGUMENT.

10          I WOULD REALLY LIKE TO FOCUS ON THE MATTERS THAT ARE IN

11     DISPUTE.  PARTICULARLY MATTERS THAT THE OPPOSING PARTY RAISED

12     IN THE OPPOSITION THAT PERHAPS THE MOVING PARTY DID NOT HAVE A

13     CHANCE TO ADDRESS IN ITS PAPERS.

14          WITH THAT MR. FUISZ, I WILL TURN THINGS OVER TO YOU.

15               THE COURT:  IF YOU COULD STAND AT THE PODIUM.

16               MR. JOE FUISZ:  JUST REALLY QUICKLY YOUR HONOR,

17     BECAUSE I KNOW WE ARE VERY PRESSED FOR TIME, I THINK THAT THE

18     282 MOTION AND THE PROTECTIONS IMPLIED THEREBY FOR DEFENDANT IN

19     A PATENT MATTER ARE TIED TOGETHER FOR ME WITH A LOT OF

20     CONFUSION IN TERMS OF WHAT PLAINTIFFS HAVE REPRESENTED IN TERMS

21     OF WHO THE INVENTORS ARE.

22          IN THE SECOND AMENDED COMPLAINT ON PARAGRAPH 88, THEY

23     IDENTIFY MS. HOLMES AND OR MR. KEMP.  IN THE ORIGINAL JURY

24     INSTRUCTIONS WE GOT FROM THE PLAINTIFFS -- WELL ACTUALLY, LET

25     ME MENTION ONE OTHER THING.  THERE'S A BIT OF AN ODD THING, THE

1    SECOND AMENDED COMPLAINT BECAUSE IT DOESN'T SEEM TO CLAIM

2    INVENTORSHIP OF CLAIM 17.  THEY'VE GOT A LIST OF CLAIMS AND

3    THEY OMIT 17 FROM THAT LIST.  AND I APOLOGIZE, I DON'T HAVE THE

4    PARAGRAPH NUMBER TO GIVE YOU.

5         THE INITIAL JURY INSTRUCTIONS WE GOT IDENTIFY ONLY

6    MS. HOLMES AND NOT MR. KEMP WHICH IS STRANGE BECAUSE HE SENT AN

7    E-MAIL SAYING THIS IS A TYPO.  WE HAD A CONFERENCE CALL AND I

8    HAD A DIFFERENT UNDERSTANDING THAN MR. UNDERHILL ABOUT WHAT WAS

9    COMMUNICATED.  DON'T WANT TO HAVE A HE SAID SHE SAID ABOUT WHAT

10   WAS SAID ON THAT CALL.

11        I SENT A FOLLOW UP E-MAIL AGAIN ASKING FOR THE

12   CONFIRMATION, THAT WAS THEIR INTENTION, AND THE ONLY RESPONSE I

13   GOT FROM THEM WAS AFTER WE WENT AHEAD AND FILED OUR 256 CAUSE

14   OF ACTION TO DISMISS.

15        THE OTHER THING I WOULD LIKE TO BRING THE COURT'S

16   ATTENTION IS THAT WHEN THERANOS FILED CLAIMS BEFORE THE PATENT

17   OFFICE ON NOVEMBER 2ND, 2011, THEY ACTUALLY IDENTIFIED

18   MS. HOLMES, MR. -- I'M MESSING THE NAMES UP, BUT HOLMES,

19   HOWARD, WANG, GIBBONS, KEMP AND SZE.

20        SO YOU KNOW, IT SEEMS TO ME IN RECOGNIZING THAT THE 282

21   REMEDY THAT WE HAVE ASKED FOR IS EXTREME, I UNDERSTAND THAT,

22   BUT WHEN I SORT OF LOOK AT THE COURSE, IT SEEMS TO ME THE VERY

23   NOTION OF 282 IS TO PROTECT THE DEFENDANTS SO WE KNOW PRECISELY

24   WHAT IT IS WE ARE SHOOTING AT IN TERMS OF WHO INVENTED WHAT

25   CLAIM.

1      SO WHAT I WOULD RESPECTFULLY ASK THE COURT AT A VERY

2  MINIMUM IS THAT THE PLAINTIFFS IDENTIFY FOR US ON A CLAIM BY

3  CLAIM BASIS WHO THEY ARE ACTUALLY ASSERTING WHO THE INVENTOR

4  IS.  BECAUSE I WOULD SUBMIT TO YOU FROM THE THINGS I'VE SEEN I

5  ENUMERATED FOR YOU IT'S UNCLEAR

6          THE COURT:  ALL RIGHT.

7      I MAY HAVE A FEW FURTHER QUESTIONS FOR MR. FUISZ.

8      MR. UNDERHILL, DO YOU WANT TO RESPOND?

9          MR. UNDERHILL:  YES, YOUR HONOR.

10     TO BE PERFECTLY CLEAR, AND I THINK WE HAVE BEEN CLEAR

11 THROUGHOUT THE CASE, WE ARE ALLEGING THAT ELIZABETH HOLMES AND

12 TIM KEMP SHOULD BE ADDED TO THE PATENT AND THE FUISZS SHOULD BE

13 REMOVED.

14     NOW WHAT I DID SAY IN THE PHONE CALL AND WHAT WE WILL DO

15 AT TRIAL IS WE WILL EMPHASIZE THE INVENTORSHIP CLAIM OF

16 MS. HOLMES.

17     I MEAN, OUR VIEW OF THE WORLD IS THAT IS A STRONGER CLAIM

18 AND THAT'S WHAT WE PLAN TO EMPHASIZE, BUT WE CERTAINLY HAVEN'T

19 CHANGED OUR INVENTORSHIP CLAIM.

20         THE COURT:  ALL RIGHT.

21     WELL, I APPRECIATE THAT CLARIFICATION BECAUSE IT MAY

22 STREAMLINE SOME OF THE ADDITIONAL MOTIONS THAT WE ARE GOING TO

23 ADDRESS.

24     ON THE 282 ISSUE WHICH IS THE MOTION IN LIMINE NUMBER

25 ONE, I BELIEVE FROM THE DEFENDANTS, I THOUGHT THE ISSUE WAS

1    SIMPLY WHETHER OR NOT THE LOCAL RULE DISCLOSURES SATISFIED THE

2    OBLIGATION UNDER THE STATUTE TO PROVIDE FAIR NOTICE FOR

3    WHATEVER INVALIDITY REFERENCES ARE GOING TO BE RELIED UPON.  I

4    DIDN'T HEAR MUCH DISCUSSION ON THAT POINT.

5         LET ME JUST, PERHAPS JUST OFFER MY THOUGHTS ON THIS SO WE

6    CAN FOCUS ON THE MORE SIGNIFICANT ISSUES HERE.

7         I'M GOING TO DENY THIS MOTION.  I THINK THE DISCLOSURES

8    UNDER THE LOCAL RULES WERE SUFFICIENT TO PUT THE DEFENDANTS ON

9    NOTICE.

10        I THINK, HOWEVER, MR. UNDERHILL'S COMMENTS ARE GOING TO

11   BE HELPFUL IN DEALING WITH SOME OF THE OTHER MOTIONS THAT ARE

12   COMING UP.  SO LET'S MOVE ON.

13        PERHAPS WE MIGHT TURN TO MOTION IN LIMINE NUMBER TWO FROM

14   THE DEFENDANTS WHICH HAS TO DO WITH EVIDENCE REGARDING

15   THERANOS'S INVENTORS, THE PRODUCTS, THE TEREX LITIGATION AND SO

16   ON AND SO FORTH.

17        MR. FUISZ, DO YOU WANT TO SPEAK TO THAT ONE AS WELL?

18        MR. JOE FUISZ:  YES, YOUR HONOR.

19        OKAY.  SO WE ARE ADDRESSING OUR SECOND MOTION IN LIMINE,

20   YOUR HONOR?

21             THE COURT:  YES.

22        MR. JOE FUISZ:  IF I COULD START WITH YEAH, EVIDENCE

23   OF THERANOS BUSINESS CUSTOMERS AND INVESTORS.

24     I THINK IT'S BEEN -- THIS IS MY UNDERSTANDING OF WHAT'S

25   ACTUALLY HAPPENED, HAVING READ THE REPLY, WHICH I THINK WAS

1    HELPFUL, THE REPLY OF THE PLAINTIFFS IN THE CASE.

2         I THINK AS A GENERAL MATTER, MAYBE NOT ALWAYS, AS A

3    GENERAL MATTER THE PLAINTIFFS HAVE ALLOWED US TO ASK QUESTIONS

4    ABOUT WHETHER WITNESSES ARE INVESTORS FROM A BIAS PERSPECTIVE.

5    BUT I THINK IT'S EQUALLY CLEAR THAT THEY HAVE WALLED OFF

6    INFORMATION ABOUT THERANOS'S BUSINESS, OFFERING CIRCULARS BEING

7    AN EXAMPLE.

8         THEY HAVE WALLED OFF INFORMATION ABOUT TOTAL INVESTMENT

9    IN THERANOS, AS ANOTHER EXAMPLE.

10         AND I WILL BE VERY CLEAR, I THINK WHAT CONCERNS MY DAD

11    AND MYSELF ABOUT THIS CASE, IS THE DISPUTE IN THIS CASE REALLY

12    INVOLVES WHAT THERANOS WAS DOING IN 2005 AND WHAT WE WERE DOING

13    IN 2005, AND TO SOME EXTENT FOR THE JURY, BOTH SIDES WANT TO

14    PRESENT NOTION OF CAPABILITIES OF 2005.

15         I THINK IT WOULD BE PREJUDICIAL TO US AND FRANKLY UNFAIR

16    SINCE THAT DISCOVERY HAS BEEN WALLED UP, IF PLAINTIFFS ARE ABLE

17    TO PRESENT SUBSEQUENT DISCUSSION OF INVESTMENTS IN ANALYZORS

18    AND THINGS THEY HAVE DONE, WHICH FRANKLY I THINK WOULD TEND TO

19    CONFUSE THE JURY, BUT HAVE NO BEARING ON WHAT THERANOS WAS

20    DOING IN 2005 AND WHAT THEIR CAPABILITIES WERE AT THAT TIME.

21         THE COURT:  MR. FUISZ, ARE YOU SAYING THAT DURING

22    DISCOVERY YOU OR YOUR PRIOR COUNSEL TRIED TO GET INFORMATION

23    ABOUT THOSE ACTIVITIES AND WERE DENIED IN SOME WAY?

24         MR. JOE FUISZ:  THAT'S MY UNDERSTANDING, YOUR HONOR.

25         I THINK IT'S -- I THINK IT'S REFLECTED IN PART IN THE

1    DISCOVERY HEARING ON MAY 16TH AND THE POSITIONS THAT WERE

2    TAKEN.

3              THE COURT:  YOU CERTAINLY SPEAK TO THAT IN YOUR

4    PAPERS, SO I HAVE THAT.

5              MR. JOE FUISZ:  I'M HAPPY TO REVIEW IT IF IT'S

6    HELPFUL.

7              THE COURT:  NO, I UNDERSTAND THE POSITION YOU ARE

8    TAKING.

9         ALL RIGHT, I THINK I'VE GOT IT.  I MAY HAVE A QUESTION OR

10   TWO, BUT I WILL GIVE YOU A CHANCE FOR REBUTTAL ONCE WE'VE HEARD

11   FROM MR. UNDERHILL.

12             MR. JOE FUISZ:  THANK YOU.

13             THE COURT:  THANK YOU.

14        MR. UNDERHILL?

15             MR. UNDERHILL:  CERTAINLY, WE BELIEVE YOUR HONOR,

16   THAT WE NEED TO HAVE AN OPPORTUNITY TO TELL THE JURY WHO WE

17   ARE.  WE CAN'T BE A, YOU KNOW, BLANKLESS, FACELESS COMPANY

18   CALLED THERANOS.

19        SO WE DO PLAN, AND WE HAVE MADE IT CLEAR THROUGHOUT THE

20   CASE INCLUDING IN COURT HEARINGS, YOUR HONOR, THAT WE DO INTEND

21   TO PUT ON BACKGROUND INFORMATION ABOUT THERANOS.

22        I CERTAINLY DISPUTE THE SUGGESTION THAT THE DEFENDANTS

23   HAVE NOT BEEN ALLOWED APPROPRIATE DISCOVERY.  AND I THINK IN

24   CONTRAST, I BELIEVE TO THE MOVING PAPERS, WE HAVE TRIED TO

25   ACTUALLY PUT CHAPTER AND VERSE IN FRONT OF YOU OF THE DISCOVERY

1      THAT WAS PERMITTED.

2           WITH RESPECT TO CUSTOMERS, I BELIEVE DISCOVERY WAS WIDE

3      OPEN.  I DO NOT THINK WE EVER LIMITED IT IN ANY WAY, SHAPE OR

4      FORM.

5           WE DID, AT PORTIONS OF THE DISCOVERY, LIMIT THE WHOLESALE

6      SHIPMENT OF BASICALLY THE COMPANY'S DOCUMENTS TO THE FUISZ'S.

7      WE WERE NOT WILLING TO TURN OVER, YOU KNOW, ALL OF OUR RESEARCH

8      DATA AND OUR PROTOTYPES AND, YOU KNOW, THE MYRIAD OF THINGS

9      THAT WERE ENCOMPASSED BY THE ORIGINAL DOCUMENT REQUEST.  WE

10     DID, HOWEVER, PERMIT QUESTIONING IN DEPOSITIONS WHICH IS SET

11     OUT IN OUR OPPOSITION PAPERS.

12          I THINK THE FUISZ'S HAVE HAD MORE THAN A FAIR OPPORTUNITY

13     TO DISCOVER, I WOULD REPRESENT YOUR HONOR, MINIMAL LEVEL OF

14     DETAIL THAT WE PLAN TO GO IN AT TRIAL.

15          WE ARE NOT GOING TO GET INTO THE INNER WORKINGS OF THE

16     TECHNOLOGY OF OUR RECENTLY RELEASED PRODUCTS, FOR ONE THING

17     IT'S STILL TRADE SECRET.  FOR ANOTHER THING, IT IS INDEED

18     IRRELEVANT TO THE CASE.

19          BUT WE HAVE TO BE ABLE TO EXPLAIN WHO WE AND ARE WHAT WE

20     HAVE BEEN DOING FOR THE LAST 11 YEARS.

21               THE COURT:  DR. FUISZ, DO YOU WANT TO RESPOND?

22               MR. JOE FUISZ:  I WOULD JUST LIKE TO SAY WITH ALL

23     RESPECT, I DON'T KNOW, APART FROM THE FACT THAT THERANOS HASN'T

24     DISAPPEARED, I DON'T KNOW WHY IT'S RELEVANT ANYTHING THAT

25     THERANOS HAS DONE AFTER 2006.

1          THE COURT:  DR. FUISZ, GO AHEAD.

2          MR. RICHARD FUISZ:  YOUR HONOR, WHAT I DON'T

3   UNDERSTAND IS THIS ALLEGED THEFT TOOK PLACE IN 2005 AND 2006.

4          I DO NOT SEE THE NECESSITY TO CONTINUALLY REFER TO CROWN

5   JEWELS IN TENS OF MILLIONS AND 20 MILLION AND 50 MILLION

6   INVESTMENT, WHEN THAT WAS NOT THE CASE IN 2005 AND 2006.

7          AND WE ARE OUT OF OUR ELEMENT HERE AND IN NORTHERN

8   CALIFORNIA.  IT'S WELL KNOWN WHO THEIR INVESTORS ARE.  IT'S

9   WELL KNOWN WHO THEY POLITICALLY TIE TO.  IT'S WELL KNOWN WHO IS

10  ON THEIR BOARD.  I KNOW THEIR BOARD MEMBERS.  THEY KNOW VERY

11  LITTLE ABOUT THE COMPANY.

12          AND IT'S OBVIOUSLY WINDOW DRESSING TO IMPRESS THE PEOPLE

13  SITTING OVER THERE.  AND I JUST DON'T THINK THAT'S RIGHT.  THIS

14  CASE IS 2005, 2006.

15          THANK YOU, YOUR HONOR

16          THE COURT:  ALL RIGHT.

17          MR. UNDERHILL:  YOUR HONOR, WE DON'T PLAN TO REFER TO

18  CROWN JEWELS.  WE DO BELIEVE THAT THE FUISZ'S WILL ATTEMPT TO

19  LEAVE THE IMPRESSION WITH THE JURY THAT THE '612 PATENT IS

20  NARROW OR AT LEAST WE WILL HEAR THE ARGUMENT THAT IT WAS WITHIN

21  THE ABILITY OF TWO INDIVIDUALS WITHOUT A LAB, WITHOUT

22  PROTOTYPES TO HAVE THOUGHT OF THE TECHNOLOGY.

23          WE DO NEED THE OPPORTUNITY TO MAKE IT CLEAR THAT WITH

24  RESPECT TO THERANOS, THIS WAS AN 11-YEAR EXERCISE THAT INVOLVED

25  A GREAT DEAL OF RESEARCH AND PROTOTYPES AND TESTING TO COME UP

```
1    WITH THE TECHNOLOGY.

2              THE COURT:  GO AHEAD, MR. FUISZ.

3              MR. JOE FUISZ:  MR. UNDERHILL HAS AN ARITHMETIC

4    PROBLEM.  SUBTRACT 11 YEARS FROM 2005.

5              THE COURT:  WHY DON'T YOU ADDRESS ME, MR. FUISZ.

6              MR. JOE FUISZ:  SUBTRACT THE YEARS FROM 2005, WHERE

7    DOES THAT PUT YOU?

8         THERANOS WAS FORMED IN 2004 AS A CORPORATE ENTITY.  THAT IS

9    NOT 11 YEARS.  WE KEEP HEARING BRIEFING PAPER AFTER BRIEFING

10   PAPER.  I'M TIRED OF HEARING TEN YEARS, IT HAS NOTHING TO DO

11   WITH THEIR PATENT.

12             MR. RICHARD FUISZ:  YOUR HONOR, I AM TIRED OF HEARING

13   THAT WE HAVE NO CAPABILITIES, NO RESEARCH CAPABILITIES.  I HAVE

14   122 PATENTS.  WE HAVE LAB CAPABILITIES.  WE COULD NOT HAVE

15   ACHIEVED WHAT WE ACHIEVED.

16        AS FAR AS THERANOS, YOU CAN'T PUT A THOUSAND DOLLAR SADDLE

17   ON A $10 HORSE, AND THAT'S WHAT'S GOING ON HERE.

18             THE COURT:  ALL RIGHT.  THANK YOU.

19        HERE'S WHAT WE ARE GOING TO DO ON THIS ISSUE, THEN I WOULD

20   LIKE TO TURN TO SOME OF THESE OTHER ITEMS IN THE SECOND MOTION

21   IN LIMINE.

22        ON WHAT EVIDENCE OR WHAT INTRODUCTION OF THERANOS'S

23   BUSINESS IS GOING TO BE PERMITTED, I WILL LET THERANOS DESCRIBE

24   TO THIS JURY WHO IT IS TODAY, JUST AS I WILL LET THE FUISZ'S

25   DESCRIBE TO THIS JURY WHO THEY ARE TODAY.  I THINK IT'S
```

1    IMPORTANT FOR THE JURY TO HAVE SOME BASIC UNDERSTANDING OF WHO

2    EACH PARTY IT.

3         I WILL ALSO ALLOW THERANOS, IF IT LIKES, TO SPEAK ABOUT

4    WHO THEY WERE BACK IN 2005.  I THINK THAT'S ALSO FAIR GAME AND

5    IT'S RELEVANT TO A NUMBER OF THESE ISSUES.

6         BUT AS TO SPECIFIC ITEMS, I AM GOING TO GRANT THIS MOTION

7    IN PART.

8         NUMBER ONE, I'M NOT GOING TO ALLOW ANY DISCUSSION OR

9    EVIDENCE REGARDING SPECIFIC THERANOS CUSTOMERS.  THAT

10   INFORMATION DID NOT APPEAR TO HAVE BEEN FAIR GAME DURING THE

11   DISCOVERY.

12        AND I ALSO HAVE A HARD TIME UNDERSTANDING EXACTLY HOW IT

13   WOULD BE RELEVANT TO THE ISSUES THAT WERE -- THAT ARE GOING TO

14   BE DISPUTED AT TRIAL THAT RELATE TO 2005 AND 2006.

15        ON INVESTORS, IT SEEMS PRETTY CLEAR TO ME FROM THE

16   TRANSCRIPTS I READ ANY WAY THAT THERE WERE SOME FAIRLY SPECIFIC

17   IMPEDIMENTS TO DISCOVERY OF WHO THESE INVESTORS ARE OR HOW MUCH

18   MONEY THEY PUT INTO THE COMPANY.

19        SO I WILL EXCLUDE AND AM EXCLUDEING ANY EVIDENCE

20   REGARDING INVESTOR NAMES OR INVESTOR DOLLARS.  SO WITH THAT

21   GUIDANCE, I THINK WE CAN PROCEED.

22        I WANT TO TURN NEXT TO THE ISSUE REGARDING THE TEREX

23   LITIGATION AS WELL AS THE BIOVAIL LITIGATION.

24        MR. UNDERHILL:  YOUR HONOR, MAY I ASK ONE

25   CLARIFICATION QUESTION?

```
1              THE COURT:  GO AHEAD.

2              MR. UNDERHILL:  ON THE INVESTOR THING, WOULD A

3    WITNESS WHO IS TESTIFYING BE PERMITTED TO SAY THAT I'M AN

4    INVESTOR OF THERANOS?

5              THE COURT:  WELL, I AM GOING TO PERMIT THAT, LET ME

6    EXPLAIN WHY.

7         I WOULD THINK THAT, IF ANYTHING, THE DEFENDANTS MAY HAVE

8    SOME INTEREST IN ELICITING THAT INFORMATION FOR PURPOSES OF

9    BIAS AND SO FORTH, SO I THINK ACTUALLY YOU ALL HAVE A COMMON

10   INTEREST ON THAT.

11        SO I APPRECIATE YOUR RAISING THAT CLARIFICATION,

12   MR. UNDERHILL.

13             MR. UNDERHILL:  THANK YOU, YOUR HONOR.

14             THE COURT:  LET'S TALK ABOUT TEREX AND BIOVAIL.

15          GO AHEAD, MR. FUISZ.  TELL ME ABOUT THE CONCERN YOU HAVE.

16   I THINK I UNDERSTAND YOUR POSITION.

17             MR. JOE FUISZ:  MY CONCERN IS SIMPLE, THAT TEREX

18   MATTER, THIS IS A HISTORICAL MATTER, IT IS VERY OLD, IT'S

19   EXTREMELY COMPLEX.

20        WHILE IT IS ABSOLUTELY TRUE, AS PLAINTIFFS POINTED OUT IN

21   THEIR REPLY, THAT THE U.S. GOVERNMENT DID NOT ASSERT STATE

22   SECRET PRIVILEGE AROUND THE SPECIFIC ISSUE OF THE DOCUMENTS,

23   STATE SECRET PRIVILEGE ABSOLUTELY ATTACHES TO THE CONTEXT OF

24   THE TESTIMONY THAT IS PROFFERED IN THIS CASE.  AND I'M HAPPY TO

25   GO IN CAMERA AND TALK TO YOU ABOUT IT IF YOU WANT TO.
```

