DAVID BOIES (admitted *pro hac vice*)
Email: dboies@bsfllp.com
WILLIAM MARSILLO (admitted *pro hac vice*)
Email: wmarsillo@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
333 Main Street, Armonk, NY 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

D. MICHAEL UNDERHILL (admitted *pro hac vice*)
Email: munderhill@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

MICHAEL D. JAY (SBN 223827)
Email: mjay@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
401 Wilshire Blvd., Suite 850
Santa Monica, CA 90401
Telephone: (310) 752-2400
Facsimile: (310) 752-2490

*Attorneys for Plaintiffs*
THERANOS, INC. and ELIZABETH HOLMES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THERANOS, INC. and ELIZABETH HOLMES,<br><br>Plaintiffs,<br>v.<br><br>FUISZ PHARMA LLC, RICHARD C. FUISZ, and JOSEPH M. FUISZ,<br><br>Defendants. | Case No. 11–CV–05236–PSG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR REDESIGNATION OF CERTAIN MATERIALS AS CONFIDENTIAL**<br><br>Dept.: Courtroom 5, 4th Floor<br>Judge: Honorable Paul Singh Grewal<br><br>Final Pretrial Conference: March 5, 2014<br>Time: 3:00 p.m.<br><br>**TRIAL DATE: MARCH 13, 2014** |

EXHIBIT "B"

Plaintiffs Theranos, Inc. and Elizabeth Holmes (collectively, "Plaintiffs" or "Theranos") hereby oppose Defendants' Motion for Redesignation of Certain Materials as Confidential (Dkt. 341, 342).

## I. INTRODUCTION

Ignoring both the nature of this case and their admitted business strategy of targeting Theranos and Theranos's intellectual property, Defendants seek to re-designate as Confidential certain sensitive portions of Timothy Kemp's deposition transcript and eight sensitive emails between Theranos and the patent attorney, D. Bommi Bommannan and/or Thomas Haag, who assisted Theranos with certain patent applications.[1] Theranos would almost certainly suffer competitive harm if these materials were to make their way into the Fuiszes' hands. For instance, the portions of Mr. Kemp's deposition transcript that remain designated as AEO pertain to unreleased Theranos products and prototypes. And the emails between Theranos and Dr. Bommannan reveal details of Theranos's patent strategy. In light of the Fuiszes' continued attempts to seek patents in Theranos's space, the Fuiszes must not gain access to these AEO materials.

## II. BACKGROUND

**A.   The Fuiszes Have Targeted Theranos and its Intellectual Property**

The Fuiszes' demand that Theranos redesignate the documents and deposition testimony they identify in their motion ignores both the nature of this case and the significance of the information that is the subject of their demand. One of Theranos's claims in this case centers on the Fuiszes and

---

[1] With respect to the emails between Theranos and Dr. Bommannan and/or Thomas Haag, Defendants specifically identify only eight emails (*See* Defs. Mot., Appendix 5), but suggest that they may at some later point seek to re-designate additional correspondence between Theranos and Dr. Bommannan. (Mot. at 11.) At this point, Theranos is unable to address the merits of the designations of any additional communications. To the extent that Defendants' motion could be read as a general request to re-designate all correspondence between Theranos and Dr. Bommannan and/or Dr. Haag, such request should be denied.

In addition, Defendants' Motion also references a Power of Attorney, and corresponding cover letter, that MWE sent to Theranos, as well as a partial index of Theranos's AEO documents. (Mot. at 11.) With respect to the Power of Attorney, Theranos has re-designated that document as Confidential. As to the index, it is not clear what relief Defendants seek. To the extent Defendants seek to re-designate the documents on this "partial list," their motion should be denied because they have not provided any particularized reason to re-designate the listed documents.

1

their family member improperly accessing Theranos's confidential information and using that 

intend to follow through with these plans is confirmed by their announcements that they have received at least one patent and filed at least three patent applications relating to bodily fluid analyzers during the pendency of this case. (*See* Dkt. 279-8 (describing a smartphone-technology patent application as "extend[ing] the system described in our prior fluid analyzer patent"); Dkt. 279-9 (announcing a patent filing for the consolidation and presentation of metadata from bodily fluid analyzers); Dkt. 279-10 (announcing a foreign counterpart to the '612 Patent and the filing of a patent application relating to breath-based diagnostics);

### B. Theranos Has Made Every Effort to Provide the Fuiszes With Access to Theranos's Materials That The Fuiszes Believe Necessary to Prepare for Trial

Despite the Fuiszes targeting Theranos, Theranos has made reasonable attempts to accommodate the Fuiszes requests to access Theranos materials. In December, the Fuiszes discharged their counsel for the second time in this case so that they could proceed *pro se*. Immediately thereafter, Theranos made substantial concessions to facilitate the Fuiszes proceeding *pro se*, including agreeing that they could access all reports, deposition transcripts, and deposition exhibits of Theranos's experts. Then, on December 31, Theranos offered, as it had before, to permit the Fuiszes to review specific AEO material that the Fuiszes' previous counsel would first identify as

necessary for the trial defense, subject to Theranos's reservation of its right to object once such materials had been identified. As part of this proposal, Theranos also offered to re-designate the deposition transcript and exhibits for Christian and Noel Holmes, and to permit the Fuiszes to review any AEO exhibits that Theranos includes on its trial exhibit list. The Fuiszes rejected Theranos's proposal.

