UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THERANOS, INC. and ELIZABETH HOLMES,<br><br>             Plaintiffs,<br>     v.<br><br>FUISZ PHARMA LLC, et al.,<br><br>             Defendants. | Case No. 5:11-cv-05236-PSG<br><br>**OMNIBUS ORDER RE: MOTIONS IN LIMINE**<br><br>**(Re: Docket Nos. 300-13, 319, 326, 327, 330, 331, 335, 336, 337, 340, 341, 342, 344, 346, 348, 349, 353, 356 and 368)** |

Before the court are the parties' motions in limine prior to trial in this inventorship dispute. This order will memorialize the court's rulings issued from the bench last week.

## I. LEGAL STANDARDS

**A.     Fed. R. Evid. 401 and 403**

Fed. R. Evid. 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable," or if it is of any consequence in resolving the action. Fed. R. Evid. 403 gives the court discretion to exclude relevant evidence "if its probative value is substantially outweighed by a danger" of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

1

**B.     Fed. R. Evid. 702 and the Standard for Admissibility of Expert Testimony**

A witness qualified as an expert by knowledge, skill, experience, training, or education" may testify about "scientific, technical, or other specialized knowledge" if it will assist a jury "to understand the evidence or to determine a fact in issue,"[1] provided: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[2]

No "clear line" exists "between scientific knowledge and technical or other specialized knowledge."[3]  "And conceptual efforts to distinguish" scientific from technical knowledge "are unlikely to produce clear legal lines capable of application in particular cases."[4]  "As a result, the factors listed in *Daubert* to determine reliability also may have applicability in cases relying on technical or other specialized knowledge."[5]  Those factors include looking at whether the theory or technique: (1) "can be and has been tested," (2) "has been subject to peer review and publication", (3) has a "known or potential rate of error," (4) has standards that control "the technique's operation," and (5) "has achieved general acceptance in the relevant scientific or expert community."[6]

The factors are not exclusive and should be applied flexibly.[7]  The Advisory Committee Notes to Rule 702 state that in "certain fields, experience is the predominant, if not sole, basis for a

---

[1] Fed. R. Evid. 702.

[2] *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) (*quoting* Fed. R. Evid. 702).

[3] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999) (quotations omitted).

[4] *Id.* (citations omitted).

[5] *United States v. Zajac*, 748 F. Supp. 2d 1340, 1348 (D. Utah 2010) (citing *Kumho Tire*, 526 U.S. 141).

[6] *Baines*, 573 F.3d at 985 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993)).

[7] *Kumho Tire*, 526 U.S. at 141 (1999) (The "test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case.").

2
Case No. 5:11-cv-05236-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

great deal of reliable expert testimony."[8]  "The notes even cite a case where testimony from a handwriting expert was admitted based more on experience."[9]

In light of the Rules "liberal thrust"[10] and "strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact,"[11] "rejection of expert testimony has been the exception rather than the rule."[12]  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[13]  Nevertheless, the court must not abdicate its gatekeeper role to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[14]  The party seeking admission of expert testimony bears the burden of establishing by preponderance of the evidence the admissibility of the testimony.[15]

**C.   18 U.S.C. § 1512**

18 U.S.C. § 1512(a)(2)(A) provides that whoever "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent" to "influence, delay, or prevent the testimony of any person" in

---

[8] Fed. R. Evid. 702, Advisory Committee Notes (2000).

[9] *Zajac*, 748 F. Supp. 2d at 1348 ("Although a handwriting analysis is not the same" as the analysis generated by an expert on forensic linguistics work, it shares "similar attributes."  The linguistics expert's experience can therefore "bear on the reliability of his opinion.").

[10] *Daubert*, 509 U.S. at 588 (quotation marks and citations omitted).

[11] *United States v. Velasquez*, 64 F.3d 844, 849 (3d Cir.1995) (quotations and citations omitted).

[12] *Ruff v. Ensign-Bickford Indus., Inc.*, 171 F.Supp.2d 1226, 1232 (D. Utah 2001) (citing *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1089 (10th Cir. 2000)).