1          BUT TO TAKE TESTIMONY THAT WAS EXTREMELY CONSTRAINED AND

2     FRAMED IN PECULIAR WAYS AND REGURGITATE IT HERE, IS EXTREMELY

3     PREJUDICIAL AND UNFAIR, NUMBER ONE.

4          NUMBER TWO, I THINK IT'S ADMISSIBLE ANY WAY UNDER RULES

5     OF EVIDENCE.  THIS IS NOT -- I MEAN, THIS IS NOT A CRIMINAL

6     CASE, THEY DON'T COME IN UNDER -- I DON'T EVEN SEE HOW IT CAN

7     COME IN.  THEY DIDN'T -- PLAINTIFFS HAVE NOT TRIED TO DO

8     DISCOVERY ON THIS.  PETER GHAVAMI WHO PROVIDED THIS HEARSAY

9     AFFIDAVIT, WAS IN FEDERAL CUSTODY WAS SENTENCED BY JUDGE KIMBA

10    WOOD.  THEY DIDN'T SEEK HIS DEPOSITION.

11         IF PRESUMABLY IF THE PRESIDING JUDGE IN TEREX, ROYCE

12    LAMBERTH, HAD FELT THAT MY BROTHER JOHN WAS GUILTY OF SOME SORT

13    OF HORRIFIC CONDUCT, HE WOULDN'T HAVE SWORN HIM INTO THE BAR

14    WHICH IS A MATTER OF PUBLIC RECORD.

15         FRANKLY, I MEAN TO REALLY -- QUITE APART, EVEN FROM THE

16    STATE SECRETS ISSUES INVOLVED, THE COMPLEXITY OF THE TEREX

17    MATTER IS SUCH THAT IT WOULD TAKE AN EXTRAORDINARY AMOUNT OF

18    TIME TO BRING IT.

19         THIRDLY, IT CERTAINLY CAN'T COME IN AGAINST ME.  AND I

20    WOULD FRANKLY TAKE THE POSITION, THIS IS ONE OF THE RARE TIMES

21    I WOULD TAKE A POSITION DIFFERENTLY THAN MY FATHER.  IF THEY

22    THINK THEY CAN SUBMIT THIS AS EVIDENCE THEN I WANT A SEPARATE

23    ADVISORY JURY MYSELF, BECAUSE I'M NOT GOING TO BE PREJUDICED BY

24    THIS.

25              THE COURT:  GO AHEAD.

1        MR. RICHARD FUISZ:  THE COMMENT I WOULD LIKE TO MAKE

2    IS, AS LITTLE AS THREE HOURS AGO I WAS ON THE PHONE WITH THE

3    CHIEF COUNSEL OF AN AGENCY OF THE U.S. GOVERNMENT.

4        THEY HAVE PUT THE SITUATION AS FOLLOWS:  THAT THEY WOULD

5    SEND SOMEONE OUT HERE, HOWEVER AS FAR AS THEY ARE CONCERNED,

6    THEY HAVE LITIGATED AGAINST DAVID BOIES BEFORE.  AND I SHOULD

7    SIMPLY MAINTAIN IT IS NOT RELEVANT.  AND THE CONTRACT ON ME IS

8    BINDING AND THEY ARE PUTTING ON MY KNOWLEDGE TO ANSWER OR NOT

9    ANSWER CERTAIN QUESTIONS.  THEY PUT ME IN A FUNNY POSITION.

10       ON THE OTHER HAND, THEY ARE SAYING IT'S NOT RELEVANT SO

11   THEY CAN'T ASK ABOUT IT ANY WAY, HOW IS IT RELEVANT, SOMETHING

12   HAPPENED 21 YEARS AGO.

13       THANK YOU.

14           THE COURT:  MR. UNDERHILL?

15           MR. UNDERHILL:  YOUR HONOR, WE CERTAINLY DON'T OBJECT

16   TO A LIMITING INSTRUCTION THAT IT CAN ONLY BE USED AGAINST

17   DR. FUISZ AND NOT MR. FUISZ.

18       WITH RESPECT TO ANY SORT OF STATE SECRETS ISSUE, I DON'T

19   THINK THERE IS ONE.  I THINK THIS IS A RED HERRING.  THE DOCKET

20   IS OPEN.  ANYBODY THAT WANTS TO GET WHATEVER WAS FILED IN THE

21   CASE CAN GET IT AND WE HAVE.

22       THERE'S ALSO NOT GOING TO BE ANY AWKWARD QUESTIONING OF

23   DR. FUISZ, AT LEAST NOT AWKWARD IN THE SENSE OF ASKING HIM TO

24   DISCLOSE ANYTHING THAT MAY BE RELATED TO A STATE SECRET.  IT

25   MAY BE AWKWARD FOR OTHER REASONS.  BUT OUR QUESTIONS WILL BE

1    CONFINED TO THE FACTS AS THEY HAVE ALREADY BEEN DEVELOPED

2    THROUGH DEPOSITION TESTIMONY OF DR. FUISZ AND TO A LESSER

3    EXTENT, MR. FUISZ.

4        I DO BELIEVE THE FACTS ARE ABSOLUTELY UN DISPUTED THAT

5    JOHN FUISZ WAS PROVIDED WITH BILLING RECORDS FROM SKADDEN BY

6    PETER GHAVAMI AND THAT HE PASSED THEM TO HIS FATHER, DURING

7    SUCH TIME AS THERE WAS LITIGATION BETWEEN HIS FATHER AND TEREX,

8    WHICH WAS REPRESENTED BY SKADDEN.

9        I THINK IT'S ABSOLUTELY UN DISPUTED.  WE DON'T NEED THE

10   GHAVAMI AFFIDAVIT I'M PERFECTLY HAPPY TO LET IT GO, WE DON'T

11   NEED T. DR. FUISZ HAS ALREADY PROVIDED THE INFORMATION WE NEED.

12           THE COURT:  CAN I ASK YOU ABOUT THE BIOVAIL

13   LITIGATION, IS IT EVEN RELEVANT?

14           MR. UNDERHILL:  CORRECT.  I DON'T BELIEVE THAT IT IS.

15   I DON'T SEE THE POINT.

16           THE COURT:  ON BIOVAIL WE ARE GOING TO EXCLUDE ANY

17   REFERENCE TO THE BIOVAIL LITIGATION.

18       LET ME CUT TO THE CHASE ON TEREX.  I CAN APPRECIATE THE

19   401 ARGUMENT, BUT I'M NOT ABOUT TO UNLEASH A SATELLITE

20   LITIGATION IN THIS TRIAL.  IT'S GOING TO BE CONFUSING TO THE

21   JURY OF WHO WAS SAYING WHAT, WHEN AND WHERE.  IT'S OUT UNDER

22   403.

23       LET'S TURN IF WE COULD TO THE PROSECUTION POWER OF

24   ATTORNEY ISSUE.

25           MR. FUISZ, DO YOU WANT TO SUPPLEMENT YOUR PAPERS THERE?

1      MR. JOE FUISZ:  NO, YOUR HONOR.

2      I JUST WANTED TO MAKE SURE THAT, BECAUSE WE FILED A LATE

3  REPLY BRIEF TO THE OPPOSITION WITH THE WILSON SONSINI POWER OF

4  ATTORNEY --

5      THE COURT:  I HAVE IT.

6      MR. JOE FUISZ:  THANK YOU, YOUR HONOR.

7      I THINK THAT ILLUSTRATES THE COMPLETE LACK OF PROBATIVE

8  NATURE OF THE MCDERMOTT POWER OF ATTORNEY.

9      AND I FRANKLY THINK THAT THESE THINGS WHICH ARE ALL

10 RELATIVELY FAMILIAR TO US, TO A JURY ARE FRANKLY NOT GOING TO

11 BE VERY EASY.

12     AND QUITE HONESTLY, YOU COULD SAY THIS IS MY PROBLEM AND

13 IT MAY WELL BE MY PROBLEM, BUT THE POWER OF ATTORNEY WAS ONLY

14 EXPLORED BY MY BROTHER IN DEPOSITION.  I DO NOT BELIEVE

15 MCDERMOTT IS GOING TO WILLINGLY SEND OUT PEOPLE.

16     SO I THINK IT'S ONE OF THESE THINGS THAT'S ABSOLUTELY

17 PROBATIVE OF NOTHING, AND YET QUITE FRANKLY, IT'S NOT GOING TO

18 BE THE EASIEST THING FOR ME TO EXPLAIN MCDERMOTT'S NORMAL

19 PROCEDURES TO A JURY.

20     THE COURT:  OKAY.

21     MR. JOE FUISZ:  THANK YOU, YOUR HONOR.

22     THE COURT:  MR. UNDERHILL, DO YOU WANT TO RESPOND?

23     MR. UNDERHILL:  WELL, CERTAINLY YOUR HONOR, THERE WAS

24 AN OPPORTUNITY TO CONDUCT DISCOVERY AGAINST MCDERMOTT.

25     THE COURT:  THEY WERE SUBPOENAED IN THIS CASE,

```
 1        WEREN'T THEY?
 2                MR. UNDERHILL:  WELL, THEY TESTIFIED IN THE CASE,
 3        YOUR HONOR.  THERE WAS A DEPOSITION OF MCDERMOTT.
 4                AND THE COURT HAS ALREADY FOUND THAT IT IS PROBATIVE.  I
 5        THINK THE COURT IS ABSOLUTELY CORRECT, ANY QUIBBLE ON THE OTHER
 6        SIDE DOES NOT GO TO ADMISSIBILITY, IT GOES TO THE WEIGHT OF IT.
 7                AND IF, YOU KNOW, JOHN FUISZ WANTS TO ARGUE THAT
 8        SUPPOSEDLY EVERYBODY IN THE FIRM WITH A BAR NUMBER WAS INCLUDED
 9        ON THIS, THEY MAY.
10                I ALSO, YOUR HONOR, BELIEVE THAT YOU KNOW, WE HAVE A
11        PREJUDICE PROBLEM WITH THE WILSON SONSINI DOCUMENT.  THIS IS
12        THE VERY FIRST TIME WE HAVE SEEN IT.  IT WAS NOT PRODUCED IN
13        DISCOVERY.
14                AT A MINIMUM, IF THEY WANT TO USE THE WILSON SONSINI
15        DOCUMENT, WE WOULD LIKE AN OPPORTUNITY TO CALL SOMEONE FROM
16        WILSON SONSINI TO EXPLAIN WHAT'S GOING ON.
17                I DO NOT THINK THAT THIS IS GOING TO BECOME AN ELABORATE
18        SIDE SHOW.  IT'S ONE DOCUMENT.  AND IT CERTAINLY GOES TO THE
19        QUESTION ABOUT WHETHER OR NOT JOHN FUISZ KNEW THAT THERANOS WAS
20        A CLIENT OF MCDERMOTT.
21                THE COURT:  ALL RIGHT.
22            ANY LAST WORD, MR. FUISZ?
23                MR. JOE FUISZ:  LISTEN, YOUR HONOR, IF YOU WANT TO
24        GIVE HIM THIS DOCUMENT, GIVE ME THE WILSON SONSINI DOCUMENT, I
25        WILL TAKE IT AS 75 ADMISSIONS THAT THEY DON'T KNOW WHO THE
```