At a hearing on January 10, 2014, the Court ruled that Theranos did not have to redesignate AEO materials, except for the reports, deposition transcripts, and deposition exhibits of its experts—which Theranos already had provided to the Fuiszes—and any document listed on an exhibit list or used at trial. (*See* Minute Order (Dkt. 281).) The Court also instructed that the Fuiszes "may obtain outside counsel for purpose of representation or for the purpose of serving as a screen as suggested by Theranos and as described in the *Schlafly* decision." (*Id.*)

It was not until nearly a month later, on February 4, 2014, that the Fuiszes informed Theranos that they had retained Rhonda Anderson to screen AEO material for potential use at trial. Ms. Anderson filed an application to appear in this case on February 7, 2014. Within hours, Theranos overnighted to her a copy of its entire document production. Then, slightly more than a week later, Theranos re-designated from AEO to Confidential certain portions of the deposition transcripts of Noel Holmes, Christian Holmes IV, Timothy Kemp, D. Bommi Bommannan, and Thomas Haag.

### III. ARGUMENT

**A. The Deposition Transcript of Timothy Kemp Contains Information That Necessitates Designation as Attorneys' Eyes Only**

Consistent with its representations that it would work with the Fuiszes to provide access to necessary materials for trial, Theranos re-designated certain portions of Timothy Kemp's deposition transcript. Theranos did so on its own initiative on February 18, and then re-designated even more testimony after Ms. Anderson requested additional re-designations on the evening before Defendants filed their motion. Theranos was not able to agree to re-designate as Confidential all portions of Mr. Kemp's transcript that Ms. Anderson identified in Defendants' motion.[2] Theranos believes that its

---

[2] The only portions of Mr. Kemp's deposition transcript for which Theranos now maintains its "Highly Confidential – Attorneys' Eyes Only" designation are as follows: 13:25–14:6; 14:15–17:18;
[Footnote continued on next page]

PLAINTIFFS' OPPOSITION TO DEFENDANTS' DEFENDANTS' MOTION FOR REDESIGNATION
CASE NO. 11-CV-05236-PSG

AEO designations are proper. The operative Protective Order (Dkt. 79) acknowledges the need to designate particularly sensitive material AEO, to preclude access by opposing parties (Theranos, Elizabeth Holmes, Richard, Fuisz, John Fuisz, and Joseph Fuisz). The Protective order also provides that anyone who accesses AEO material—but not CONFIDENTIAL material—is subject to a patent prosecution bar in the field of bodily fluid analyzers. (Protective Order (Dkt. 79) ¶ 7.2.) In light of the Fuiszes' ongoing business strategy of targeting Theranos's intellectual property, the prosecution bar is particularly important for protecting Theranos's interests.

The portions of Mr. Kemp's deposition transcript that Theranos continues to maintain as AEO relate to unreleased Theranos products and prototypes.[3] In particular, the AEO portions contain detailed information regarding: (1) the bar code system in Theranos unreleased bodily fluid analyzer systems (*see, e.g.*, Defs. Mot., Appendix 3, T. Kemp Tr. at 24:25–25:14, 51:8–52:5, 53:9–56:9); (2) the communications mechanism of an unreleased bodily fluid analyzer system (*see, e.g.*, *id.* at 87:21–89:22); and (3) where Theranos secret prototypes are stored (*see, e.g.*, *id.* at 156:16–17). It would be unfair to Theranos if the Fuiszes' eleventh-hour decision to discharge their counsel were rewarded with access to this material. Significantly, Defendants have not identified the alleged relevance to its trial presentation of these AEO portions of Mr. Kemp's deposition, or why the portions of Mr. Kemp's deposition at issue allegedly do not warrant AEO protection. Instead, Defendants' appendix to their motion merely includes conclusory statements such as "NOT AEO." (*See* Defs. Mot.,

---

[Footnote continued from previous page]
20:7–25, 22:22–23:23; 24:25–25:22; 33:17–34:1; 34:22–36:2; 36:7–36:14; 48:23–48:24; 51:8–52:5; 52:15–22; 53:9–56:9; 87:15–87:17; 87:21–89:22; 105:10–109:17; 144:2–144:11; 152:5–152:25; 155:24–157:21; 159:10–160:18. Theranos redesignated all other portions of Mr. Kemp's transcript that Defendants identify in Appendix 1.