[13] *Daubert*, 509 U.S. at 596 (citation omitted).

[14] *Id.* at 589.

[15] *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001) (citing cases).

an official proceeding may be subject to criminal punishment. Witness tampering pursuant to Section 1512 requires a party to act with conscious awareness of wrongdoing.[16]

## II. DISCUSSION

### A.     The Fuisz Defendants' MIL No. 1: Failure to Comply with Section 282

The Fuisz Defendants contend Theranos failed to comply with the disclosure requirements of 35 U.S.C. § 282 and therefore should be prevented from relying on any prior art references at trial. Theranos counters that it fully complied with Section 282 – indeed months before the statutory deadline. 35 U.S.C. § 282(c) constitutes "a statutory provision that precludes" a party "from relying on prior art without disclosing that prior art to its adversary more than thirty days before trial."[17] "In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires."[18]

The Patent Local Rules of the Northern District of California require a party opposing a claim of patent infringement to serve invalidity contentions no later than 45 days after being served infringement contentions, which in turn must be served no later than 14 days after the initial case management conference.[19] If a party has "has complied with both the lenient statutory requirement" (i.e. Section 282), then necessarily the party has met this court's "more rigorous requirement."[20] Because the "disclosure requirements are designed not to cement parties to certain argument, but rather to prevent sandbagging and any prejudice to an opposing party resulting from

---

[16] *See Arthur Andersen LLP v. United States*, 544 U.S. 696 at 703-05 (2005).

[17] *Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.*, Case No. 3:04-cv-01830-CRB, 2006 WL 3456607, at *1 (N.D. Cal. Nov. 29, 2006).

[18] 35 U.S.C. § 282(c).

[19] *See* Patent L.R. 3-1 ("Not later than 14 days after the Initial Case Management Conference, a party claiming patent infringement shall serve on all parties a 'Disclosure of Asserted Claims and Infringement Contentions.'"); Patent L.R. 3-3 ("Not later than 45 days after service upon it of the "Disclosure of Asserted Claims and Infringement Contentions," each party opposing a claim of patent infringement, shall serve on all parties its" invalidity contentions.).

[20] *Funai*, 2006 WL 3456607, at *2.

4

Case No. 5:11-cv-05236-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

the tardy disclosure of relevant contentions and prior art" the court should scrupulously examine claims of prejudice.[21]

At bottom, the Fuisz Defendants' have been on notice of the prior art Theranos might rely on trial since October 25, 2012.[22] Because the disclosures pursuant to the Civil L.R. were sufficient to put the Fuisz Defendants on notice, the motion is DENIED.

**B.     The Fuisz Defendants' MIL No. 2**

The Fuisz Defendants' second motion in limine targets five categories of evidence that they argue should be excluded from the trial.

### 1.     Evidence of Theranos' Business, Customers, or Investors

The Fuisz Defendants believe that they have been walled-off from obtaining information about Theranos' business information, e.g. business circulars, total investment in the company, etc. Because the dispute in this case centers around the parties inventive activities in 2005, it would be prejudicial for Theranos to marshal evidence of subsequent investment following the inventive period. That evidence would be of limited probative value. The Fuisz Defendants sought information about Theranos' business, but were stymied.

Theranos counters that it needs an opportunity to provide context to the jury about who it is. To this end, Theranos intends to elicit background testimony. Because Theranos did not wall off discovery, this should be permissible. Theranos concedes that it did limit the wholesale shipment of the company's documents to the Fuisz Defendants, including research data and prototypes. But the Fuisz Defendants nevertheless had an opportunity to discover the minimal level of detail that Theranos would like to go into at trial.

Because it is important for the jury to have some basic understanding of who each party is, the parties may describe who they are today. The parties may also speak about who they were

---

[21] *Id.*

[22] *See* Docket No. 351-3.

Case No. 5:11-cv-05236-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

5

back in 2005. The court will not, however, permit the introduction of evidence regarding specific Theranos customers, because that information was not provided during discovery and does not appear to be relevant to the case.

Because the Fuisz Defendants faced impediments as to who invested in Theranos and how much money they invested, any evidence regarding investor names or investor dollars is excluded with one caveat: the parties may elicit information about any witnesses' financial stake in Theranos.