1    INVESTORS ARE ON THE CASE, IF IN FACT THOSE ARE ALL ATTORNEYS

2    OF RECORD PROSECUTING THE ATTORNEY FOR THERANOS.

3         THE COURT:  OKAY.  HERE'S WHAT WE ARE GOING TO DO ON

4    THIS ISSUE.

5         I DO THINK THE POWER OF ATTORNEY IS RELEVANT.  I

6    APPRECIATE CONCERN ABOUT JUROR CONFUSION.  ON THIS ISSUE I

7    THINK I CAN ADDRESS THAT WITH ANY LIMITING INSTRUCTION THAT

8    EITHER SIDE WISHES TO PROPOSE, OR FURTHER INSTRUCTION ABOUT THE

9    SIGNIFICANCE OF THE DOCUMENT, BUT I'M GOING TO LET THE DOCUMENT

10   IN.

11        AS FOR THIS WILSON SONSINI DOCUMENT THAT WAS REFERENCED

12   IN THE REPLY THAT I RECEIVED, I'M GOING TO LET IT IN AS WELL.

13        IF THERANOS TRULY BELIEVES THERE'S ADDITIONAL DISCOVERY

14   IT NEEDS FROM WILSON OR WANTS TO CALL SOMEONE FROM WILSON IN

15   ORDER TO PUT THAT PAGE INTO CONTEXT, I WILL PERMIT IT.  BUT I

16   THINK THE JURY CAN SORT THROUGH THIS ONE, I'M NOT TOO WORRIED

17   ABOUT THAT.

18        LET'S TURN -- I THINK THAT COVERS THE ISSUES IN THE

19   SECOND MOTION IN LIMINE.

20        MR. JOE FUISZ:  ACTUALLY THE REDUCTION OF PRACTICE

21   ISSUE, YOUR HONOR.

22        THE COURT:  OKAY.  GO AHEAD.

23        MR. JOE FUISZ:  NO, YOUR HONOR, I JUST, I JUST, I

24   FEEL LIKE WE ARE IN A BIT OF A QUANDARY, WHICH I UNDERSTAND

25   MR. MARSILLO CLEARLY TOOK THE POSITION TO WALL OFF DISCOVERY ON

1    THE REDUCTION OF PRACTICE AND RELY ON THEIR FILING DATES, WHICH

2    I CERTAINLY UNDERSTAND INTELLECTUALLY WHY THEY TOOK THAT

3    POSITION.

4        BUT WHAT I WAS CONCERNED ABOUT WAS WHEN WE SAW THE PRETRIAL

5    DRAFT FROM PLAINTIFF'S COUNSEL, THEY IDENTIFY ALL THESE

6    HISTORICAL FOLKS WHO, A, HAVE NOT BEEN DEPOSED IN THE CASE; AND

7    B, WE HAD NO REASON TO DEPOSE BECAUSE THEY WEREN'T NAMED AS

8    INVESTORS INVENTORS.

9        SO WHILE I APPRECIATE IN PLAINTIFF'S REPLY TO OUR MOTION

10   THEY SAID, WELL, LOOK, WE DID LET YOU ASK QUESTIONS ABOUT KEMP,

11   ALTHOUGH I DON'T KNOW I'VE SEEN THE ANSWERS TO THOSE QUESTIONS,

12   I DON'T THINK BEING ALLOWED TO QUESTION MR. KEMP ABOUT

13   REDUCTION OF PRACTICE IN THE ABSENCE OF HAVING MATERIALS, IS A

14   FAIR -- IS FAIR CROSS-EXAMINATION ON DISCOVERY.

15       SO YOU KNOW, I WOULD RESPECTFULLY ASK THE COURT TO EITHER

16   ENTIRELY EXCLUDE TESTIMONY FROM THERANOS PERSONNEL ABOUT

17   REDUCTION OF PRACTICE, OR AT A VERY MINIMUM TO SEVERELY

18   RESTRICT IT, SIMPLY BECAUSE WE HAVE NEVER SEEN THE DOCUMENTS.

19       THANK YOU, SIR.

20           THE COURT:  MR. UNDERHILL?

21           MR. UNDERHILL:  I THINK THERE MAY BE A LITTLE BIT OF

22   A DISCONNECT HERE ON TERMINOLOGY.

23       WE DON'T PLAN TO PUT ON REDUCTION TO PRACTICE.  AND I USE

24   THAT IN QUOTES.  WE, YOU KNOW, MADE THE POINT AND WE ARE

25   ABSOLUTELY, YOU KNOW, I BELIEVE ON THE RIGHT SIDE OF THE LAW AS

1    THE COURT FOUND.  WE DON'T HAVE TO SHOW REDUCTION TO PRACTICE.

2    WE HAVE PROVISIONALS WHICH ARE THE CONSTRUCTIVE REDUCTION TO

3    PRACTICE.

4         SO THEREFORE I THINK WE ARE REALLY TALKING ABOUT A

5    DIFFERENT ISSUE.  WE ARE REALLY TALKING ABOUT, CAN THERANOS

6    TALK ABOUT PRODUCTS THAT IT ACTUALLY MADE IN THE LAB OR

7    PROTOTYPES THAT RELATE AND SUPPORT THE PROVISIONALS.

8         AND THE ANSWER IS, WELL, SURE.  I MEAN WE PROVIDED THAT

9    DISCOVERY.  I MEAN, THAT'S WHAT TIM KEMP'S DEPOSITION WAS

10   LARGELY ABOUT WAS HIM TALKING ABOUT THE DIFFERENT PROTOTYPES

11   THAT HE MADE IN THE LAB.

12        SO I THINK THIS IS PERFECTLY APPROPRIATE DISCOVERY, IT

13   WAS NEVER DENIED, AND I THINK IT'S A LITTLE CONFUSING TO REFER

14   TO IT AS REDUCTION TO PRACTICE EVIDENCE.

15             THE COURT:  MR. FUISZ, GO AHEAD.

16             MR. JOE FUISZ:  AND I APOLOGIZE.  I MEAN, THIS AS A

17   SINCERE FOLLOW UP BECAUSE OF THE AEO ISSUES.  I HAVEN'T SEEN

18   THE DOCUMENTS.

19        MY UNDERSTANDING, AND I'M GOING APART FROM MR. MARSILLO'S

20   REPRESENTATIONS, IF MR. UNDERHILL IS SAYING THAT MR. KEMP IS

21   GOING TO TESTIFY TO SPECIFIC WORK THAT ACTUALLY CORRELATES TO

22   AEO DOCUMENTS THAT EXIST AND BE PRODUCED, THEN I THINK OUR

23   CONCERN WOULD GO AWAY.

24        BUT IF HE'S GOING TO TESTIFY ABOUT SOME REDUCTION OF

25   PRACTICE THAT HAS NOT BEEN REFLECTED IN THE DOCUMENTATION THEN

 1     MY OBJECTION STANDS.

 2            THE COURT:  MR. UNDERHILL, CAN YOU SPEAK TO THAT?

 3            MR. UNDERHILL:  WELL, I THINK HE IS GOING TO TESTIFY

 4     ALONG THE LINES OF WHAT WAS IN HIS DEPOSITION.  AND WILL HE

 5     ANSWER ANY QUESTIONS THAT WERE NOT SPECIFICALLY ASKED IN THE

 6     DEPOSITION?  I'M SURE THAT HE WILL.

 7            BUT THE POINT IS THAT OPPOSING COUNSEL HAD FREE AND AMPLE

 8     OPPORTUNITY AND A FULL DEPOSITION TO ASK HIM WHATEVER WANTED TO

 9     ASK HIM.

10            THIS IS NOT -- THERE'S NO SECRET TESTIMONY HERE THAT'S

11     GOING TO BLOW EVERYTHING UP, THIS IS JUST AN OPPORTUNITY FOR

12     MR. KEMP, ONE OF THE CO INVENTORS HERE TO EXPLAIN WHAT HE WAS

13     DOING.

14            THE COURT:  GO AHEAD.

15            MR. JOE FUISZ:  IF I MAY, THIS IS THE FUNDAMENTAL

16     DISPUTE.  CAN I CROSS-EXAMINE ADEQUATELY IN THE ABSENCE OF

17     DISCOVERY?  I -- I THINK THE ANSWER IS NO.

18            BUT THANK YOU, YOUR HONOR.

19            THE COURT:  OKAY.

20            LET ME PERHAPS DRAW A SLIGHTLY DIFFERENT LINE THE PARTIES

21     HAVE DISCUSSED.

22            MS. ANDERSON, ARE YOU SEEKING TO WEIGH?  IN IF YOU ARE,

23     GO AHEAD, MA'AM.

24            MS. ANDERSON:  YES, I AM.

25            AND THE REASON IS BECAUSE AS AEO COUNSEL I'VE HAD THE

1    OPPORTUNITY TO LOOK AT KEMP'S DEPOSITION IN ITS ENTIRETY.  AND

2    IT DOES SPEAK ABOUT KEMP'S INVOLVEMENT ON EACH ONE OF THESE

3    PROVISIONAL APPLICATIONS THAT ARE SPECIFICALLY NAMED AS

4    CLIENTS.

5         AND I DO FIND IT QUITE UNSEEMLY THAT ON ONE HAND THE

6    REDACTIONS PERSIST ON KEMP'S DEPOSITION ON THESE KEY AREAS.

7    BUT ON THE OTHER HAND, PLAINTIFF'S WISH TO PRODUCE TESTIMONY,

8    EVIDENCE AT TRIAL, WITHOUT GIVING THESE DEFENDANTS AN

9    OPPORTUNITY TO REVIEW THE DEPOSITION IN ITS ENTIRETY WITH

10   REGARD TO THESE MATTERS.

11        AND I'M JUST TALKING ABOUT, FOR INSTANCE, THE APPLICATION

12   UNDER 192 BEGINNING ON PAGE 35 OF THE DEPOSITION.  THERE'S

13   SPECIFIC DISCUSSION THAT FROM WHAT I'M HEARING FROM

14   MR. UNDERHILL, I UNDERSTAND THAT THEY PRESENTING THIS TESTIMONY

15   BEFORE THE JURY, AND BECAUSE MR. FUISZ AND DR. FUISZ HAVE NOT

16   SEEN THE TESTIMONY, IT'S ESSENTIALLY A TRIAL BY AMBUSH.

17             THE COURT:  OKAY.

18        IF I COULD, I THINK PERHAPS I MIGHT OFFER SOME HELPFUL

19   GUIDANCE HERE.

20        AS WE'VE TALKED ABOUT, I THINK MULTIPLE TIMES, CERTAINLY

21   AT LEAST ONCE, I'M NOT GOING TO PERMIT THE INTRODUCTION OF

22   EVIDENCE INTO THIS COURTROOM THAT WILL REQUIRE ANY KIND OF

23   SHIELDING FROM EITHER MR. FUISZ OR DR. FUISZ.  I THINK I RECALL

24   A HEALTHY DIALOG WITH MR. UNDERHILL ABOUT THAT AT SOME PRIOR

25   HEARING.

1        SO I DON'T THINK WE HAVE ANY CONCERNS OR WORRIES ABOUT

2    ANY AMBUSH HERE BECAUSE I'M NOT GOING TO PERMIT THAT AMBUSH AND

3    I'VE ALREADY MADE THAT CLEAR.

4        WITH RESPECT TO OTHER TESTIMONY FROM MR. KEMP, IT IS

5    MR. KEMP?

6            MR. UNDERHILL:  YES.

7            THE COURT:  OKAY.  I WANT TO BE CLEAR.

8        I WILL PERMIT MR. KEMP TO SPEAK TO HIS DEVELOPMENT OF

9    PROTOTYPES, SOME OF WHICH MAY HAVE BEEN DISCUSSED IN THE

10   DEPOSITION AND PRESUMABLY MADE AVAILABLE TO EACH OF THE FUISZ'S

11   TO REVIEW.  SOME OF WHICH MAY NOT, MAY NOT JUST HAVE BEEN

12   ASKED, BUT IT'S GOING TO COME OUT IN THIS COURTROOM, I'M GOING

13   TO ALLOW EACH OF THE FUISZ'S TO HEAR IT AND CROSS-EXAMINE ON

14   IT.

15       THE FINAL ISSUE IS I USE THE WORD PROTOTYPES SPECIFICALLY

16   BECAUSE AS WE JUST TALKED ABOUT, I'M DISTINGUISHING BETWEEN THE

17   WORK IN THE LABORATORY WHICH MAY HAVE EVIDENCED A REDUCTION OF

18   PRACTICE OR OTHER WORK MR. KEMP WAS DOING THAT SUPPORTS HIS

19   TESTIMONY FROM THE COMMERCIAL PRODUCTS I AM EXCLUDING PURSUANT

20   TO MY EARLIER RULINGS.

21       SO IF ANYONE HAS ANY QUESTIONS ABOUT THAT, NOW IS THE

22   TIME TO ASK, BUT I THINK THAT'S A CLEAR LINE TO GIVES EVERYBODY

23   SOME GUIDANCE AS TO HOW WE ARE GOING TO PROCEED.

24            HEARING NO QUESTIONS.

25            MS. ANDERSON:  YOUR HONOR, I DO HAVE QUESTIONS AND WE

1    MAY HAVE TO ADDRESS IT IN THE AEO PORTION OF THIS HEARING.  AND

2    IT DEALS SPECIFICALLY WITH THE PROTOTYPES BECAUSE THEY WERE

3    DISCUSSED IN HERE.  AND I WOULD LIKE TO TAKE THAT UP IN THAT

4    PORTION OF THE HEARING.

5            THE COURT:  I'M HAPPY TO TAKE IT UP AT THAT TIME.

6        OKAY.  I THINK THAT TAKES CARE OF THE ISSUES IN THE TWO

7    DEFENDANT'S MOTION IN LIMINE.

8        WITH THAT I WOULD LIKE TO TURN -- I DON'T THINK ANYBODY

9    IS PREJUDICED HERE, LET'S JUST KEEP GOING WITH THE MOTIONS THAT

10   THE DEFENDANTS HAVE PRESENTED, IN PARTICULAR THE DAUBERT

11   MOTIONS ON LEONARD, CLARKE AND ROBERTSON.

12       MR. FUISZ?

13           MR. JOE FUISZ:  YEAH -- NO.

14       I WILL -- AGAIN, I KNOW YOUR HONOR HAS REVIEWED

15   EVERYTHING SO I WILL BE VERY QUICK.

16       I FEEL LIKE, YOU KNOW, I REALLY FEEL LIKE THE PLAINTIFFS

17   ARE INVITING YOU TO MAKE NEW LAW IN TERMS OF IF IN FACT

18   MR. LEONARD IS ALLOWED TO OPINE ON AUTHORSHIP.  I THINK THE

19   CASE LAW IS NINTH CIRCUIT CASE LAW IS OVERWHELMINGLY CLEAR BOTH

20   BEFORE AND AFTER DAUBERT.

21       THE SINGLE, OVERWHELMING TO THE POINT I'M NOT EVEN GOING

22   TO LIST IT, I ASSUME YOUR HONOR HAS SEEN IT.  THE SINGLE CASE

23   IN FEDERAL COURT THAT PLAINTIFFS HAVE BEEN ABLE TO POINT TO

24   WHERE LEONARD HAS BEEN ALLOWED TO OPINE ON AUTHORSHIP --

25           THE COURT:  YOU'RE SPEAKING OF JUDGE KAPLAN'S CASE

1          THE DONZINGER.

2               MR. JOE FUISZ:  PRECISELY.

3          BUT IN DONZINGER, YOU HAD A CASE, YOU HAD 90-WORD STRING OF

4     REPETITION, ACTUAL COPYING.  WHEREAS HERE, LEONARD IS TRYING TO

5     USE CONTENT SIMILARITIES FROM WHICH TO OPINE AUTHORSHIP.

6          IN THE DONZINGER CASE, HE HAD 90 WORDS WITH AUTHOR

7     GRAPHICAL ERRORS.  I HAD TO LOOK THAT UP, I BELIEVE IT'S

8     SPELLING OF GRAMMATICAL ERRORS, AND DONZINGER DIDN'T CONTEST

9     COPYING HAD OCCURRED.  HE DIDN'T TRY TO DAUBERT LEONARD BECAUSE

10    DONZINGER'S DEFENSE WAS IT WAS COPYING, BECAUSE I'M NOT

11    RESPONSIBLE BECAUSE I DIDN'T DO IT.

12         SO I THINK WITH THAT -- TRYING TO RELY ON DONZINGER

13    AGAINST THE OVERWHELMING WEIGHT OF CASE LAW WHICH EITHER THROWS

14    OUT LINGUIST ENTIRELY, OR AT MOST ALLOWS THEM TO PRESENT A SORT

15    OF IN SOME CHART FORM, THEIR ANALYSIS AND THEN INVITE THE JURY

16    OR JUDGE AS THE TRIER OF FACT TO REACH CONCLUSION.

17         IF YOUR HONOR WANTS TO ALLOW LEONARD TO TESTIFY, I DON'T

18    HAVE A HUGE PROBLEM WITH THAT.  I THINK THE CASE LAW FRANKLY

19    WOULD SUPPORT KICKING HIM OUT ENTIRELY.

20         BUT I STRONGLY FEEL, AND FRANKLY TO A POINT WHERE I

21    PROBABLY SHOULDN'T SAY THIS, I'M ACTUALLY ANGRY AT PLAINTIFF'S

22    COUNSEL BECAUSE I FEEL LIKE THEY REALLY MISREPRESENTED THE LAW

23    HERE.  THE NOTION THAT LEONARD COULD TESTIFY ON AUTHORSHIP IS

24    JUST NOT SUPPORTED.

25               THE COURT:  OKAY.

1        GO AHEAD, DR. FUISZ.

2            MR. RICHARD FUISZ:  LOOK, I'M NOT A LAWYER, BUT

3    RELATIVE TO LEONARD, THE PART I FIND FASCINATING IS WHEN HE

4    OPINES ON THIS TOPIC, HE DECLINES EVEN TO GIVE A NUMERICAL

5    PERCENTAGE OF PROBABILITY.  AND HE JUST SAYS IT'S HIS PERSONAL

6    BEST GUESS, BASICALLY.  AND HE DECLINES TO GIVE A NUMBER.

7            AND MY -- WHAT ASTOUNDS ME IS, A LIE DETECTOR TEST, THERE

8    ARE EXISTING NUMBERS AS TO WHAT THEIR ACCURACY IS.  BUT I DON'T

9    THINK THEY ARE ALLOWED IN THIS COURTROOM.

10           SO IN EFFECT, YOU WOULD BE ALLOWED SOMEONE IN HERE WHOSE

11   CONCLUSION IS LESS ADEQUATELY PROVEN THAN EVEN LIE DETECTORS.

12   IT'S SIMPLY THIS MAN'S OPINION.

13           NUMBER TWO, WHICH REALLY I JUST FIND OBJECTIONABLE.  HE'S

14   TAKEN AN E-MAIL OF MINE TO MY COUNSEL, WHICH AFTER 120

15   INVENTIONS IN ALL THESE YEARS, THOSE E-MAILS NATURALLY ARE VERY

16   DIRECTIVE OF CONTENT.

17           AND HE'S COMPARED THAT TO A PATENT FILING OF THERANOS.

18           WELL, SINCE THE FIELDS ARE NOT THAT BROADLY DIFFERENT, I

19   JUST CAN'T FATHOM HOW ONE CAN TAKE THESE KEY WORDS AND SAY, I

20   HAVE COME TO A CONCLUSION BASED ON THESE KEY WORDS, FROM

21   DR. FUISZ'S E-MAILS VERSUS THERANOS PROVISIONALS, THAT THESE

22   SOMEHOW -- MY BEST OPINION IS THEY WERE TAKEN.  I JUST THINK

23   THAT'S TERRIBLE.

24           THANK YOU.

25               THE COURT:  THANK YOU.

1          MR. JAY:  YOUR HONOR, YOUR HONOR, LEONARD IS NOT

2     OPINING ON AUTHORSHIP.  WHAT THE FUISZ'S ARE TALKING ABOUT HERE

3     GOES TO THE WEIGHT OF THE EVIDENCE NOT ITS ADMISSIBILITY.  AND

4     JUST TO DISCUSS THE CHEVRON VERSUS DONZINGER MATTER, ACTUALLY

5     IN THE RULING THAT JUDGE KAPLAN ISSUED YESTERDAY, JUDGE KAPLAN

6     IN SPECIFICALLY TALKING ABOUT --

7          THE COURT:  I WILL CONFESS, I HAVE NOT READ ALL

8     500 PAGES.

9          MR. JAY:  FAIR ENOUGH.

10      I THINK THE ONE SORT OF IMPORTANT PIECE OF IT IS WHEN

11    DISCUSSING DR. LEONARD'S ANALYSIS WHERE HE USED THE SAME

12    METHODOLOGY AS THAT WHICH HE USED HERE, JUDGE KAPLAN SAID THE

13    COURT FINDS THAT THE METHODOLOGIES USED BY THE CHEVRON EXPERTS

14    WERE RELIABLE AND ADMISSIBLE, CREDITS THEIR TESTIMONY AND

15    ADOPTS THEIR FINDINGS.

16      IF THE FUISZ'S TAKE ISSUE WITH SORT OF THE LEVEL OF

17    DETAIL HERE, THEY ARE FREE TO ELICIT THAT INFORMATION ON

18    CROSS-EXAMINATION, BUT I DON'T THINK THERE'S ANYTHING THAT

19    WARRANTS EXCLUDEING THE TESTIMONY OF DR. LEONARD.

20          THE COURT:  ALL RIGHT.

21      I THINK I HAVE YOUR RESPECTIVE POSITIONS.

22      THANK YOU, COUNSEL.

23      I'M GOING TO GRANT THIS MOTION ONLY IN PART.  I'M GOING

24    TO PRECLUDE DR. LEONARD FROM OFFERING TESTIMONY, AND THE

25    ULTIMATE QUESTION OF WHETHER PLAGIARISM OCCURRED, THAT STRIKES

1    ME AS UNWISE AND UNRELIABLE.

2         HOWEVER, I WILL ALLOW HIM TO OFFER TESTIMONY ON

3    LINGUISTICS SIMILARITIES, SEMANTICS SIMILARITIES, AND THAT'S

4    SUBJECT TO GOOD CROSS-EXAMINATION, AND I THINK THE JURY WILL BE

5    ABLE TO SORT THAT OUT.

6         SO THAT MOTION IS GRANTED

7         MR. JOE FUISZ:  YOUR HONOR, ONE QUESTION, I'M AFRAID

8    WHEN I WAS WRITING THIS I WAS IMPROPERLY RAISING THE DAUBERT

9    MAYBE I SHOULD'VE MENTIONED IT SOMEWHERE ELSE, BUT WE DID WANT

10   TO CHALLENGE HIS PERCENTAGES WHICH HE BELIEVES IS GOOGLE

11   DATABASE.

12        THE COURT:  THE GOOGLE PATENT ISSUE.

13        MR. JOE FUISZ:  PERHAPS WE SHOULD ADDRESS THAT BY IN

14   LIMINE, OR LATER OR NOW AS THE CASE MAY BE.

15        THE COURT:  I WOULD LIKE TO ADDRESS IT NOW.

16        I WILL SAY, IF I UNDERSTAND YOUR ARGUMENT FROM YOUR BRIEF

17   MR. FUISZ, YOU WERE NEVER PROVIDED WITH ANY ADEQUATE NOTICE TO

18   INVESTIGATE HOW RELIABLE THE GOOGLE PATENT DATABASE IS.  SO ANY

19   ESTIMATES BASED ON IT IN YOUR OPINION WOULD BE UNFAIR?

20        MR. JOE FUISZ:  AND IT WOULD CERTAINLY BE.

21        I USE GOOGLE PATENTS, I THINK IT'S A DESCENT SERVICE, DON'T

22   MISUNDERSTAND ME, BUT YOU CERTAINLY CAN'T USE IT 8 MILLION AS A

23   DENOMINATOR AND OPINE ON PERCENTAGE TERMS.

24        IF HE WANTS TO SAY HE DID A PARTICULAR SEARCH AND GOT 16

25   RESULTS, I DON'T HAVE A PROBLEM WITH THAT.  BUT TO PRESENT IT

```
 1        AS A PERCENTAGE ON A PRESUMED DENOMINATOR, I THINK IS UNFAIR.

 2             THE COURT:  ALL RIGHT.

 3             MR. JAY:  I MEAN, THE FUISZ'S OWN EXPERT DR. JUOLA

 4   ENGAGED IN A SIMILAR BUT ACTUALLY LESS ACCURATE ANALYSIS HERE.

 5        I MEAN, DR. LEONARD WENT THROUGH A DATABASE THAT HAD NEARLY

 6   8 MILLION DOCUMENTS, IT HIS ANALYSIS, AND DR. JUOLA IN HIS

 7   DEPOSITION ADMITTED THE ANALYSIS DR. LEONARD ENGAGED IN WAS A

 8   VALID ANALYSIS THAT SUPPORTED PLAINTIFF'S THEORIES IN THIS

 9   CASE.

10             THE COURT:  ALL RIGHT.

11        AS I UNDERSTAND IT, THIS TESTIMONY FROM DR. LEONARD CAME IN

12   RESPONSE TO DR. JUOLA THIS WAS PART OF A SUPPLEMENTAL REPORT,

13   HAVE I GOT THAT RIGHT.

14             MR. JAY:  THAT'S CORRECT.

15        AND THE FUISZ'S COULD HAVE ENGAGED IN ANY SORT OF

16   INVESTIGATION INTO THE GOOGLE PATENT DATABASE THAT ONE THERE'S

17   NOTHING THAT WE DID THAT STOPPED THEM FROM DOING THAT OR

18   QUESTIONING DR. LEONARD ABOUT THAT.

19             MR. JOE FUISZ:  YOUR HONOR?

20             THE COURT:  GO AHEAD, MR. FUISZ.

21             MR. JOE FUISZ:  YOUR HONOR, THE FACT DISCOVERY WAS

22   OVER WHEN THE EXPERT DEPOSITIONS HAPPENED.  I COULDN'T DEPOSE

23   GOOGLE AT THAT POINT AND TRY TO INVESTIGATE THEIR DATABASE.

24        I'M JUST SAYING IT'S NOT A FAIR DENOMINATOR.  AND QUITE

25   FRANKLY, I THINK THEY ARE ALL WITCH DOCTORS.  I BELIEVE THIS
```

1    NEW YORKER ARTICLE, SO I HAD TO BRING IN MY OWN WITCH DOCTOR.

2    I DON'T CREDIT ANY OF IT.

3              MR. UNDERHILL:  YOUR HONOR, MAY I RESPOND TO ONE

4    POINT?  A NEW POINT.

5              THE COURT:  I ACTUALLY DON'T THINK YOU NEED TO,

6    MR. UNDERHILL.

7         I'M GOING TO PERMIT THE REFERENCE TO THE GOOGLE PATENT

8    DATABASE INCLUDING PERCENTAGES, BUT I'M ALSO GOING TO, I WILL

9    SAY, ALLOW DR. FUISZ TO POINT OUT ALL SORTS OF ISSUES WITH THAT

10   DATABASE THEY MIGHT WISH TO POINT OUT DURING CROSS-EXAMINATION.

11        I THINK YOU CAN HIGHLIGHT THESE POINTS EFFECTIVELY AND

12   MAKE YOUR POINT IN THAT FASHION.

13             MR. UNDERHILL:  YES, YOUR HONOR.

14             THE COURT:  ALL RIGHT.  LET'S KEEP GOING.

15             MR. UNDERHILL:  YOUR HONOR, MAY I SAY ONE THING

16   THOUGH BASED ON YOUR RULING?  CLARIFICATION.

17        IT WAS OBVIOUSLY DIRECTED AT OUR EXPERT, THE NO TESTIMONY

18   ON ULTIMATE QUESTION.  MAY I ASSUME THAT THAT RULING ALSO

19   APPLIES TO DR. JUOLA THE OTHER SIDE'S EXPERT, WHO ALSO OFFERS

20   AN OPINION ON THE ULTIMATE QUESTION?

21             THE COURT:  WELL, I CAN GIVE YOU THIS GUIDANCE.

22        SINCE I DON'T SPECIFICALLY HAVE A MOTION BEFORE ME ON DR.

23   JUOLA IF THAT TYPE OF QUESTION WERE ASKED OF THE EXPERT, I

24   WOULD CERTAINLY SUSTAIN THE OBJECTION AT THAT POINT IN TIME.

25             MR. UNDERHILL:  THANK YOU, YOUR HONOR.

```
1              THE COURT:  YES.  OKAY.  LET'S TURN TO MR. CLARKE,

2    OR DR. CLARKE, I APOLOGIZE.

3              MR. JOE FUISZ:  YEAH, LISTEN, AND YOUR HONOR, AS YOU

4    KNOW, I'M NOT A PATENT ATTORNEY, AND I INVITE YOU TO CORRECT ME

5    IF I'M WRONG.

6              BUT IT SEEMS TO ME THAT FOR CONCEPTION FROM HERE, IN THIS

7    CASE, WHERE YOU DON'T HAVE A SINGLE DOCUMENT, WHERE THERANOS IS

8    ESSENTIALLY LOOKING TO AMALGAMATE MULTIPLE DOCUMENTS, AT A

9    MINIMUM DR. CLARKE WOULD HAVE NEEDED TESTIMONY FROM THE

10   INVENTOR ACTUALLY PUTTING THEM TOGETHER.

11             I DO NOT BELIEVE DR. CLARKE IS ABLE AT HIS OWN INITIATIVE

12   TO BRING DISPARATE DOCUMENTS TOGETHER IN ORDER TO FORM THE

13   INVENTION OF THE '612.

14             AND IN THAT RESPECT, I THINK HIS OPINION OF INVENTORSHIP

15   IS FLAWED BECAUSE I DON'T THINK HE CAN GET TO CONCEPTION.

16             NOW I'VE GOT TO BE HONEST WITH YOU, I DO NOT KNOW WHY --

17   MAYBE THEY COULD HAVE CURED THAT IF THEY HAD GIVEN ELIZABETH

18   HOLMES DEPOSITION TO THEM AND USED THAT.  BUT IF YOU LOOK AT

19   WHAT HE REVIEWED, THERE'S NOTHING HE REVIEWED THAT DOES THAT.

20             THE COURT:  DO YOU WANT TO SPEAK TO ROBERTSON AS

21   WELL?

22             MR. JOE FUISZ:  IT EQUALLY APPLIES TO JANE ROBERTSON.

23   AND YOU KNOW, ALSO KIND OF SOMATICALLY TIMING THIS TO THE 252

24   MOTION TO STRIKE, I ALSO I THINK IT KIND OF COMES FROM A

25   SIMILAR FATAL FLAW.  HE CAN'T OPINE ON WHO THE INVENTORS ARE
```