[3] The one exception is a portion of Mr. Kemp's transcript discussing his salary. (Defs. Mot., Appendix 3, T. Kemp Tr. at 20:7–9.) Information regarding Mr. Kemp's salary implicates significant privacy concerns, and should thus remain AEO. Defendants claim this information goes to "bias, motive, and credibility" (Defs. Mot., Appendix 1 at 1), but Mr. Kemp's specific salary is not relevant to this inquiry. That Mr. Kemp is a full-time Theranos employee who receives a salary would have the same probative value (to the extent there is any) as information about his specific salary. Accordingly, there is no reason that the Fuiszes should be provided with Mr. Kemp's private salary information.

Appendix 1.) Theranos should not have to guess why Defendants assert that this testimony regarding Theranos's unreleased products do not warrant AEO protection.

Under the Protective Order, AEO material is that for which disclosure to another party or non-party "would create a substantial risk of serious harm that could not be avoided by less restrictive means." (Protective Order (Dkt. 79) ¶ 2.8.) Detailed information about unreleased potential products meets that definition, particularly where the Fuiszes have sworn that they will continue to file patent applications concerning bodily fluid analyzers, to initiate litigation, and to otherwise try to harm Theranos.

Although some of the AEO material in Mr. Kemp's deposition relates to the 2004 to 2006 time period, it is nonetheless sensitive. Theranos is a young company that only recently launched its revolutionary product, at the end of 2013. That Theranos has not yet released products that it began developing back in 2004 to 2006 does not mean that it will not do so in the future, or that the secret information about those unreleased products is not relevant to Theranos's future business. For this reason, the AEO portions of Mr. Kemp's deposition must remain AEO, to avoid the substantial risk of serious harm to Theranos that would result from allowing the Fuiszes access to this information.

**B.  Emails Between Theranos and Dr. Bommannan Regarding Drafting of Patent Filings Are Highly Sensitive**

Defendants seek to re-designate as Confidential various emails between Theranos and a patent lawyer, D. Bommi Bommannan and/or Thomas Haag, who assisted Theranos with various patent applications. These emails, however, contain highly sensitive information about Theranos's patent strategy, as well as technical details about unreleased Theranos products that did not necessarily appear in any public filings.[4] Thus, the emails must remain AEO, as there is a substantial risk of harm to Theranos if Defendants were to have access to these emails. Significantly, Defendants provide no basis for its claim that the emails should be re-designated. In fact, Defendants' AEO

---

[4] As mentioned above, Defendants' motion specifically identifies only eight emails between Theranos and Dr. Bommannan and/or Thomas Haag. (*See* Defs.' Mot., Appendix 5). But to the extent that Defendants' request to redesignate encompasses all emails between Dr. Bommannan and/or Dr. Haag and Theranos, their request should be denied because, in addition to Defendants not identifying specific documents, much of the correspondence between Theranos and Dr. Bommannan and/or Dr. Haag contains non-public technical information about Theranos's products.

counsel concedes that the emails may in fact warrant AEO protection under the terms of the Protective Order. (Mot. at 4-5.) Nevertheless, Defendants claim that these emails detailing Theranos's patent and patent prosecution strategy and technical details of Theranos's unreleased products should be re-designated as Confidential because they are relevant to Defendants' claim that Dr. Bommannan prepared certain of Theranos's patent filings.

As an initial matter, Theranos is willing to stipulate that Dr. Bommannan drafted the secret Theranos provisional patent applications that Theranos relies on in this case for its correction of inventorship and invalidity claims. Thus, there is no reason that Defendants even arguably need access to the eight identified emails between Theranos and Dr. Bommannan and/or Thomas Haag.

More importantly, giving Defendants access to these emails poses a "substantial risk of serious harm" to Theranos, because it provides Defendants with valuable insights into Theranos's patent strategy and technical information about unreleased Theranos products. [redacted] Defendants claim that they have received at least one patent and filed at least three patent applications relating to bodily fluid analyzers during the pendency of this case. (*See* Dkt. 279-8; Dkt. 279-9; Dkt. 279-10.) The emails that Defendants seek to re-designate could provide Defendants with ideas for future patent applications or somehow alter their patent strategy to best target Theranos. In short, access to Theranos's communications with Dr. Bammannan by parties seeking patents in Theranos's space and otherwise targeting Theranos, will undoubtedly harm Theranos. Accordingly, the emails that Defendants identify in Appendix 5 should not be re-designated as Confidential.

## IV. CONCLUSION

For the reasons stated above, the Court should deny in its entirety Defendants' Motion for Redesignation of Certain Materials as Confidential.

6

PLAINTIFFS' OPPOSITION TO DEFENDANTS' DEFENDANTS' MOTION FOR REDESIGNATION
CASE NO. 11-CV-05236-PSG

| | |
|---|---|
| Dated: March 3, 2014 | BOIES, SCHILLER & FLEXNER LLP |
| | By: /s/ *Michael D. Jay* <br> Michael D. Jay |
| | *Attorneys for Plaintiffs* <br> THERANOS, INC. and ELIZABETH HOLMES |