### 2. Testimony Concerning Theranos' Products or Reduction to Practice

The court will not permit the introduction of evidence into the trial that will require the either of the Fuisz Defendants to step out during trial. With respect to disputed testimony from Mr. Kemp, the court will permit Mr. Kemp to speak to his development of protoypes. Defendants may then hear the testimony and cross-examine Kemp on his testimony. Testimony about prototypes may not extend into a discussion of subsequent commercial products.

### 3. Terex Litigation

Evidence pertaining to prior testimony from the Terex litigation is excluded on the basis of Rule 403. This evidence creates a significant, unwarranted risk of unfair prejudice and confusion of the issues – particularly in light of the minimal probative relevance of this evidence.

### 4. Biovail Litigation

Because the parties agree that the Biovail litigation is not relevant to this case, the parties are precluded from referencing that litigation in this case.

### 5. Theranos' Prosecution Power of Attorney to McDermott Will & Emery

Because the Theranos' prosecution power of attorney is relevant and any prejudice may be mitigated through a limiting instruction that either side may propose,[23] it may be introduced at trial. The late-added Wilson Sonsini power of attorney, too, may be introduced.

### C. The Fuisz Defendants' Daubert Motion to Exclude Theranos' Experts

The Fuisz Defendants move to preclude Theranos' experts Robert Leonard, William Clarke and Channing Robertson from testifying in this case.[24]

#### 1. Dr. Leonard

The Fuisz Defendants challenge whether Leonard should be permitted to offer his testimony comparing the Fuisz emails to the Theranos provisionals to support Theranos' plagiarism claim that the Fuisz Defendants ripped of Theranos drawing on confidential information in the hands of Theranos' patent prosecution counsel McDermott Will & Emery. This question sits on a shifting precipice of unsettled law. Courts are split: (1) at least one court has permitted Leonard to to offer his opinion as to whether content was copied,[25] (2) other courts have permitted experts to offer an opinion comparing content and (3) some courts exclude this type of expert testimony altogether.

In this case, the expert may offer provide expert testimony on linguistic similarities between the disputed documents, but the ultimate question of whether or not plagiarism occurred is a credibility call, ripe for jury adjudication. Leonard thus may not offer testimony on the ultimate

---

[23] *See* Fed. R. Evid. 105 ("If the court admits evidence that is admissible against a party or for a purpose--but not against another party or for another purpose--the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.").

[24] *See* Docket No. 300-13.

[25] *See Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235, 254 (S.D.N.Y. 2012) ("The experts opine—based on 'matching or similar word strings,' 'numerous data points,' other 'irregularities,' and the like—that whoever wrote the Judgment had and used these LAP documents in doing so.").

question of whether plagiarism occurred, but Leonard may offer expert testimony on linguistic and semantic similarities of the disputed language subject to cross-examination.[26]

The Fuisz Defendants also challenge Theranos' reliance on the Google patent database to extrapolate a percentage of how many patents contain certain language. The court will permit the reference to the Google patent database including percentages, but will allow the Fuisz Defendants' to draw out limitations of the database during cross-examination.

### 2. Dr. Clarke

The Fuisz Defendants insist that Clarke should be precluded from testifying, because no single document – in this case Theranos' provisional applications – discloses all claim limitations within the '612 patent. The problem with the Fuisz Defendants' position is that they point to no case law justifying such a prophylactic remedy. Federal Circuit case law indeed appears clear on this point. In *Price v. Symsek*, the Circuit held "an inventor can conceivably prove prior conception by clear and convincing evidence although no one piece of evidence in and of itself establishes the prior conception."[27] "A 'rule of reason' analysis is applied to determine whether the inventor's prior conception testimony has been corroborated."[28] "An evaluation of all pertinent evidence" therefore "must be made so that a sound determination of the credibility of the inventor's story may be reached."[29] Inventorship is a question of law and the trial court may look to "circumstantial evidence about the inventive process" to corroborate inventorship claims.[30]

---

[26] Because the parties dispute over the Google Patents Database versus the PTO's website goes to the probative value of the evidence (i.e. what weight it should be afforded), it will not be excluded. Such criticism can be drawn out through vigorous cross-examination.