1    BECAUSE HE SAYS ELIZABETH HOLMES OTHERS.  IT'S PRECISELY

2    BECAUSE HE HAS NO NOTION OF WHOSE CONCEPTION HE'S

3    CORROBORATING.

4         SO --

5              THE COURT:  MR. FUISZ, IS THAT WHAT HE SAID IN HIS

6    REPORT OR IN DEPOSITION THAT IT WAS MS. HOLMES AND OTHERS.

7              MR. JOE FUISZ:  CORRECT.

8              THE COURT:  HE DID NOT SPECIFY MR. KEMP.

9              MR. JOE FUISZ:  NO, ABSOLUTELY NOT.

10        AND HONESTLY, I MEAN I DON'T WANT TO TAKE A CRACK AT THE

11   PLAINTIFF BUT I DO NOT EVEN KNOW WHERE HE COMES OUT IDENTIFYING

12   HERE.  IT SEEMS LOGICALLY HE MIGHT HAVE TRIED TO CLAIM THAT

13   THERANOS COULD HAVE CONCEIVED, IF IN FACT HE HAD SOME EVIDENCE

14   TO CORROBORATE PULLING THESE TOGETHER.

15        AND I THINK IT'S, LOOK, I THINK IT'S A CRITICAL QUESTION

16   FOR THE CASE BECAUSE IT -- IT'S -- IT COMES DOWN TO WHEN

17   THERANOS IS ABLE TO CLAIM CONCEPTION.

18              THE COURT:  ALL RIGHT.

19              MR. JAY:  YOUR HONOR, MR. FUISZ IS INCORRECT.  DR.

20   ROBERTSON AND DR. CLARKE DESCRIBE THAT THE PROPER INVENTORS ARE

21   ELIZABETH HOLMES AND OTHERS AT THERANOS REFERRING TO THOSE AS

22   THERANOS LISTED ON THE PROVISIONAL APPLICATIONS.

23        THE LAW ON THIS COULD NOT BE ANYMORE CLEAR, CONCEPTION

24   NEED NOT BE CORROBORATED BY A SINGLE DOCUMENT.  WHAT WE ARE

25   TALKING ABOUT HERE IS FOUR PROVISIONAL PATENT APPLICATIONS THAT

1    ALL CAME FROM THERANOS, THAT EACH REFERENCED EACH OTHER.

2            AND THE LAW IS QUITE CLEAR, THE FEDERAL CIRCUIT IS QUITE

3    CLEAR THAT YOU CAN CORROBORATE CONCEPTION THROUGH MULTI

4    DOCUMENTS.

5            THE COURT:  CAN I ASK YOU ONE QUESTION.

6        YOU MENTION THAT MR. KEMP WAS ALSO, I WAS GOING TO SAY

7    MR. JAY -- YOU DON'T WANT TO BE THERE.  MR. KEMP WAS ALSO ON

8    THE APPLICATION.

9        ARE THERE OTHERS OF THERANOS WHO WERE LISTED AS WELL,

10   PERHAPS I OVERLOOKED THAT IN REVIEWING THOSE DOCUMENTS?

11           MR. JAY:  YES, THERE ARE OTHERS AT THERANOS WHO ARE

12   LISTED ON THE PROVISIONAL APPLICATIONS, THAT IS CORRECT.

13           HOWEVER, THOSE PARTICULAR INVENTORS ON THE PROVISIONAL

14   APPLICATIONS DIDN'T CONTRIBUTE TO THE PORTIONS OF THE

15   PROVISIONAL APPLICATIONS THAT SORT OF MADE THEIR WAY INTO THE

16   '612 PATENT.