[27] *Price v. Symsek*, 988 F.2d 1187, 1196 (Fed. Cir. 1993) ("It is sufficient if the picture painted by all of the evidence taken collectively gives the board 'an abiding conviction' that" an inventor's "assertion of prior conception is 'highly probable.'" (citing *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988))).

[28] *Id.* at 1195 (citing *Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985)).

[29] *Id.*

[30] *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460-61 (Fed. Cir. 1998).

8
Case No. 5:11-cv-05236-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

In light of *Price's* open acceptance of circumstantial evidence and explicit acceptance of multiple references to corroborate claims of prior conception, the court finds exclusion of Clarke's testimony unwarranted. Because Clarke's experience in the field of fluid analysis devices and related methods cannot reasonably be contested[31] and his testimony will be helpful to the jury on a technical subject related to inventorship, exclusion of his testimony is not warranted on that basis either.[32] At trial Theranos may rely on Clarke's testimony to bolster Elizabeth Holmes' claimed date of conception by making reference to provisional patent applications filed by Theranos.

### 3. Dr. Robertson

Like Clarke above, Robertson, too, may testify on the issues of inventorship. As spelled out above, Robertson need not point to a single piece of documentary evidence to support expert opinion regarding inventorship.[33]

### D. No Adverse Inference Instruction or Additional Discovery is Warranted Regarding the Absence of Testimony From Dr. Gibbons

The Fuisz Defendants urge the court that an adverse inference instruction is warranted because Theranos bullied Dr. Gibbons from sitting for a deposition in this case prior to his death. Without opining on the tact chosen by the Fuisz Defendants, the court focuses its attention on the absence of evidence supporting their claims. All that the Fuisz Defendants point to is excerpted e-mail correspondence with Dr. Gibbons widow, Rochelle Gibbons, that: Dr. Gibbons "was very depressed because he was being bullied by EH and Sunny (sp?). He was suffering from the

---

[31] *See* Docket No. 300-25

[32] The court also is not persuaded that because Clarke does not have personal knowledge of who from Theranos is correctly identified as the true inventor(s) of the '612 patent serves as an adequate basis to exclude Clarke's testimony altogether.

[33] As to the Fuisz Defendants' claims that Theranos may try to back-door "unfairly" prejudicial arguments establishing the extent of Theranos' research efforts the court is not yet persuaded that such a prophylactic remedy is warranted at this time. The court will entertain any appropriate objection at trial.

9
Case No. 5:11-cv-05236-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

pressure that they were placing on him not to testify. He told me that everyday."[34] The court is not persuaded that such eleventh-hour evidence, not made under oath, should be credited and justify the extreme adverse inference sought in this case. The time for discovery has come and passed. If this was an issue the Fuisz Defendants wanted to explore, they had their opportunity. One week before jury selection is not the time to explore this issue further – the court will not reopen discovery. Because the Fuisz Defendants' request for an adverse instruction is not supported by evidence that would support such an instruction, their motion is DENIED.

---

[34] *See* Docket No. 326-8 at 1.

### E. The Fuisz Defendants' Motion to Redesignate Certain AEO Material

The parties dispute whether certain portions of Kemp's deposition should retain its AEO designation. The court resolves each disputed portion of the transcript below.

| Portion | Court's Ruling |
| --- | --- |
| 13:25–14:6 | Shall remain AEO. |
| 14:15–17:18 | Shall remain AEO, but 14:19-20 shall be down designated to Confidential. |
| 20:7–25 | Shall remain AEO, but 20:7-10 shall be down designated to Confidential. |
| 22:22–23:23 | Shall remain AEO. |
| 24:25–25:22 | Shall remain AEO. |
| 33:17–34:1 | Shall be down designated to Confidential. |
| 34:22–36:2 | Shall remain AEO. |
| 36:7–36:14 | Shall be down designated to Confidential. |
| 48:23–48:24 | Shall be down designated to Confidential. |
| 51:8–52:5 | Shall remain AEO. |
| 52:15–22 | Shall remain AEO. |
| 53:9–56:9 | Shall remain AEO. |
| 87:15-87:17 | Shall be down designated to Confidential. |
| 87:21–89:22 | Shall remain AEO. |
| 105:10–109:17 | Shall remain AEO. |
| 144:2–144:11 | Shall remain AEO. |
| 152:5–152:25 | Shall remain AEO. |
| 155:24–157:21 | Shall remain AEO. |
| 159:10–160:18 | Shall remain AEO. |