17           THE COURT:  I UNDERSTAND.

18           MR. UNDERHILL:  I JUST WANT TO SAY ONE THING.

19       DR. CLARKE PLAYED IT STRAIGHT.  HE LOOKED AT THE

20   PROVISIONALS, HE LOOKED AT THE '612 AND HE OFFERED THE OPINION

21   THAT THESE IDEAS ARE IN THE PROVISIONALS.

22       NOW, YEAH, WE COULD HAVE FED HIM INFORMATION AND SAID,

23   OKAY, EVEN THOUGH THAT'S THERE'S FIVE PEOPLE LISTED ON THE

24   PROVISIONALS, THE TWO YOU WANT TO IDENTIFY ARE ELIZABETH AND

25   TIM.

1          BUT WHY?  I MEAN, THAT'S NOT EXPERT TESTIMONY.

2          SO HIS TESTIMONY IS YES, I LOOK AT THE '612, YES, IT'S IN

3     THE PROVISIONALS.  SO YES, I FIND THAT, YOU KNOW, ELIZABETH AND

4     OTHERS AT THERANOS ARE THE INVENTORS HERE.  AND IT WILL GO TO

5     OTHER WITNESSES TO TESTIFY AS TO WHO WITHIN THE PROVISIONALS

6     INVENTED THE PARTICULAR INFORMATION THAT WE ARE TALKING ABOUT.

7          THE COURT:  AM I RIGHT THAT MS. HOLMES IS LISTED ON

8     EACH OF THE PROVISIONALS?

9          MR. UNDERHILL:  YES.  EXCEPT FOR ONE.

10          MR. JAY:  SHE'S LISTED ON THREE OF THE FOUR

11    PROVISIONALS.  THE FIRST THREE PROVISIONAL APPLICATIONS.

12          THE COURT:  GO AHEAD, MR. FUISZ.

13          MR. JOE FUISZ:  NO, BECAUSE I JUST WANT TO BE CLEAR.

14    THESE THERANOS PROVISIONALS DO NOT INCORPORATE EACH OTHER BY

15    REFERENCE.  THESE ARE SEPARATE DOCUMENTS.  AND IT'S PRECISELY

16    BECAUSE THEY DON'T INCORPORATE OTHERS BY REFERENCE AND I THINK

17    CORROBORATION IS REQUIRED FOR INVENTORSHIP.

18       I DIDN'T OBJECT TO HIS OBVIOUSNESS ANALYSIS BECAUSE THERE,

19    I THINK IN THEORY, AND WE WILL CERTAINLY CROSS-EXAMINE THE

20    CHALLENGE OF PUTTING THEM TOGETHER.

21          BUT WHEN IT COMES TO INVENTORSHIP AND CONCEPTION, SO THE

22    FIRST TIME THERANOS PUTS THESE TOGETHER IS THE FIRST FILING

23    DATE IS 594, MR. UNDERHILL CAN CORRECT ME, WHICH IS FILED

24    MARCH 24, 2006.

25          AND CLARKE WANTS TO MOVE PRIORITY BACK TO MY DAD'S E-MAIL

1    SAYING THEY WERE INVENTORS AS OF SEPTEMBER 23RD, 2005.  AND I

2    DON'T THINK HE HAS, BASED ON WHAT HE REVIEWED I DON'T THINK

3    HE -- HE HAS NO BASIS ON HIS OWN TO TAKE DOCUMENTS WHICH DON'T

4    INCORPORATE EACH OTHER BY REFERENCE AND PUT THEM TOGETHER FOR

5    CONCEPTION.  HE NEEDED MORE THAN HE HAD TO MAKE THAT CONCLUSION

6            THE COURT:  ALL RIGHT.

7        ON THIS ISSUE, I APPRECIATE THE LOGIC AND THE ARGUMENT, I

8    FOLLOW IT AND I'M PERSUADED BY IT IN THE ABSTRACT.  BUT I DO

9    SEE PRETTY CLEAR CASE LAW FROM THE FEDERAL CIRCUIT THAT YOU

10   DON'T NEED TO HAVE A SINGLE DOCUMENT OR DOCUMENTS INCORPORATED

11   BY REFERENCE UNDER PROVE UP CONCEPTION.

12       WITH THAT BASIS ALONE, I'M REFERRING TO THE PRICE V. SYMSEK

13   CASE.  I'M GOING TO DENY THE MOTION AND ALLOW THE TESTIMONY

14   FROM EACH OF CLARKE AND ROBERTSON.

15         LET'S TURN TO THE MOTION FOR ADVERSE INFERENCE.  AND I

16   WANT TO, MR. FUISZ I WANT TO BEGIN WITH YOU ON THIS ONE THAT I

17   HAVE ALREADY THIS AFTERNOON.

18         I'M TROUBLED BY THE ALLEGATIONS THAT YOU RAISE IN THE

19   PAPERS SO I WOULD LIKE TO BETTER UNDERSTAND EXACTLY HOW YOU

20   CAME TO LEARN OF THESE ALLEGATIONS AND WHAT YOU WOULD LIKE TO

21   DO.  DR. FUISZ, DO YOU WANT TO ADDRESS THIS?  I DIDN'T MEAN TO

22   EXCLUDE YOU.

23            MR. RICHARD FUISZ:  DO YOU WANT TO HEAR WHAT PORTION

24   OF THIS, YOUR HONOR?

25            THE COURT:  I'M JUST PARTICULARLY -- AS I UNDERSTAND

1      IT WHAT WE EVER TALKING ABOUT HERE ARE SOME FAIRLY SERIOUS

2      CHARGES THAT WITNESSES WERE DISCOURAGED FROM TESTIFYING AND

3      THAT YOU CAME TO LEARN ABOUT THIS AS A RESULT OF SOME E-MAILS

4      FROM THIS GENTLEMAN'S WIDOW.

5             MR. RICHARD FUISZ:  THEY WEREN'T E-MAILS.

6          WHAT OCCURRED WAS I WAS CURIOUS IF HE HAD A WIFE.  AND I

7      CAME UPON THIS -- IF I'M A LITTLE LENGTHY, STOP ME.

8          LOOK, MY WHOLE CAREER I'VE KNOWN INVENTORS.  ALEX

9      ZAFFARONI WAS A FRIEND, PEOPLE FROM THE UNIVERSITY OF

10     MISSISSIPPI ARE FRIENDS, ZYDIS, WHO IS A COMPETITOR, ARE

11     FRIENDS.

12         I ALWAYS FIND THAT INVENTORS, REAL INVENTORS, ARE

13     CORDIAL.  I WOULD SIT TWICE A YEAR WITH ALEX ZAFFARONI IN HIS

14     OFFICE, AND EVEN THOUGH WE WERE COMPETITORS, WE RESPECTED EACH

15     OTHER.

16         AND SO I ALWAYS FELT IAN GIBBONS WAS REALLY AN INVENTOR,

17     NOT A FAUX INVENTOR, HE WAS A REAL INVENTOR.  AND I WAS JUST

18     CURIOUS BECAUSE USUALLY REAL INVENTORS ARE PRETTY HONEST

19     PEOPLE.

20         AND SO I LOOKED FOR HIS WIFE.  I CALLED AND LEFT WORD

21     THAT I HAD CALLED AND SHE CALLED ME BACK.  AND THEN THERE CAME

22     OUT AN OUTPOURING OF SOMETHING I DIDN'T EXPECT.

23         AND SHE TOLD ME ON HER OWN VERBALLY, AND I'M NOT TRYING

24     TO EMBARRASS ANYBODY IN THE COURTROOM, BUT THAT ELIZABETH

25     HOLMES IS A LIAR, THAT SHE'S A SOCIOPATH, AND THAT THE WHOLE

1    PROBLEM WITH HER HUSBAND BASICALLY WAS THEY WOULDN'T LET HIM

2    TESTIFY IN OUR CASE.

3         AND SHE WENT ON AND ON.  AND THEN SHE BEGAN SUPPLYING

4    DOCUMENTS TO ME.  THE ONE DOCUMENT WAS FROM HER ATTORNEY, IT

5    TURNED OUT WHICH WAS DELETED, FROM THE THERANOS ATTORNEY.  AND

6    THEN SHE TOLD ME THAT SHE HAS 5 OR 6 OTHER DOCUMENTS.

7         SHE SAID DR. FUISZ, IF YOU THINK THAT DOCUMENT WHICH I

8    HAD DELETED, WAS BAD, YOU SHOULD HAVE SEEN THE OTHER DIRECTIVES

9    THAT MS. HOLMES HAD HER ATTORNEYS WRITE.

10        AND THE REASON THEY DIDN'T WANT HIM TO TESTIFY WAS

11   BECAUSE HE DIDN'T THINK SHE INVENTED A THING.  AND THEN SHE

12   WENT ON TO TELL ME VERBALLY, AND SOME OF IT MADE ITS WAY INTO

13   E-MAILS, OF HOW HE WENT TO CHANNING ROBERTSON, TO BASICALLY SAY

14   HE DIDN'T LIKE THE CONDUCT OF HOW SHE WAS RUNNING THE COMPANY

15   AND THAT SHE WAS VERY ARBITRARY AND SHE WAS NAMING INVENTORS

16   WHETHER THEY WERE INVENTORS OR NOT.  AND THAT CHANNING

17   DOUBLE-CROSSED HIM AND WENT TO HER.

18        THEN I'M NOT GOING TO REPEAT THE REST, BUT SHE GAVE A

19   VERY INTERESTING REASON WHY AND IT HAD TO DO WITH THINGS I

20   GUESS WE ARE NOT SUPPOSED TO DISCUSS IN THE COURTROOM RELATIVE

21   TO CHANNING AND MS. HOLMES.

22        AND IT WAS INTERESTING TO ME BECAUSE IT FIT THE SAME

23   THING PHYLLIS GARDENER TOLD ME.  IT WAS A PHYSICIAN ON THE

24   ADVISORY BOARD WHO SAID, IT'S IN SOME OF THE E-MAILS, BUT

25   VERBALLY MS. HOLMES IS A LIAR, SHE'S A THIEF, SHE MAKES UP

1    THINGS, SHE'S A SOCIOPATH, AND THAT SHE ONLY HAS OLD MEN AROUND

2    HER.

3          AND AGAIN, I'M NOT GOING TO GO INTO WHAT WAS SAID.  AND

4    WHAT YOU ARE SEEING IS I WOULD SAY, ONE-EIGHTH OF WHAT WAS

5    CONVEYED BY HER IN PERSON.

6          AND THEN, YOU KNOW --

7          THE COURT:  DR. FUISZ, CAN I ASK YOU, I APOLOGIZE,

8    BUT I WANT TO MAKE SURE I APPRECIATE WHAT YOU ARE TELLING ME.

9          IS IT CORRECT FOR ME TO UNDERSTAND THAT AT SOME POINT

10   YOUR ATTORNEYS AT THE TIME WERE ASKING TO DEPOSE MR. GIBBONS?

11          MR. RICHARD FUISZ:  NO, BECAUSE DISCOVERY WAS OVER.

12          THE COURT:  THIS WAS ALL AFTER DISCOVERY.

13          MR. RICHARD FUISZ:  IT WAS ALL AFTER DISCOVERY THAT

14   THESE THINGS WERE FOUND OUT.

15          AND I THINK THAT'S WHY MY SON, ONE OF THE THINGS HE ASKED

16   WAS TO EXTEND DISCOVERY BECAUSE SHE WAS MORE THAN WILLING TO

17   TESTIFY TO -- SHE'S AN ATTORNEY IN CALIFORNIA AND SHE

18   MAINTAINED, YOU KNOW, VERBALLY PRETTY STRONGLY THAT SHE FELT HE

19   WAS KILLED BY THEM BECAUSE HE WAS UNDER SUCH PRESSURE.

20          AND IT'S OBVIOUS ON ONE OF THE E-MAILS BECAUSE YOU CAN

21   SEE HE'S AT WORK, HERE'S A MAN WHO IS AT WORK WHO WAS SO

22   CERTIFIED THAT HE TRANSFERS IT TO HIS PERSONAL E-MAIL, SENDS IT

23   TO HIS WIFE, HIS WIFE AND SAYS PRINT IT TONIGHT.

24          HE OBVIOUSLY FELT THE PRESSURE ON HIM WAS SO OBNOXIOUS,

25   AND HONESTLY I THINK IT GOES TO THE WHOLE MATTER OF THE CASE.

1    I MEAN, AS TO WHO INVENTED WHAT.

2         AS I SAY, I TRUSTED REAL INVENTORS.  I HOPE THAT'S

3    HELPFUL.

4              THE COURT:  ALL RIGHT.  THANK YOU.

5         MR. UNDERHILL, DO YOU WANT TO RESPOND?

6              MR. UNDERHILL:  I SURE DO.

7              THE COURT:  AND AS PART OF YOUR RESPONSE I WOULD LIKE

8    TO GET YOUR TAKE ON THE SEQUENCE OF EVENTS HERE.

9         AS I READ THE PAPERS, I UNDERSTOOD THERE WAS A REQUEST TO

10   DEPOSE THIS GENTLEMAN.  THERE WAS SOME CHALLENGE IN GETTING HIM

11   SCHEDULED AND UNFORTUNATELY HE TOOK ILL AND PASSED AWAY BEFORE

12   THE DEPOSITION WAS UNDERTAKEN.

13             MR. UNDERHILL:  YOU ARE CORRECT.  AND IT WAS DURING

14   DISCOVERY.  WE HAVE THE EXACT DATES IN OUR PAPERS.

15        I BELIEVE THAT THERE WAS AN INITIAL REQUEST FOR

16   DEPOSITION.  AT THAT TIME THE PARTIES WERE GOING BACK AND FORTH

17   ON A MORE COMPREHENSIVE DEPOSITION SCHEDULE.  THERE WERE

18   VARIOUS ISSUES, DR. FUISZ REFUSED TO BE DEPOSED BEFORE OR

19   SIMULTANEOUS WITH ELIZABETH HOLMES.  THERE WERE OTHER SIMILAR

20   TYPE ISSUES.

21        THEN OPPOSING COUNSEL DID NOTICE IAN GIBBONS' DEPOSITION,

22   I BELIEVE THE TIME LAPSE, THIS IS IN OUR PAPERS, SO IF I'M

23   WRONG HERE, IT'S RIGHT IN THE PAPERS, I THINK IT WAS ABOUT FIVE

24   WEEKS FROM WHEN THEY INITIALLY ASKED FOR IT TO WHEN THEY

25   FINALLY NOTICED IT TO THE NOTICED DATE.

1    BEFORE THE NOTICED DATE HE DIED.  WE HAVE ENORMOUS

2    PROBLEMS WITH THIS MOTION.  IF MRS. GIBBONS IS SO WILLING TO

3    TESTIFY ABOUT THIS, WHERE'S A SWORN STATEMENT?  THEY ASKED HER

4    FOR A SWORN STATEMENT AND SHE APPARENTLY REFUSED TO PROVIDE IT.

5        THE THIRD THING HERE IS THERE'S NO SECRET SHE DOES NOT

6    LIKE ELIZABETH.  SHE DESCRIBES HER, APOLOGIES TO MY CLIENT WHO

7    IS IN THE COURTROOM, AS NOT VERY BRIGHT, HER PRESENTATIONS MADE

8    MRS. GIBBONS CRINGE, ALL SORTS OF THINGS.  OKAY.

9        THEN WE GET INTO JUST THE MALICIOUS, YOU KNOW, DISGUSTING

10   STUFF OF OH, YOU KNOW, SHE LIKES HAVING OLD MEN AROUND HERE.

11   WHAT THE HECK IS THAT SUPPOSED TO MEAN?  THIS THING WITH

12   RESPECT TO CHANNING AND THE CRUDE SEXUAL REFERENCES IN THE

13   E-MAIL, IT'S RIDICULOUS, IT NEVER HAPPENED.  IT'S BAZAAR.  AND

14   IT JUST GOES TO SHOW WHERE THIS LADY IS COMING FROM.

15       NOW THERE'S NO DOUBT THAT IAN GIBBONS HAD A VERY

16   DIFFICULT END OF LIFE.  AND I TRY TO BE DISCREET ABOUT IT.

17   WE'VE LAID IT OUT IN THE PAPERS.  HE WAS DEALING WITH A LOT OF

18   ISSUES THAT HAD ABSOLUTELY NOTHING TO DO WITH THERANOS.

19       YOU KNOW, THIS IDEA THAT HE CAME HOME AND SAID OH,

20   ELIZABETH IS LYING ABOUT INVENTORSHIP AND SUPPOSEDLY NINE

21   MONTHS LATER SHE RELAYS THIS TO OUR LITIGATION ADVERSARIES, IS

22   JUST ABSURD.

23       AND THE KEY THING HERE, I MEAN, UTTERLY, HOW COULD WE

24   POSSIBLY EVEN BE HERE OVER THIS, IS WE ASKED FOR ALL OF THE

25   CORRESPONDENCE BETWEEN THE FUISZES AND MRS. GIBBONS.  THEY

1    ACTUALLY GAVE US A LITTLE BIT MORE THAN WHAT THEY GAVE THE

2    COURT BUT THEN THEY ARE HOLDING BACK ON EVERYTHING ELSE.

3         WHAT WE CAN TELL BY LOOKING AT IT IS SHE WAS SIGNING UP

4    FOR WHATEVER DR. FUISZ TOLD HER.  DR. FUISZ TELLS HER, WHICH IS

5    ONE OF THEIR THEMES IN THE CASE, OH IT LOOKS TO ME LIKE

6    THERANOS WAS WORKING ON BIG PHARMA DRUG TILES, NOT CLINICAL, IS

7    THAT YOUR UNDERSTANDING.

8         AND SHE RESPONDS WITH YES, THEY WEREN'T FOCUSED ON

9    CLINICAL, BUT OF COURSE IAN COULDN'T TALK TO ME ABOUT THEIR

10   BUSINESS SO I DON'T REALLY KNOW, BUT YEAH YOU ARE RIGHT.

11        AND SHE CONTINUALLY, IF YOU LOOK AT THE E-MAIL

12   CORRESPONDENCE CLOSELY, SHE SIGNS UP FOR WHATEVER THEY TELL

13   HER.  THE WOMAN DOES HAVE AN AX TO GRIND.  I'VE NEVER MET HER,

14   SHE OBVIOUSLY HATES OUR CEO.  AND YOU KNOW, IT JUST IS NOT EVEN

15   REMOTELY GETTING OFF THE GROUND HERE.  IT'S NOT CREDIBLE ON ITS

16   FACE.  AND THERE'S NO SWORN TESTIMONY, THIS IS A COMPLETE SIDE

17   SHOW.

18        I THINK IT'S BROUGHT TO EMBARRASS OUR CEO.  FROM THE

19   BEGINNING OF THIS CASE THE FUISZ'S HAVE HAD THIS INTEREST IN

20   HER PERSONAL LIFE.  AND THEY CONTINUALLY HAVE TRIED TO GET INTO

21   WHO HER PERSONAL RELATIONSHIPS ARE, YOU KNOW, HISTORICAL.

22   THEY -- THEN THE CHANNING ROBERTSON DEPOSITION THEY EXPLORE

23   THEIR THEORY THAT SHE SOMEHOW IS CARRYING ON WITH A MARRIED MAN

24   WHO IS TWICE HER AGE.

25        IT'S JUST, AT SOME POINT THEY NEED TO GIVE IT A BREAK.

```
 1    WE'VE GOT TO ACTUALLY TRY IT ON THE ISSUES.  AND THE IDEA THAT

 2    IAN WAS HARASSED INTO NOT GIVING A DEPOSITION, IS JUST NOT

 3    TRUE.  THERE WAS A GREAT DEAL OF CONCERN ABOUT WHETHER OR NOT

 4    HE WAS PHYSICALLY AND MENTALLY CAPABLE OF EVEN GIVING A

 5    DEPOSITION.

 6         NOW ON THIS LETTER THAT COUNSEL PROVIDED THAT THERANOS

 7    COUNSEL PROVIDED TO DR. GIBBONS AND THEN MRS. GIBBONS WHO IS A

 8    LAWYER AND CERTAINLY WOULD HAVE KNOWN BETTER PROVIDED IT TO THE

 9    FUISZ'S, ONE OF WHOM IS A LAWYER AND SHOULD HAVE KNOWN BETTER,

10    AND THEY USED IT ON THIS MOTION.

11         WE HAVE NO PROBLEM AT ALL WITH THE COURT REVIEWING THAT

12    IN CAMERA.  I'VE SEEN IT.  IT'S PERFECTLY APPROPRIATE.  IT'S A,

13    YOU KNOW, IF YOU -- IF THERE'S A HEALTH ISSUE, THIS IS

14    SOMETHING THAT YOUR DOCTOR COULD SAY THAT WOULD BEAR ON YOUR

15    GIVING A DEPOSITION.

16         AND LASTLY, THE WHOLE PREMISE THAT DR. GIBBONS WAS ON

17    THEIR SIDE IS JUST WRONG.  AND YOU KNOW, I BELIEVE FROM TALKING

18    TO OTHER WITNESSES AT THE COMPANY, THAT HE THOUGHT THE FUISZES

19    WERE A BUNCH OF THIEVES.  AND IF HE HAD GIVEN A DEPOSITION IN

20    THIS CASE, THERANOS BELIEVES HE WOULD HAVE SAID, THE FUISZES

21    WERE A BUNCH OF THIEVES.

22         SO FOR THERE TO BE THIS ATTEMPT TO SIDE TRACK THE

23    LITIGATION FROM THE FACTS WITH THESE SCANDALOUS AND UNSAVORY

24    ALLEGATIONS, WE THINK IS HIGHLY IMPROPER.

25              THE COURT:  ALL RIGHT.
```

1        MR. FUISZ, DO YOU WANT TO RESPOND?

2        MR. JOE FUISZ:  LISTEN, MR. UNDERHILL IS DOING WHAT A

3    GOOD ADVOCATE WOULD DO WHICH IS TO FOCUS ON SOME WORDS THAT

4    MRS. GIBBONS USED WHICH FRANKLY CAN MEAN A LOT OF THINGS, NOT

5    NECESSARILY SOMETHING UNSAVORY, IF THAT MAKES ANY SENSE.  I

6    CERTAINLY DID NOT TAKE THAT AS A LITERAL ACQUISITION AGAINST

7    THE PLAINTIFF.  CERTAINLY THAT WAS MY READING OF IT, NUMBER

8    ONE.

9        TWO, LOOK, MR. UNDERHILL LOVES TO SAY WE DIDN'T GO OUT

10   WITH THE CORRESPONDENCE.  BUT WE OFFERED, WE SAID WE WILL

11   PROVIDE EVERYTHING IN CAMERA TO THE COURT, ALL OUR

12   COMMUNICATIONS WITH MRS. GIBBONS TO SEE IF WE WERE COACHED, BUT

13   WE WOULD LIKE YOU GUYS TO MAKE A SIMILAR PROFFER IF THINGS YOU

14   HAVE HELD BACK ARE PRIVILEGED WITH GIBBONS AND PERHAPS THAT

15   WOULD BE PROBATIVE OF SOMETHING OR NOT AS THE CASE MAY BE.

16       THAT'S ONE THING I THOUGHT WAS REASONABLE.  WE HAVE A

17   TRIAL HERE, AND I DON'T REALLY EXPECT YOUR HONOR TO REOPEN

18   DISCOVERY, SO THAT WAS ONE POSSIBLE SOLUTION I THOUGHT OF.

19       THE OTHER THING WOULD BE IF YOUR HONOR WOULD ALLOW US TO

20   CALL DR. GARDENER AND MRS. GIBBONS AS WITNESSES IN THE CASE.  I

21   KNOW IT'S AFTER FACT DISCOVERY, I KNOW IT WAS IT WOULD BE A

22   SPECIAL ALLOWANCE, BUT I THINK IT WOULD IN THE INTEREST OF

23   JUSTICE ALLOW THIS TO BE PURSUED.

24       I DON'T FRANKLY KNOW, LOOK, MRS. GIBBONS IS A WIDOW, WHO

25   IS TO SAY, BUT I THINK THAT WOULD BE PERHAPS A REASONABLE

1    RESOLUTION.

2            THE COURT:  GO AHEAD, DR. FUISZ.

3            MR. RICHARD FUISZ:  MR. UNDERHILL CONTINUALLY

4    MINIMIZES, HE'S GOT CROWN JEWELS, HE'S GOT ALL THESE STORIES.

5    THERE WAS NOT ONE LETTER.  SHE SAID THERE WERE 4 OR 5 LETTERS,

6    EACH ONE MORE STRIDENT FROM THE ATTORNEYS.

7        WHY DOESN'T HE TURN THOSE OVER?  IS THAT NOT RELEVANT?  AND

8    SUDDENLY IN HIS DEATH, MR. UNDERHILL SEEMS TO KNOW HOW HE WOULD

9    TESTIFY, WHEN HIS WIFE SAID HE WOULD ABSOLUTELY NOT TESTIFY ON

10   THERANOS'S BEHALF.

11           THE COURT:  ALL RIGHT.

12       MR. UNDERHILL, DO YOU WANT TO OFFER A FINAL WORD ON THIS

13   ONE?

14           MR. UNDERHILL:  SURE.

15       WE STILL HAVEN'T WORD WHY THERE'S NO SWORN DECLARATION.

16   SHE'S SUPPOSEDLY WILLING READY AND ABLE TO TESTIFY BUT WON'T

17   GIVE HIM A SWORN DECLARATION.

18       SECOND, I JUST WANT TO SAY THIS THING ABOUT IAN GIBBONS

19   BEING FIRED OR REHIRED, THEY SEEM INTENSELY CURIOUS ABOUT THAT

20   SO LET ME BE CLEAR.

21       YES, HE WAS FIRED AND REHIRED, IT WAS IN 2010, HAD

22   NOTHING TO DO WITH THIS.  AND YES, HE GOT FIRED BECAUSE

23   CHANNING ROBERTSON WENT TO THE COMPANY AND REPORTED WHAT HE HAD

24   SAID.  SO YES HE WAS MAD AT CHANNING ROBERTSON.  THERANOS

25   DOESN'T THINK CHANNING ROBERTSON DID ANYTHING WRONG, HE DID

 1    EXACTLY WHAT HE WAS SUPPOSED TO DO.

 2         SO WE ARE WILLING TO STIPULATE THAT IAN GIBBONS WAS MAD

 3    AT CHANNING ROBERTSON.

 4              THE COURT:  ALL RIGHT.

 5         WHILE WE HAVE TOUCHED UPON A NUMBER OF ISSUES HERE,

 6    THERE'S A FAIRLY STRAIGHTFORWARD ONE THAT'S ACTUALLY BEFORE ME

 7    WHICH IS WHETHER IT PROVIDES SOME TYPE OF ADVERSE INSTRUCTION

 8    AS A RESULT OF WHAT'S BEEN IDENTIFIED TO THE COURT.

 9         THAT SPECIFIC REQUEST IS DENIED.  I DON'T HAVE EVIDENCE

10    BEFORE ME THAT WOULD ALLOW ME TO TAKE THAT STEP.  AND ON THAT

11    BASIS ALONE I'M GOING TO DENY THE MOTION.

12         AS FOR OPENING DISCOVERY, I THINK EACH SIDE CAN PROBABLY

13    READ ME ON THAT ONE, NOT OPENING DISCOVERY.  WE ARE GOING TO

14    GET THIS CASE TRIED AND GET THIS DISPUTE RESOLVED ONE WAY OR

15    THE OTHER IN JUST A COUPLE OF DAYS.

16         SO ON THAT BASIS THE MOTION IS DENIED.  LET'S MOVE

17    FORWARD.

18         MS. ANDERSON, I WOULD LIKE TO HEAR FROM YOU ON THE

19    DESIGNATIONS YOU TOUCHED UPON A FEW OF THE ISSUES.

20              THE COURT:  I DON'T KNOW IF WE DO, PERHAPS WE CAN

21    TALK ABOUT THIS IN THE ABSTRACT WITHOUT GETTING INTO THE

22    SPECIFICS BUT IF WE NEED THE SPECIFICS I WILL TAKE WHATEVER

23    STEPS WE NEED TO.

24         GO AHEAD, MS. ANDERSON, I WOULD LIKE TO UNDERSTAND BETTER

25    WHAT YOU HAVE FOUND AND WHAT SPECIFICALLY YOU WANT REDESIGNATED

1    THAT HASN'T BEEN REDESIGNATED.

2         MS. ANDERSON:  WELL, YOUR HONOR, I THINK THE

3    RELEVANCE HERE HAS A LOT TO DO WITH, I'M NOT A PATENT LAWYER,

4    I'M IN A STOCK AND BROAD BRUSH TERMS.

5         THE ISSUES OF INVENTORSHIP AND CONCEPTION ARE TOUCHED UPON

6    IN REDACTIONS THAT EXIST, THE DATE UPON WHICH MR. KEMP STARTED

7    WITH THERANOS IS A VERY RELEVANT ITEM.  ON PAGE 14 IT STARTS

8    THE TIMELINE OF WHEN HE BEGAN.

9         IF YOU CONTINUE ON DOWN, IT SHOWS THE CAPABILITIES ALL

10   RELEVANT INFORMATION FOR THE JURY TO ASSESS INVENTORSHIP AND

11   WHEN CONCEPTION OCCURRED.  THE TYPE OF PROTOCOLS THAT WERE USED

12   AND THE MOVEMENT OF DATA ARE KEY ISSUES AS I SEE IT AS I'M

13   READING THE PARTY'S PAPERS, IN HOW THESE DEVICES WORK.  AND

14   WHAT EXACTLY IT WAS THAT THERANOS WAS DOING AT THE TIME.

15        BECAUSE THIS INFORMATION IS SO INCREDIBLY DATED AT THIS

16   POINT, I DON'T SEE HOW THERE IS AS ITS REPRESENTED IN THE

17   THERANOS PAPERS, SOMETHING HASN'T BEEN DISCLOSED.

18        THESE TECHNOLOGIES HAVE BEEN AROUND FOR A CONSIDERABLE

19   PERIOD OF TIME.  AND IN 2014 A LOT OF THIS STUFF IS IN WORKING

20   DEVICES.  WHEN YOU ARE TALKING ABOUT DEVICES -- I TOUCHED UPON

21   EARLIER THE DISCUSSION OF THE VARIOUS PROVISIONAL ASSERTATIONS

22   AND THE QUESTIONS THAT WERE ASKED OF MR. KEMP REGARDING WHAT

23   HIS PARTICIPATION WAS AND WHAT THE PROVISIONAL DID.

24        AGAIN, I THINK THE COURT HAS ALREADY RULED ON THAT.  BUT

25   JUST OUT OF AN ABUNDANCE OF CAUTION THESE PAGES START ON PAGE

1    35 OF THE DEPOSITION AND CONTINUE, SOME OF THIS HAS BEEN OPENED

2    UP, SOME OF IT HASN'T.  AND I JUST DON'T SEE THIS IS A PIECE

3    THAT'S EVEN ATTACHED TO THE COMPLAINT AS BEING ESTABLISHING A

4    DATE OF INVESTOR SHIP, HOW THEY CAN DENY PROVIDING THIS TO THE

5    DEFENDANTS AND ALLOW THE JURY TO MAKE THE NECESSARY DECISIONS

6    THAT THEY HAVE TO MAKE HERE

7        AND I JUST WANT TO STEP BACK FOR A MOMENT.  I'M TALKING

8    ABOUT RELEVANCE, BUT THE CASE LAW FROM BROWN BAG CLEARLY

9    DOESN'T REQUIRE THAT.

10       HERE WE ARE REALLY TALKING ABOUT WHAT THE PARTIES AGREE

11   TO IN THE PROTECTIVE ORDER WHICH WAS EXTREMELY SENSITIVE,

12   CONFIDENTIAL INFORMATION, THE DISCLOSURE OF WHICH WAS TO

13   ANOTHER PARTY OR NONPARTY WOULD CREATE SUBSTANTIAL AND SERIOUS

14   HARM, COULD NOT BE AVOIDED BY UNLESS RESTRICTED --

15       SO ON ONE HAND THE CLIENTS TO ALLOW THE PARTIES HERE TO

16   READ THE INFORMATION THAT MR. KEMP IS TESTIFYING ABOUT WHAT HIS

17   PARTICIPATION WAS ON, FOR INSTANCE PROVISIONAL APPLICATION FOR

18   192, AND ON THE OTHER HAND REDACTED IT.

19           THE COURT:  MS. ANDERSON, WE ARE HAVING A LITTLE HARD

20   TIME.  IF YOU COULD KEEP YOUR VOICE UP, THAT WOULD HELP US.

21           MS. ANDERSON:  AND REDACTED IT HERE IN THE PAGES OF

22   THE DEPOSITION.

23           THE COURT:  ALL RIGHT.

24           MS. ANDERSON:  WHAT WAS UNIQUE IN THE BAR CODE.

25       AND I DO NEED TO DISCUSS THE E-MAILS AS WELL, YOUR HONOR.

1          IF THE COURT -- DOES THE COURT PLAN ON LOOKING AT THESE

2     REDACTED PAGES AND LOOKING AT THIS FROM A RELEVANT STANDPOINT

3     AS WELL AS WHETHER OR NOT THE PARTIES SHOULD USE THIS

4     INFORMATION FOR CROSS-EXAMINATION PURPOSES, I THINK THAT'S

5     NECESSARY GIVEN WHAT MR. UNDERHILL HAS DESCRIBED AS WHAT WOULD

6     BE DONE ON THE WITNESS STAND.

7          I CAN TAKE THE COURT'S TIME NOW AND DISCUSS IT OR DO IT,

8     HAVE THE COURT DO THIS IN CAMERA.

9          BUT THE E-MAILS IN PARTICULAR, I THINK THE THERANOS HAS

10    MISUNDERSTOOD WHAT IT WAS THAT I REQUESTED.  I DID NOT REQUEST

11    FOR THE ATTACHMENTS TO BE PROVIDED AT THE VARIOUS WRATHS OF THE

12    APPLICATIONS THAT WERE SUBMITTED.  BUT THE E-MAILS VERIFYING

13    THE COMMUNICATIONS OCCURRED THAT DUE TO THE PASSAGE OF TIME,

14    MR. BOMMI BOMMANNAN COULD NOT RECALL OCCURRED.

15         THE KEY TO THE FUISZ'S DEFENSE AS I SEE THE PAPERS

16    WRITTEN, TO BE ABLE TO PRESENT THE DRAFTING THAT BOMMI

17    BOMMANNAN HAD ENGAGED IN.  AND AS IS FAIRLY EVIDENT ON THE FACE

18    OF THE E-MAIL BECAUSE IT'S SAYING ATTACHED TO PROVISIONAL

19    NUMBER X, Y AND Z, AND SENDING IT BACK AND FORTH BETWEEN MS.

20    HOLMES AND MR. BOMMANNAN.

21         AND THAT WOULD BE CONSISTENT AND COOPERATIVE OF WHAT THE

22    DEFENSE IS PRESENTING WITH REGARD TO THE AUTHORSHIP AND THE

23    WRITING OF THE PATENT APPLICATION ITSELF.

24         THERE'S EIGHT E-MAILS THAT WERE OUT LINED.  I WOULD

25    DIRECT THE COURT'S ATTENTION PARTICULARLY TO THERANOS NUMBER

1    3031, 2436, 165, 3187, 3188, 3189, 3217 AND LASTLY, 3368.

2         AND THE DATES ARE IMPORTANT ON THESE E-MAILS BECAUSE IT'S

3    TALKING ABOUT DECEMBER 2005.  GIVES THE JURY A VIEW OF WHAT IT

4    WAS THAT WAS OCCURRING BACK THEN AND WHEN THE DRAFT OF THE

5    APPLICATION WAS READY TO BE FILED, CRITICAL DATES AS I SEE IT

6    IN THIS CASE.

7         THE COURT:  ALL RIGHT.  I THINK I UNDERSTAND YOUR

8    POSITION.  I MAY HAVE A FEW QUESTIONS FOR YOU AFTER I'VE HEARD

9    FROM THERANOS.

10        MR. JAY, DO YOU WANT TO PROCEED?

11        MR. JAY:  SURE.

12        SO YOUR HONOR, WE THINK WE MET WITH YOUR HONOR ON

13   FEBRUARY 12TH A FEW WEEKS AGO.

14        AFTER THAT WE WENT BACK IT A NUMBER OF DIFFERENT

15   DEPOSITION TRANSCRIPTS INCLUDING MR. KEMP'S TRANSCRIPT AND DOWN

16   DESIGNATED A NUMBER OF PORTIONS OF HIS TRANSCRIPT.

17        THE COURT:  THEY ARE STILL CONFIDENTIAL JUST NOT AEO.

18        MR. JAY:  CORRECT, WHICH THE FUISZ'S CONCEDE.

19        THEN SUBSEQUENT TO THAT, LAST WEEK THE DAY BEFORE I THINK

20   THE FUISZ'S FILED, MS. ANDERSON FILED HER MOTION ON TUESDAY

21   AROUND 5 OR 6:00, THE EVENING BEFORE SHE SENT US A LIST OF

22   PORTIONS OF MR. KEMP'S DEPOSITION THAT SHE WANTED US TO

23   RECONSIDER DOWN DESIGNATING.  WE DIDN'T HAVE ENOUGH TIME TO DO

24   SO BEFORE SHE FILED THEIR MOTION.

25        SHE FILED THEIR MOTION BUT WE ACTUALLY WENT BACK AGAIN TO

1       MR. KEMP'S TRANSCRIPT AND FURTHER DOWN DESIGNATED A SUBSTANTIAL

2       PORTION OF HIS TRANSCRIPT INCLUDING THE PORTIONS OF THE

3       TRANSCRIPT THAT MS. ANDERSON WAS TALKING ABOUT NOW.

4            FOR INSTANCE, SHE WAS TALKING ABOUT THINGS SUCH AS

5       BACKGROUND AND START DATE AND THINGS OF THAT SORT.  AND THOSE

6       THINGS ARE ALL NOW DESIGNATED CONFIDENTIAL.  I SENT AN E-MAIL

7       TO MS. ANDERSON ON MONDAY EVENING LISTING ALL OF THE PORTIONS

8       THAT WE OFFICIALLY DOWN DESIGNATED TO CONFIDENTIAL.

9            THE PORTION THAT IS REMAIN AEO ARE CERTAIN PORTIONS OF

10      MR. KEMP'S TRANSCRIPT THAT DO CONTAIN THE MOST SENSITIVE OF

11      THERANOS'S INFORMATION THAT WE BELIEVE IN THE HANDS OF THE

12      FUISZ'S COULD POTENTIALLY CAUSE THERANOS SIGNIFICANT HARM.

13           MS. ANDERSON MENTIONED THE TIMING OF ALL OF THIS.  I

14      THINK WE EXPLAINED IN OUR PAPERS THE REASON WHY EVEN THOUGH

15      SOME OF THIS INFORMATION IS FROM THE PERIOD OF 2004 TO 2006 IT

16      COULD STILL BE HARMFUL NOW BECAUSE, IT TALKS ABOUT CERTAIN

17      UNRELEASED PRODUCTS THAT STILL HAVE NOT NECESSARILY MADE THEIR

18      WAY INTO THE PUBLIC'S VIEW AT THIS POINT.

19           AS FAR AS THE DOCUMENTS, THE EIGHT E-MAILS THAT THEY

20      IDENTIFIED IN THEIR MOTION, SEVEN OF THOSE E-MAILS ARE BETWEEN

21      THERANOS AND MR. BOMMANNAN AND ONE E-MAIL IS BETWEEN THERANOS

22      AND THOMAS HOGUE, AN ATTORNEY AT MCDERMOTT.

23           THOSE E-MAILS CONTAIN CERTAIN INFORMATION AGAIN THAT IS

24      VERY SENSITIVE TO THERANOS.  MS. ANDERSON WAS TALKING ABOUT

25      THAT THEY WOULD WANT THOSE E-MAILS TO SHOW THAT IT WAS INDEED

1    MR. BOMMANNAN THAT DRAFTED THE FOUR PROVISIONAL APPLICATIONS OR

2    THE TIMING OF THAT.  WE WOULD BE GLAD TO STIPULATE THAT MR.

3    BOMMANNAN DID THE DRAFTING, WE WOULD BE GLAD TO STIPULATE TO

4    THE DATES IN WHICH HE SENT THOSE PROVISIONALS TO MR. HOGUE AND

5    MCDERMOTT, THAT'S NOT AN ISSUE.  BUT WE CONTINUE TO BELIEVE

6    THOSE DOCUMENTS ARE PROPERLY DESIGNATED AEO.

7             THE COURT:  OKAY.

8        ON THIS ISSUE, LET ME SUGGEST THIS, RATHER THAN CONSUME

9    OUR PRECIOUS TIME HERE THIS AFTERNOON ADDRESSING EACH ITEM IN

10   OPEN COURT AND IN FURTHER DETAIL, I'M HAPPY TO TAKE A LOOK AT

11   THE TRANSCRIPT, TAKE A LOOK AT THE E-MAILS AND MAKE A DECISION

12   IN CHAMBERS.

13       SO I WILL TAKE THIS ONE UNDER ADVISEMENT AND I WILL

14   INCLUDE A MORE DETAILED RULING IN THE FORMAL ORDER I WILL ISSUE

15   AFTER THIS HEARING.

16            MR. JAY:  YOUR HONOR, QUICKLY ONE THING.

17            THE COURT:  YES.

18            MR. JAY:  I MENTIONED THAT WE SAID ON MONDAY A LIST

19   OF THE PORTIONS OF MR. KEMP'S TRANSCRIPT THAT WE DOWN

20   DESIGNATED, AND I BELIEVE IT'S A VERY EARLY FOOTNOTE IN OUR

21   BRIEF WE FILED THE OTHER DAY, WE LIST THE REMAINDER OF

22   MR. KEMP'S TRANSCRIPT THAT IS STILL DESIGNATED AEO.

23            THE COURT:  SO, I'M SORRY, AND IS THIS, ARE YOU

24   REFERRING TO AN IF THE NOTE IN YOUR OPPOSITION PERHAPS FOOTNOTE

25   2?