### F. The Fuisz Defendants' 35 U.S.C. § 256 Motion

The Fuisz Defendants seek dismissal of Theranos' Section 256 claim based on their concern that Theranos now seeks to only add Ms. Holmes, and not other Theranos inventors, to the '612 patent. At the hearing on these motions, Theranos' counsel explained that it still seeks the addition of both Holmes and Kemp to the '612 patent. In light of those representations, the Fuisz Defendants' motion to dismiss the Section 256 claim is DENIED.

### G. Theranos' Daubert to Exclude Dr. Bergeron

Theranos takes issue with several aspects of Bergeron's expert report. Because those flaws run through Bergeron's report, Theranos urges Bergeron's entire report should be excluded. This motion is denied. Any errors in the report are fair game for cross-examination.

11
Case No. 5:11-cv-05236-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

Any misapplication of law can be drawn out through vigorous cross-examination and in closing argument.  The court further will not permit an expert to stray from his report.  Finally, the court will issue its final jury instructions and claim constructions to guide the jury's understanding and application of the law.  Collectively, these measures will mitigate possible prejudice.

### H.      Theranos' MIL No. 1: Conception Dates

The court will permit the introduction of general testimony about work being done by the Fuisz Defendants prior to their constructive reduction to practice date in September 2005.  The court will exclude evidence that suggests the Fuisz Defendants' conceived of the '612 patent before September 2005.

### I.      Theranos' MIL No. 2: Excluding References to Boies, Schiller & Flexner LLP

Theranos seeks an order excluding reference to its counsel's law firm and any reference to the personal impact this litigation has had on the Fuisz Defendants.  The court will not permit any reference or attacks on litigation counsel or reference motives of any counsel or firm in this case.  The parties may, however, reference what this case has meant to them and any effects of the litigation.

### J.      Theranos' MIL No. 3: Exclusion of Personal Allegations

The court GRANTS Theranos' motion, but if any witness testifies and that witness has had a relationship with any principal in this case, the court will permit cross-examination that goes to possible bias.

### K.      Theranos' MIL No. 4: Allegations of Mistreatment of Elizabeth Holmes

The court GRANTS the motion, but if these issues become relevant at trial the court is open to revisiting its prior decision.

### L. Theranos' MIL No. 5: The Separate Action Against John Fuisz and McDermott Will & Emery

Because the court finds that evidence relating to the prior, parallel litigation would confuse the issues and not provide significant probative value, the court precludes any reference to the prior case involving John Fuisz and the McDermott Will & Emery firm.

### M. Theranos' MIL No. 6: Communications Between the Fuisz Defendants and Rochelle Gibbons

The court GRANTS Theranos' motion to exclude evidence, argument, or reference relating to hearsay communication between the Fuisz Defendants and Rochelle Gibbons.

### N. Sealing Motions

| Sealing Motion | Document(s) to be Sealed | Result | | Reason/Explanation |
|---|---|---|---|---|
| 319 | Theranos' Opposition to the Fuisz Defendants' Daubert | **GRANTED-IN-PART** | | The Fuisz Defendants' did not submit a supporting declaration supporting the sealing of Exhibits A and B or the opposition. The redactions to Exhibit E are not narrowly-tailored. For example, Theranos' has not made a particularized showing why 61 pages of Robertson's CV (Ex. A) need to be filed under seal. |
| 319 | Theranos' Opposition to the Fuisz Defendants' Daubert | **SEALED** Exhibit C | **UNSEALED** Opposition Exhibit A Exhibit B Exhibit E | |
| 326 | The Fuisz Defendants' Motion for an Adverse Inference Instruction | **GRANTED** *See* DN 330 (below) | | The entire motion and supporting exhibits may be sealed in light of the sensitive nature of its contents. |
| 327 | Theranos' Daubert to Exclude Bryan Bergeron | **DENIED** | | No supporting declaration. |
| 330 | Theranos' Motion to File the Fuisz Defendants' Adverse Inference Instruction Motion Under Seal | **GRANTED** | | The entire motion and supporting exhibits may be sealed in light of the sensitive nature of its contents. |