1          MR. JAY:  YES, THAT IS CORRECT.  THOSE ARE THE

2     PORTIONS THAT REMAIN DESIGNATED AEO.

3          THE COURT:  OKAY.

4          MR. JAY:  JUST TO MAKE IT EASIER FOR YOUR HONOR.

5          THE COURT:  ALL RIGHT.  I APPRECIATE THAT.  OKAY.  WE

6     WILL HUNT THOSE DOWN.

7          I ASSUME THESE ARE ALL IN THE POSTED RECORD, SO I WILL TAKE

8     IT FROM THERE.

9          ALL RIGHT.  AS FOR THE LAST MOTION THAT THE FUISZ'S HAVE

10    FILED THAT'S CURRENTLY ON THE DOCKET, IT RELATES TO THE 256

11    CLAIM.

12         I HAD UNDERSTOOD THE PREDICATE FOR THAT MOTION A CONCERN

13    FROM THE FUISZ'S THAT THE PLAINTIFFS WERE NOW ASSERTING ONLY

14    THAT MS. HOLMES WAS OMITTED.

15         I THINK MR. UNDERHILL HAS CONFIRMED HERE IN COURT THEY

16    MAINTAIN THE POSITION IT WAS BOTH MS. HOLMES AND MR. KEMP.

17         SO IN LIGHT OF THAT, I THINK THE MOTION CAN BE DENIED.  I

18    THINK THE PREJUDICE HAS BEEN ADDRESSED, SO I APPRECIATE THAT

19    CLARIFICATION.

20         LET'S TURN TO THE THERANOS MOTIONS WE HAVE TO ADDRESS.  I

21    WOULD LIKE TO BEGIN WITH THE DAUBERT ON THE BRYAN BERGERON.

22         MR. JAY:  YOUR HONOR, I THINK ALL OF OUR ARGUMENTS

23    ARE FAIRLY WELL SPELLED OUT IN THE PAPERS.

24         I DON'T BELIEVE WE HAVE SEEN, ACTUALLY, AN OPPOSITION TO

25    THIS PARTICULAR MOTION FROM THE FUISZ'S, SO I'M NOT SURE IF

1          THEY ARE INDEED ACTUALLY OPPOSING IT.

2                    MR. JOE FUISZ:  WE DO.

3                    MR. JAY:  OR NOT.

4          AND I THINK WE SAID IT VERY CLEARLY IN THE MOTION.  THERE

5    ARE SYSTEMIC FLAWS THROUGHOUT DR. BERGERON'S REPORT THAT RENDER

6    HIS ENTIRE REPORT FLAWED AND EXTREMELY PREJUDICIAL.

7          THE FLAWS TOUCH ON EVERY SINGLE ASPECT OF HIS REPORT.  HE

8    OFFERS AN OPINION ON DR. LEONARD'S ANALYSIS BUT HE MAKES VERY

9    CLEAR HE'S NOT A LINGUIST.  HE TALKS ABOUT CERTAIN SECONDARY

10   CONSIDERATIONS.

11         HE GETS THE LAW ON THAT QUITE WRONG.  HE TALKS ABOUT

12   EVIDENCE OF SIMULTANEOUS INVENTION BEING INDICATIVE OF

13   NONOBVIOUSNESS, BUT IN FACT THE LAW IS EVIDENCE OF OBVIOUSNESS.

14   AND THERE ARE A NUMBER OF OTHER THINGS OF THAT SORT.  HE

15   IMPROPERLY CONSTRUES SOME OF THE TERMS CONTRARY HOW YOUR HONOR

16   CONSTRUED THE TERMS.

17         HE PROVIDES VERY CONCLUSORY OPINIONS ON OBVIOUSNESS.  HE

18   SAYS -- THE OBVIOUSNESS COMBINATIONS.  SAID A PERSON OF

19   ORDINARY SKILL IN THE ART WOULD NOT HAVE BEEN MOTIVATED TO

20   COMBINE THE 594 WITH CERTAIN REFERENCES BUT DOESN'T PROVIDE ANY

21   REASONING AS TO WHY THAT'S THE CASE.

22         SO BASED ON THESE FLAWS, WE BELIEVE, THAT PERSIST

23   THROUGHOUT HIS ENTIRE REPORT, WE BELIEVE DR. BERGERON SHOULD BE

24   EXCLUDED IN HIS ENTIRETY

25                    THE COURT:  ALL RIGHT.  THANK YOU.

1          MR. FUISZ, DR. FUISZ?

2          MR. JOE FUISZ:  YOUR HONOR, I KNOW I SAID I WOULD

3     TAKE ON THE SOLE RESPONSIBILITY OF THIS TRIAL, I'M SORRY I JUST

4     DIDN'T HAVE A TIME TO FILE A REPLY ON THIS.

5          A LOT OF THEIR CRITICISMS I DISAGREE WITH.  THE

6     TERMINOLOGY ERROR I HAVE TO CONCEDE IS RIGHT.  BUT TO ME IT

7     GOES TO WEIGHT.  I THINK THESE ARE ALL THINGS HE CAN BE

8     CROSS-EXAMINED ON.

9          AND I ALSO THINK, I JUST THINK PHILOSOPHICALLY I WANT TO

10    MAKE A POINT.  OF THE PUTATIVE INVESTORS, MR. KEMP, MS. HOLMES

11    THE EXPERTS, DR. CLARKE PHD, ROBERTSON PHD, I THINK IT'S VERY

12    NICE TO HEAR FROM A MEDICAL DOCTOR.  BECAUSE A BIG THING IN

13    THIS CASE FOR THE JURY TO UNDERSTAND IS THE CLINICAL CONTEXT OF

14    THE USE OF THIS DEVICE, AND I THINK BERGERON HAS A LOT TO OFFER

15    SO THAT WOULD BE HELPFUL TO THE JURY IN THAT RESPECT.  AND

16    AGAIN, MY APOLOGIES FOR NOT FILING A REPLY.

17          THE COURT:  OKAY.

18      DR. FUISZ, WOULD YOU LIKE TO BE HEARD?

19          MR. RICHARD FUISZ:  YOUR HONOR, I WOULD JUST LIKE TO

20    UNDERSCORE THAT.  YOU HAVE A SITUATION HERE WHERE YOU ARE

21    DEALING WITH A MEDICAL PRODUCT TO TAKE CARE OF A PATIENT.  AND

22    I'M THE ONLY PHYSICIAN, AND BERGERON IS THE ONLY PHYSICIAN.  SO

23    IF YOU ELIMINATE BERG, YOU BASICALLY HAVE NO MEDICAL INPUT, YOU

24    KNOW, INTO THE MATERIAL.

25          I FIND IT VERY DISCOURAGING.  I THINK IF YOU LOOK AT HIS

1    TRANSCRIPT, YES, HE HAS MADE SOME ERROR IN DEFINING A TERM.

2    THAT'S NOT REALLY WHAT HE'S AN EXPERT IN AND I THINK HIS

3    OVERALL SUMMARY IS VERY CORRECT.

4         THE 612 IS PATIENT CENTRIC AND THE PROVISIONALS ARE NOT,

5    THEY ARE DONE FOR CLINICAL TRIALS.  AND I THINK HE VERY CLEARLY

6    SAW THAT AND I THINK THAT'S REALLY WHAT THEY FIND OBJECTIONABLE

7    IN BERG.

8         THE COURT:  ALL RIGHT.  THIS MOTION IS DENIED.  BUT

9    LET ME BE CLEAR ABOUT A FEW THINGS.

10        FIRST OF ALL, ANY ERRORS IN THE REPORT ARE GOING TO BE

11   FAIR GAME FOR CROSS-EXAMINATION.  I THINK WE ALL UNDERSTAND

12   THAT.  AS FOR ANY MISSTATEMENTS OF LAW OR MISAPPLICATION OF

13   LAW, NOT ONLY IS THAT GOING TO BE FAIR GAME, I WILL INSTRUCT

14   THIS JURY ON THE CORRECT LAW AND I WILL PERMIT IN CLOSING

15   ARGUMENTS, I WILL PERMIT COUNSEL ON EITHER SIDE TO HIGHLIGHT

16   ANY MISAPPLICATION OF LAW THAT ANY EXPERT WITNESS MADE IN

17   REACHING HIS OR HER OPINIONS.

18        AS FOR THE CLAIM TERMS, THAT'S MY PROVINCE AS WELL, SO I

19   WILL CERTAINLY MAKE CLEAR TO THE JURY WHAT THE PROPER

20   CONSTRUCTION OF ANY DISPUTED TERM IS.

21        TO THE EXTENT ANY EXPERT WITNESS STRAYS FROM THAT, THAT'S

22   GOING TO BE FAIR GAME IN ARGUMENT.

23        FINALLY, SINCE WE'VE TOUCHED UPON THIS I WANT TO BE CLEAR

24   ABOUT ONE OTHER POINT IF I WASN'T CLEAR BEFORE, I TEND TO TAKE

25   A VERY FORMALISTIC VIEW OF WHAT EXPERTS CAN AND CANNOT DO WHILE

1    ON THE WITNESS STAND.

2         WHAT I MEAN BY THAT IS THIS, IF AN EXPERT STRAYS REALLY

3    AT ALL FROM THE REPORT, AND IT'S POINTED OUT TO ME AFTER AN

4    OBJECTION HAS BEEN MADE, I WILL GRANT -- I WILL SUSTAIN THE

5    OBJECTION AND IF IT CONTINUES I WILL POINT OUT TO THE JURY THAT

6    THE EXPERT IS DOING SOMETHING IMPROPER.

7         SO WE ARE GOING TO HAVE A VERY TIGHTLY SCRIPTED PROCEDURE

8    HERE AND I THINK THAT WILL ALSO MITIGATE AGAINST ANY UNDUE

9    HARM.

10        ALL RIGHT.  LET'S TURN TO THE MOTION IN LIMINE FROM

11   THERANOS NUMBER 1, WHICH HAS TO DO WITH CONCEPTION DATES.

12             MR. JAY:  YOUR HONOR, CAN I MAKE ONE CLARIFICATION?

13             THE COURT:  SURE.

14             MR. JAY:  YOU ARE TALKING ABOUT GENERALLY WITH

15   RESPECT TO DR. BERGERON BUT WITH RESPECT TO HIS OPINIONS ON

16   DR. LEONARD'S REPORT IS HE GOING TO BE PERMITTED TO OPINE ON

17   THAT PORTION?

18             THE COURT:  HE SERVED A SUPPLEMENTAL REPORT, DIDN'T

19   HE.

20             MR. JAY:  DR. BERGERON?

21             THE COURT:  AM I MISTAKEN ABOUT THAT?

22             MR. JAY:  WELL, HE SERVED A REBUTTAL REPORT AND IN

23   HIS REBUTTAL REPORT HIS VERY IMPORTANT OPINION IS REBUTTING

24   DR. LEONARD'S LINGUISTIC OPINION.  AND I THINK HE MADE VERY

25   CLEAR IN HIS DEPOSITION THAT HE HAS NO EXPERTISE IN THIS AREA.

1          THE COURT:  CROSS HIM ON THAT.  THAT'S YOUR FRIEND

2     THAT'S NOT YOUR ENEMY.  YOU CAN POINT THAT OUT TO THE JURY.  I

3     WOULD LIKE TO HEAR WHAT THESE TWO FOLKS HAVE TO SAY ON ALL

4     THIS.  WE WILL SORT THIS ALL OUT IN DUE COURSE.

5          LET'S TALK ABOUT THE MOTION IN LIMINE NUMBER ONE AND

6     CONCEPTION DATES.

7               MR. UNDERHILL:  DO YOU WANT ME FIRST, YOUR HONOR?

8               THE COURT:  GO AHEAD.  IT'S YOUR MOTION.

9               MR. UNDERHILL:  IT IS OUR MOTION AND THERE WAS NO

10     OPPOSITION SO I REALLY HAVE NOTHING TO SAY THAT'S NOT IN OUR

11     PAPERS.

12               THE COURT:  ALL RIGHT.  I WILL GIVE YOU A CHANCE FOR

13     REBUTTAL.

14               MR. JOE FUISZ:  COULD YOU TELL ME TWO SENTENCES WHAT

15     THE MOTION IS?

16               MR. UNDERHILL:  SURE.

17          YOU GUYS HAVE YOUR E-MAIL IN OCTOBER.  OUR POSITION IS YOU

18     CAN'T PUT ON EVIDENCE OF CONCEPTION THAT PREDATES THAT E-MAIL

19     BECAUSE YOU HAVE NO CORROBORATING EVIDENCE.

20               MR. JOE FUISZ:  AND I BELIEVE -- I'M CONFUSED ABOUT

21     IS THAT.  I BELIEVE AS A MATTER OF LAW MR. UNDERHILL IS CORRECT

22     IN TERMS OF ESTABLISHING A PRIORITY DATE.

23          THAT BEING SAID, I DIDN'T WANT TO BE MUZZLED IN TERMS OF

24     OUR DESCRIPTION OF THE 612 BECAUSE I THINK IT'S THE STORY THE

25     JURY HAS TO HEAR WHETHER IT GOES TO PRIORITY OR NOT.

1          THE COURT:  OKAY.  I WILL PERMIT TESTIMONY THAT IS

2     GENERAL AS TO THE WORK THAT WAS BEING DONE PRIOR TO THE

3     SEPTEMBER 2005 DATE.  BUT TO THE EXTENT ANY EVIDENCE IS

4     INTRODUCED THAT EVEN SNIFFS OR HINTS AT A CONCEPTION DATE PRIOR

5     TO THAT IT'S OUT.  SO THE MOTION IS GRANTED ON THAT BASIS.

6          MR. UNDERHILL?

7          MR. UNDERHILL:  YOUR HONOR, JUST TO CLARIFY THAT.

8       IF THEY ARE GOING TO BE ALLOWED TO GET INTO THIS WE WOULD

9     SEE THAT AS OPENING THE DOOR AND FRANKLY YOUR HONOR WE WOULD

10    LIKE TO LIKE TO TRY TO GET INTO THEIR CONCEPTION STORY.

11          THE COURT:  IF THEY KEEP THE DOOR CLOSED, THE DOOR IS

12    CLOSED ON YOU, BUT IF IT GETS OPENED YOU WILL HAVE AN

13    OPPORTUNITY.

14          LET'S TURN TO NUMBER TWO.

15          MR. UNDERHILL:  YES.

16       THIS IS, AND AGAIN LAID OUT IN OUR PAPERS, AT VARIOUS TIMES

17    IN THIS LITIGATION THEY HAVE MADE NOISES ABOUT, YOU KNOW, BOY

18    SCHILLER BEING EVIL AND THERE'S SOME EMPLOYEE THEY SAY I DON'T

19    KNOW IF IT'S TRUE, I ASSUME IT IS, IN OUR NEW YORK OFFICE THAT

20    PREVIOUSLY DID SOMETHING WRONG AT A PRIOR LAW FIRM.

21       THERE WAS A STORY IN THERE ABOUT ME AT ONE POINT

22    INVOLVING A DISPUTE I HAD WITH MY SECRETARY AT ANOTHER LAW

23    FIRM.  THIS KIND OF STUFF.

24          WE DON'T THINK IT'S REMOTELY RELEVANT TO THE LAWSUIT AND

25    WE DON'T THINK THAT THEY SHOULD BE ALLOWED TO GET INTO THEIR

1    PETTY ATTACKS ON OUR LAW FIRM OR INDIVIDUAL LAWYERS.

2        THE SECOND THING IS THEY HAVE AT VARIOUS TIMES MADE

3    ARGUMENTS ABOUT WHAT THIS LAWSUIT IS DOING TO THEM AND I DON'T

4    MEAN TO MINIMIZE THIS, I'M NOT AT ALL BEING FLIP ABOUT IT BUT

5    IT'S HEART BREAKING AND IT'S VARIOUS THINGS.

6        WE DO NOT BELIEVE THAT THAT'S APPROPRIATE TESTIMONY IN

7    FRONT OF THE JURY.  AND ARE THEREFORE ASKING TO EXCLUDE THAT.

8            THE COURT:  ALL RIGHT.

9        MR. FUISZ, GO AHEAD.

10           MR. JOE FUISZ:  I JUST WANT TO CLARIFY BECAUSE I

11   FEEL -- I JUST WANT TO BE VERY CLEAR ABOUT SOMETHING.  AND I

12   WILL SAY THIS, I HAVE HIGH PERSONAL REGARD AND APPROVAL AND

13   RESPECT FOR MR. UNDERHILL BASED ON MY EXPERIENCE WITH HIM.  I

14   MEAN THAT IN ALL SINCERITY.

15       THE QUESTIONS THAT WERE ELICITED BY MR. MARSILLO FROM MY

16   BROTHER IN DEPOSITION ABOUT PARTNERS LEAVING, NO ONE EVER SAID

17   I HAVE TO SAY ANYTHING INJURIOUS ABOUT MR. UNDERHILL.

18       SO I RESENT A LITTLE BIT THE IMPLICATION THAT SOMEHOW WE

19   WENT AFTER MIKE NUMBER ONE.

20           NUMBER TWO, AND I DON'T WANT TO PUT HIS NAME ON THE

21   RECORD BUT HE OBVIOUSLY WORKS AT BOIES SCHILLER, AND I THINK

22   IT'S GREAT HE DOES, I WENT TO COLLEGE WITH HIM.  HE'S A

23   GENTLEMAN I WENT TO COLLEGE WITH, HE'S A PARTNER, HE STOLE

24   $700,00 IN CLIENT FUNDS.  AND BOIES SCHILLER EMPLOYS HIM NOW.