13

Case No. 5:11-cv-05236-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

| # | | | | |
|---|---|---|---|---|
| 335 | **Theranos' MIL Nos. 1-6** | **GRANTED-IN-PART** | | No supporting declaration was tendered in support of sealing Exhibit 1. |
| | | <u>SEALED</u><br>MIL No. 2<br>MIL No. 4<br>MIL No. 6<br>Supporting Exhibits | <u>UNSEALED</u><br>MIL No. 1 | |
| 336 | **Theranos' Proposed Findings of Fact and Conclusions of Law** | DENIED | | No supporting declaration. |
| 337 | **Theranos' Trial Brief** | DENIED | | No supporting declaration. |
| 340 | **Joint Pretrial Statement** | DENIED | | That the parties in this case have invested in the companies involved in this litigation is not earth-shattering. Theranos' vague claims do not warrant sealing on this basis. Holmes' inventive capability further will be directly at issue in the trial. Sealing content on page 35 is not warranted.<br><br>The oblique allegation referred to at page 37 do not warrant sealing. Neither does the history of prosecution counsel retained by Theranos. Page 37 may not be sealed. |
| 342 | **Resdeisgnation of AEO Materials Appendices** | GRANTED | | This information pertains to the development of Theranos' products. |
| 344 | **The Fuisz Defendants' MIL No. 2** | DENIED | | The Fuiz Defendants do not point out with particularity why sealing is warranted and no supporting declarations have been filed. |
| 346 | **Theranos' Opposition to the Fuisz Defendants' Motion for an Adverse Inference Instruction** | GRANTED | | The entire opposition and supporting exhibits may be sealed in light of the sensitive nature of its contents. |
| 348 | **The Fuisz Defendants' Motion to Dismiss the Section 256 Claim** | DENIED | | This information within the Fuisz Defendants' motion, the correspondence over jury instructions, and the proposed jury instructions do not warrant sealing. |

14
Case No. 5:11-cv-05236-PSG
OMNIBUS ORDER RE: MOTIONS IN LIMINE

**United States District Court**
For the Northern District of California

| | | | |
|---|---|---|---|
| 349 | The Fuisz Defendants' Reply Supporting their Motion for an Adverse Inference Instruction | GRANTED | The entire reply and supporting exhibits may be sealed in light of the sensitive nature of its contents. |
| 353 | Theranos' Opposition to the Fuisz Defendants' Motion for Discovery Re: Redesignation of AEO Materials | DENIED | No supporting declaration. |
| 356 | Theranos' Opposition to the Fuisz Defendants' MIL No. 2 | GRANTED-IN-PART<br><br>**SEALED**<br>Exhibit C<br>Exhibit E<br><br>**UNSEALED**<br>Opposition<br>Exhibit B<br>Exhibit F<br>Exhibit G<br>Exhibit H<br>Exhibit J | Exhibits F, G, and H are publicly available. No declaration was submitted by the Fuisz Defendants' supporting sealing of Exhibits B, F, G, and H or the opposition.<br><br>The court will not seal Theranos' proposed redactions to the opposition.<br><br>The "role and identity of service providers" Theranos "engaged to assist with the patenting process" may not be sealed. The court also is not persuaded that any prosecution "strategy" purportedly disclosed in Mr. Haag's letter warrants sealing. |
| 368 | Redaction of Hearing Transcript | GRANTED | In light of the sensitive nature of testimony from the hearing, the portions of the transcript may be sealed. |

IT IS SO ORDERED.

Dated: March 10, 2014

PAUL S. GREWAL
United States Magistrate Judge