25   AND I'M HAPPY FOR HIM IN A SINCERE WAY.

1     AND I ONLY RAISE THAT NOT TO GO AFTER THE GUY AT ALL.  I

2  SIMPLY RAISE IT IN THE CONTEXT AND PERHAPS I MISUNDERSTOOD THE

3  LAW BEFORE YOUR HONOR.  BUT WHEN THE QUESTION OF MR. KUNDU'S

4  REPRESENTATION WAS COMING UP AND OUR -- WELL ACTUALLY IT WASN'T

5  MR. KUNDU, AND WHETHER OR NOT AN UNPROVEN ALLEGATION AGAINST US

6  ESSENTIALLY AS BEING THIEVES WOULD DISQUALIFY US, I WAS MERELY

7  TRYING TO SAY, WELL, GUYS, IF THAT'S THE STANDARD, THAT CAN'T

8  BE THE STANDARD.

9     I CERTAINLY WAS NOT IN ANY CAMPAIGN TO DENIGRATE THE

10  BOIES SCHILLER FIRM OR THIS GENTLEMAN IN PARTICULAR, WHO LIKE I

11  SAY, I LIKE.

12     SO WHAT REALLY DROVE ME CRAZY ABOUT THIS MOTION IS, IT'S

13  LIKE I'M GOING TO ACCUSE YOU OF DOING SOMETHING BAD AND MUZZLE

14  YOU, BECAUSE TRUTHFULLY I REALLY DON'T THINK WE DID ANYTHING

15  IMPROPER.

16     AND AS FAR AS WHAT THIS CASE HAS MEANT TO US PERSONALLY,

17  I GUESS I'M CRAZY, I ASSERT THE FIRST AMENDMENT, I WANT TO TELL

18  MY STORY TO THE JURY YOUR HONOR.  I REALLY DO.

19          THE COURT:  ALL RIGHT.  WELL, LET ME OFFER SOME

20  GUIDANCE.

21     AND I SHOULD SAY I'VE READ EVERY LINE IN THIS RECORD

22  INCLUDING THE EXCHANGE THAT YOU'RE REFERRING TO MR. FUISZ.  SO

23  I HAVE A PRETTY CLEAR PICTURE OF WHAT'S BEEN COMMUNICATED HERE.

24     I'M GOING TO GRANT THE MOTION AS IT PERTAINS TO ANY

25  ATTACKS ON LITIGATION COUNSEL OR THE LAW FIRM OR ANY MOTIVES OF

 1    EITHER THE LAW FIRM OR THE LAWYERS.

 2         BUT AS TO WHETHER OR NOT THE FUISZ'S CAN TALK ABOUT WHAT

 3    THIS CASE HAS MEANT TO THEM I'M GOING TO GIVE THEM THAT LEEWAY.

 4    WE ARE NOT GOING TO HAVE A WHOLE SIDE SHOW ON THAT ISSUE

 5    EITHER.  BUT I THINK IT'S FAIR GAME FOR THEM TO MAKE THAT

 6    REFERENCE.

 7         AND OF COURSE, THERANOS WILL CERTAINLY HAVE THE

 8    OPPORTUNITY TO TALK ABOUT THE EFFECT OF THE ALLEGATIONS IN THIS

 9    CASE ON ITS BUSINESS.  I THINK THAT'S FAIR TOO.

10         OKAY.  LET'S TALK ABOUT, WE'VE ALREADY TOUCHED ON THIS

11    MR. UNDERHILL, NUMBER 3.  BUT I THINK WE NEED TO CONFRONT IT

12    DIRECTLY.

13         I TAKE IT BY THIS MOTION YOU ARE SIMPLY LOOKING TO

14    EXCLUDE SOME OF THE ALLEGATIONS THAT WERE REFERRED TO EARLIER.

15              MR. UNDERHILL:  ALL OF IT.

16         I MEAN, WHO ELIZABETH HOLMES HAS DATED IN HER LIFE IS

17    ABSOLUTELY RIDICULOUSLY IRRELEVANT TO THIS CASE.  I DON'T HAVE

18    ANYTHING ELSE TO SAY.

19              THE COURT:  MR. FUISZ?

20              MR. JOE FUISZ:  I -- LISTEN, I HAVE NO INTEREST IN

21    ASKING ANY -- LOOK, IT'S ONLY BEEN RELEVANT TO TWO INSTANCES IN

22    THIS CASE.  IT'S BEEN RELEVANT WHEN WE DEPOSED HER PARENTS IN

23    TERMS HOW THEY KNEW ABOUT THE COMPANY BECAUSE THE CONTACTS OF

24    THE MAKE SENSE IN WHAT THEY KNOW.  THERE, IT WAS RELEVANT.

25         IF MR. BOMMANNAN IS GOING TO COME, HE'S IDENTIFIED ON THE

1    PRETRIAL WITNESS LIST, I THINK IT'S ABSOLUTELY FAIR GAME TO ASK

2    HIM -- HE DOES, I SHOULDN'T HAVE PUT HIS NAME ON THE RECORD,

3    I'M SORRY I DID -- IF IT CAN BE REDACTED --

4           THE COURT:  WELL, HE'S ON THE WITNESS LIST, HE'S

5    ALREADY PART OF THE RECORD.  SO GO AHEAD.

6           MR. JOE FUISZ:  IT'S A MATTER OF PUBLIC RECORD HE

7    IDENTIFIES THE SAME RESIDENTIAL ADDRESS AS MS. HOLMES.

8       IF HE'S GOING TO TESTIFY IN THIS CASE I THINK IT'S A

9    REASONABLE QUESTION.  I WOULD ASK HIM IN THE MOST TASTEFUL

10   RESPECTFUL WAY POSSIBLE.

11      IF A STIPULATION IS PREFERABLE TO PLAINTIFF OR WHATEVER,

12   THAT'S COOL.  I DON'T WANT I REALLY DON'T WANT TO EMBARRASS

13   ANYBODY, I MEAN THAT.  BUT I THINK IF HE DOES TESTIFY, IT'S

14   FAIR.

15          THE COURT:  I JUST WANT TO FOCUS IN PARTICULAR ON

16   THIS INDIVIDUAL OR ANY OTHER WITNESS WHO MIGHT TESTIFY.

17          MR. UNDERHILL:  YES.  ON THIS FIRST, FIRST OF ALL HE

18   MAY OR MAY NOT TESTIFY.

19      SECONDLY, HE'S BEEN EMPLOYED AT THERANOS SINCE 2009.

20   DURING THE ENTIRE PERIOD OF HIS EMPLOYMENT WITH THE THERANOS

21   THERE HAS BEEN NO PERSONAL RELATIONSHIP WITH MS. HOLMES.  WITH

22   RESPECT TO THIS IDEA ABOUT A COMMON RESIDENCE, I'LL REPRESENT

23   TO THE COURT BASED ON REPRESENTATIONS TO ME, THAT AT NO TIME

24   WHILE MR. BOMMANNAN HAS BEEN EMPLOYED AT THERANOS WHICH IS 2009

25   TO DATE, HAVE HE AND MS. HOLMES EVER SHARED A RESIDENCE.

```
 1          SO THAT'S ALL I HAVE TO SAY.  I THINK IT'S ABSOLUTELY

 2    IRRELEVANT.

 3               THE COURT:  GO.  IF YOU WANT TO SAY SOMETHING

 4    DR. FUISZ, GO AHEAD.

 5               MR. RICHARD FUISZ:  JUST SO IT'S NOT MISUNDERSTOOD,

 6    IT'S NOT COMING OUT OF THIN AIR.

 7          MY WIFE WAS PRESENT MANY TIMES WHEN ELIZABETH HOME'S

 8    MOTHER ELIZABETH HOLMES WAS ON THE PHONE AND THE COMPLAINT WAS

 9    MADE THAT THIS MAN --

10               MR. UNDERHILL:  YOUR HONOR, I OBJECT THAT THIS GO ON

11    IN OPEN COURT.  WE DON'T NEED A TRANSCRIPT ON THIS AND IT IS

12    IRRELEVANT.

13               MR. RICHARD FUISZ:  WHY IS IT IRRELEVANT?

14               MR. UNDERHILL:  ANYTHING THE GENTLEMAN IS GOING TO

15    SAY, I BELIEVE RELATES TO --

16               MR. RICHARD FUISZ:  WELL, THEY WENT TO PARIS

17    TOGETHER, THEY WENT TO ASPEN TOGETHER.

18               THE COURT:  ALL RIGHT.

19               MR. RICHARD FUISZ:  WHY IS THAT NOT RELEVANT?

20               THE COURT:  IF I CAN INTERRUPT HERE.

21          I THINK I UNDERSTAND THE GIST OF WHAT IS AT ISSUE, AND LET

22    ME SAY THIS.

23          I'M GOING TO GRANT THE MOTION IN LIMINE.  HOWEVER, IF ANY

24    WITNESS TESTIFIES AND THAT WITNESS HAS HAD A RELATIONSHIP WITH

25    ANY PRINCIPAL IN THIS CASE THAT GOES TO BIAS MOTIVE AND SO
```

```
 1        FORTH, I WILL ALLOW THAT QUESTIONING TO TAKE PLACE.  BUT IF

 2        THEY DON'T TESTIFY, NONE OF THIS IS COMING IN.  SO LET'S JUST

 3        BE CLEAR ABOUT THAT.

 4             ALL RIGHT.  MOTION IN LIMINE NUMBER 5.  THIS HAS TO DO

 5        WITH THE MCDERMOTT CLAIMS.

 6             THE COURT:  MR. MARSILLO.

 7             MR. MARSILLO:  GOOD AFTERNOON, YOUR HONOR.  I WILL BE

 8        BRIEF.

 9             SO WHEN WE FILED THIS ACTION WE BROUGHT CLAIMS AGAINST

10        JOHN FUISZ AS WELL.  THERE WAS A SEPARATE ACTION EVENTUALLY

11        BROUGHT AGAINST THE MCDERMOT LAW FIRM.  JUDGE ROGERS DISMISSED

12        CLAIMS AGAINST MR. FUISZ BASED ON THE STATUTE OF LIMITATIONS.

13        AND THEN JUDGE ISCOE IN D.C. SUPERIOR COURT DISMISSED CLAIMS

14        AGAINST MCDERMOTT BASED ON RES JUDICATA.

15             NEITHER COURT FOUND THAT ALLEGATIONS --

16             THE COURT:  CAN I STOP YOU THERE.  I APPRECIATE THIS

17        ELEMENT OF HIS RULING IN WASHINGTON.

18             IT WAS A RES JUDICATA RULING?

19             MR. MARSILLO:  THERE WERE SEPARATE GROUNDS.  THE

20        PRIMARY ONE BEING RES JUDICATA BECAUSE CLAIMS COULD NOT BE

21        CONTINUED AGAINST JOHN FUISZ BECAUSE THEY WERE UNTIMELY.  THEY

22        COULD NOT BE BROUGHT AGAINST MCDERMOTT.  SO NEITHER COURT FOUND

23        THAT ANY OF THE ALLEGATIONS IN THIS CASE WERE UNTRUE OR FALSE.

24             THOSE RULINGS ARE IRRELEVANT FOR THESE PROCEEDINGS.

25             NOW THE FUISZ'S IN VARIOUS CONTEXT HAVE ALLUDED TO THOSE
```

1    RULINGS IN AN EFFORT TO SAY THAT SOMEHOW THE CLAIMS AGAINST

2    THEM ARE UNFOUNDED.

3         WE BELIEVE THAT ANY TESTIMONY ALONG THESE LINES TO THE

4    JURY, FIRST OF ALL, IT ISN'T RELEVANT.

5         SECOND OF ALL, IT WOULD BE PREJUDICIAL.  AND THIRD OF ALL

6    AS YOUR HONOR KNOWS, THE CLAIMS HERE HAVE SURVIVED BOTH A

7    MOTION TO DISMISS AS WELL AS SUMMARY JUDGEMENT.

8         AND SO IF WE ARE GOING TO GET INTO DISMISSAL OF UNRELATED

9    PROCEEDINGS OR BASED ON THE STATUTE OF LIMITATIONS GROUNDS, WE

10   WOULD HAVE A BASIS TO RESPOND IN KIND.  AND IT JUST SEEMS TO

11   LEAD TO AN ENTIRE SIDE SHOW.

12        THE COURT:  ALL RIGHT.  THANK YOU.

13      MR. FUISZ, GO AHEAD.

14        MR. JOE FUISZ:  MY UNDERSTANDING, AND I'M SORRY, I

15   THINK BILL DID THE ORAL ARGUMENT THERE SO HE SHOULD REMEMBER IT

16   BETTER THAN I DID.  I ACTUALLY THINK IT WAS DISMISSED IN D.C.

17   ON 4 OR 5 INDEPENDENT GROUNDS, NOT JUST RES JUDICATA, FAILURE

18   TO STATE, IQBAL, TWOMBLY, MY MEMORY IS ESCAPING ME.

19        LISTEN, I AGREE WITH MR. MARSILLO, IT IS NOT A

20   SUBSTANTIVE RULING IN THIS CASE OF OUR INNOCENCE AND COULD NOT

21   BE PRESENTED TO THE JUDGE AS SUCH.  THAT BEING SAID, I DO FEEL

22   I BELIEVE THAT PART OF THE NARRATIVE OF THIS CASE AND WHAT HAS

23   HAPPENED, AND FRANKLY WHAT MAY ACTUALLY HELP THEM IN SOME

24   RESPECTS BECAUSE THEY MAY WANT TO ARGUE MCDERMOTT WAS BIASED IN

25   TERMS OF MR. RECKTOFF, GIVES US GREAT TESTIMONY, THEY MIGHT

1    WANT TO SAY IT'S BECAUSE THEY SUED HIM.

2         BUT I DO THINK THE NARRATIVE OF WHAT WAS DONE IN TERMS OF

3    ENTERING INTO A SECRET TOLLING AGREEMENT WITH MCDERMOTT, FILING

4    A -- WRITING A COMPLAINT WITH A THOUSAND-LAWYER LAW FIRM,

5    REFERRING TO IT AS JOHN FUISZ'S LAW FIRM.

6         THERE'S NO DOUBT IN MY MIND WHAT I BELIEVE WHAT WAS HOPED

7    TO ACCOMPLISH WAS TO PROTECT MCDERMOTT'S NAME AND GET THEM TO

8    TURN ON MY BROTHER.

9         I THINK THE NARRATIVE OF HOW THIS CASE HAS UN FOLDED I

10   THINK IS VERY IMPORTANT TO OUR DEFENSE.  BUT I DO, SHOCKINGLY

11   ENOUGH, I MEAN I AGREE WITH MR. MARSILLO, I CAN'T USE THE

12   DECISION IN THAT CASE AS EVIDENCE OF OUR INNOCENCE.  I THINK

13   HE'S RIGHT ABOUT THAT.

14        THE COURT:  OKAY.  WELL, BECAUSE I DON'T THINK THE

15   DECISION IN THAT CASE OR THE SUBSTANCE OF JUDGE GONZALEZ

16   ROGER'S RULING WOULD BE PROPERLY ADMITTED, I'M FRANKLY NOT

17   PERSUADED THAT LETTING THE JURY GET INTO THE WHOLE PROCEDURAL

18   HISTORY OF HOW MCDERMOTT CAME TO BE IN THIS CASE AND THEN GOT

19   OUT IS REALLY GOING TO BE APPROPRIATE.

20        I THINK ON A 403 BASES ALONE I THINK IT WOULD BE VERY

21   CONFUSING TO THEM.  IF YOU HAVEN'T PICKED UP ON ONE THING, I

22   HOPE YOU PICK UP ON THIS I'M TRYING TO HAVE A RATHER MUNDANE

23   PEDESTRIAN NOTHING TO SEE HERE KIND OF TRIAL WITH ALL OF THESE

24   ALLEGATIONS FLYING AROUND.

25        SO I DO NOT WANT TO HAVE A LOT OF ANCILLARY OR

1    UNNECESSARY CONFUSION ON THE PART OF THE JURY.  SO ON THAT

2    BASIS I'M GOING TO GRANT THIS MOTION.

3        MOTION IN LIMINE NUMBER 6 HAS TO DO WITH MRS. GIBBONS, I

4    BELIEVE.  WE'VE TALKED ABOUT THAT ALREADY.

5        MR. UNDERHILL:  YES, YOUR HONOR.  I DON'T THINK

6    THERE'S ANYTHING ELSE FOR US TO SAY.

7    I WOULD ASSUME IN LIGHT OF YOUR EARLIER RULING THAT THIS

8    WOULD GO SIMILARLY.

9        THE COURT:  THAT ASSUMPTION IS CORRECT.  THIS MOTION

10    IS GRANTED.  I WILL JUST CUT TO THE CHASE.

11    BY MY ACCOUNT WE HAVE COVERED ALL THE MOTIONS, WHICH I'M

12    QUITE PLEASED WITH.

13        MR. UNDERHILL:  I THINK WE MISSED ONE, YOUR HONOR.

14        MOTION IN LIMINE NUMBER 4.  THIS IS ALLEGATIONS OF

15    MISTREATMENT OF ELIZABETH HOLMES.

16        THE COURT:  AH YES.  OKAY.  GO AHEAD.

17        MR. UNDERHILL:  AND AGAIN, I THINK WE FULLY BRIEFED

18    IT.  THEY HAVE LIKE TWO SENTENCES IN RESPONSE SO I THINK IT'S

19    FAIRLY IN FRONT OF YOUR COURT.

20    I THINK IT'S AN EMOTIONAL APPEAL THAT'S IMPROPER.  IT'S

21    THE -- SHE WAS ABUSED BY HER PARENTS WHO AS I UNDERSTAND THE

22    ARGUMENT PLACED UNREASONABLE DEMANDS ON HER.  WE SEE IN THE

23    E-MAILS WITH RACHELLE GIBBONS AND ALSO PHYLLIS GARDENER, IS

24    THAT HER NAME, SPECULATION ABOUT OUR CEO SANITY AND, YOU KNOW,

25    PSYCHOANALYSIS OF WHAT MADE HER THE WAY SHE IS.

1    AND YOU KNOW, I JUST AGAIN, I THINK IT'S RIDICULOUS.  AND

2    WE SHOULD NOT PERMIT ANY SORT OF SUGGESTIONS THAT SHE WAS

3    MISTREATED OR ABUSED BY VENTURE CAPITALISTS OR OTHERS,

4    INCLUDING HER PARENTS.

5            THE COURT:  GO AHEAD, MR. FUISZ.

6            MR. JOE FUISZ:  YOUR HONOR, THIS IS ANOTHER ONE OF

7    THESE STOP BEATING YOUR WIFE KIND OF MOTIONS.

8        IF SOMETHING IMPROPER HAPPENS AT TRIAL, YOU KNOW, I

9    HONESTLY WAS SHOCKED I GOT THE PAPERS OH, MY GOD WHAT ARE THEY

10   TALKING ABOUT, THIS IS SOUNDS SO TERRIBLE.  THEN WHAT I SAID

11   THEY WERE SAYING OPINIONS ELICITED FROM MY DAD IN HIS

12   DEPOSITION.

13       BY ALL MEANS IF WE DO ANYTHING IMPROPER IN TERMS OF THE

14   WAY WE CHARACTERIZE PLAINTIFF IN THE TRIAL, I WOULD INVITE

15   FIRST OF ALL I HOPE WE DON'T DO IT BUT I WOULD INVITE THEM TO

16   OBJECT.  BUT I WOULD RESPECTFULLY ASK THIS MOTION BE DENIED.

17            THE COURT:  OKAY.

18       WELL, I WILL GRANT THE MOTION.  BUT AGAIN, I WANT TO BE

19   CLEAR.  MR. FUISZ HAS TOUCHED UPON THIS, IF THERE ARE ANY

20   CIRCUMSTANCES ARISING DURING THE TRIAL WHERE THESE ISSUES MIGHT

21   CONCEIVABLY BECOME RELEVANT, I'M OPEN TO REVISITING THESE

22   ISSUES.

23       BUT I BELIEVE IN GIVING AS MUCH GUIDANCE IN ADVANCE OF

24   THE TRIAL SO EVERYBODY UNDERSTANDS WHAT THE GENERAL GROUND

25   RULES WILL BE.

1      BUT AGAIN ON THIS ISSUE, AND FRANKLY ANY OF THE ISSUE

2   OTHERS WE TALKED ABOUT TODAY, IF SOMETHING SHOULD COME UP AND

3   CIRCUMSTANCES CHANGE I WILL ENTERTAIN A REQUEST, I WON'T

4   HESITATE TO CHANGE MY MIND IF I HAVE TO.

5      ALL RIGHT.  WITH THAT I THINK WE COVERED ALL THE PENDING

6   MOTIONS THAT ARE BEFORE THE COURT THIS AFTERNOON.

7      MR. FUISZ --

8      MR. JOE FUISZ:  IN OUR DAUBERT ONE THING YOU DIDN'T

9   COVER WAS WE HAD ASKED YOU TO PRECLUDE CLARKE AND ROBERTSON

10  FROM OPINING ON OUR INVESTORSHIP CAPABILITIES.  I ARGUED THEY

11  WEREN'T QUALIFIED, HAD NO BASIS TO DO SO, NOTHING IN THEIR

12  CURRICULUM VITAE, THERE'S NO SCIENTIFIC METHOD, THERE'S NO

13  DAUBERT CRITERIA THAT I THINK CAN POSSIBLY BE SATISFIED.

14     SO I JUST WANTED TO MENTION THAT.

15     THE COURT:  I THINK YOU'VE MADE YOUR RECORD AND I'M

16  GLAD YOU DID.  I DID DENY THAT MOTION.

17     MR. JOE FUISZ:  I'M SORRY.  I MISUNDERSTOOD.

18     THE COURT:  NO, NO, YOU DON'T NEED TO APOLOGIZE.  YOU

19  SHOULD ALWAYS PRESERVE THE RECORD.  THAT'S ALWAYS A GOOD TRIAL

20  PRACTICE.

21     ALL RIGHT.  WITH THAT, AS I MENTION, I WILL DEAL WITH THE

22  CONCLUSION OF FINDINGS AND JURY INSTRUCTIONS AT TRIAL.

23     MY UNDERSTANDING IS WE ARE SCHEDULED TO BEGIN TRIAL

24  INJURY SELECTION ON WEDNESDAY AFTERNOON AT 1:30; MR. RIVERA, IS

25  THAT RIGHT?

1          THE CLERK:  YES, YOUR HONOR.

2          THE COURT:  OKAY.  ALL RIGHT.

3      BETWEEN NOW AND THEN I WILL ISSUE A SHORT ORDER

4  MEMORIALIZING THESE RULINGS SO YOU WILL HAVE SOMETHING TO READ

5  AND REFER TO OTHER THAN THE TRANSCRIPT.

6      ARE THERE ANY OTHER ITEMS WE CAN PRODUCTIVELY ADDRESS

7  WHILE WE ARE ALL TOGETHER?

8          MR. UNDERHILL:  IF YOU WOULDN'T MIND BRIEFLY TELLING

9  US HOW YOU WOULD LIKE TO DO VOIR DIRE, THAT WOULD BE HELPFUL.

10          THE COURT:  I THINK THAT WILL BE HELPFUL FOR

11  EVERYONE'S BENEFIT.

12      WHAT I WILL DO IN THIS TRIAL IS WHAT I HAVE DONE IN EVERY

13  JURY TRIAL I HAVE PROCEEDED OVER.

14      MY EXPECTATION IS WE WILL BRING IN SOMEWHERE BETWEEN 30

15  TO 40 PERSPECTIVE JURORS ON WEDNESDAY AFTERNOON.  THAT FINAL

16  NUMBER WILL BE DETERMINED BY THE CLERK'S OFFICE BUT IT WILL BE

17  ROUGHLY IN THAT RANGE.

18      AFTER THE JURY IS SEATED IN HERE I WILL BEGIN THE VOIR

19  DIRE AND I WILL CONDUCT THE MAJORITY OF THE JURY SELECTION OF

20  VOIR DIRE MYSELF.

21      THE JURORS WILL BE SEATED IN NUMERICAL ORDER STARTING

22  WITH SEAT NUMBER 1, THAT'S WHERE MY LAW CLERK IS CURRENTLY

23  SITTING, AND THEY'LL CONTINUE ON TO SEAT NUMBER 14.  15 THROUGH

24  40 WILL THEN BE SEATED IN THE FRONT TWO ROWS BACK THERE.

25      THE BASIC PREMISE OF MY JURY SELECTION IS THAT THE FIRST

 1    NINE JURORS WILL SERVE AS THE JURY UNLESS WE MIND A REASON TO

 2    EXCLUDE THEM.  AND THERE MAY BE ALL SORTS OF REASONS TO EXCLUDE

 3    THEM.  BUT LET ME FOCUS ON THE EXAMINATION FIRST BEFORE WE TALK

 4    ABOUT THE EXPLANATION EXERCISE.

 5         I HAVE A STOCK SET OF BIOGRAPHICAL QUESTIONS I WILL ASK

 6    OF EACH OF THE MEMBERS OF THE POOL.  MR. RIVERA CAN PROVIDE YOU

 7    WITH MY OUTLINE.  IT'S PRETTY SIMPLE AND NOT TERRIBLY ORIGINAL.

 8         ONCE I HAVE COMPLETED THAT EXERCISE OF ASKING EACH JUROR

 9    TO STAND AND PROVIDE THEIR NAME, WHERE THEY LIVE, WHO LIVES

10    WITH THEM, WHAT KIND OF WORK THEY DO, THAT SORT OF THING, I

11    WILL THEN AND I WILL HAVE SOME FOLLOW UP QUESTIONS BASED ON THE

12    RESPONSES.

13         I WILL INVITE EACH SIDE TO ASK THEIR OWN QUESTIONS OF THE

14    JURY AND I WILL GIVE YOU EACH ABOUT A HALF AN HOUR TO ASK

15    WHATEVER QUESTIONS YOU LIKE.

16         MY EXPERIENCE IS AFTER ABOUT 30 MINUTES THEY ARE PRETTY

17    SICK OF YOU, SO I DO PUT THAT HARD CAP.  BUT IF THERE ARE SOME

18    REASONS YOU NEED MORE TIME IN LIGHT OF A SPECTACULAR

19    REVELATION, I WOULD BE OPEN TO IT.

20         I RECOGNIZE IN TRIAL, LAWYERS AND GOOD PRO SE PARTIES

21    WANT TO DO IN VOIR DIRE AND IT'S NOT ALWAYS FOCUSED ON PICKING

22    A FAIR AND UNBIASSED JURY, SO I WILL POLICE VERY CAREFULLY ANY

23    EFFORTS TO INFLUENCE THE JURY RATHER THAN TO ELICIT APPROPRIATE

24    INFORMATION.

25         BUT I WANT TO GIVE YOU ALL THE CHANCE TO ENGAGE WITH THEM

1    I THINK IT'S IMPORTANT I THINK IT'S AN IMPORTANT PART OF DUE

2    PROCESS.

3         ONCE WE HAVE COMPLETED THAT EXERCISE I WILL THEN EITHER

4    DISMISS THE POOL OR KEEP THEM PRESENT BUT INVITE COUNSEL AND

5    THE FUISZ'S, ALONG WITH MY COURT REPORTER, TO RETIRE TO MY

6    CONFERENCE ROOM.  I BELIEVE SOME OF YOU KNOW IT WELL FROM SOME

7    EARLIER EXERCISES IN THIS CASE.

8         IN THERE OR OUT HERE, DEPENDING ON HOW THE LOGISTICS

9    WORK, WE WILL THEN GO THROUGH THE PROCESS OF HARDSHIP AND CAUSE

10   CHALLENGES OR DISMISSALS.

11        TYPICALLY, I FLAG FOR BOTH SIDES THE JURORS WHOM I

12   BELIEVE ARE APPROPRIATELY DISMISSED FOR HARDSHIP OR CAUSE

13   REASONS, BUT I WILL INVITE EACH OF YOU TO MAKE FURTHER

14   ARGUMENTS OR ADDITIONAL SUGGESTIONS.  I WILL RULE ON WHO OUGHT

15   TO BE DISMISSED ON THAT BASIS, THEN WE WILL TURN TO THE

16   BUSINESS OF PEREMPTORY CHALLENGES.

17        I WILL GIVE EACH OF YOU THREE PEREMPTORIES.  SO BEGINNING

18   WITH THE PLAINTIFFS, AS IS MY CUSTOM, WE WILL PASS A SHEET BACK

19   AND FORTH AND YOU WILL BE ALLOWED TO STRIKE UP TO THREE ON EACH

20   SIDE.

21        IF YOU PASS, THAT IS IF YOU ELECT NOT TO STRIKE SOMEONE,

22   THAT PASS COUNTS AS ONE OF YOUR STRIKES.

23        SO ONCE WE ARE DONE WITH THAT, THE LIST OF 39 OR 40

24   JURORS WILL HAVE INDIVIDUALS STRUCK FOR HARDSHIP, INDIVIDUALS

25   STUCK FOR CAUSE AND THEN UP TO SIX MORE INDIVIDUALS WHO ARE

1    STRUCK ON A PEREMPTORY BASIS.  WE THEN TAKE THE FIRST NINE

2    PEOPLE WHO ARE LEFT AND THAT'S YOUR JURY.

3         I WON'T TELL YOU HOW TO USE YOUR STRIKES OR SPEND YOUR

4    TIME, BUT I WOULD JUST OFFER THE SUGGESTION THAT BECAUSE OF MY

5    PARTICULAR METHOD, SPENDING A HECK OF A LOT OF TIME ON JURORS

6    NUMBERS 36, 37, 38, 39, NOT TERRIBLY PRODUCTIVE.  ODDS ARE

7    PRETTY SLIM IN A CASE LIKE THIS THAT WE ARE GOING TO GET PRETTY

8    FAR FOOT POOL.  BUT YOU CAN DO WHAT YOU LIKE.

9         DOES THAT MAKE SENSE TO EVERYBODY?  DO YOU UNDERSTAND HOW

10   WE'RE GOING TO DO THIS?

11              MR. UNDERHILL:  YES, YOUR HONOR.

12              THE COURT:  ANY OTHER LOGISTICS QUESTIONS AND ANY

13   OTHER ISSUES?

14              MR. UNDERHILL:  YES, AND I DON'T THINK THIS IS GOING

15   TO BE TIME CONSUMING, BUT YOU MAY RECALL BACK IN DECEMBER WE

16   TALKED ABOUT A PROCEDURAL ISSUE WE DO HAVE TO ADDRESS IN THE

17   CASE.  WHICH IS FUISZ PHARMA IS A CORPORATION, IT'S IN THE

18   LAWSUIT, IT'S NOT REPRESENTED BY COUNSEL.

19              THE COURT:  WHERE DID WE LEAVE THAT?

20              MR. UNDERHILL:  WELL, WHAT HAPPENED WAS ON

21   DECEMBER 31ST, LESS ANYONE SAY I WAS OUT CELEBRATING NEW YEARS

22   EVE, I WAS ACTUALLY WRITING AN E-MAIL TO THE FUISZES IN WHICH I

23   KIND OF LAID OUT WHAT WE WOULD FIND ACCEPTABLE.

24         I DON'T BELIEVE WE EVER REACHED AGREEMENT ON THAT THERE

25   WAS LATER REPRESENTATION FROM OPPOSING COUNSEL TO THE COURT

1    THAT WE HAD BEEN MEETING AND CONFERRING.  I HAD AN IMPRESSION

2    THAT WE HAD AN AGREEMENT OR WERE VERY CLOSE TO AN AGREEMENT.

3         WHAT I HAVE DONE TODAY IS WE DRAFTED A STIPULATION.  IT

4    ACTUALLY SAYS JOINT, BUT THE FUISZ'S HAVE ONLY GOTTEN IT TODAY

5    BUT HAVE NOT SIGNED OFF ON IT, ALTHOUGH I HOPE THAT THEY WILL.

6         I WOULD LIKE TO PASS UP A COPY OF IT JUST SO THE COURT

7    CAN SEE IT, THEN I WOULD PROPOSE I WORK WITH MR. FUISZ OVER THE

8    NEXT DAY TO TRY TO GET THIS THING FINALIZED.

9         AND YOU WILL SEE THAT WE ARE SEEKING REPRESENTATIONS FOR

10   EXAMPLE THAT FUISZ PHARMA IS OWNED BY THESE TWO INDIVIDUALS,

11   HAS NEVER BEEN OWNED BY ANYBODY ELSE, DOES IN FACT OWN THE

12   PATENT, WILL IN FACT BE BOUND BY THE RESULT OF THE TRIAL.

13        SO I THINK, IN MY HUMBLE OPINION, THIS IS A PRETTY

14   VANILLA THING, WE ARE NOT ASKING THEM TO SIGN AWAY THEIR LIVES

15   OR ANYTHING, SO HOPEFULLY WE WILL GET THIS RESOLVED.  BUT I

16   WOULD SUGGEST YOUR HONOR THAT THIS IS SOMETHING WE NEED TO

17   BUTTON DOWN BEFORE THE TRIAL STARTS.

18             THE COURT:  OKAY.

19        WELL, OBVIOUSLY, THE FUISZ'S HAVEN'T HAD AN OPPORTUNITY TO

20   EVEN READ THIS YET.  MR. FUISZ DO YOU WANT TO OFFER ANY INITIAL

21   REACTION?

22             MR. JOE FUISZ:  LISTEN, I MEAN, LOOK, IN PRINCIPLE WE

23   HAVE AN AGREEMENT.  I WILL GO THROUGH THIS.

24        THE ONLY THING THIS DOESN'T CONTEMPLATE IS MS. ANDERSON'S

25   PARTICIPATION WHICH WE MAY ABSOLUTELY REQUIRE WITH RESPECT TO

1        AEO MATERIALS.

2               AND IF SHE HAS TIME, I MAY ACTUALLY ASK HER TO HELP US

3        OUT A LITTLE BIT SINCE WE ARE GOING TO BE SO OVER MANNED.

4               MR. UNDERHILL:  FINE WITH US, YOUR HONOR.

5          AND IN FACT, IF MS. ANDERSON ENTERS AN APPEARANCE FOR FUISZ

6        PHARMA, WE ARE DONE, WE DON'T NEED TO DO THIS.

7               (OFF-THE-RECORD DISCUSSION.)

8               THE COURT:  GO AHEAD, DR. FUISZ.

9               MR. RICHARD FUISZ:  YOUR HONOR, MAY I ASK YOU, IF YOU

10       CAN EXPLAIN TO ME WHAT IS AN ADVISORY JURY?

11              THE COURT:  THAT'S A FAIR QUESTION.  WE DON'T HAVE A

12       LOT OF THEM HERE IN OUR COURT, DR. FUISZ.

13              THE ADVISORY JURY WILL RENDER A VERDICT LIKE ANY JURY IN

14       ANY CASE.  I WILL PUT TO THEM A SERIES OF QUESTIONS IN THE FORM

15       OF A JURY VERDICT FORM AND THEY WILL THEN COMPLETE THAT

16       INDICATING THEIR FINDINGS ON THE KEY ISSUES IN THE CASE.

17              BECAUSE IT'S AN ADVISORY JURY HOWEVER, THAT WILL NOT BIND

18       THIS COURT IN WHAT JUDGMENT WILL BE ENTERED.  I STILL HAVE THE

19       RESPONSIBILITY OF DRAFTING FINDINGS OF FACT AND CONCLUSIONS OF

20       LAW THAT GIVE THE COURT'S JUDGMENT.  THAT'S THE JUDGMENT THAT

21       WILL ENTER AND ON THAT BASIS WILL PROCEED.

22              THE WHOLE PURPOSE OF THE ADVISORY JURY IS TWO FOLD.  ONE

23       IS TO GIVE ME ADVICE ON WHAT NINE MEMBERS OF THE COMMUNITY

24       THINK ABOUT THESE ISSUES.

25              THE SECOND AND I THINK I WAS RATHER TRANSPARENT ABOUT

1   THIS IN MY ORDER, IT'S TO COVER MY BACKSIDE IN CASE THE CIRCUIT

2   COURT SAYS YOU SHOULD HAVE PUT THE WHOLE CASE TO THE JURY AND

3   NOT DECIDE ANYTHING AS A MATTER OF LAW.  DOES THAT MAKE SENSE?

4        ALL RIGHT.  SINCE WE ARE TALKING ABOUT LOGISTICS AND IF

5   I'VE ALREADY COVERED THIS WITH YOU I WILL APOLOGIZE, I WOULD

6   TAKE OUR LAFT FEW MINUTES TO COVER SOME ADDITIONAL ISSUES.

7        OUR SCHEDULE, AS I SAID WE WILL BEGIN WEDNESDAY AT 1:30.

8   I HAVE EVERY EXPECTATION WE WILL HAVE THE JURY SEATED BY THE

9   END OF THE DAY AND THEN WE WILL BEGIN WITH OPENING STATEMENTS

10   ON THURSDAY MORNING.

11        ONCE WE BEGIN ON THURSDAY, OUR TRIAL DAYS WILL ALWAYS

12   BEGIN WITH COUNSEL AND THE FUISZ DEFENDANTS APPEARING HERE IN

13   COURT AT 8:30 READY TO GO, READY TO RESOLVE ANY DISPUTES

14   REGARDING DOCUMENTS OR DEPOSITION TRANSCRIPTS, OR ANY KINDS OF

15   THINGS THAT WE REALLY SHOULDN'T WASTE THE JURY'S TIME WITH.

16        I WILL ASK THE JURY TO APPEAR HERE READY TO GO AT

17   9:00 A.M.  THEY WILL CONVENE IN MY JURY ROOM.  ASSUMING WE CAN

18   RESOLVE ALL OF OUR ISSUES PROMPTLY BY 9, WE WILL BEGIN AT THAT

19   TIME WITH TESTIMONY.

20        ON DAY ONE OF COURSE, HOWEVER, WE WILL BEGIN WITH

21   SOMETHING SLIGHTLY DIFFERENT.  I WILL HAVE A SET OF PRELIMINARY

22   INSTRUCTIONS THAT JUST BASICALLY EXPLAIN TO THE JURY HOW THE

23   TRIAL WILL PROCEED, WHAT EVIDENCE IS, THAT SORT OF THING.  I

24   USE THE STOCK SET PROVIDED TO THE NINTH CIRCUIT MODEL

25   INSTRUCTIONS SO THERE'S NOTHING TERRIBLY ORIGINAL THERE.

1    ONCE I GIVE THOSE PRELIMINARY INSTRUCTIONS WE WILL TURN

2   TO OPENING STATEMENTS.  WE WILL HEAR FROM EACH SIDE, THEN ONCE

3   OPENING STATEMENTS ARE COMPLETED WE WILL TURN TO THE

4   PLAINTIFF'S CASE IN CHIEF.

5    EACH DAY I TEND TO TAKE A RECESS IN THE MORNING AND A

6   RECESS IN THE AFTERNOON.  TEN MINUTES TO LET PEOPLE STRETCH

7   THEIR LEGS AND GIVE THE COURT REPORTER A BREAK.

8    WE WILL TAKE AN HOUR FOR LUNCH.  I EXPECT THAT WE WILL

9   COMPLETE EACH TRIAL DAY PROMPTLY AT 4:30.  I FIND THAT THE 9:00

10   TO 4:30 SCHEDULE GIVES FOLKS WITH ELDERLY AND CHILD CARE

11   RESPONSIBILITIES A FAIR CHANCE AT PARTICIPATING.  I THINK

12   THAT'S VERY IMPORTANT.

13    THERE IS ONE TWEAK I SHOULD FLAG FOR YOU ALL.  ON THE

14   FIRST TUESDAY AFTER WE BEGIN, WHICH IF I'M RIGHT ABOUT THAT, IS

15   TUESDAY MARCH 11TH, MR. RIVERA IS THAT RIGHT?

16    THE CLERK:  YES, YOUR HONOR.  THE 18TH, YOUR HONOR.

17    THE COURT:  AND WE HAVE A SIMILAR ISSUE ON THE 18TH.

18    I DO HAVE MY LAW AND MOTION CALENDAR AND I HAVE NOT YET

19   CLEARED THAT.  WHAT THAT MEANS IS THOSE TWO TUESDAYS I'M HOPING

20   WE DON'T HAVE TO GO TO THE SECOND TUESDAY, BUT IF WE DO IT, IT

21   WILL APPLY THERE AS WELL.

22    I WILL GIVE THE JURY THE MORNING OFF.  I WILL GIVE YOU THE

23   MORNING OFF AS WELL AND I WILL DO MY LAW AND MOTION CALENDAR AT

24   THAT TIME, THEN WE WILL BEGIN IN THE AFTERNOON AT 1:30.

25    SO WE WILL DO A HALF DAY THAT DAY IS WHAT I'M TRYING TO

1    SAY.

2                 MR. BOIES:  EXCUSE ME, YOUR HONOR.

3                 THE COURT:  YES, GO AHEAD.

4                 MR. BOIES:  ARE YOU PLANNING HAVE TRIAL MARCH 11TH?

5    I THOUGHT WE STARTED MARCH 12TH.

6                 THE COURT:  I'M SORRY.

7         THANK YOU FOR CORRECTING MY ERROR.  I WAS LOOKING AT THE

8    WRONG WEEK OF THE MONTHLY CALENDAR, MR. BOIES.  CORRECT.

9                 MR. BOIES:  OH, I'M GLAD.

10                THE COURT:  CORRECT.  I WAS MISTAKEN.

11        I MEANT TO REFER TO THE 18TH AND THE 25TH AS THE TWO

12   TUESDAYS WHERE I MAY HAVE A PROBLEM WITH MY LAW AND MOTION

13   CALENDAR.  DOES THAT CLEAR THINGS UP?

14                MR. BOIES:  YES, THANK YOU.

15                THE COURT:  OKAY.  THANK YOU FOR THAT.

16        SO THOSE ARE THE HOURS AND THE BASIC SCHEDULE I WANT TO

17   KEEP.

18        ONE OTHER CURVE BALL I WILL THROW AT YOU.  I AM ON

19   CRIMINAL DUTY THIS MONTH.  SO IN ADDITION TO RESOLVING ANY

20   DISPUTES YOU MAY HAVE REGARDING TRIAL DAY MATTERS, AT 8:30 I

21   WILL ALSO CONDUCT MY CRIMINAL CALENDAR.  THAT MAY TAKE TEN

22   MINUTES, IT MAY TAKE THREE HOURS, I JUST DON'T HAVE ANY CONTROL

23   OVER THE ACTIVITIES OF OUR FRIENDS IN THE BUREAU AND DEA AND SO

24   FORTH.

25        SO BE PREPARED FOR SOME DELAYS IN THAT REGARD.

1          ANYTHING ELSE I CAN TELL YOU ABOUT HOW YOU RUN THINGS OR

2     THAT YOU WANT TO FIGURE OUT?

3          ANY MORE DOWN IN THE WEEDS OR SORTS OF QUESTIONS,

4     STICKERS ON DOCUMENTS, OR BINDERS, YOU CAN ALWAYS SEND OUT AN

5     E-MAIL TO MR. RIVERA

6          MR. UNDERHILL:  THANK YOU, YOUR HONOR.

7          MR. BOIES:  YOUR HONOR, I APOLOGIZE IF YOU HAVE

8     ALREADY COVERED THIS.

9        HAVE YOU COVERED THE LENGTH OF THE OPENING STATEMENTS?

10         THE COURT:  I HAD NOT SPOKEN SPECIFICALLY TO THAT.  I

11    DON'T BELIEVE IN A CASE LIKE THIS IT'S NECESSARY OR APPROPRIATE

12    FOR ME TO PUT A HARD CAP OR A CLOCK ON THE OPENING STATEMENTS

13    THEMSELVES.

14       FORGIVE ME IF I HAVE ALREADY ISSUED AN ORDER SETTING OUT

15    HOURS LIKE THAT, I DON'T THINK I HAVE IN THIS CASE.  I'M NOT

16    INCLINED TO DO IT.

17       I DON'T HAVE TO TELL THE FOLKS IN THIS CASE THAT, YOU KNOW,

18    YOU PROCEED PAST AN HOUR AT YOUR PERIL.  THAT'S JUST MY LIMITED

19    EXPERIENCE.  BUT I DON'T HAVE A HARD CAP YOU HAVE TO WORRY

20    ABOUT, AND THE SAME OF COURSE IS TRUE FOR THE FUISZ'S.

21         MR. BOIES:  THANK YOU, YOUR HONOR.

22         THE COURT:  OKAY.  ANY OTHER QUESTIONS?

23       IF NOT, I WISH YOU A GOOD EVENING AND I WILL SEE YOU BACK

24    HERE NEXT WEDNESDAY.

25         MR. UNDERHILL:  THANK YOU, YOUR HONOR.

1              MR. JOE FUISZ:  THANK YOU, YOUR HONOR.

2              MR. BOIES:  THANK YOU VERY MUCH YOUR HONOR.

3        (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13             THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 3/6/14